## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| GNC HOLDINGS, INC., *et al.*, | ) Case No. 20-11662 (___) |
| Debtors.[1] | ) (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ORDERS
## AUTHORIZING (A) PAYMENT OF CERTAIN  PREPETITION
## FRANCHISE CLAIMS AND (B) CONTINUED PERFORMANCE UNDER
## FRANCHISE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

### RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of interim and final orders, substantially in the form attached hereto as **Exhibit A** (the "***Proposed Interim Order***") and **Exhibit B** (the "***Proposed Final Order***," and together with the Proposed Interim Order, the "***Proposed Orders***"), respectively, authorizing (a) the payment of certain prepetition Franchise Claims (as defined below), and (b) continued performance under Franchise Agreements (as defined below) in the ordinary course of business.

---

[1]     The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

## JURISDICTION

2.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363(b) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532  (the "***Bankruptcy Code***") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

## BACKGROUND

3.      On June 23, 2020 (the "***Petition Date***"), the Debtors filed voluntary petitions in this Court commencing cases (the "***Chapter 11 Cases***") for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in these cases, and no committees have been appointed.

4.      The Debtors anticipate commencing an ancillary proceeding under Part IV of the Companies' Creditors Arrangement Act (Canada) in Toronto, Ontario, Canada before the Ontario Superior Court of Justice (Commercial List).

5.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is

26664172.2

set forth in detail in the *Declaration of Tricia Tolivar, Chief Financial Officer of GNC Holdings, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* (the "***First Day Declaration***")[2] filed contemporaneously herewith.   In support of the Motion, the Debtors rely upon and incorporate by reference the First Day Declaration.[3]

## THE DEBTORS' FRANCHISE STORES

6.     The Debtors have approximately 7,062 store locations globally, and rely on a network of approximately 2,803 franchise stores (the "***Franchises***") to sell their products. Approximately 917 Franchises are based in the United States, while the remaining approximately 1,886 Franchises are located in 50 countries across the world.

7.     The Franchises are operated by approximately 381 different franchisees (the "***Franchisees***").  Some of the Franchisees operate a single store, while the largest Franchisee operates approximately 75 stores.  Approximately 25% of the Franchisees have operated Franchises for longer than 25 years, and approximately 25% have operated Franchises for less than five years.  Certain of the Franchisees have diverse businesses, while other Franchisees' businesses are entirely dependent on their operation of a Franchise.

8.     In 2019, the Debtor's Franchise operations generated approximately 20.3% of the Debtors' consolidated revenue.[4]  With the impact from the COVID-19 pandemic, and the closing of many of the Debtors' corporate stores, the Debtors now rely even more on the Franchise

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[3]    The First Day Declaration and other relevant case information is available from (a) the Court's website, www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at https://cases.primeclerk.com/gnc.

[4]    In 2019, the Debtor's Franchises generated approximately 82.1% of the total international revenue, excluding Canada.

operations which in the weeks prior to the Petition Date have accounted for an even more significant portion of the Debtors' revenue.

9.      The Franchises are independently owned, and pursuant to standard franchise agreements with the Debtors (the "***Franchise Agreements***"), operate their businesses under the Debtors' names in accordance with certain standards and obligations contained in the Franchise Agreements.  Franchises use the proprietary marks of the Debtors, including trademarks and other commercial symbols in exchange for royalty payments made to the Debtors.  Franchises also make payments to the Debtors for rent, CAM, utilities, taxes, inventory, NSF fees, and credit card processing fees, which the Debtors use to pay third party vendors.

10.      Franchises pay the Debtors fees for advertising and operational services.  In return, Franchises have access to the Debtors' distribution network and product volume discounts for third party products, as well as the ability to purchase products manufactured by the Debtors' in accordance with an agreed upon inventory plan detailing the categories of such products and minimum quantities.  Some Franchises are also granted geographic exclusivity rights, allowing them the sole right, even to the exclusion of the Debtors, to expand the Debtors' "brick-and-mortar" business in certain geographic areas.  Typically, Franchises in the United States are given limited geographical exclusivity while international Franchises may receive exclusive franchising rights to the entire country (excluding United States military bases).  All Franchises, however, must meet certain uniform standards and duties required by the Debtor.  Each month, Franchises receive a price kit with base price changes, monthly promotional inserts, and off shelf signs.

11.      The Debtors have certain franchise programs designed to improve the overall performance of Franchises, including training programs and multi-unit owner programs.  The initial training program consists of three phases: phase (I) training at a Debtor operated store,

phase (II) attendance at a five day training program, and phase (III) training with a Director of Franchise Operations during a grand opening shipment. The Debtors from time to time also hold subsequent trainings for Franchises following the initial training program.

## I.    FRANCHISE CLAIMS

12.     In the ordinary course of business, the Debtors' relationship with the Franchises result in the Debtors providing certain credits, reimbursements and payments to the Franchisees in connection with the Franchise Agreements:

(a)     **Volume Discounts/Reimbursements.**  The Debtors credit the Franchisees for amounts saved as a result of the Debtors' volume purchase of goods.

(b)     **Promotional and Coupon Credits.**  The Debtors provide margin support to Franchisees to incentivize their participation in promotions for GNC branded items.  For example, the Debtors may provide the full margin to the Franchisees for a buy one get one free promotion.

(c)     **Auto-Ship Protection for Expiring Products.**  Because Franchisees must order certain products through auto-shipment, the Debtors may credit the Franchisee for certain products which do not sell by their expiration date.

(d)     **Damages and Returns.**  The Debtors reimburse Franchisees for any products they receive which are damaged or subject to recall because of quality concerns.

(e)     **Reimbursement of Start-up Costs and Franchise Fees**.  From time to time, the Debtors may reimburse or prorate start-up costs and franchise fees for Franchises.

13.     Claims for retail promotion credits and concealed damages and returns are paid to Franchisees on a weekly basis.  Claims for auto-ship protection of expiring products are paid to Franchisees on a quarterly basis.  As of the Petition Date, the Debtors estimate that approximately

$670,000[5] is owed to the Franchisees on account of prepetition obligations (the "***Franchise Claims***"), approximately $484,500[6] of which the Debtors expect to come due in the 21 days following Petition Date.  The Franchise Claims are incurred on various payment terms, and the Debtors do not intend to pay the prepetition Franchise Claims until they come due in the ordinary course of business.

## II.    FRANCHISE OPERATIONS

14.    As part of the Franchise Agreements, the Debtors provide certain ongoing services to the Franchisees, including initial and ongoing training, advisory assistance and services, financial services, inventory and financial audits, advertising services, location and construction services, customer programs, and financing of inventory and required equipment (including guarantees for growth loans).  The Debtors have assumed liability for the full amount of the growth loans in the event of default by the Franchisee.  While each of these services are resource intensive and are an ongoing expense to the Debtors, the cost of these services is generally passed through to the applicable Franchisees.  The Debtors provide these services to maintain quality control over the Franchises and to ensure that their customers, products, and brand reputation are protected. The Debtors provide Franchisees with a uniform method of operating retail nutrition, health and/or fitness stores which is supplemented and improved from time to time.

15.    For regional and national media coverage, the Debtors direct all advertising, promotional, and marketing programs and make all decisions regarding concepts, materials, and media and the placement and allocation thereof.  The Debtors also approve all local advertising

---

[5]    This amount includes approximately $390,000 in retail promo credits, $110,000 in damages and returns, and $170,000 in auto-ship protection for expired products.

[6]    This amount includes approximately $363,000 in retail promo credits, $99,000 in damages and returns, and $22,500 in auto-ship protection for expired products.

that Franchisees wish to conduct.  The Debtors create and conduct television, radio, and print advertising campaigns.  The Debtors create and distribute the materials that the Franchises use for advertising, conducting market research, organizing public relations activities, and employing advertising agencies and consultants.  In return for the services, the domestic Franchisees contribute to a national advertising and promotional fund (the "***National Advertising and Promotional Fund***").  The National Advertising and Promotional Fund is used by the Debtors, in addition to the Debtors' own funds, and at the Debtors' discretion, to produce advertising, pay for media placement, conduct other marketing activities, and for merchandising.

16.     The National Advertising and Promotional Fund aids Franchisees in developing media, direct marketing, in-store marketing, events and promotions, and public relations.  The National Advertising and Promotional Fund is also used for other marketing programs such as updating packaging and conducting market research studies.  If the Debtors were forced to discontinue using the National Advertising and Promotional Fund, or if Franchisees stopped committing funds, the Debtors' business, as well as the Franchises', would greatly suffer and would directly impact the Debtors' ability to successfully reorganize.

17.     The Debtors billed Franchisees for contributions to the National Advertising and Promotional Fund for the second quarter of 2020, and the Debtors committed to crediting the Franchisees for amounts not spent.  The Debtors did not spend all the Franchisees' contributions to the National Advertising and Promotional Fund for the second quarter of 2020, and accordingly seek to credit the Franchisees the approximately $1.2 million that was contributed by the Franchisees but not spent by the Debtors (the "***Ad Fund Credit***").

18.     In sum, the Debtors' business is dependent on delivering the very best in health, wellness, and performance products to their loyal customer base, and the Franchises, which

constitute almost 40% of the Debtors' stores globally, are a critical element of the Debtors' broad reach and position within the marketplace.  If the Debtors fail to perform their obligations under the Franchise Agreements in the ordinary course of business, including honoring any prepetition obligations thereunder, the Franchises and the Franchisees could be severely harmed, potentially leading to shut-down of stores and loss of corresponding revenues.  Moreover, deterioration of the relationship between the Debtors and the Franchisees could have negative repercussions for the Debtors' relationship with their customers who shop at the Franchise stores.

**BASIS FOR RELIEF**

I.      **PAYING THE FRANCHISE CLAIMS AND PERFORMING UNDER FRANCHISE AGREEMENTS REFLECTS A SOUND EXERCISE OF BUSINESS JUDGMENT AND SHOULD BE APPROVED.**

19.     The Debtors should be authorized to pay the Franchise Claims on the terms set forth in the Proposed Orders, as it reflects a sound exercise of their business judgment.  Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate" after notice and a hearing.  11 U.S.C. § 363(b)(1).  Generally, the debtor is only required to "show that a sound business purpose" justifies the proposed use of property.  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also In re Phx. Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code).  This standard prohibits other parties from second-guessing the debtor's business judgment if the debtor has shown that the proposed use will benefit the debtor's estate.  *See In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."); *see also In re Tower Air, Inc.*, 416

F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

20.　　Any interruption or discontinuation of relationships with Franchises could have devastating effects on the Debtors' businesses.  The Franchises represent a significant portion of the Debtors' revenues and profitability and reach a huge number of the Debtors' customers. A healthy Franchisee is more likely to buy product from the Debtors, resulting in additional revenue. In addition, many Franchisees reinvest the money returned to them back into their business.  In contrast, the shutdown of a Franchise causes a loss of two major revenue streams for the Debtors— (i) a loss of revenue from the Franchisee's purchase of product from the Debtors, and (ii) a loss of royalty revenue from the Franchisee's sale of products.

21.　　The Debtors submit that the benefits to their stakeholders of preserving the Franchise relationships fully intact as requested herein will far exceed any costs associated with the Franchise Claims and continued performance under Franchise Agreements in the ordinary course of business.  Thus, the requested relief reflects a sound exercise of the Debtors' business judgment and should be approved.

## II.　PAYING THE FRANCHISE CLAIMS AND PERFORMING UNDER FRANCHISE AGREEMENTS IS NECESSARY TO THE SUCCESS OF THE DEBTORS' REORGANIZATION AND SHOULD BE APPROVED.

22.　　In addition, the Debtors should be authorized to pay the Franchise Claims and continue performance under Franchise Agreements in the ordinary course of business, as set forth in the Proposed Orders, because doing so is necessary to the success of their reorganization. Section 105(a) of the Bankruptcy Code provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  Courts have interpreted this provision to authorize payments on prepetition claims where the payments are essential to the success of the debtor's reorganization

26664172.2

under what is known as the "necessity of payment doctrine." *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) ("Thus, the 'necessity of payment' doctrine…teaches no more than, if a payment of a claim which arose prior to reorganization is essential to the continued operation of the [debtor's business] during reorganization, payment may be authorized…"); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) "provides a statutory basis for payment of pre-petition claims" under necessity of payment doctrine); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) ("The appropriate standard…is commonly referred to as 'the necessity of payment doctrine.'").

23.     Paying the Franchise Claims and continuing performance under Franchise Agreements is essential to the ongoing vitality of the Debtors' business.  Failing to do so could lead to stores shutting down, customers being alienated, and value disappearing from the Debtors' estates, which could threaten the Debtors' ability to reorganize successfully.  Accordingly, the Debtors should be authorized to pay the Franchise Claims and to continue performance under Franchise Agreements in the ordinary course of business under the necessity of payment doctrine and section 105(a) of the Bankruptcy Code.

## PROCESSING OF CHECKS AND
## ELECTRONIC FUND TRANSFERS SHOULD BE AUTHORIZED

24.     The Debtors have sufficient funds to pay any amounts described in this Motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to debtor-in-possession financing and cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Franchise Claims. Accordingly, the Debtors believe there is minimal risk that checks or wire transfer requests that the Court has not authorized will be inadvertently made. Therefore, the Debtors respectfully

request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

**BANKRUPTCY RULE 6003 HAS BEEN SATISFIED
AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED**

25.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within 21 days after the Petition Date. Pursuant to Bankruptcy Rule 6003, a court may grant this relief on an expedited basis if it is necessary to avoid immediate and irreparable harm.  The Debtors submit that the facts set forth herein and in the First Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

26.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

**RESERVATION OF RIGHTS**

27.     Nothing in this Motion shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission

that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

28.     Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' DIP Term Facility; (c) counsel to the agent for the Debtors' DIP ABL FILO Facility; (d) counsel to the Ad Hoc Group of Crossover Lenders; (e) counsel to the Ad Hoc FILO Term Lender Group; (f) the indenture trustee for the Debtors' prepetition convertible notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the District of Delaware; (i) the attorneys general for all 50 states and the District of Columbia; (j) the United States Department of Justice; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Drug Enforcement Agency; (n) the United States Food and Drug Administration; (o) the Franchisees; and (p) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Orders, granting the relief requested in this Motion and such other relief as may be just and proper.

Dated: June 24, 2020
   Wilmington, Delaware

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**


*/s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Andrew L. Magaziner (No. 5426)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:   (302) 571-6600
Facsimile:   (302) 571-1253
Email:       mnestor@ycst.com
             kcoyle@ycst.com
             amagaziner@ycst.com
             jmulvihill@ycst.com

**LATHAM & WATKINS LLP**
Richard A. Levy (*pro hac vice* pending)
Caroline A. Reckler (*pro hac vice* pending)
Asif Attarwala (*pro hac vice* pending)
Brett V. Newman (*pro hac vice* pending)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:   (312) 876-7700
Facsimile:   (312) 993-9767
Email:       richard.levy@lw.com
             caroline.reckler@lw.com
             asif.attarwala@lw.com
             brett.newman@lw.com

- and -

George A. Davis (*pro hac vice* pending)
Jeffrey T. Mispagel (*pro hac vice* pending)
885 Third Avenue
New York, New York 10022
Telephone:   (212) 906-1200
Facsimile:   (212) 751-4864
Email:       george.davis@lw.com
             jeffrey.mispagel@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|                                    |                              |
| ---------------------------------- | ---------------------------- |
| In re:                             | ) Chapter 11                 |
|                                    | )                            |
| GNC HOLDINGS, INC., *et al.*,      | ) Case No. 20-11662 (___)    |
|                                    | )                            |
| Debtors.[1]                        | ) (Jointly Administered)     |
|                                    | )                            |
|                                    | ) Re: Docket No. ___         |

**INTERIM ORDER AUTHORIZING (A) PAYMENT OF CERTAIN
PREPETITION FRANCHISE CLAIMS AND (B) CONTINUED PERFORMANCE
UNDER FRANCHISE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS**

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order authorizing (a) the payment of certain prepetition Franchise Claims and (b) continued performance under Franchise Agreements in the ordinary course of business (this "***Interim Order***"); and this Court having reviewed the Motion and the First Day Declaration; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core

---

[1]   The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

26664172.2

proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion (the "***Hearing***"); and upon the First Day Declaration and the record of the Hearing and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed, to (a) the pay prepetition Franchise Claims in an amount not to exceed $484,500 on an interim basis and (b) continue performance under Franchise Agreements in the ordinary course of business, including providing the Franchisees the Ad Fund Credit.

3.      The Debtors' banks and financial institutions shall be, and are hereby authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks and electronic fund transfers, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' bank accounts relating to the Franchise Claims and Franchise Agreements, whether those checks were presented prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

4.      The Debtors' banks and financial institutions may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Interim Order, and any such bank or

financial institution shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Interim Order.

5.      Nothing in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be construed as:  (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (vi) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Interim Order.  Nothing contained in this Interim Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

6.      Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any interim or final orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "*DIP Order*"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP Order shall control.

26664172.2

7.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable this Interim Order shall be effective and enforceable immediately upon entry hereof.

8.      The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

9.      The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

10.     The Debtors are authorized and empowered to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

11.     A hearing to consider entry of an order granting the Motion on a final basis (the "***Final Hearing***") shall be held on _____, 2020, at __:____ _.m. (prevailing Eastern time).  Any objections or responses to the entry of such an order must be filed on or before 4:00 p.m. (prevailing Eastern time) on _____, 2020, and served on (a) proposed counsel to the Debtors, (i) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn:   Caroline   Reckler,   Asif   Attarwala,   and   Brett   Newman   (email: caroline.reckler@lw.com;  asif.attarwala@lw.com;  brett.newman@lw.com),  and  885  Third Avenue, New York, New York 10022, Attn:  Jeffrey T. Mispagel (jeffrey.mispagel@lw.com); and (ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 King Street, Wilmington, Delaware 19801, Attn:  Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill (mnestor@ycst.com; kcoyle@ycst.com; and jmulvihill@ycst.com); (b) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn:  Jane Leamy (email:  jane.m.leamy@usdoj.gov); (c) counsel to the Ad Hoc Group of Crossover Lenders (i) Milbank LLP, 2029 Century Park East, Los Angeles, California 90067,   Attn:     Mark   Shinderman,   Brett   Goldblatt,   and   Daniel   B.   Denny   (email: mshinderman@milbank.com;   bgoldblatt@milbank.com;   and   ddenny@milbank.com);   and

(ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney (rdehney@mnat.com); (d) counsel to the Ad Hoc FILO Term Lender Group (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Andrew N. Rosenberg, Jacob Adlerstein, and Douglas R. Keeton (email: arosenberg@paulweiss.com, jadlerstein@paulweiss.com, and dkeeton@paulweiss.com); and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com); (e) counsel to the administrative agent under the DIP ABL FILO Facility, Simpson Thacher & Bartlett LLP, 425 Lexington Ave. New York, New York 10017, Attn: Sandy Qusba, Daniel L. Biller, and Jamie Fell (email: squsba@stblaw.com, daniel.biller@stblaw.com, and jamie.fell@stblaw.com); and (f) counsel to the administrative agent under the DIP Term Facility, Dorsey & Whitney LLP, 51 West 52nd Street, New York, New York 10019, Attn: Erin E. Trigg and Samuel S. Kohn (email: trigg.erin@dorsey.com and kohn.samuel@dorsey.com). In the event that no objections to entry of the Proposed Final Order on the Motion are timely received, this Court may enter such Proposed Final Order without need for the Final Hearing.

12.    This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.


Dated: _____, 2020
            Wilmington, Delaware

_____
United States Bankruptcy Judge

**EXHIBIT B**

**Proposed Final Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| GNC HOLDINGS, INC., *et al.*, | ) Case No. 20-11662 (___) |
|  | ) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) |
|  | ) Re: Docket Nos. ___ & ___ |

## FINAL ORDER AUTHORIZING (A) PAYMENT OF CERTAIN PREPETITION FRANCHISE CLAIMS AND (B) CONTINUED PERFORMANCE UNDER FRANCHISE AGREEMENTS IN THE ORDINARY COURSE OF BUSINESS

Upon the motion (the "***Motion***")[2] of the Debtors for a final order authorizing (a) the payment of certain prepetition Franchise Claims and (b) continued performance under Franchise Agreements in the ordinary course of business (this "***Final Order***"); and this Court having reviewed the Motion, the First Day Declaration, and the Interim Order entered on [___], 2020; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief

---

[1]    The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

26664172.2

requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and a hearing having been held to consider the relief requested in the Motion (the "*Hearing*"); and upon the First Day Declaration and the record of the Hearing and all the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to (a) pay the prepetition Franchise Claims in an aggregate final amount, inclusive of amounts paid pursuant to the Interim Order not to exceed $670,000, or such higher amount as may be set forth in any budget governing postpetition financing or the use of cash collateral and (b) continue performance under Franchise Agreements in the ordinary course of business, including providing the Franchisees the Ad Fund Credit.

3.      The Debtors' banks and financial institutions shall be, and are hereby authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks and electronic fund transfers, including prepetition checks and electronic payment and transfer requests that the Debtors reissue or re-request postpetition, drawn on the Debtors' bank accounts relating to the Franchise Claims and Franchise Agreements, whether those checks were presented prior to or after the Petition Date, underline provided that sufficient funds are available in the applicable accounts to make the payments.

26664172.2

4.      The Debtors' banks and financial institutions may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Final Order, and any such bank or financial institution shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Final Order.

5.      Nothing in the Motion or this Final Order, or the Debtors' payment of any claims pursuant to this Final Order, shall be construed as:  (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (vi) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Final Order.  Nothing contained in this Final Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

6.      Notwithstanding anything contained in the Motion or this Final Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any interim or final orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "*DIP Order*"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms

of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP

Order shall control.

7.    Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable this Final Order

shall be effective and enforceable immediately upon entry hereof.

8.    The Debtors are authorized and empowered to take such actions and to execute

such documents as may be necessary to implement the relief granted by this Final Order.

9.    This Court shall retain jurisdiction with respect to all matters arising from or related

to the implementation and/or interpretation of this Final Order.

Dated: _____, 2020
        Wilmington, Delaware        _____
                                    United States Bankruptcy Judge