## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GNC HOLDINGS, INC., *et al.*, | ) Case No. 20-11662 (___) |
| | ) |
| Debtors.[1] | ) (Joint Administration Requested) |
| | ) |
| | ) |

## MOTION OF DEBTORS FOR
## ORDERS (A) APPROVING PROCEDURES
## FOR STORE CLOSING SALES, (B) AUTHORIZING CUSTOMARY
## BONUSES TO MANAGERS OF STORES, (C) AUTHORIZING ASSUMPTION
## OF THE CONSULTING AGREEMENTS AND (D) GRANTING RELATED RELIEF

The debtors in possession in the above-captioned cases (collectively, the "***Debtors***") hereby move (this "***Motion***") and respectfully state as follows:

## RELIEF REQUESTED

1.      By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "***Interim Order***") and **Exhibit B** (the "***Final Order***," and together with the Interim Order, the "***Proposed Orders***"), respectively: (a) authorizing and approving, on an interim and final basis, store closing or similar themed sales ("***Store Closings***") in accordance with the terms of the U.S. store closing sale procedures (the "***U.S. Store Closing Procedures***") for the Store Closings in the U.S. and the Canadian store closing sale procedures for the Store Closings in Canada (the "***Canadian Store Closing Procedures***", and together with the

---

[1]     The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

U.S. Store Closing Procedures, the "***Store Closing Procedures***") attached as **Exhibit 1** to **Exhibit A** and **Exhibit B** hereto, with such sales to be free and clear of all liens, claims, and encumbrances; (b) authorizing the Debtors to pay customary bonuses to non-insider managers of the stores where Store Closing sales will occur; (c) upon entry of the Final Order, (i) authorizing the Debtors to assume that certain Consulting Agreement, dated as of June 10, 2020 (the "***U.S. Consulting Agreement***"), by and between GNC Holdings, Inc. and a joint venture comprised of Tiger Capital Group, LLC and Great American Group, LLC (the "***U.S. Consultant***"), a copy of which is attached as **Exhibit 3** to **Exhibit B** hereto and (ii) authorizing the Debtors to assume that certain Consulting Agreement, dated as of June 18, 2020 (the "***Canada Consulting Agreement***" and together with the U.S. Consulting Agreement, the "***Consulting Agreements***"), by and between General Nutrition Centres Company and a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (the "***Canada Consultant***" and together with the U.S. Consultant, the "***Consultant***"), a copy of which is attached as **Exhibit 4** to **Exhibit B** hereto; and (d) granting related relief.

## JURISDICTION

2.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b), and, under Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "***Local Rules***"), the Debtors consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C.

§§ 1408 and 1409.  The statutory and legal predicates for the relief requested herein are sections 105(a), 363, 365 and 554(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "***Bankruptcy Code***"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***"), and Local Rule 9013-1(m).

## BACKGROUND

3.      On June 23, 2020 (the "***Petition Date***"), the Debtors filed voluntary petitions for relief in this Court, commencing cases (the "***Chapter 11 Cases***") under chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been requested in these cases, and no committees have been appointed.

4.      The Debtors anticipate commencing an ancillary proceeding under Part IV of the Companies' Creditors Arrangement Act (Canada) in Toronto, Ontario, Canada before the Ontario Superior Court of Justice (Commercial List) (the "***CCAA Court***").

5.      The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Tricia Tolivar, Chief Financial Officer of GNC Holdings, Inc. in Support of Chapter 11 Petitions and First Day Pleadings* (the "***First Day Declaration***")[2] filed contemporaneously herewith.  In support of the Motion, the Debtors rely upon and incorporate by reference the First Day Declaration.[3]

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the First Day Declaration.

[3]   The First Day Declaration and other relevant case information is available from (a) the Court's website, www.deb.uscourts.gov, and (b) the website maintained by the Debtors' proposed claims and noticing agent, Prime Clerk LLC, at https://cases.primeclerk.com/gnc.

## MOTION SPECIFIC BACKGROUND

### I.     THE STORE CLOSING DECISIONS AND THE CONSULTING AGREEMENTS

6.      As described more fully in the First Day Declaration, in the wake of extreme market conditions and faced with limited liquidity, the Debtors seek to wind down approximately 726 store locations (the "***Closing Stores***") listed on **Exhibit 2** to **Exhibit A** and **Exhibit B** attached hereto throughout the U.S. and Canada through a going-out-of-business sales process.   As described in the First Day Declaration, given continuously declining profitability and operational challenges, and despite the best efforts of the Debtors and their advisors to secure the capital necessary to preserve the entire business as a going concern, the Debtors are simply unable to meet their financial obligations.   The Debtors have worked in concert with their secured lenders to facilitate an expedited sale and orderly wind-down process for certain stores that will maximize value and recoveries for stakeholders in these cases.

7.      Concurrently, the Debtors, with the assistance of A&G Realty Partners, LLC and MPA Inc., are negotiating lease modifications with many of the Debtors' landlords in the U.S. and Canada, respectively, for certain rent concessions and early termination rights (the "***Lease Negotiations***"), with the goal of improving the financial performance of the Debtors' remaining store base.   These Lease Negotiations are ongoing and the Debtors' ability to negotiate more favorable lease terms and rent reductions will drive the determination of whether or not to close additional stores.  Where the Debtors are unable to obtain sufficient relief in the Lease Negotiations concerning stores that are on the cusp of failing to meet certain performance standards, such stores may close as part of the Store Closings (which may begin simultaneously or on a rolling basis, depending on the relative timing the various Lease Negotiations conclude).

8.      The Debtors selected and engaged the Consultant to (a) manage the Store Closings; (b) sell their store inventory (the "***Merchandise***"), owned furniture, furnishings, trade fixtures,

machinery, equipment, office supplies, supplies and other tangible personal property (the "***FF&E***") under the Consulting Agreements, and solely with respect to the U.S. Consulting Agreement, the "Additional Consultant Goods" (the "***Additional Consultant Goods***" and together with the FF&E and the Merchandise, the "***Store Assets***") located in the stores; and (c) surrender the stores to the Debtors on the terms set forth in the Consulting Agreements, including, without limitation, the terms of the sale guidelines attached to the Canada Consulting Agreement (such guidelines, the "***Canadian Sale Guidelines***") in the case of Store Closings in Canada.  The Debtors have a historical relationship with the Consultant, who has helped the Debtors with annual appraisals of inventory and accounts receivable, making the Consultant familiar with the Debtors' businesses.  In early 2020, the Debtors retained the Consultant for a store closing test, at which time the Consultant was subject to an evaluation process that included, among other things, review of proposals from other service providers, providing candidates with equal access to all information (such as store level volume, margins, and inventory) provided by the Debtors; seeking references; providing standard requirements for the submission or recovery assumptions; conducting forecasts and analysis; and phone and in-person meetings with the Debtors' management.  Given the Consultant's longstanding familiarity with the Debtors' business, the efficiencies resulting from the same to the Debtors' estates, and the Consultant's experience in conducting store closings on an expedited timeline, the Debtors' management, in consultation with the Debtors' advisors, selected the Consultant to manage the Store Closings.  The Canadian Store Closing Procedures in respect of Store Closings in Canada incorporate the Canadian Sale Guidelines, which guidelines are substantially consistent with the store closing process that is typically used in Canada, and which Canadian Store Closing Procedures shall control such Store Closings.  To the extent that the Canadian Store Closing Procedures differ from the U.S. Store

Closing Procedures, it is to reflect such sale guidelines and such typical Canadian store closing process.

9.    By this Motion, the Debtors seek to assume the Consulting Agreements so that the Consultant may continue in its role as Consultant for the Store Closings on a postpetition basis without interruption.   The Debtors have determined, in an exercise of their business judgment, that (a) the continuation of services by the Consultant is necessary for efficient large-scale execution of the Store Closings, and to maximize the value of the assets being sold, and (b) any change in or elimination of the Consultant would significantly disrupt the Store Closing process and impair the value of the remaining assets in the stores.

10.    Further, the Store Closings are a critical component of the Debtors' go-forward business plan, and assumption of the Consulting Agreements will allow the Debtors to conduct the Store Closings in an efficient, controlled manner that will maximize value for the Debtors' estates. The relief requested in this Motion is integral to maximizing the value of the Debtors' estates.  It will permit the Debtors to commence the Store Closings in a timely manner as contemplated by this Motion and will establish fair and uniform store closing procedures to assist the Debtors and their creditors through the Debtors' transition to a smaller, more profitable enterprise.[4]

11.    For the convenience of the Court and interested parties, a summary of the salient terms of the Consulting Agreements is set forth below.[5]

---

[4]    By this Motion, the Debtors' seek approval of the conduct of the Store Closings and the associated disposition of the Merchandise and the owned FF&E in a manner consistent with customary practices in this jurisdiction and in jurisdictions throughout the country in connection with the Store Closings.  However, nothing in this Motion seeks approval of the Debtors' assumption and assignment of any of their non-residential real property leases or executory contracts.  To the extent that the Debtors', through the services of the Consultant, find one or more buyers of stores, the Debtors' would file one or more separate motions seeking approval of such asset sales on as expedited a basis as the circumstances and/or economics of such sale dictate.

[5]    The following summary chart is for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Consulting Agreements, the Consulting Agreements shall govern in all respects.  Any capitalized terms used in the summary chart but not defined therein are used as defined in the Consulting Agreements.

| TERM | CONSULTING AGREEMENTS[6] |
|---|---|
| **Services Provided by Consultant** | Consultant shall: (a) conduct a review and assessment of Merchant's current store closing plan and accompanying assumptions in light of the current market environment, (b) make recommendations in order to minimize expenses and maximize the return from the sale of Merchandise, (c) consult with Merchant as to which stores to close immediately (or to not reopen) and at which to conduct the Sale, and (d) consult with Merchant as to the logistics of transferring merchandise from the Closing Stores to the GOB Stores (i.e. where Store Closings will be conducted).  During the Sale Term, Consultant shall, in collaboration with Merchant, (a) provide one or more qualified supervisors (the "*Supervisors*") engaged by Consultant and reasonably approved in advance by Merchant to oversee the Sale and management of the GOB Stores in an effort to maximize revenue and sell all of the Merchandise prior to the end of the Sale; (b) determine appropriate point-of-sale and external advertising,  reasonably approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels, and appropriate bonus and incentive programs, if any, for the GOB Stores' employees, in each case reasonably approved in advance by Merchant; (d) oversee display of Merchandise for the GOB Stores; (e) evaluate sales of Merchandise by category, provide sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties and for Merchant Confidential Information; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) to the extent necessary, assist Merchant in obtaining all required permits and governmental consents required to conduct the Sale; (i) price, market, and sell the FF&E on behalf of Merchant; and (j) provide such other related services deemed necessary or appropriate by Merchant and Consultant.  In addition, pursuant to the Canada Consulting Agreement, Canada Consultant shall: (x) provide such information and reporting as may be requested by the Information Officer; (y) comply with all applicable Orders entered in this Bankruptcy Case or granted in the CCAA Proceedings; and (z) comply with the Canadian Sale Guidelines with respect to the conduct of the Sale in Canada. |
| **Term of Sale** | For GOB Stores that are currently operating, the Sale shall commence on or about June 25, 2020, and (b) for GOB Stores that are not currently operating, the Sale shall commence on or about the later of the date upon which Merchant reopens each such GOB Store and June 25, 2020 (the "*Sale Commencement Date*").  Pursuant to the Canada Consulting Agreement, the commencement of the Sale is subject to obtaining the Approval Order. The Sale shall conclude no later than September 30, 2020 (the *Sale Termination Date*"); provided, however, that Merchant may agree in writing in its sole discretion to extend or terminate the Sale at any GOB Store prior to the Sale Termination Date (it being understood that, if the timing set forth herein changes, Merchant and Consultant shall mutually agree on any adjustments to the Expense Budget (as defined below) and Consultant's compensation); provided further, however, that Merchant may agree in writing in its sole discretion to make any GOB Store a Closing Store prior to the Sale Termination Date.  The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "*Sale Term*."  Upon the removal of Merchandise from each Store and at the conclusion of the Sale at each GOB Store, (a) Consultant shall surrender the premises for such Store to Merchant in broom clean condition with any unsold FF&E abandoned in place at such Store, and (b) Consultant shall reasonably assist Merchant to photographically document the condition of each such Store upon the conclusion of the Sale there.  Pursuant to the Canada Consulting Agreement, the Canada Consultant shall comply with the Canadian Sale Guidelines with respect to the conduct of the Sale in Canada. |

---

[6]    Except as otherwise noted, the terms of the U.S. Consulting Agreement and Canada Consulting Agreement are substantially the same.

| | |
|---|---|
| **Expenses of Consultant** | Merchant shall be responsible for all reasonable and documented costs and expenses of the Sale, including all Store level operating expenses. To control expenses of the Sale, Merchant and Consultant have established a budget (the "***Expense Budget***") of certain delineated expenses in connection with the Sale, including supervision (including Supervisors' wages, fees, travel and any other compensation and any travel expenses of Consultant), advertising costs and signage. The Expense Budget for the Sale is attached to each of the Consulting Agreements as <u>Exhibit B</u>. The Expense Budget may only be modified by mutual written agreement of Consultant and Merchant, and, pursuant to the Canada Consulting Agreement, with the approval of the Information Officer from and after the date of the Approval Order. Unless otherwise agreed to by Merchant, Merchant shall not be obligated to pay costs of supervision, advertising costs and signage that exceed the budgeted amount, on an aggregate basis. The Parties acknowledge that the Expense Budget will be updated as appropriate in connection with any modification of the lists of GOB Stores or the terms of the Sale and agree to cooperate in good faith with respect to such updates or to any Additional Stores. |
| **Compensation for Consultant** | In consideration of its services, Consultant shall earn a base fee of USD\$1,000 per GOB Store and USD\$500 per Closing Store (the "***Base Fee***") payable as follows for the U.S Consulting Agreement: (x) 50% upon entry of an interim Approval Order of the Court authorizing the Sale pursuant to the terms and conditions of the U.S. Consulting Agreement and (y) 50% upon entry of the final Approval Order; and payable as follows for the Canada Consulting Agreement: (x) 50% upon entry of the Interim Order (as defined in the Canada Consulting Agreement) and (y) 50% upon entry of the Final Order (as defined in the Canada Consulting Agreement). In addition, Merchant may earn an additional incentive fee (the "***Incentive Fee***" and together with the Base Fee, the "***Consulting Fee***") based upon the following thresholds of Gross Proceeds received during the Sale divided by the Cost Value of the Merchandise sold during the Sale (the "***Gross Recovery Percentage***") calculated back to the first dollar received: <br><br>  | **Gross Recovery Percentage** | **Total Incentive Fee** | <br> \|---\|---\| <br> \| Between 120% to 134.99% \| .50% of Gross Proceeds \| <br> \| Between 135% to 149.99% \| .75% of Gross Proceeds \| <br> \| 150.0% or above \| 1.25% of Gross Proceeds \| <br><br>After it is determined that Consultant has earned an Incentive Fee, Merchant shall pay such Incentive Fee as earned as part of the weekly reconciliations and in any event no later than the Final Reconciliation. <br><br>Consultant shall also be entitled to a commission equal to fifteen percent of the Gross FF&E Proceeds. |
| **Merchant's Insurance Obligations** | Merchant shall maintain, throughout the Sale Term, liability insurance policies (including products liability in the amounts currently provided, commercial general liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be included as an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all applicable statutory requirements. |

| | |
|---|---|
| **Consultant's Insurance Obligations** | As an expense of the Sale and as set forth on the Expense Budget, Consultant shall maintain, throughout the Sale Term, liability insurance policies (including products liability/completed operations, contractual liability, comprehensive commercial general liability, without limitation, including auto liability insurance) on an occurrence basis in an amount of at least one million dollars ($1,000,000) per occurrence and an aggregate basis of at least five million dollars ($5,000,000) for commercial general liability covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores and $5,000,000 per occurrence combined single limit for auto. Consultant shall name Merchant as an additional insured and loss payee under such policies, and upon execution of this Agreement provide Merchant with a certificate or certificates of insurance evidencing the insurance coverage required hereunder.  In addition, Consultant shall maintain throughout the Sale Term workers compensation insurance compliant with all statutory requirements.  Further, should Consultant employ or engage third parties to perform any of Consultant's undertakings with regard to this Agreement, Consultant will ensure that such third parties are covered by Consultant's insurance or maintain all of the same insurance as Consultant is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance. |
| **Indemnification by Consultant** | Consultant shall, on a joint and several basis, indemnify, defend and hold Merchant and its affiliates and their respective consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "***Merchant Indemnified Parties***") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or grossly negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties or Merchant's customers by Consultant or any of the Consultant Indemnified Parties and (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement. |

| Indemnification by Merchant | Merchant shall indemnify, defend, and hold each party comprising Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, affiliates, and Supervisors (collectively, "***Consultant Indemnified Parties***") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or grossly negligent acts or omissions of Merchant or the Merchant Indemnified Parties; (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or a Consultant Indemnified Party, except claims arising from Consultant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties; (e) Merchant's failure to pay over to the appropriate taxing authority any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law, and, pursuant to the Canada Consulting Agreement, Merchant's failure to collect, remit and pay over to the appropriate taxing authority all sales and other taxes required to be collected, remitted or paid by Merchant during the Sale Term in accordance with applicable law; and (f) any claims of Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and, pursuant to the Canada Consulting Agreement, any claims of Merchant's employees for wages, benefits (including pension related benefits and obligations), severance pay, termination pay, accrued vacation, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring, retention, furlough, layoff or termination of its employees. |
|---|---|

## II.   THE STORE CLOSING PROCEDURES

12.     In connection with, and in facilitation of, the Store Closings, the Debtors further seek approval of the Store Closing Procedures, the form and substance of which are consistent with the procedures utilized by debtors in this and many other jurisdictions in connection with similar such store closing processes.  In particular, the Canadian Store Closing Procedures in respect of Store Closings in Canada incorporate the Canadian Sale Guidelines, which guidelines are substantially consistent with the store closing process that is typically used in Canada.  To the extent that the Canadian Store Closing Procedures differ from the U.S. Store Closing Procedures described below, it is to reflect such Canadian Sale Guidelines and such typical Canadian store closing process.

13.     As is customary, the Store Closing Procedures provide, among other things, that: (a) all sales of Store Assets will be deemed free and clear of all liens, claims, interests, and other encumbrances; (b) the Merchandise and the FF&E will be sold with the benefit of various marketing techniques and price markdowns to promote efficient liquidation; and (c) certain unsold FF&E and other Store Assets that cannot be promptly liquidated may be abandoned if and when the Debtors determine, in their business judgment, that retaining, storing, or removing such assets would result in unnecessary expense with little or no benefit to the estates.   The Debtors seek approval of the Store Closing Procedures to, among other things, provide local regulatory authorities and media in which the Store Closings may be advertised with knowledge that the Debtors are conducting the Store Closings in compliance with the Court's order.

14.     The Debtors also respectfully request a waiver of any contractual restrictions that could otherwise inhibit or prevent the Debtors from maximizing value for creditors through the Store Closings.   In certain cases, the contemplated Store Closings may be inconsistent with various provisions of leases, subleases, or other documents with respect to the premises in which the Debtors operate, including, without limitation, reciprocal easement agreements, agreements containing covenants, conditions, and restrictions (including, without limitation, "go dark" provisions and landlord recapture rights), or other similar documents or provisions.   Such restrictions, unless waived, would hamper the Debtors' ability to maximize value in selling their inventory.

15.     The Debtors also request that no entity, including, without limitation, utilities, landlords, shopping center managers and personnel, creditors, and all persons acting for or on the behalf of the foregoing parties shall interfere with or otherwise impede the conduct of the Store Closings, nor institute any action against the Debtors in any court (other than this Court) or before

26664179.2

any administrative body that in any way directly or indirectly interferes with, obstructs, or otherwise impedes the conduct of the Store Closings or the advertising and promotion (including through the posting of signs) of the Store Closings.

16.     The Debtors have determined, in the exercise of their business judgment and in consultation with their advisors, that the Store Closing Procedures will provide the best, most efficient, and most organized means of selling the Merchandise and the FF&E to maximize the value of the Debtors' estates.  The Debtors intend to facilitate the Store Closings using current personnel at no increased cost (except as set forth herein), and estimate that, with perhaps a few exceptions, the Stores Closings will be completed by no later than September 30, 2020, provided that the Debtors may unilaterally agree in writing to extend or terminate the Store Closings at certain stores prior to the Sale Termination Date.

## III.    LIQUIDATION SALE LAWS AND DISPUTE RESOLUTION PROCEDURES

17.     Certain states in which the Debtors operate stores have or may have licensing or other requirements governing the conduct of store closing, liquidation, or other inventory clearance sales, including, without limitation, state and local laws, statutes, rules, regulations, and ordinances (the "***Liquidation Sale Laws***").  Liquidation Sale Laws may establish licensing, permitting, or bonding requirements, waiting periods, time limits, and bulk sale restrictions and augmentation limitations that would otherwise apply to the Store Closings.  Such requirements hamper the Debtors' ability to maximize value in selling their inventory.  Subject to the Court's approval, the Debtors intend to conduct the Store Closings in accordance with the Store Closing Procedures, and to the extent such procedures conflict with the Liquidation Sale Laws, the Store Closing Procedures should control.  In the case of Store Closings in Canada, the Canadian Store Closing Procedures shall control.

18.    To facilitate the orderly resolution of any disputes between the Debtors and any

Governmental Units (as defined in section 101(27) of the Bankruptcy Code) arising due to the

Store Closing Procedures and the alleged applicability of any Liquidation Sale Laws, the Debtors

respectfully request that the Court authorize the Debtors to implement the following dispute

resolution procedures (the "***Dispute Resolution Procedures***"), on an interim and final basis:

 a. Provided that the Store Closings are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct Store Closings in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures, without the necessity of further showing compliance with any such Liquidation Sale Laws.

 b. Within three business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Store Closings are being held; (iii) the county consumer protection agency or similar agency for each county in which the Store Closings are being held; (iv) the division of consumer protection for each state in which the Store Closings are being held;  and (v) the chief legal counsel for each local jurisdiction in which the Store Closings are being held (collectively, the "***Dispute Notice Parties***").

 c. With respect to any additional Closing Stores, within three business days after Court authorization to close additional stores (each, an "***Additional Closing Store List***"), the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order or Final Order, as applicable, and the Store Closing Procedures on the Dispute Notice Parties.  To the extent that there is a dispute arising from or relating to the Store Closings, the Interim Order, the proposed Final Order, or the Store Closing Procedures, as applicable, which dispute relates to any Liquidation Sale Laws (a "***Reserved Dispute***"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten days following entry of the Interim Order or service of any Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "***Dispute Notice***") explaining the nature of the dispute to:  (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill (mnestor@ycst.com; kcoyle@ycst.com; and jmulvihill@ycst.com) and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler,

Asif Attarwala, and Brett Newman (caroline.reckler@lw.com; asif.attarwala@lw.com; brett.newman@lw.com); (b) the U.S. Trustee, 844 King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jane Leamy (jane.m.leamy@usdoj.gov); (c) counsel to the administrative agent under the DIP Term Facility (the "*DIP Term Agent*"), Dorsey & Whitney LLP, 51 West 52nd Street, New York, NY 10019, Attn:  Erin E. Trigg and Samuel S. Kohn (trigg.erin@dorsey.com and kohn.samuel@dorsey.com); (d) counsel to the Ad Hoc Group of Crossover Lenders, Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067, Attn: Mark Shinderman (mshinderman@milbank.com) and Daniel B. Denny (ddenny@milbank.com); (e) counsel to the administrative agent under the DIP ABL FILO Facility (the "*DIP ABL FILO Agent*"), Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn: Sandy Qusba, Daniel L. Biller, and Jamie Fell (squsba@stblaw.com, daniel.biller@stblaw.com, and jamie.fell@stblaw.com); (f) counsel to the Ad Hoc FILO Term Lender Group, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn:  Andrew N. Rosenberg, Jacob Adlerstein, and Douglas R. Keeton (arosenberg@paulweiss.com, jadlerstein@paulweiss.com, and dkeeton@paulweiss.com); and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com); (g) the indenture trustee for the Debtors' prepetition convertible notes, The Bank of New York Mellon Trust Company, N.A., 525 William Penn Place, 38th Floor, Pittsburgh, PA 15259, Attn: Corporate Trust Administration and BNY Mellon Corporate Trust, US Corporate Client Service Management, 500 Ross Street, 12th Floor, Pittsburgh, PA 15262, Attn: Mindy M. Wrzesinski (Melinda.m.wrzesinski@bnymellon.com); (h) lead counsel to the Consultant, Tiger Capital Group, 60 State Street, 11th Floor, Boston, MA 02109, Attn: Mark P. Naughton (MNaughton@tigergroup.com); and (i) counsel to any statutory committee appointed in these Chapter 11 Cases.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "*Dispute Resolution Motion*").

d.      In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Store Closings pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Store Closings pursuant to the terms of the Interim Order or the Final Order, as applicable, the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be

entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code. Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.  If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo*.

## IV.    FAST PAY LAWS

19.    Many states in which the Debtors operate have laws and regulations that require the Debtors to pay their employees in the U.S. Closing Stores contemporaneously with his or her termination (the "***Fast Pay Laws***" and, together with the Liquidation Sale Laws, the "***Applicable State Laws***"). These laws often require payment to occur immediately or within a period of only a few days from the date an employee is terminated.

20.    The nature of the Store Closings contemplated by this Motion will result in many employees being terminated at or near the end of the Store Closings. To be clear, the Debtors intend to pay their terminated employees as expeditiously as possible, under normal payment procedures, and pursuant to applicable Court order.[7] Moreover, the Debtors' postpetition debtor-in-possession financing budget expressly contemplates the payment of employee wages in the ordinary course during the Store Closings. The Debtors therefore believe that their current systems will allow their employees to be paid expeditiously and in accordance with any Applicable State Laws. However, given the number of employees who will likely be terminated in connection with

---

[7]    The Debtors are seeking such relief pursuant to the *Motion of Debtors for Orders (A) Authorizing Payment of Certain Prepetition Workforce Obligations, (B) Authorizing Continuance of Workforce Programs, (C) Authorizing Payment of Withholding and Payroll-Related Taxes, and (D) Authorizing Payment of Prepetition Claims Owing to Workforce Program Administrators*, (the "***Wages Motion***") filed contemporaneously herewith.

the Store Closings, the Debtors request a waiver of compliance with the Applicable State Laws to the extent that the Debtors' payroll systems limit their ability to so comply.

## V.   STORE CLOSING BONUS PLAN

21.    Through this Motion, the Debtors are requesting the authority, but not the obligation, to pay a one thousand dollar ($1,000) incentive payment (the "***Store Closing Bonuses***") to non-insider store managers (and in some cases associates in charge of a store, if the store does not have a store manager)  at the stores where Store Closings will occur in the U.S. and Canada who remain in the employ of the Debtors during the Store Closings (the "***Store Closing Bonus Plan***").  The total aggregate cost of the Store Closing Bonus Plan will vary depending on how many stores ultimately conduct Store Closings.  The Debtors believe that the Store Closing Bonus Plan will motivate managers during the Store Closings and will enable the Debtors to retain those managers necessary to successfully complete the Store Closings.

22.    Providing such non-insider bonus benefits is critical to ensuring that key employees that will be affected by the reduction in the Debtors' workforce due to the Store Closings will continue to provide critical services to the Debtors during the ongoing Store Closing process.  For the avoidance of doubt, the Debtors do not propose to make any payment on account of Store Closing Bonuses to any insiders.

23.    Accordingly, the Debtors respectfully submit that the Store Closing Bonus Plan is in the best interests of their estates and request that the Court authorize the payments under the Store Closing Bonus Plan as a sound exercise of their business judgment.

**BASIS FOR RELIEF**

## I.   THE DEBTORS HAVE A VALID BUSINESS JUSTIFICATION FOR THE STORE CLOSINGS.

24.     Section 363(b)(1) of the Bankruptcy Code, which governs asset sales outside of a debtor's ordinary course of business, provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).   When selling assets outside of the ordinary course of business, a debtor must articulate a valid business justification to obtain court approval. *See, e.g.*, *Myers v. Martin (In re Martin)*, 91 F.3d 389, 394–95 (3d Cir. 1996) (citation omitted); *In re Abbotts Dairies, Inc.*, 788 F.2d 143, 147-48 (3d Cir. 1986) (implicitly adopting the "sound business judgment" test of *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983)); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169, 175–76 (D. Del. 1991) (concluding that the Third Circuit adopted the "sound business judgment" test in the *Abbotts Dairies* decision). When a debtor demonstrates a valid business justification for a decision, a strong presumption arises "that in making [the] business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (holding that the Delaware business judgment rule has "vitality by analogy" in chapter 11 cases, especially where the debtor is a Delaware corporation).

25.     Store closing or liquidation sales are a routine occurrence in chapter 11 cases involving retail debtors.   *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 136 B.R. 357, 359 (S.D.N.Y. 1992) (noting that liquidation sales are an important part of "overriding federal policy requiring [a] Debtor to maximize estate assets").

26.    Sufficient business justification exists to approve the proposed Store Closings under section 363(b)(1) of the Bankruptcy Code.  The Debtors, with the assistance of their advisors, have determined that the Store Closings represent the best alternative to maximize recoveries to the Debtors' estates with respect to the Merchandise and the FF&E and provide the Debtors with much-needed liquidity.  There are meaningful amounts of Merchandise, in the aggregate, that will be monetized most efficiently and quickly through an orderly process conducted in consultation with an experienced liquidation firm.  Further, delay in commencing the Store Closings would diminish the recovery tied to monetization of the Merchandise and the FF&E for several important reasons.  Many of the Closing Stores fail to generate positive cash flow currently, or will fail to do so in the short term, and therefore will become a significant drain on liquidity.  As such, the Debtors will realize an immediate benefit in terms of financial liquidity upon the sale of the Merchandise and the FF&E and the termination of operations at the Closing Stores.  Further, uninterrupted and orderly Store Closings will allow the Debtors to timely reject leases associated with the Closing Stores and, therefore, avoid the accrual of unnecessary administrative expenses for rent and related costs.  Suspension of the Store Closings until entry of the Final Order may cause the Debtors to incur claims for rent at many of these stores, creating a further drain on the Debtors' liquidity.

27.    Courts in this district and courts in other jurisdictions have approved sale guidelines in chapter 11 cases on an interim basis.   Importantly, a number of courts have granted retail debtors first day authority to implement such procedures.  *See, e.g.*, *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Oct. 22, 2019) [Docket No. 71] (approving procedures on an interim basis); *In re Fred's, Inc.*, No. 19-11984 (CSS) (Bankr. D. Del. Sept. 11, 2019) [Docket No. 82] (same); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Mar.

15, 2019) [Docket No. 74] (same); *In re Things Remembered, Inc.*, No. 19-10234 (KG) (Bankr. D. Del. Feb. 7, 2019) [Docket No. 64] (same); *In re Payless Holdings LLC*, No. 17-42267 (Bankr. E.D. Mo. May 17, 2017) [Docket No. 786] (same).

## II. THE COURT SHOULD APPROVE THE SALE OF THE MERCHANDISE AND THE FF&E FREE AND CLEAR OF ALL LIENS, ENCUMBRANCES, AND OTHER INTERESTS UNDER BANKRUPTCY CODE SECTION 363(F).

28.     The Debtors request approval to sell the Merchandise and the FF&E on a final "as is" basis, free and clear of any and all liens, claims, and encumbrances in accordance with  section 363(f) of the Bankruptcy Code.  A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied: (a) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (b) such entity consents; (c) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (d) such interest is in bona fide dispute; or (e) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f); *see also Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).  Moreover, the Third Circuit has indicated that a debtor possesses broad authority to sell assets free and clear of liens. *See In re TWA Inc.*, 322 F.3d 283, 289 (3d Cir. 2003).

29.     Although the term "any interest" is not defined in the Bankruptcy Code, the Third Circuit has noted that the trend in modern cases is toward "a broader interpretation which includes other obligations that may flow from ownership of the property."  *Folger Adam Security, Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258–59 (3d Cir. 2000).  As the Fourth Circuit held in *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 581–82 (4th Cir. 1996) (cited with approval by the

Third Circuit in *Folger Adam*), the scope of section 363(f) is not limited to *in rem* interests in a debtor's assets. Thus, a debtor can sell its assets under section 363(f) "free and clear of successor liability that otherwise would have arisen under federal statute." *Folger Adam*, 209 F.3d at 258.

30.     With respect to any other party asserting a lien, claim, or encumbrance against the Merchandise and the FF&E, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f). In connection with the sale of the Merchandise and the FF&E, the Debtors propose that any liens, claims, and encumbrances asserted against the Merchandise and the FF&E be transferred to and attach to the amounts earned by the Debtors under the Store Closings with the same force, effect, and priority as such liens currently have on the Merchandise and the FF&E.

## III.    THE COURT SHOULD WAIVE COMPLIANCE WITH APPLICABLE STATE LAWS AND APPROVE THE DISPUTE RESOLUTION PROCEDURES.

31.     The Debtors' ability to conduct the Store Closings in accordance with the applicable Store Closing Procedures and without strict compliance with all Applicable State Laws is critical to the Store Closings' success. Although the Debtors intend to comply with state and local health and safety laws and consumer protection laws in conducting the Store Closings, many Liquidation Sale Laws require special and cumbersome licenses, waiting periods, time limits, and other procedures for store closing, liquidation, or similar sales.

32.     To eliminate the time, delay, and expense associated with the administrative procedures necessary to comply with the Applicable State Laws, the Debtors propose the Store Closing Procedures as a way to streamline the administrative burdens on their estates while still adequately protecting the broad and varied interests of both landlords and applicable governmental agencies charged with enforcing any Liquidation Sale Laws that may apply to the Store Closings. As such, the Debtors believe the Store Closing Procedures mitigate any concerns that their

landlords or governmental agencies may raise with respect to the Store Closings and, therefore, the requested relief is in compliance with any applicable Liquidation Sale Laws.

33.   The Debtors submit that there is strong support for granting them the authority to not comply with the Liquidation Sale Laws. *First*, it is generally accepted that many state statutes and regulations provide that, if a liquidation or bankruptcy sale is court-authorized, a company need not comply with the Liquidation Sale Laws. *See, e.g.*, Ark. Code Ann. § 4-74-103 (exempting from the provisions of the chapter sales pursuant to any court order); Fla. Stat. Ann. 559.25(2) (same); Ga. Code Ann. § 10-1-393(b)(24)(C)(iv) (same); 815 ILCS 350/3 (same); La. Rev. Stat. Ann. § 51:43(1) (same); N.Y. Gen. Bus. Law § 584(a) (same); Or. Rev. Stat. Ann. § 646A.100(2)(b) ("'Going out of business sale' does not include a sale conducted by a bankruptcy trustee."); Tex. Bus. & Com. Code Ann. § 17.91(3) (exempting from subchapter sales conducted pursuant to court order). *Second*, pursuant to section 105(a) of the Bankruptcy Code, the Court has the authority to permit the Store Closings to proceed notwithstanding contrary Applicable State Laws as it is essential to maximize the value of the Debtors' business. *Third*, this Court will be able to supervise the Store Closings because the Debtors and their assets are subject to this Court's exclusive jurisdiction. *See* 28 U.S.C. § 1334. As such, creditors and the public interest are adequately protected by notice of this Motion and the ongoing jurisdiction and supervision of the Court because the Debtors are only seeking interim relief at the outset of these cases, and parties in interest will be able to raise any further issues at the final hearing.

34.   Further, bankruptcy courts have consistently recognized, with limited exception, that federal bankruptcy law preempts state and local laws that contravene the underlying policies of the Bankruptcy Code. *See Belculfine v. Aloe (In re Shenango Group, Inc.)*, 186 B.R. 623, 628 (Bankr. W.D. Pa. 1995) ("Trustees and debtors-in-possession have unique fiduciary and legal

obligations pursuant to the bankruptcy code. . . . [A] state statute [] cannot place burdens on [a debtor] where the result would contradict the priorities established by the federal bankruptcy code."), *aff'd*, 112 F.3d 633 (3d Cir. 1997).

35.     Courts in some jurisdictions have found that preemption of state law is not appropriate if the laws deal with public health and safety. *See Baker & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake. Inc.)*, 35 F.3d 1348, 1353–54 (9th Cir. 1994) (holding that Bankruptcy Code did not preempt state law prohibiting taxicab leasing that was promulgated in part as public safety measure).  However, preemption is appropriate where, as is the case here, the only state laws involved concern economic regulation rather than the protection of public health and safety.  *See In re Baker & Drake. Inc.*, 35 F.3d at 1353 (finding that "federal bankruptcy preemption is more likely . . . where a state statute is concerned with economic regulation rather than with protecting the public health and safety").

36.     Under the circumstances of these Chapter 11 Cases, enforcing the strict requirements of the Liquidation Sale Laws would undermine the fundamental purpose of section 363(b) of the Bankruptcy Code by placing constraints on the Debtors' ability to maximize estate assets for the benefit of creditors.  Accordingly, authorizing the Store Closings without the delays and burdens associated with obtaining various state and local licenses, observing state and local waiting periods or time limits, and/or satisfying any additional requirements with respect to advertising and similar items is necessary and appropriate.   The Debtors do not seek a general waiver of all state and local law requirements, but only those that apply specifically to retail liquidation sales.   Indeed, the requested waiver is narrowly tailored to facilitate the successful consummation of the Store Closings.  Moreover, the Debtors will comply with applicable state and local public health and safety laws, and applicable tax, labor, employment, environmental, and consumer protection laws,

including consumer laws regulating deceptive practices and false advertising.   Finally, the Dispute

Resolution Procedures provide an ordered means for resolving any disputes arising between the

Debtors and any Governmental Units with respect to the applicability of any Liquidation Sale

Laws, and should therefore be approved.

37.     Further, this Court has recognized that the Bankruptcy Code preempts certain state

laws and have granted relief similar to that requested herein. *See, e.g.*, *In re Coldwater Creek Inc.*,

No. 14-10867 (BLS) (Bankr. D. Del. May 7, 2014) [Docket No. 355] (stating that debtors were

authorized to conduct store closing sales under the terms of the order "without the necessity of

further showing compliance" with liquidation laws); *In re Boscov's*, No. 08-11637 (KG) (Bankr.

D. Del. Aug. 15, 2008) [Docket No. 163] (ordering that "[g]overnmental units shall not fine, assess

or otherwise penalize Debtors or Agent (or any of the landlords of the Closing Stores) for

conducting or advertising the Store Closing Sales in a manner inconsistent with Liquidation Sales

Laws, provided that the Store Closing Sales are conducted and advertised in compliance with this

Order"); *In re Goody's Family Clothing, Inc.*, No. 08-11133 (CSS) (Bankr. D. Del. June 13, 2008)

[Docket No. 116] (ordering that the "Store Closing Sales at the Closing Stores shall be conducted by

the Debtors and the Store Closing Agent without the necessity of compliance with any federal, state

or local statute or ordinance, lease provision or licensing requirement affecting store closing,

'going out of business', liquidation or auction sales, or affecting advertising, including signs,

banners, and posting of signage, other than Safety Laws and General Laws").

## IV.    THE COURT SHOULD WAIVE COMPLIANCE WITH ANY RESTRICTION IN THE LEASES AND APPROVE THE STORE CLOSING PROCEDURES.

38.     Certain of the Debtors' leases governing the premises of the stores subject to any

Store Closings may contain provisions purporting to restrict or prohibit the Debtors from

conducting store closing, liquidation, or similar sales.   Such provisions have been held to be

unenforceable in chapter 11 cases as they constitute an impermissible restraint on a debtor's ability to properly administer its reorganization case and maximize the value of its assets under section 363 of the Bankruptcy Code. *See Ames Dep't Stores*, 136 B.R. at 359 (deciding that enforcement of such lease restrictions would "contravene overriding federal policy requiring Debtor to maximize estate assets. . . ."); *In re R. H. Macy & Co., Inc.*, 170 B.R. 69, 73–74 (Bankr. S.D.N.Y. 1994) (holding that the lessor could not recover damages for breach of a covenant to remain open throughout the lease term, because the debtor had a duty to maximize the value to the estate and the debtor fulfilled this obligation by holding a store closing sale and closing the store); *In re Tobago Bay Trading Co.*, 112 B.R. 463, 467-68 (Bankr. N.D. Ga. 1990) (finding that a debtor's efforts to reorganize would be significantly impaired to the detriment of creditors if lease provisions prohibiting a debtor from liquidating its inventory were enforced); *In re Libson Shops, Inc.*, 24 B.R. 693, 695 (Bankr. E.D. Mo. 1982) (holding restrictive lease provision unenforceable in chapter 11 case where debtor sought to conduct a liquidation sale).

39.     This Court has long held that restrictive lease provisions affecting store liquidation sales in chapter 11 cases are unenforceable.

40.     Thus, to the extent that such provisions or restrictions exist in any of the leases of the stores subject to the Store Closings, the Debtors request that the Court authorize the Debtors to conduct the Store Closings without reference to any such restrictive provisions or interference by any landlords or other persons affected, directly or indirectly, by the Store Closings; provided, however, that the Canadian Store Closing Procedures, including, without limitation, the Canadian Sale Guidelines, shall control Store Closings in Canada.

## V.   THE STORE CLOSING BONUS PLAN IS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT AND SHOULD BE APPROVED.

41.   Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to use property of the estate when such use has a "sound business purpose" and when the use of the property is proposed in good faith.  *See In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997); *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995).

42.   Courts generally require a debtor to demonstrate that a valid business purpose exists for the use of estate property in a manner that is outside the ordinary course of business.  *See, e.g.*, *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983).  The debtor's articulation of a valid business justification raises a presumption that the debtor's decision was made on an informed basis, in good faith, and with the honest belief that the action is in the best interest of the company. *See In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992).  Furthermore, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  The business judgment rule shields a debtor's management from judicial second-guessing.  *See In re Integrated Res., Inc.*, 147 B.R. at 656; *Johns-Manville*, 60 B.R. at 615–16 (noting that "the Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions").  Thus, if a debtor's actions satisfy the business judgment rule, then the actions in question should be approved under section 363(b)(1) of the Bankruptcy Code.

43.   In this case, the Store Closing Bonus Plan is a sound exercise of the Debtors' business judgment and is in the best interests of the Debtors and their estates.   The store

managers—along with their skills, knowledge, and hard work—are more critical now than ever. Through their commitment and performance, they can ensure that the Debtors continue to maximize stakeholder value in a challenging economic environment and at a time when those employees' positions may soon be terminated.   Additionally, the Store Closing Bonus Plan involves a compensation structure often used in other restructuring situations to incentivize employees to continue optimal performances despite the added stress inherent in the chapter 11 process.

44.     The Store Closing Bonus Plan is comparable to employee incentive plans regularly paid as "expenses of sale" by liquidating agents in other "store closing" and similar-themed sales. As such, courts have approved incentive payments similar to those contemplated by the Store Closing Bonus Plan.  *See, e.g.*, *In re Destination Maternity Corporation*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 14, 2019) [Docket No. 252] (authorizing store closing retention bonus program on a final basis); *In re Z Gallerie, LLC*, No. 19-10488 (LSS) (Bankr. D. Del. Mar. 15, 2019) [Docket No. 74] (same); *In re Toys "R" Us, Inc.*, No. 17-34665 (KLP) (Bankr. E.D. Va. Mar. 22, 2018) [Docket No. 2344] (same); *In re rue21, Inc.*, No. 17-22045 (GLT) (Bankr. W.D. Pa. June 12, 2017) [Docket No. 507] (same).

45.     The Debtors respectfully submit that the Store Closing Bonus Plan is a sound exercise of the Debtors' business judgment and should be approved pursuant to section 363 of the Bankruptcy Code as it is in the best interests of the Debtors, their estates, and all parties in interest in these Chapter 11 Cases.

## VI.     THE COURT SHOULD AUTHORIZE THE ASSUMPTION OF THE CONSULTING AGREEMENTS.

46.     Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession "subject to the court's approval, may assume or reject any executory contract . . . of the

debtor." The standard governing bankruptcy court approval of a debtor's decision to assume or reject an executory contract is whether the debtor's reasonable business judgment supports such assumption or rejection. *See, e.g.*, *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that debtor's decision to assume or reject an executory contract is governed by the business judgment standard, and that such decision may only be overturned if found to be a product of bad faith, whim, or caprice); *see also In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of leases "will be a matter of business judgment by the bankruptcy court").

47.     The business judgment test "requires only that the trustee [or debtor-in-possession] demonstrate that [assumption] or rejection of the executory contract will benefit the  estate." *Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co. (In re Wheeling-Pittsburgh Steel Corp.)*, 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).  Any more exacting scrutiny would slow the administration of the debtor's estate and increase costs, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially. *See Richmond Leasing Co. v. Capital Bank*, 762 F.2d 1303, 1311 (5th Cir. 1985).

48.     Assumption of the Consulting Agreements is beneficial to the Debtors' estates, and, therefore, is a reasonable exercise of the Debtors' business judgment.  In consultation with their advisors, the Debtors have determined that the stores to be closed are unduly burdensome, and the Merchandise and the FF&E should be liquidated for the benefit of the Debtors' estates and their creditors.  The Debtors determined that entering into the Consulting Agreements, after engaging in extensive negotiations with the Consultant, will provide the greatest return to the Debtors' estates for the Merchandise and the FF&E.  The Debtors believe, in their business judgment, that the terms

set forth in the Consulting Agreements constitute the best available alternative for the conduct of the Store Closings in both the U.S. and Canada.

49.     The Consultant has extensive expertise in conducting liquidation sales and can oversee and assist in the management and implementation of the Store Closings in an efficient and cost-effective manner.   Assumption of the Consulting Agreements upon entry of the Final Order and the granting by the CCAA Court of a recognition and approval order in respect thereof will enable the Debtors to utilize the skills and resources of the Consultant to effectively and efficiently conduct the Store Closings for the benefit of all stakeholders.  Given the number of stores and the particular issues in administering the Store Closings, the Debtors may not be able to retain a liquidator able to conduct the process as efficiently and effectively as the Consultant, who already has significant experience with the Debtors' business operations and outlay of stores in both the U.S. and Canada.  If the Consulting Agreements are not approved, operative, and effective on an interim basis, the Store Closings would lose the benefit of the Consultant's oversight and might be delayed or suspended entirely, leading to a loss of additional liquidity and increased administrative expenses.  Moreover, it is imperative that the Consulting Agreements be approved on an interim basis so that the Debtors and the Consultant can immediately begin conducting the Store Closings and closing stores in accordance with the Store Closing Procedures, which will generate more proceeds for the Debtors and their estates.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND BANKRUPTCY RULE 6004 SHOULD BE WAIVED

50.     Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003, which governs the availability of certain types of relief within 21 days after the Petition Date. Pursuant to Bankruptcy Rule 6003, a court may grant this relief on an expedited basis if it is necessary to avoid immediate and irreparable harm.  The Debtors submit that the facts set forth

herein and in the First Day Declaration demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

51.     Additionally, with respect to any aspect of the relief sought herein that constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a), to the extent not satisfied, and of the fourteen-day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors seek in this Motion is immediately necessary for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors thus submit that the requested waiver of the notice requirements of Bankruptcy Rule 6004(a) and of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## **RESERVATION OF RIGHTS**

52.     Nothing in this Motion shall be deemed:  (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.  If the Court enters any order granting the relief sought herein, any payment made pursuant to such order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

26664179.2

**NOTICE**

53.     Notice of this Motion will be given to: (a) the United States Trustee for the District of Delaware; (b) counsel to the agent for the Debtors' DIP Term Facility; (c) counsel to the agent for the Debtors' DIP ABL FILO Facility; (d) counsel to the Ad Hoc Group of Crossover Lenders; (e) counsel to the Ad Hoc FILO Term Lender Group; (f) counsel to the agent under the Debtors' secured term and asset-based financing facilities; (g) the indenture trustee for the Debtors' prepetition convertible notes; (h) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (i) the United States Attorney's Office for the District of Delaware; (j) the attorneys general for all 50 states and the District of Columbia; (k) the United States Department of Justice; (l) the Internal Revenue Service; (m) the Securities and Exchange Commission; (n) the United States Drug Enforcement Agency; (o) the United States Food and Drug Administration; (p) the Dispute Notice Parties; (q) the counterparties to the Debtors' real property leases; and (r) all parties requesting notice pursuant to Bankruptcy Rule 2002.  Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.


[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Orders,

granting the relief requested in this Motion and such other relief as may be just and proper.

Dated: June 24, 2020
      Wilmington, Delaware


**YOUNG CONAWAY STARGATT &**
**TAYLOR, LLP**


*/s/ Kara Hammond Coyle*
Michael R. Nestor (No. 3526)
Kara Hammond Coyle (No. 4410)
Andrew L. Magaziner (No. 5426)
Joseph M. Mulvihill (No. 6061)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:       mnestor@ycst.com
              kcoyle@ycst.com
              amagaziner@ycst.com
              jmulvihill@ycst.com

**LATHAM & WATKINS LLP**
Richard A. Levy (*pro hac vice* pending)
Caroline A. Reckler (*pro hac vice* pending)
Asif Attarwala (*pro hac vice* pending)
Brett V. Newman (*pro hac vice* pending)
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:    (312) 876-7700
Facsimile:    (312) 993-9767
Email:       richard.levy@lw.com
              caroline.reckler@lw.com
              asif.attarwala@lw.com
              brett.newman@lw.com

- and -

George A. Davis (*pro hac vice* pending)
Jeffrey T. Mispagel (*pro hac vice* pending)
885 Third Avenue
New York, New York 10022
Telephone:    (212) 906-1200
Facsimile:    (212) 751-4864
Email:       george.davis@lw.com
              jeffrey.mispagel@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

# **EXHIBIT A**

## **Interim Order**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| GNC HOLDINGS, INC., *et al.*, | ) Case No. 20-11662 (___) |
|  | ) |
| Debtors.[1] | ) (Jointly Administered) |
|  | ) |
|  | ) Re. Docket No. ___ |

## INTERIM ORDER GRANTING DEBTORS' MOTION FOR
## INTERIM AND FINAL ORDERS (A) APPROVING PROCEDURES
## FOR STORE CLOSING SALES, (B) AUTHORIZING CUSTOMARY
## BONUSES TO MANAGERS OF STORES, (C) AUTHORIZING ASSUMPTION
## OF THE CONSULTING AGREEMENTS AND (D) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for an interim order (this "***Interim Order***"), (a) authorizing and approving the conduct of store closing or similar themed sales (the "***Store Closings***") in accordance with the terms of the U.S. and Canadian store closing sale procedures (the "***U.S. Store Closing Procedures***" and the "***Canadian Store Closing Procedures***", respectively, and, together, the "***Store Closing Procedures***") attached hereto as **Exhibit 1**, with such sales to be free and clear of all liens, claims and encumbrances; (b) authorizing the Debtors to pay customary bonuses to non-insider managers of the stores where Store Closing sales will occur; (c) authorizing the Debtors to assume the Consulting Agreements; and (d) granting related

---

[1]     The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion and the

First Day Declaration; and this Court having determined that the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and

this Court having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United

States District Court for the District of Delaware dated as of February 29, 2012; and consideration

of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2);

and this Court having authority to enter a final order consistent with Article III of the United States

Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it

appearing that proper and adequate notice of the Motion has been given and that no other or further

notice is necessary; and a hearing having been held to consider the relief requested in the Motion

(the "***Hearing***"); and upon the First Day Declaration and the record of the Hearing and all the

proceedings before this Court; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[3]

A.    The Debtors have advanced sound business reasons for seeking to implement the

Store Closing Procedures and assume the Consulting Agreements, as set forth in the Motion and at

the Hearing, and such relief is in the best interests of the Debtors and their estates.

B.    The Store Closing Procedures are reasonable, and the conduct of the Store Closings

in accordance with the applicable Store Closing Procedures will provide an efficient means for the

Debtors to dispose of the Merchandise and the FF&E and will maximize the returns on the

Merchandise and the FF&E.

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact where appropriate.

26664179.2

C.      The Consulting Agreements were negotiated, proposed, and entered into by the Debtors and the Consultant without collusion, in good faith, and from arm's-length bargaining positions, and the operation and effectiveness of the Consulting Agreements on an interim basis is a sound exercise of the Debtors' business judgment.

D.      The relief set forth herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates and the Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the relief approved herein.

E.      The Store Closings are in the best interest of the Debtors' estates.

F.      The entry of this Interim Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan in an amount not to exceed $342,000 on an interim basis.

3.      The Debtors and the Consultant are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.  The failure to specifically include any provisions of the Consulting Agreements in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the Consulting Agreements and all of their provisions, payments, and transactions be, and hereby are, authorized and approved as and to the extent provided in this Interim Order.

4.      To the extent of any conflict between this Interim Order, the Consulting Agreements, and the Store Closing Procedures, the terms of this Interim Order shall control.  Notwithstanding

26664179.2

3

any other term of this Interim Order, the Canadian Store Closing Procedures and the Canadian Sale Guidelines shall control in respect of Store Closings in Canada.

## I.    AUTHORITY TO ENGAGE IN CLOSING SALES AND CONDUCT STORE CLOSINGS.

5.     The Debtors and the Consultant are authorized, on an interim basis pending the Final Hearing (as defined below), pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct Store Closings at the Closing Stores in accordance with this Interim Order, the applicable Store Closing Procedures, and the Consulting Agreements as may be modified by a Side Letter (as defined below) between the Debtors and the landlords at the closing locations.

6.     The Store Closing Procedures are approved in their entirety on an interim basis. The Store Closing Procedures shall be used for all permitted Store Closings in these Chapter 11 Cases, unless otherwise ordered.

7.     The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Interim Order, the applicable Store Closing Procedures, and the Consulting Agreements

8.     All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to this Interim Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors.

9.     Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closings and to take the related actions authorized herein.

## II.     CONDUCT OF THE SALES.

10.     All media in which the Store Closings may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closings and the sale of Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) in the manner contemplated by and in accordance with this Interim Order, the Store Closing Procedures, and the Consulting Agreements.

11.     The Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closings without necessity of further order of this Court as provided in this Interim Order, the Store Closing Procedures, and the Consulting Agreements, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage; *provided*, *however*, that only Debtor-approved terminology will be used at each Closing Store in connection with the Store Closings.

12.     Pursuant to the U.S. Consulting Agreement, and subject to the Debtors' prior written approval, the Consultant is authorized to supplement the Merchandise in the Closing Stores with Additional Consultant Goods pursuant to the Debtors' prior written approval of a plan with respect to the placement and sale of such Additional Consultant Goods, and provided that any such supplementing with Additional Consultant Goods must be of like kind and no lesser quality than goods sold in the Closing Stores prior to the Petition Date.    Sales of Additional Consultant Goods

26664179.2

5

shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise.

13.     Pursuant to the U.S. Consulting Agreement, all transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "*UCC*") and not a consignment for security purposes. At all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Consultant Goods or the proceeds thereof.   The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant. Pursuant to the U.S. Consulting Agreement, and to the extent necessary, Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds.

14.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), to the extent that, prior to the Final Hearing (as defined below), disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable,

be scheduled initially no later than the earlier of (a) the Final Hearing (as defined below), or (b) within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

15.     The sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings (including the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement)) and the rejection of leases, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closings.     Breach of any such provisions in these Chapter 11 Cases in conjunction with the Store Closings shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings are conducted in accordance with the terms of this Interim Order and the applicable Store Closing Procedures.  Subject to the approval of Debtors' secured lenders, including the Ad Hoc Group of Crossover Lenders and the Ad Hoc FILO Term Lender Group, the Debtors and landlords of the Closing Stores are authorized to enter into agreements ("***Side Letters***") between themselves modifying the Store Closing Procedures without further order of the Court and such Side Letters shall be binding as among the Debtors and any such landlords.   In the event of any conflict between the Store Closing Procedures and any Side Letter, the terms of such Side Letter shall control.  The Expense Budget attached to each of the Consulting Agreements may only be modified according to the procedures provided by the respective Consulting Agreements and after consultation with counsel to the Ad Hoc Group of Crossover Lenders and counsel to the Ad Hoc FILO Term Lender Group.

16.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 24 and 25 shall apply) no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings or the sale of the Merchandise, FF&E, or Additional Consultant Goods (with respect to the U.S. Consulting Agreement), or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

17.     In accordance with and subject to the terms and conditions of the Consulting Agreements, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closings, free of any interference from any entity or person, subject to compliance with the applicable Store Closing Procedures and this Interim Order.

18.     All sales of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) shall be "as is" and final.  Returns related to the purchase of Store Assets shall not be accepted at stores that are not participating in the Store Closings.  However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

19.     The Consultant shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors before the commencement of the Store Closings in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors before the commencement of the Store Closings for the first thirty (30) days of the Store Closings, provided that such returns are otherwise in compliance with the Debtors' return policies in effect as of the Petition Date.

20.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods (with respect to the U.S. Consulting Agreement), and as expressly provided in the Consulting Agreements, and the payment of any and all sales taxes is the responsibility of the Debtors, subject to Consultant's obligation to collect and remit the sales taxes attributable to the sale of Additional Consultant Goods pursuant to the U.S. Consulting Agreement.  The Debtors are directed to remit all taxes arising from the Store Closings to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.   For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor

or any other party, other than the applicable Governmental Unit for which the sales taxes are collected.  This Interim Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

21.    Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Assets—and all sales of Store Assets whether by the Consultant or the Debtors, shall be—free and clear of any and all of any liens, claims, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "***Encumbrances***"); as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided*, *however*, that any such Encumbrances shall attach to the proceeds of the sale of the Merchandise and the FF&E with the same validity, in the amount, with the same priority as, and to the same extent that any such Encumbrances have with respect to the Merchandise and the FF&E, subject to any claims and

defenses that any party may possess with respect thereto and subject to the Consultant's fees and expenses (as provided in the Consulting Agreements).

22.     No FF&E sold or abandoned by the Debtors will contain personal and/or confidential information about the Debtors' employees and/or customers.

23.     The Debtors are authorized and empowered to transfer Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) among, and into, the Closing Stores.

## III.    DISPUTE RESOLUTION PROCEDURES WITH GOVERNMENTAL UNITS.

24.     Nothing in this Interim Order or the Store Closing Procedures releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "*General Laws*").  Nothing in this Interim Order, the Consulting Agreements, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that

26664179.2

forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Interim Order. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

25.     To the extent that the sale of Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non- deceptive, customary advertising such as signs, banners, posting of signage, and use of sign- walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), the Dispute Resolution Procedures in this section shall apply:

a.     Provided that the Store Closings are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

b.     Within three business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Store Closings are being held; (iii) the county consumer protection agency or

26664179.2

similar agency for each county in which the Store Closings are being held; (iv) the division of consumer protection for each state in which the Store Closings are being held; and (v) the chief legal counsel for each local jurisdiction in which the Store Closings are being held (collectively, the "***Dispute Notice Parties***").

c.    With respect to any additional Closing Stores, within three business days after Court authorization to close additional stores (each, an "***Additional Closing Store List***"), the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order or Final Order, as applicable, and the Store Closing Procedures on the Dispute Notice Parties.  To the extent that there is a dispute arising from or relating to the Store Closings, the Interim Order, the proposed Final Order, or the Store Closing Procedures, as applicable, which dispute relates to any Liquidation Sale Laws (a "***Reserved Dispute***"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute.  Any time within ten days following entry of the Interim Order or service of any Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "***Dispute Notice***") explaining the nature of the dispute to:  (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn:  Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill (mnestor@ycst.com; kcoyle@ycst.com; and jmulvihill@ycst.com) and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Asif Attarwala, and Brett Newman (caroline.reckler@lw.com; asif.attarwala@lw.com; brett.newman@lw.com); (b) the U.S. Trustee, 844 King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jane Leamy (jane.m.leamy@usdoj.gov); (c) counsel to the DIP Term Agent, Dorsey & Whitney LLP, 51 West 52nd Street, New York, NY 10019, Attn:  Erin E. Trigg and Samuel S. Kohn (trigg.erin@dorsey.com and kohn.samuel@dorsey.com); (d) counsel to the Ad Hoc Group of Crossover Lenders, Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067, Attn:  Mark Shinderman (mshinderman@milbank.com) and Daniel B. Denny (ddenny@milbank.com); (e) counsel to the DIP ABL FILO Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn:  Sandy Qusba, Daniel L. Biller, and Jamie Fell (squsba@stblaw.com, daniel.biller@stblaw.com, and jamie.fell@stblaw.com); (f) counsel to the Ad Hoc FILO Term Lender Group, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn:  Andrew N. Rosenberg, Jacob Adlerstein, and Douglas R. Keeton (arosenberg@paulweiss.com, jadlerstein@paulweiss.com, and dkeeton@paulweiss.com); and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn:  Richard S. Cobb (cobb@lrclaw.com);  (g) the indenture trustee for the Debtors' prepetition convertible notes, The Bank of New York Mellon Trust Company, N.A., 525 William Penn Place, 38th Floor, Pittsburgh, PA 15259, Attn: Corporate Trust Administration and BNY Mellon Corporate Trust, US Corporate Client Service Management, 500 Ross Street, 12th Floor, Pittsburgh, PA 15262, Attn: Mindy M. Wrzesinski (Melinda.m.wrzesinski@bnymellon.com); (h) lead counsel to the Consultant, Tiger Capital Group, 60 State Street, 11th Floor, Boston, MA 02109,

Attn: Mark P. Naughton (MNaughton@tigergroup.com); and (i) counsel to any statutory committee appointed in these Chapter 11 Cases.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "***Dispute Resolution Motion***").

d.      In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Store Closings pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Store Closings pursuant to the terms of the Interim Order or the Final Order, as applicable, the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.      If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs. Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

26.      Subject to paragraphs 24 and 25 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Store Closings, and all newspapers and other advertising media in which the Store Closings are advertised shall consider this Interim Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required, to post any bond, to conduct the Store Closings.

26664179.2

27.     Within three business days of this Interim Order, the Debtors shall serve copies of this Interim Order and the Store Closing Procedures via e-mail, facsimile, or regular mail, on: (a) the United States Trustee for the District of Delaware; (b) counsel for the agent for the Debtors' postpetition financing facility; (c) counsel to the Ad Hoc Group of Crossover Lenders; (d) counsel to the Ad Hoc FILO Term Lender Group; (e) counsel to the agent under the Debtors' secured term and asset-based financing facilities; (f) the indenture trustee for the Debtors' prepetition convertible notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the District of Delaware; (i) the attorneys general for all 50 states and the District of Columbia; (j) the United States Department of Justice; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Drug Enforcement Agency; (n) the United States Food and Drug Administration; (o) all parties who are known by the Debtors to assert liens against the Merchandise and the FF&E; (p) all state attorneys general in which the Merchandise and the FF&E are located; (q) municipalities in which the Merchandise and the FF&E are located; (r) all of the counterparties to the Debtors' real property leases; (s) all applicable state and consumer protection agencies; and (t) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## IV.     EFFECTIVENESS OF THE CONSULTING AGREEMENTS.

28.     The Consulting Agreements are operative and effective on an interim basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreements, including, without limitation, reimbursing all expenses to the Consultant as required by the Consulting Agreements without the need for any application of the Consultant or a further order of the Court.  For avoidance of doubt, the Debtors are also authorized to fund the Expense Budgets in accordance with the terms of each of the Consulting Agreements.

29.     Subject to the restrictions set forth in this Interim Order and the applicable Store Closing Procedures, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreements and the Store Closings, and each of the transactions contemplated by the Consulting Agreements, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreements and the Store Closings prior to the date hereof, are hereby approved and ratified.  The failure to specifically include any particular provision of the Consulting Agreements in this Interim Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Consulting Agreements and all of their provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Interim Order.

30.     Notwithstanding anything to the contrary in the Consulting Agreements, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of any act or omission by the Consultant constituting fraud, gross negligence, or willful misconduct.

31.     To the extent that the Debtors seek to conduct Store Closings at any location not identified as a Closing Store on Exhibit 2 attached hereto (each an "***Additional Closing Store***"), the Debtors shall (a) first consult with the DIP Term Agent and the DIP ABL FILO Agent, and use commercially reasonable efforts to consult with the Ad Hoc Group of Crossover Lenders and the Ad Hoc FILO Term Lender Group, (b) file an Additional Closing Store List, and (c) serve a notice of their intent to conduct Store Closings at those locations on the Additional Closing Store landlords, counsel to the Ad Hoc Group of Crossover Lenders, counsel to the Ad Hoc FILO Term Lender Group, and applicable governmental units by email (to the extent available to the Debtors) or by overnight mail.  The Additional Closing Store landlords shall have seven (7) days after

service of the applicable Additional Closing Store List to object to the application of this Interim Order to their store locations. If no timely objections are filed with respect to the application of this Interim Order to any store locations identified on any Additional Closing Store List, then the Debtors shall be authorized, pursuant to section 105(a) and section 363(b)(1) of the Bankruptcy Code, to conduct Store Closings at such store locations in accordance with this Interim Order, the applicable Store Closing Procedures, the Consultant Agreement, and any Side Letter. If any objections are filed with respect to the application of this Interim Order to any store locations identified on any Additional Closing Store List and such objections are not resolved, the objections and the application of this Interim Order to any affected store locations shall be considered by the Court at the next regularly scheduled omnibus hearing.

32.     On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, the agent for the Debtors' postpetition financing facility, the Ad Hoc Group of Crossover Lenders, the agent under the Debtors' secured term and asset-based financing facilities, the Ad Hoc FILO Term Lender Group, the indenture trustee for the Debtors' prepetition convertible notes, or the committee of unsecured creditors, if any, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Store Closings that are prepared by the Debtors, their professionals or the Consultant, provided, however, that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Store Closings.

## V.     OTHER PROVISIONS.

33.     The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreements.

26664179.2

34.     The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided*, *however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

35.     Nothing in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be construed as: (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code (other than the Consulting Agreements); or (vi) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Interim Order.  Nothing contained in this Interim Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

36.     Notwithstanding anything contained in the Motion or this Interim Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any interim or final orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "***DIP Order***"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the

terms of the DIP Order shall control; *provided*, *however*, that with respect to amounts due to the Consultant pursuant to the Consultant Agreements paid solely from proceeds of sales of the Merchandise and the FF&E, the DIP Order and any budget attached thereto shall not constitute or require a cap or reduction on amounts due to the Consultant under the Consulting Agreements other than any such cap or reduction resulting from the Consultant's required compliance with the applicable Expense Budget.

37.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

38.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable this Interim Order shall be effective and enforceable immediately upon entry hereof.

39.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

40.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

41.     The Debtors are authorized and empowered to take such actions and to execute such documents as may be necessary to implement the relief granted by this Interim Order.

42.     A hearing to consider entry of an order granting the Motion on a final basis (the "***Final Hearing***") shall be held on _____, 2020, at __:____ _.m. (prevailing Eastern time). Any objections or responses to the entry of such an order must be filed on or before 4:00 p.m. (prevailing Eastern time) on _____, 2020, and served on (a) proposed counsel to the Debtors, (i) Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, Illinois 60611, Attn:     Caroline   Reckler,   Asif   Attarwala,   and   Brett   Newman   (email:

caroline.reckler@lw.com;   asif.attarwala@lw.com;   brett.newman@lw.com),   and   885   Third

Avenue, New York, New York 10022, Attn:  Jeffrey T. Mispagel (jeffrey.mispagel@lw.com); and

(ii) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 King Street, Wilmington,

Delaware 19801, Attn:  Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill

(mnestor@ycst.com; kcoyle@ycst.com; and jmulvihill@ycst.com); (b) the Office of the United

States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington,

Delaware 19801, Attn:  Jane Leamy (email:  jane.m.leamy@usdoj.gov); (c) counsel to the Ad Hoc

Group of Crossover Lenders (i) Milbank LLP, 2029 Century Park East, Los Angeles, California

90067,   Attn:      Mark   Shinderman,   Brett   Goldblatt,   and   Daniel   B.   Denny   (email:

mshinderman@milbank.com;   bgoldblatt@milbank.com;   and   ddenny@milbank.com);   and

(ii) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347,

Wilmington, Delaware 19899-1347, Attn: Robert J. Dehney (rdehney@mnat.com); (d) counsel to

the Ad Hoc FILO Term Lender Group (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285

Avenue of the Americas, New York, New York 10019, Attn:  Andrew N. Rosenberg, Jacob

Adlerstein,   and   Douglas   R.   Keeton   (email:      arosenberg@paulweiss.com,

jadlerstein@paulweiss.com, and dkeeton@paulweiss.com); and (ii) Landis Rath & Cobb LLP, 919

Market   Street,   Suite   1800,   Wilmington,   Delaware   19801,   Attn:      Richard   S.   Cobb

(cobb@lrclaw.com); (e) counsel to the administrative agent under the DIP ABL FILO Facility,

Simpson Thacher & Bartlett LLP, 425 Lexington Ave. New York, New York 10017, Attn:  Sandy

Qusba, Daniel L. Biller, and Jamie Fell (email:  squsba@stblaw.com, daniel.biller@stblaw.com,

and jamie.fell@stblaw.com); and (f) counsel to the administrative agent under the DIP Term

Facility, Dorsey & Whitney LLP, 51 West 52nd Street, New York, New York 10019, Attn:  Erin

E. Trigg and Samuel S. Kohn (email:  trigg.erin@dorsey.com and kohn.samuel@dorsey.com).  In

the event that no objections to entry of the Proposed Final Order on the Motion are timely received, this Court may enter such Proposed Final Order without need for the Final Hearing.

43.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords for protection from interference with the Store Closings, (c) any other disputes related to the Store Closings, and (d) protection of the Debtors against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the landlords, or the Store Closings until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

Dated: _____, 2020
        Wilmington, Delaware                  _____
                                     United States Bankruptcy Judge

## **EXHIBIT 1**

**Store Closing Procedures**

## U.S. Store Closing Procedures[1]

1.      These U.S. Store Closing Procedures shall control the Store Closings in the United States.

2.      The Store Closings shall be conducted so that the stores in which Store Closings are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

3.      The Store Closings shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Store Closing shall be conducted on Sunday unless the Debtors had been operating such Closing Stores on a Sunday prior to the commencement of the Store Closings.

4.      On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; *provided* that the Consultant may solicit customers in the Closing Stores themselves.   On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Store Closings or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

5.      At the conclusion of the Store Closings, the Consultant shall, subject to the Consulting Agreements, vacate the Closing Stores in broom clean condition; *provided* that Consultant may abandon any FF&E not sold in the Store Closings at the conclusion of the Store Closings, without cost or liability of any kind to the Consultant.  The Debtors will have the option to remove the FF&E at their own cost prior to the termination date.  Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

6.      The Consultant and the Debtors may advertise each Store Closing as a "store closing," "sale on everything," "everything must go," or similar themed sale, and to the extent permitted in the Interim Order or Final Order, as applicable, "going out of business".  The Consultant and the Debtors may also have "countdown to closing" signs prominently displayed in a manner consistent with these Store Closing Procedures.  All signs, banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Debtors in accordance with these Store Closing Procedures.

7.      The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Store Closings; *provided* that such sign walkers, display,

---

[1]    Capitalized terms used but not defined in these U.S. Store Closing Procedures have the meanings given to them in the Interim Order to which these U.S. Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Interim Order is attached as **Exhibit A**, as applicable.

hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Debtors and the Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall stores and (ii) enclosed mall stores to the extent the entrance to the applicable store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closings are being conducted only at the affected Closing Stores, and shall not be wider than the storefront of the Closing Stores.  In addition, the Debtors and the Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Interim Order or Final Order, as applicable.   Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

8.    Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to the effect that "all sales are final."

9.    Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

10.    The Consultant shall not make any alterations to interior or exterior Closing Stores' lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Store Closings.  The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

11.    The Consultant shall keep Closing Stores' premises and surrounding areas clean and orderly consistent with present practices.

12.    Subject to the provisions of the Consulting Agreements, the Consultant shall have the right to use and sell all FF&E.  The Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines.  The purchasers of any FF&E sold during the Store Closings shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Stores in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant and the Debtors may abandon, in place and without further responsibility, any FF&E.

13.    At the conclusion of the Store Closings at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.  The Debtors, the Consultant, and their representatives and agents shall continue to have access to the Closing Stores as provided for in the Consulting Agreements.

14.    The rights of landlords against the Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

26664179.2

15.    If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors, the Ad Hoc Group of Crossover Lenders, the Ad Hoc FILO Term Lender Group, and the Consultant as follows:

<u>If to the Debtors</u>:

300 Sixth Avenue,
Pittsburgh, Pennsylvania 15222
Attn: Amy Nathan

with copies (which shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Michael R. Nestor & Kara Hammond Coyle

-and-

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Richard A. Levy & Caroline A. Reckler

<u>If to the Ad Hoc Group of Crossover Lenders</u>:

Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Attn:  Mark Shinderman & Daniel B. Denny

<u>If to the Ad Hoc FILO Term Lender Group</u>:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attn: Andrew Rosenberg & Jacob Adlerstein

<u>If to the Consultant</u>:

Tiger Capital Group
60 State Street, 11th Floor
Boston, MA 02109
Attn: Mark P. Naughton

26664179.2

with copies (which shall not constitute notice) to:

Great American Group, LLC
21255 Burbank Blvd., Suite 400
Woodland Hills, CA 91367
Attn: Scott K. Carpenter and Marina Fineman


If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

## Canadian Store Closing Procedures[2]

These Canadian Store Closing Procedures shall control the Store Closings in Canada. Each of the U.S. Store Closing Procedures and the Canadian Sale Guidelines are incorporated by reference herein, as described herein.

The Canadian Store Closing Procedures shall be conducted pursuant to the U.S. Store Closing Procedures and the Canadian Sale Guidelines (attached as Exhibit A hereto), as each may be modified hereby; provided, however, that in the event of a conflict between the terms of the U.S. Store Closing Procedures and the terms of the Canadian Sale Guidelines, the terms of the Canadian Sale Guidelines shall control.

If and to the extent that the landlord of any Closing Store in Canada affected hereby contends that the Debtors or the Consultant is in breach of or default under these Canadian Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors, the Ad Hoc Group of Crossover Lenders, the Ad Hoc FILO Term Lender Group, and the Consultant as follows:

If to the Debtors:

300 Sixth Avenue,
Pittsburgh, Pennsylvania 15222
Attn: Amy Nathan

with copies (which shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Michael R. Nestor & Kara Hammond Coyle

-and-

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Richard A. Levy & Caroline A. Reckler

-and-

Torys LLP
79 Wellington St. W., 30th Floor
Box 270, TD South Tower

---

[2]   Capitalized terms used but not defined in these Canadian Store Closing Procedures have the meanings given to them in the Interim Order to which these Canadian Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Interim Order is attached as **Exhibit A**, as applicable.

Toronto, ON  M5K 1N2
Attn: Scott A. Bomhof & Adam M. Slavens

If to the Ad Hoc Group of Crossover Lenders:

Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Attn:  Mark Shinderman & Daniel B. Denny

-and-

Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza, 40 King St. W.
Toronto, ON Canada M5H 3C2 Canada
Attn: R. Shayne Kukulowicz & Ryan C. Jacobs

If to the Ad Hoc FILO Term Lender Group:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attn: Andrew Rosenberg & Jacob Adlerstein

If to the Consultant:

Tiger Capital Group
60 State Street, 11th Floor
Boston, MA 02109
Attn: Mark P. Naughton

with copies (which shall not constitute notice) to:

Great American Group, LLC
21255 Burbank Blvd., Suite 400
Woodland Hills, CA 91367
Attn: Scott K. Carpenter and Marina Fineman

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

**Exhibit A**

**Canadian Sale Guidelines**

The following procedures shall apply to the Sale to be conducted at the Stores of General Nutrition Centres Company (the "***Merchant***"). All terms not herein defined shall have the meaning set forth in the Consulting Agreement by and between a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (collectively with their respective U.S. affiliates, the "***Consultant***") and the Merchant dated as of June 18, 2020 (the "***Consulting Agreement***").

1.  Except as otherwise expressly set out herein, and subject to: (i) the orders granted or issued in the Merchant's bankruptcy case (the "***Bankruptcy Case***") in the United States of America under Chapter 11 of the United States Bankruptcy Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Court***") and the Merchant's ancillary proceedings (the "***CCAA Proceedings***") in Canada under Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "***CCAA***") before the Ontario Superior Court of Justice (Commercial List) (individually, an "***Order***", and, collectively, the "***Orders***"); or (ii) any subsequent written agreement between the Merchant and the applicable landlord(s) (individually, a "***Landlord***" and, collectively, the "***Landlords***") and approved by each of the Consultant and Information Officer in writing, or (iii) as otherwise set forth herein, the Sale shall be conducted in accordance with the terms of the applicable leases/or other occupancy agreements to which the affected Landlords are privy for each of the affected Stores (individually, a "***Lease***" and, collectively, the "***Leases***"). However, nothing contained herein shall be construed to create or impose upon the Merchant or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

2.  The Sale shall be conducted so that each of the Stores remains open during its normal hours of operation provided for in its respective Lease until the respective Sale Termination Date for such Store. The Sale at the Stores shall end by no later than the Sale Termination Date. Rent payable under the respective Leases shall be paid in accordance with the terms of the Orders, as applicable**.**

3.  The Sale shall be conducted in accordance with applicable federal, provincial and municipal laws and regulations, unless otherwise set out herein or otherwise ordered by the Court.

4.  All display and hanging signs used by the Consultant in connection with the Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Notwithstanding anything to the contrary contained in the Leases, the Consultant may advertise the Sale at the Stores as an "everything on sale", an "everything must go", a "store closing" or similar theme sale at the Stores (provided however that no signs shall advertise the Sale as a "bankruptcy", a "going out of business" or a "liquidation" sale it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used). Forthwith upon written request from a Landlord, the Landlord's counsel, the Merchant or the Information Officer, the Consultant shall provide the proposed signage packages along with the proposed dimensions and number of signs (as approved by the

Merchant pursuant to the Consulting Agreement) by e-mail to such Landlord(s) or to their counsel of record and the Information Officer. Where the provisions of the Lease conflict with these Canadian Sale Guidelines, these Canadian Sale Guidelines shall govern**.** The Consultant shall not use neon or day-glow or handwritten signage (unless otherwise contained in the sign package, including "you pay" or "topper" signs). In addition, the Consultant shall be permitted to utilize exterior banners/signs at stand alone or strip mall Stores or enclosed mall Stores with a separate entrance from the exterior of the enclosed mall, provided, however, that where such banners are not explicitly permitted by the applicable Lease and the Landlord requests in writing that the banners are not to be used, no banners shall be used absent further Order of the Court. Any banners used shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the premises occupied by the affected Store. All exterior banners shall be professionally hung and to the extent that there is any damage to the façade of the premises of a Store as a result of the hanging or removal of the exterior banner, such damage shall be professionally repaired at the expense of the Consultant. If a Landlord is concerned with "store closing" signs being placed in the front window of a Store or with the number or size of the signs in the front window, the Consultant and the Landlord will discuss the Landlord's concerns and work to resolve the dispute.

5.      The Consultant shall be permitted to utilize sign walkers and street signage; provided, however, such sign walkers and street signage shall not be located on the shopping centre or mall premises.

6.      The Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized pursuant to the applicable Lease. The hanging of exterior banners or other signage, where permitted in accordance with the terms of these guidelines, shall not constitute an alteration to a Store.

7.      Conspicuous signs shall be posted in the cash register areas of each Store to the effect that all sales are "final".

8.      The Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any of the Stores on any Landlord's property, unless permitted by the applicable Lease or, if distribution is customary in the shopping centre in which the Store is located. Otherwise, the Consultant may solicit customers in the Stores themselves. The Consultant shall not use any giant balloons, flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable Lease, or agreed to by the Landlord, and no advertising trucks shall be used on a Landlord property or mall ring roads, except as explicitly permitted under the applicable Lease or agreed to by the Landlord.

9.      At the conclusion of the Sale in each Store, the Consultant shall arrange that the premises for each Store are in "broom-swept" and clean condition, and shall arrange that the Stores are materially in the same condition as on the commencement of the Sale, ordinary wear and tear excepted. No property of any Landlord of a Store shall be removed or sold during the Sale**.** No permanent fixtures (other than FF&E which for clarity is owned by the Merchant) may be removed without the applicable Landlord's written consent unless

otherwise provided by the applicable Lease. Any fixtures or personal property left in a Store after the Sale Termination Date in respect of which the applicable Lease has been disclaimed by the Merchant shall be deemed abandoned, with the applicable Landlord having the right to dispose of the same as the Landlord chooses, without any liability whatsoever on the part of the Landlord.

10.    Subject to the terms of paragraph 9 above, the Consultant may sell Offered FF&E which is located in the Stores during the Sale. The Merchant and the Consultant may advertise the sale of Offered FF&E consistent with these guidelines on the understanding that any applicable Landlord may require that such signs be placed in discreet locations acceptable to the applicable Landlord, acting reasonably. Additionally, the purchasers of any Offered FF&E sold during the Sale shall only be permitted to remove the Offered FF&E either through the back shipping areas designated by the applicable Landlord, or through other areas after regular store business hours, or through the front door of the Store during store business hours if the Offered FF&E can fit in a shopping bag, with applicable Landlord's supervision as required by the applicable Landlord. The Consultant shall repair any damage to the Stores resulting from the removal of any Offered FF&E by Consultant or by third party purchasers of Offered FF&E from Consultant.

11.    The Merchant hereby provides notice to the Landlords of the Merchant and the Consultant's intention to sell and remove Offered FF&E from the Stores. The Merchant will arrange a walk through with each Landlord that requests a walk through with the Consultant to identify the Offered FF&E subject to the sale. The relevant Landlord shall be entitled to have a representative present in the Store to observe such removal. If the Landlord disputes the Consultant's entitlement to sell or remove any FF&E under the provisions of the Lease, such FF&E shall remain on the premises and shall be dealt with as agreed between the Merchant, the Consultant and such Landlord, or pursuant to the dispute resolution section of the Canadian Store Closing Procedures. If the Merchant has rejected the Lease governing such Store in accordance with the Bankruptcy Code, it shall not be required to pay rent under such Lease pending resolution of any such dispute (other than rent payable for the notice period provided for under the Bankruptcy Code), and the rejection of the Lease shall be without prejudice to the Merchant's or Consultant's claim to the FF&E in dispute.

12.    If a rejection notice is delivered to a Landlord pursuant to the Bankruptcy Code while the Sale is ongoing and the Store in question has not yet been vacated, then: (a) during the notice period prior to the effective time of such rejection, the applicable Landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Merchant and the Consultant 24 hours' prior written notice; and (b) at the effective time of the rejection, the relevant Landlord shall be entitled to take possession of any such Store without waiver of or prejudice to any claims or rights such Landlord may have against the Merchant in respect of such Lease or Store, provided that nothing herein shall relieve such Landlord of its obligation to mitigate any damages claimed in connection therewith.

13.    The Consultant and its agents and representatives shall have the same access rights to the Stores as the Merchant under the terms of the applicable Lease, and the applicable

Landlords shall have the rights of access to the Stores during the Sale provided for in the applicable Lease (subject, for greater certainty, to any applicable stay of proceedings).

14.     The Merchant and the Consultant shall not conduct any auctions of Merchandise or Offered FF&E at any of the Stores.

15.     The Consultant shall designate a party to be contacted by the Landlords should a dispute arise concerning the conduct of the Sale. The initial contact person for the Consultant shall be Daniel Richer who may be reached by phone at <u>416-865-4445</u> or email at dricher@fasken.com.  Contact persons for the Merchant and the Information Officer are set out in the Canadian Store Closing Procedures.  If the parties are unable to resolve the dispute between themselves, the notice and dispute sections of the Canadian Store Closing Procedures shall be followed by the parties.  For the duration of any such dispute, the Consultant shall cease all activity in dispute other than activity expressly permitted herein, pending the determination of the matter by the Court; provided, for greater certainty, that if a banner has been hung in accordance with these Canadian Sale Guidelines and is thereafter the subject of a dispute, the Consultant shall not be required to take any such banner down pending determination of the dispute.

16.     Nothing herein is, or shall be deemed to be a consent by any Landlord to the sale, assignment or transfer of any Lease, or to grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

17.     These Canadian Sale Guidelines may be amended by written agreement between the Merchant, the Consultant and any applicable Landlord (provided that such amended Canadian Sale Guidelines shall not affect or bind any other Landlord not privy thereto without further Order of the Court).

## **EXHIBIT 2**

**Closing Stores**

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4297 | Hillside Shopping Centre | 1644 Hillside Avenue | Victoria | BC |
| 4232 | Robson Streetfront | 1126 Robson Street | Vancouver | BC |
| 4193 | Guildford Town Center | 10355 152 St | Surrey | BC |
| 4243 | Kelowna Mall | 2271 Harvey Ave | Kelowna | BC |
| 4038 | Smart Centres Central @ G | 1825-4720 Mcclelland Road | Richmond | BC |
| 4016 | Scotia Plaza | 40 King St West Box 108 | Toronto | ON |
| 4043 | Sunridge Mall | 2525-36Th Street Ne | Calgary | AB |
| 4065 | Market Mall | 3625 Shaganappi Trail | Calgary | AB |
| 4239 | Deerfoot Mall | #107 951 64 Av Ne | Calgary | AB |
| 4188 | Harvest Pointe Sc | 5233 Ellerslie Rd Sw | Edmonton | AB |
| 4048 | Halifax Shopping Center | 7001 Mumford Road | Halifax | NS |
| 4124 | Carrefour Angrignon | 7077 Newman Boulevard | Lasalle | PQ |
| 4022 | St. Laurent S.C. | 1200 St Laurent Blvd | Ottawa | ON |
| 4028 | Cornwall Square | 1 Water Street East | Cornwall | ON |
| 4059 | Northgate Square | 489 Albert Street North | Regina | SK |
| 4184 | Oshawa Centre | 419 King Street West | Oshawa | ON |
| 4050 | Markville Town Centre | 5000 Hwy 7 East | Markham | ON |
| 4127 | Stone Road Mall | 435 Stone Road West | Guelph | ON |
| 4117 | Vaughan Mills | 1 Bass Pro Mills Dr | Vaughan | ON |
| 4201 | Shoppes On Queen West | 601 Queen Street West | Toronto | ON |
| 4090 | Argyle Mall | 332 Clarke Road | London | ON |
| 4174 | Walker Place | 4140 Walker Rd | Windsor | ON |
| 4072 | Driftwood Mall | 2751 Cliffe Ave | Courtenay | BC |
| 4235 | Coquitlam Centre | 2929 Barnet Highway | Coquitlam | BC |
| 4278 | Village Green Centre | 4900 27Th Street | Vernon | BC |
| 4504 | Woodgrove Centre | 6631 Island Highway N | Nanaimo | BC |
| 4061 | Londonderry Mall | 137Th Ave & 66Th St | Edmonton | AB |
| 4170 | Erin Ridge Power Centre | 935 St.Albert Trail | St Albert | AB |
| 4180 | Manning Town Centre | 15733 37 Street | Edmonton | AB |
| 4183 | The Quarry | 20 Quarry Street East | Cochrane | AB |
| 4191 | York Station | 275 Broadway St E | Yorkton | SK |
| 4286 | Southlands Crossing | 1991 Strachan Rd | Medicine Hat | AB |
| 4503 | Deerfoot Meadows | 840-8180 11Th Street Se | Calgary | AB |
| 4177 | Avalon Mall | 48 Kenmount Rd | St. Johns | NL |
| 4131 | Yarmouth Mall | 76 Starrs Road | Yarmouth | NS |
| 4052 | Place D'Orleans | 110 Place D'Orleans Dr | Ottawa | ON |
| 4008 | Southhill Shopping Centre | 9325 Yonge Street | Richmond Hill | ON |
| 4086 | Bridgeport Plaza | 13/14-94 Bridgeport Rd Ea | Waterloo | ON |
| 4162 | Gladstone Queen West Reta | 4 Gladstone Ave | Toronto | ON |
| 4171 | Smartcentres Vaughan | 3604 Major Mackenzie Dr | Vaughan | ON |
| 4181 | Shops At Don Mills | 1090 Don Mills Rd | Toronto | ON |
| 4186 | North Park Sc | 1405 Lawrence Ave W | Toronto | ON |
| 4196 | Shoppers World Danforth | 3003 Danforth Ave | Toronto | ON |
| 4204 | Smartcentres St. Catharin | 420 Vansickle Road | St. Catharines | ON |
| 4248 | Crossroads | 2625B Weston Road | North York | ON |
| 4256 | Rio Centre Oakville | 478 Dundas Street West | Oakville | ON |
| 4506 | Smart Centres Bradford | 547 Holland St West | Bradford | ON |
| 4150 | Sudbury S Shopping Center | 2408 Long Lake Rd | Sudbury | ON |
| 4198 | Collingwood Centre | 99 Balsam Street | Collingwood | ON |
| 4206 | Smartcentres St. Thomas | 1063 Talbot Street | St. Thomas | ON |
| 4032 | Lougheed Mall | 9855 Austin Ave | Burnaby | BC |
| 4084 | Haney Place Mall | 149-11900 Haney Pl | Maple Ridge | BC |
| 4234 | Tamarack Centre | 1500 Cranbrook St N.#115 | Cranbrook | BC |
| 4280 | Capilano Mall | 935 Marine Dr | N. Vancouver | BC |
| 4199 | Tsawwassen Mills | 5000 Canoe Pass Way | Tsawwassen | BC |
| 4267 | Bankers Hall | 315 8Th Avenue Sw Ste 345 | Calgary | AB |
| 4039 | St. Vital Center | 130-1225 St Mary'S Rd | Winnipeg | MB |
| 4054 | Kildonan Place | 1555 Regent Ave West | Winnipeg | MB |
| 4066 | Cornwall Mall | 2102-11Th Ave | Regina | SK |
| 4283 | Southcentre Mall | 100 Anderson Rd. S.E. | Calgary | AB |
| 4207 | Outlet Collection Winnipe | 555 Sterling Lyon Parkway | Winnipeg | MB |
| 4208 | Premium Outlet Collection | #1 Outlet Collection Way | Edmonton Airport | AB |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 1 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4067 | Mayflower Mall | 800 Grand Lake Road | Sydney | NS |
| 4229 | Regent Mall | 1381 Regent Street | Fredericton | NB |
| 4200 | Colby Village | 920 Cole Harbour Road | Dartmouth | NS |
| 4159 | Quartier Dix 30 | 8900 Blvd Leduc | Brossard | PQ |
| 4192 | Smartcentres Mascouche | 117 Montee Masson | Mascouche | PQ |
| 4179 | Les Promenades Gatineau | 1000 Blvd Maloney Quest | Gatineau | PQ |
| 4185 | Kemptville Colonnade Reta | 304 Colonnade Dr | Kemptville | ON |
| 4000 | The Promenade Mall | 1 Promenade Circle | Thorn Hill | ON |
| 4017 | Upper Canada Mall | 17600 Yonge St | Newmarket | ON |
| 4026 | Burlington Mall | 777 Guelph Line | Burlington | ON |
| 4037 | Eglinton Square S.C. | 1431-1437 Victoria Park A | Toronto | ON |
| 4075 | Cloverdale Mall | 250 The East Mall | Toronto | ON |
| 4144 | Georgetown Market Place | 280 Guelph Street | Georgetown | ON |
| 4189 | Centerpoint Mall | 6464 Younge St | Toronto | ON |
| 4203 | Yonge Sheppard Centre | 4841 Yonge Street | Toronto | ON |
| 4157 | Riocan Marketplace | 2181 Steele Ave West | Toronto | ON |
| 4194 | 410 At Steeles | 35 Resolution Dr | Brampton | ON |
| 4287 | Rio-Can Milton | 1155 Maple Avenue | Milton | ON |
| 4091 | Heritage Place | 1350 16Th Street East | Owen Sound | ON |
| 4225 | Lambton Mall | 1380 London Road Unit33 | Sarnia | ON |
| 4263 | White Oaks Mall | 1105 Wellington Rd | London | ON |
| 4270 | Northgate Square | 1500 Fisher St | North Bay | ON |
| 4510 | Station Mall | 293 Bay Street | Sault Ste Marie | ON |
| 4020 | Intercity S/C | 1000 Fort William Rd | Thunder Bay | ON |
| 7467 | 330 5TH AVE | 330 5Th Ave | New York | NY |
| 1208 | 31 65 STEINWAY ST | 31 65 Steinway St | Astoria | NY |
| 3800 | 125 PARK AVENUE | 125 Park Ave | New York | NY |
| 9118 | 684 THIRD AVENUE | 684 Third Avenue | New York | NY |
| 1569 | 220 O'FARRELL ST | 220 O'Farrell St | San Francisco | CA |
| 2564 | 1034-1036 THIRD AVE | 1034-1036 Third Ave | New York | NY |
| 2479 | HOLLYWOOD & HIGHLAND | 6801 Hollywood Blvd | Los Angeles | CA |
| 7621 | 159 COLUMBUS AVE | 159 Columbus Ave | New York | NY |
| 7123 | BRATTLE SQUARE | One Brattle Square | Cambridge | MA |
| 8841 | 349 NEWBURY STREET | 349 Newbury St | Boston | MA |
| 1324 | 70 S 69TH ST | 70 S 69Th St | Upper Darby | PA |
| 2384 | 812 DAVIS ST | 812 Davis St | Evanston | IL |
| 6247 | QUEENS CENTER | 90-15 Queens Boulevard | Elmhurst | NY |
| 8523 | FASHION SHOW MALL | 3200 Las Vegas Blvd | Las Vegas | NV |
| 5047 | ROOSEVELT FIELD MALL | 630 Old Country Road | Garden City | NY |
| 1443 | PHEASANT LANE MALL | 310 Daniel Webster Hghway | Nashua | NH |
| 560 | WESTFIELD BRANDON | 356 Brandon Town Ctr Mall | Brandon | FL |
| 360 | DEPTFORD MALL | 1750 Deptford Center Rd | Deptford | NJ |
| 3079 | STAMFORD TOWN CENTER | 100 Greyrock Place | Stamford | CT |
| 1220 | WESTWOOD MALL | 1754 West Michigan Ave | Jackson | MI |
| 817 | WESTFIELD ANNAPOLIS | 1032 Annapolis Mall | Annapolis | MD |
| 846 | WHITE MARSH MALL | 8200 Perry Hall Blvd. | Baltimore | MD |
| 6273 | PROVIDENCE PLACE MALL | 54 Providence Place | Providence | RI |
| 358 | WESTLAND MALL | 35000 W. Warren Road | Westland | MI |
| 2956 | BAYSHORE TOWNE CENTER | 440 W Northshore Drive | Glendale | WI |
| 5130 | GURNEE MILLS | 6170 W Grand Avenue | Gurnee | IL |
| 3531 | GLOUCESTER PREMIUM OUTLET | 1125 S. Blackhorse Pike | Blackwood | NJ |
| 1584 | POTOMAC MILLS | 2700 Potomac Mills Circle | Woodbridge | VA |
| 366 | CINCINNATI PREMIUM OUTLET | 400 Premium Outlets Drive | Monroe | OH |
| 88 | TWIN CITIES PREMIUM OUTLE | 3965 Eagan Outlets Pkwy | Eagan | MN |
| 130 | TANGER OUTLETS | 400 South Wilson Road | Sunbury | OH |
| 590 | TANGER OUTLET - HWY 501 | 4635 Factory Stores Blvd | Myrtle Beach | SC |
| 5333 | TANGER OUTLETS SOUTHAVEN | 5205 Airways Blvd | Southaven | MS |
| 5920 | PASEO COLORADO | 300 E. Colorado Blvd | Pasadena | CA |
| 2376 | RIVERMARK VILLAGE | 3935 Rivermark Plaza | Santa Clara | CA |
| 7038 | UNIVERSITY TC | 140 University Tc | Sarasota | FL |
| 5053 | PHILIPS PLAZA | 675 Sunrise Highway | Lynbrook | NY |
| 8180 | MARKETPLACE CENTER | 1361 Covell Blvd | Davis | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 2 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 9283 | CROSS KEYS COMMONS | 3501 Rt 42 | Turnersville | NJ |
| 349 | SHOPS AT NANUET | 5107 Fashion Dr | Nanuet | NY |
| 3474 | CRANBERRY PLAZA | 2991-J Cranberry Highway | East Wareham | MA |
| 2644 | EAST HANOVER SC | 240 State Route 10 | East Hanover | NJ |
| 7121 | SHOPS AT FALLEN TIMBERS | 6832 Russell Road | Maumee | OH |
| 5273 | HERSHEY SQUARE S. C. | 1138 Mae Street | Hummelstown | PA |
| 7230 | NORTH HILLS CENTRE | 1144 Lonnie Abbott Blvd | Ada | OK |
| 5574 | HAMPTON VILLAGE CENTER | 2771 South Rochester Rd | Rochester Hills | MI |
| 6101 | PARKSIDE SC | 7800 John Davis Drive | Frankfort | KY |
| 7781 | 875 SIXTH AVE | 875 Avenue Of Americas | New York | NY |
| 2927 | 1569 FLATBUSH AVENUE | 1569 Flatbush Ave | Brooklyn | NY |
| 4358 | EIELSON AFB | Building 405 Broadway | Eielson | AK |
| 9860 | TYSENS PARK S/C | 2722 Hylan Blvd | Staten Island | NY |
| 5296 | BRADLEE CENTER | 3690 North King Street | Alexandria | VA |
| 255 | THE YARDS BOILERMAKER SHO | 300 Tingey St Se | Washington | DC |
| 5431 | EL CERRITO PLAZA | 230 El Cerrito Plaza | El Cerrito | CA |
| 8759 | CULVER CENTER | 3810 Midway Avenue | Culver City | CA |
| 1267 | EAST HILLS VILLAGE | 2671 Oswell Street | Bakersfield | CA |
| 3389 | SIMSBURY COMMONS | 530 Bushy Hill Road | Simsbury | CT |
| 9584 | THE SHOWCASE AT INDIO | 42425 C Jackson Street | Indio | CA |
| 5150 | PLAZA CAYEY | Pr 1 Km 55.2 | Cayey | PR |
| 6165 | MONTVILLE COMMONS | 2020 Norwich-New London T | Montville | CT |
| 5219 | SAN FELIPE PLAZA | 1735 South Voss | Houston | TX |
| 9028 | VALLEY CENTRAL SC | 44418 Valley Central Way | Lancaster | CA |
| 8234 | COLLEGE SQUARE | 210 College Square | Newark | DE |
| 311 | WALMART PLAZA | 656 New Haven Ave | Derby | CT |
| 5085 | WESTCLIFF PLAZA | 1036 Irvine Ave | Newport Beach | CA |
| 7354 | KMART SHOPPING CENTER | 3036 Route 35 South | Hazlet | NJ |
| 2272 | FOUNTAINS OF MIRAMAR | 2933 Sw 160Th Ave | Miramar | FL |
| 7421 | JANTZEN BEACH HAYDEN ISLA | 12152 N Pavilion Ave | Portland | OR |
| 5463 | BURBANK CROSSING | 7929 S Harlem Avenue | Burbank | IL |
| 5720 | CORNERSTONE @ LAKE HEART | 10524 Moss Park Rd | Orlando | FL |
| 8866 | CHERRY HILL SHOPPING CENT | 462 Hempstead Turnpike | West Hempstead | NY |
| 2416 | EDGEWOOD TOWN CENTER | 438-D E Edgewood Blvd | Lansing | MI |
| 104 | ORCHARD SC | 208 S 72Nd Ave | Yakima | WA |
| 5547 | KENTLANDS SQUARE | 251 Kentlands Boulevard | Gaithersburg | MD |
| 9001 | JACKSONVILLE PLAZA | 2050 John Harden Drive | Jacksonville | AR |
| 2025 | OLD TOWN SQUARE | 1237 North Clybourn Ave | Chicago | IL |
| 5257 | FIESTA TRAILS PLAZA | 5238 Dezavala Road | San Antonio | TX |
| 9673 | ELMHURST CROSSING SHOPPIN | 177 South Route 83 | Elmhurst | IL |
| 3504 | BRENTWOOD PLAZA | 8485 Winton Road | Cincinnati | OH |
| 5190 | HILLSBORO SHOPPING CENTER | 649 Route 206 Door 8 | Hillsborough | NJ |
| 7000 | BAYSHORE GARDENS | 6028 14Th Street West | Bradenton | FL |
| 2271 | ROCHESTER CROSSING | 160-162 Washington Street | Rochester | NH |
| 7655 | ORO VALLEY MARKETPLACE | 2060 E Tangerine Road | Oro Valley | AZ |
| 9801 | SOUTHBRIDGE CROSSING | 8082 Oak Carriage Court N | Shakopee | MN |
| 2078 | MASSILLON MARKET | 38 Massillon Marketplace | Massillon | OH |
| 2092 | MERCHANTS PARK SHOPPING C | 953 N Shepherd Dr | Houston | TX |
| 5157 | PLAZA SQUARE | 667 Hamburg Turnpike | Wayne | NJ |
| 2091 | THE MARKET AT OAKLAND | 3006 S Morgan'S Pt Rd | Mt Pleasant | SC |
| 977 | VIERA MARKETCENTER | 6729 Colonnade Ave | Viera | FL |
| 5289 | COMMONS AT ISSAQUAH | 755 West Gilman Blvd. | Issaquah | WA |
| 1292 | PINEHURST SQUARE | 1001 W Interstate Ave | Bismarck | ND |
| 9513 | TRENTON CROSSING | 7600 N. 10Th St | Mcallen | TX |
| 8557 | PIERPOINT CENTRE | 716 Venture Drive | Morgantown | WV |
| 7207 | GOLDEN GATE SHOPPING CTR | 1513 Golden Gate Rd | Mayfield Heights | OH |
| 833 | SUSSEX PLAZA | 22881 Sussex Highway | Seaford | DE |
| 617 | HEARTLAND VILLAGE SHOPPES | 8411 Windfall Lane | Camby | IN |
| 5585 | BATTLEGROUND PLAZA | 3724-H Battleground Ave | Greensboro | NC |
| 7810 | SHOPPES @ PARADISE KEY | 4433 Commons Drive East | Destin | FL |
| 1268 | AMSTERDAM COMMONS | 330 Amsterdam Commons | Amsterdam | NY |
| 7959 | BLUE RIDGE CROSSING | 4173 Sterling Ave | Kansas City | MO |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 3 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 8507 | SUNSHINE SQUARE | 546 East Woolbright Rd | Boynton Beach | FL |
| 5160 | WEST VOLUSIA REGIONAL S/C | 2707 South Woodland | Deland | FL |
| 1864 | SHELBYVILLE SC | 114 Lee Blvd | Shelbyville | IN |
| 7323 | HAVENDALE SQUARE | 382 Havendale Square | Auburndale | FL |
| 138 | SHOPPES AT PRAIRIE RIDGE | 9901 77Th Street | Pleasant Prairie | WI |
| 24 | BROOKDALE CORNER | 5605 Xerxes Ave | Brooklyn Center | MN |
| 9540 | FRANCIS POINTE | 106 Francis Lane | Beaver Dam | WI |
| 1812 | TRAMONTO MARKETPLACE S/C | 3134 W. Carefree Hgwy | Phoenix | AZ |
| 7388 | MIDDLEBURG CROSSINGS | 2640 Blanding Blvd | Middleburg | FL |
| 5461 | RIVER RUN SHOPPING CENTER | 9929 Miramar Parkway | Miramar | FL |
| 294 | GRAVOIS BLUFFS | #35 Gravois Bluffs Plaza | Fenton | MO |
| 3923 | HICKORY FLAT VILLAGE | 6175 Hickory Flat Highway | Canton | GA |
| 7158 | FRANKLIN CENTRE | 915 B Hwy 321 | Lenoir | TN |
| 2023 | OAK HOLLOW SQUARE | 1589 Skeet Club Rd | High Point | NC |
| 2861 | CULVER RIDGE PLAZA | 2255 East Ridge Rd | Rochester | NY |
| 3618 | EPHRATA MARKETPLACE | 852 East Main Street | Ephrata | PA |
| 2249 | TUDOR SHOPS | 975 Ne Rice Road | Lee'S Summit | MO |
| 6812 | OSWEGO PLAZA | 140 State Rt 104 | Oswego | NY |
| 9124 | BEAR VALLEY SHOPPING CENT | 3100 South Sheridan Blvd | Denver | CO |
| 8684 | TRI STATE MALL | 10 E Route 23 N | Montague | NJ |
| 3989 | MOANALUA SHOPPING CTR | 930 Valkenburgh St | Honolulu | HI |
| 1733 | SOUTHERN CROSSING | 10922 South Memorial Dr | Tulsa | OK |
| 1722 | VALLEY STATION | 1268 South Us189 | Heber | UT |
| 9786 | PINE TREE PLAZA | 550 36Th Ave South West | Altoona | IA |
| 6059 | POPLAR CREEK PLAZA | 305 Leonardwood Dr | Frankfort | KY |
| 3678 | THE PROMENADE | 16255 N Scottsdale Rd | Scottsdale | AZ |
| 8909 | METRO JUNCTION | 4894 Highway 18 West | Jackson | MS |
| 7407 | MCDONOUGH MARKETPLACE | 117 Willow Lane | Mcdonough | GA |
| 5608 | TOWER PLAZA | 1386 S Centerville Rd | Sturgis | MI |
| 8637 | BROOKDALE SQUARE | 22351 Pontiac Trail | South Lyon | MI |
| 1364 | WHITNALL SQUARE | 4698 S Whitnall Avenue | Milwaukee | WI |
| 8771 | MARKS SQUARE | 4600 Mobile Highway #11 | Pensacola | FL |
| 8770 | MIDTOWN SQUARE SHOPPING C | 1573 Gause Boulevard | Slidell | LA |
| 1999 | UNIVERSITY COMMONS | 1930 1St Capitol Drive | St Charles | MO |
| 702 | GAINES MARKETPLACE | 1827 Marketplace Dr Se | Caledonia | MI |
| 2827 | MARKETPLACE S.C. | I-79 & Route 33 | Weston | WV |
| 1300 | FOREST PLAZA WEST BLD 1 | 3207-B Forest Brook Rd | Lynchburg | VA |
| 6138 | TWIN OAKS CENTER | 2001 5Th Street | Silvis | IL |
| 1441 | 1882 3RD AVENUE | 1882 3Rd Avenue | New York | NY |
| 9656 | 3453 JEROME AVE | 3453 Jerome Ave | Bronx | NY |
| 1393 | 1609 WESTCHESTER AVE | 1609 Westchester Ave | Bronx | NY |
| 3841 | 5530 WALNUT STREET | 5530 Walnut Street | Pittsburgh | PA |
| 4340 | CAMP PENDLETON (MINI) | 15100 Camp Pendleton | Camp Pendleton | CA |
| 4360 | FORT BRAGG (82ND) | 82Nd Abn Troop Store | Fort Bragg | NC |
| 4335 | SAN DIEGO NB (DOCKSIDE) | Naval Station | San Diego | CA |
| 4430 | LEMOORE NAS | Building #795 | Lemore Nas | CA |
| 4484 | FORT BLISS (COMM CENTER) | Bldg 20752 Gulf Victory W | El Paso | TX |
| 4354 | MOUNTAIN HOME AFB | 625 Gunfighter Ave | Mountain Home Afb | ID |
| 4322 | BARKSDALE AFB | 455 Curtis Road | Barksdale Afb | LA |
| 4323 | FAIRCHILD AFB | Building 2465 | Fairchild Afb | WA |
| 4356 | VANDENBERG AFB | Building 10400 | Vandenberg Afb | CA |
| 4363 | FORT LEE (PXTRA) | Building 9025 | Fort Lee | VA |
| 4414 | PATUXENT RIVER NAS | 22099 Cuddihy Road | Patuxent River | MD |
| 4456 | LOS ANGELES AFB | 483 N. Aviation Blvd | El Segundo | CA |
| 4339 | EDWARDS AFB | Abx Exchange | Edwards Afb | CA |
| 4404 | SEYMOUR JOHNSON AFB | 1350 Edwards Street | Goldsboro | NC |
| 4398 | BELLE CHASE NAS JRB | 400 Russell Ave | Belle Chasse | LA |
| 4478 | FORT BLISS (MINI) | 13471 Sergeant Major Blvd | El Paso | TX |
| 4418 | HUNTER ARMY AIRFIELD | 130 Haley Ave | Savannah | GA |
| 4462 | BEAUFORT MCAS | Building 1283 Giegor Ave | Beaufort | SC |
| 4352 | F.E. WARREN AFB | 617 Missle Drive | Cheyenne | WY |
| 4304 | DOVER AFB | 266 Galaxy Way | Dover Afb | DE |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 4 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4370 | GULFPORT NCBC | Bldg. 470 | Gulfport | MS |
| 4435 | PORTSMOUTH NAVAL HOSPITAL | Store 39/30 Bldg 3 | Portsmouth | VA |
| 4498 | DYESS AFB | 260 Commissary Road | Abilene | TX |
| 4371 | TYNDALL AFB | 220 Mall Ln Ste 2 | Tyndall Afb | FL |
| 4497 | PARRIS ISLAND MCRD | Building 406 | Parris Island | SC |
| 4361 | EGLIN AFB (MINI) | 4310 77Th Special Forces | Eglin Afb | FL |
| 2328 | CHULA VISTA CENTER | 555 Broadway | Chula Vista | CA |
| 2540 | PEAR TREE SHOPPING CENTER | 532 East Perkins Street | Ukiah | CA |
| 1131 | LOS ALTOS CENTER | 5555 Stearns St | Long Beach | CA |
| 5820 | CLAYTON STATION | 5435H Clayton Road | Clayton | CA |
| 7155 | 66-69 FRESH POND RD | 66-69 Fresh Pond Rd | Ridgewood | NY |
| 7657 | TIMBERHILLS S.C. | 1067 Mono Way | Sonora | CA |
| 6782 | SHOPPES @ FOXCHASE | 4651 Duke St | Alexandria | VA |
| 1856 | NAPA JUNCTION | 6040 Main Street | American Canyon | CA |
| 7690 | MILL POND VILLAGE | 380-Cs Egg Harbor Road | Sewell | NJ |
| 7120 | SOUTHPORT TOWN CENTER | 2050 Town Center Plaza | West Sacramento | CA |
| 3303 | TRI CITY PLAZA | 160 Tri City Road | Somersworth | NH |
| 2707 | THE PROMENADE AT BOLINGBR | 639 E Boughton Rd | Bolingbrook | IL |
| 5511 | BEARDS HILL PLAZA | 971 Beards Hill Road | Aberdeen | MD |
| 6216 | MEADOWVIEW SQUARE | 2500 State Rte 59 Ste # 8 | Kent | OH |
| 1387 | PLAZA PRADOS DEL SUR LOCA | Intersection Of State Rds | Santa Isabel | PR |
| 51 | THE SHOPPES AT CINNAMINSO | 127 Route 130 South | Cinnaminson | NJ |
| 652 | CROSSING AT LISBON | 193 River Road | Lisbon | CT |
| 7895 | LONDON GROVE VILLAGE | 905 Gap Newport Pike | Avondale | PA |
| 3031 | PINE CREEK S.C. | 716-A Freeman Lane | Grass Valley | CA |
| 3945 | FOOD FOR THOUGHT | 45 Northern Boulevard | Greenvale | NY |
| 1245 | PENNISULA CROSSING | 26670 Centerview Drive | Millsboro | DE |
| 2893 | TANTALLON CENTER | 10729 Indian Highway | Fort Washington | MD |
| 2797 | MISSION PLAZA | 1412 N. H Street Suite C | Lompoc | CA |
| 3433 | NORTH PROVIDENCE MARKET | 11 Smithfield Road | North Providence | RI |
| 3719 | TWINSBURG TOWN CENTER | 8934 Darrow Road | Twinsburg | OH |
| 5051 | NISQUALLY PLAZA | 1010 Yelm Ave E | Yelm | WA |
| 9360 | ALDEN BRIDGE SHOPPING CEN | 8000 Research Forest Driv | The Woodlands | TX |
| 8984 | PLAZA DEL OESTE | Ave Casto Perez #313 | San German | PR |
| 2327 | BERLIN CIRCLE PLAZA | 116 Walker Ave | West Berlin | NJ |
| 3028 | SHILOH CENTER | 6400 Hembree Lane | Windsor | CA |
| 1479 | GREENPORT COMMONS | 424 Fairview Ave | Hudson | NY |
| 2254 | NORTH HAVEN PAVILION | 200 Universal Drive North | North Haven | CT |
| 7802 | ROMEOVILLE TOWNE CENTER | 427 North Weber Road | Romeoville | IL |
| 8360 | SUFFOLK SHOPPING CENTER | 4046 Nesconset Hghwy #1B | East Setauket | NY |
| 7624 | GIBBSTOWN S.C. | 401 Harmony Road | Gibbstown | NJ |
| 2474 | MEADOW BROOK CROSSING | 124 State Road 101A | Amherst | NH |
| 6173 | LEXINGTON STATION | 3833 Lexington Avenue | Arden Hills | MN |
| 6512 | VILLAGE COMMONS AT WESLEY | 5922 Weddington Monroe Rd | Wesley Chapel | NC |
| 5387 | DUNLAWTON SQUARE | 3859 South Nova Road | Port Orange | FL |
| 8531 | NEWPORT NORTH SC | 1280 Bison Avenue | Newport Beach | CA |
| 5351 | NEW HOPE CITY CENTER | 4237 Winnetka Ave | New Hope | MN |
| 2765 | REYNOLDA MANOR | 2828 Reynolda Rd Nw | Winston Salem | NC |
| 6292 | GEORGESVILLE SQUARE | 1617 Georgesville Square | Columbus | OH |
| 8710 | SANTA FE SHOPPING CENTER | 13505 South Mur-Len | Olathe | KS |
| 5727 | WINTER SPRINGS TC | 1188 Cliff Rose Dr | Winter Springs | FL |
| 7322 | BATTLE GROUND MARKET CTR | 2210W Main Streetsuite113 | Battle Ground | WA |
| 9859 | SHERWOOD MARKET CENTER | 16008 Sw Tualatin-Sherwoo | Sherwood | OR |
| 6237 | THE VILLAGE IN BLAINE | 4335 Pheasant Ridge Dr | Blaine | MN |
| 1368 | MONROE PLAZA | 19817 State Route 2 | Monroe | WA |
| 7445 | DANIEL'S CROSSING S/C | 6900 Daniels Parkway | Fort Myers | FL |
| 5482 | CORALWOOD MALL | 2301 Del Prado Blvd H-6 | Cape Coral | FL |
| 5573 | COLLEGE PARK SHOPPING CTR | 3455 West 86Th Street | Indianapolis | IN |
| 6524 | NORTH MOUNTAIN VILLAGE | 3431 W Thunderbird Rd | Phoenix | AZ |
| 5855 | YAKIMA 40TH AVE S.C | 1300 N. 40Th Ave. | Yakima | WA |
| 5567 | SHOPS AT MALTA | 15 Kendall Way | Malta | NY |
| 9341 | SAWGRASS PROMENADE | 1335 South Millitary Trai | Deerfield Beach | FL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 5 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 6316 | WATERBURY PLAZA | 152 Chase Ave | Waterbury | CT |
| 2647 | WARETOWN TOWN CENTER | 501 Route 9 Suite 300 | Waretown | NJ |
| 5307 | PENN HILLS CENTER | 28 Federal Drive | Penn Hills | PA |
| 2670 | SAM HOUSTON TC | 12709 Interstate Hwy 45 N | Willis | TX |
| 2094 | PARADISE SHOPPES OF SUMME | 1585 Central Ave | Summerville | SC |
| 322 | BROOKDALE SHOPPING CENTER | 9651-100 Brookdale Drive | Charlotte | NC |
| 7428 | SETH CHILD COMMONS | 830 Commons Place | Manhattan | KS |
| 184 | PALOMAR PLAZA | 961 Palomar Airport Rd | Carlsbad | CA |
| 1865 | ANTIOCH CROSSING S/C | 417 E Il Rte 173 | Antioch | IL |
| 5460 | KMART PLAZA EAST | 4445 Buffalo Road | Erie | PA |
| 3583 | GIG HARBOR NORTH | 11430 51St Ave Nw | Gig Harbor | WA |
| 8831 | SIGNAL MT VILLAGE SC | 541 Signal Mountain Rd - | Chattanooga | TN |
| 2336 | OTTER CREEK S.C. | 248 S. Randall Road | Elgin | IL |
| 1376 | SHOPRITE SHOPPING CENTER | 360 Connecticut Ave | Norwalk | CT |
| 6064 | SUWANNEE PLAZA | 6824 Suwannee Plaza Ln | Live Oak | FL |
| 8364 | WHEATLAND MARKET PLACE | 3108 S. Route 59 | Naperville | IL |
| 1575 | TORRINGTON COMMONS | 225 High Street | Torrington | CT |
| 7619 | SPRINGS VILLAGE S.C. | 3953 S. State Hwy 97 | Sand Springs | OK |
| 8401 | KNOX VILLAGE SQUARE | 1504-B Coshacton Ave | Mt. Vernon | OH |
| 7348 | DESERT MOUNTAIN PLAZA | 4650 Woodrow Bean | El Paso | TX |
| 5171 | NORTHWEST PROMENADE | 6737 Manatee Ave W | Bradenton | FL |
| 7282 | PARKWAY PLAZA | 285 Cumberland Pkwy | Mechanicsburg | PA |
| 3779 | WAHIAWA TOWN CENTER | 935 California Avenue | Wahiawa | HI |
| 6882 | OZARK TOWN CENTER 1 | 1721 S 20Th St | Ozark | MO |
| 2406 | SURPRISE LAKE SQUARE | 900 East Meridian #22 | Milton | WA |
| 5885 | POKEGAMA ROAD | 2046 S Pokegama Ave | Grand Rapids | MN |
| 9190 | WAYNE AVENUE PLAZA | 949 Wayne Avenue | Chambersburg | PA |
| 2166 | NEWPORT COAST PLAZA | 21151 Newport Coast Dr | Newport Beach | CA |
| 7636 | COBB PARKWAY SC | 2774 N Cobb Parkway | Kennesaw | GA |
| 1873 | OVERLAND PLAZA | 9126 Page Avenue | Overland | MO |
| 3926 | NORWALK KORNERS S.C. | 201 Milan Avenue | Norwalk | OH |
| 5537 | NORTHWOOD PLAZA | 1966 Northwood Plaza | Franklin | IN |
| 5430 | TRAIL PLAZA | 1056 S.W. 67Th Ave | Miami | FL |
| 1045 | SHOREGATE S.C. | 30010 Lakeshore Avenue | Willowick | OH |
| 2236 | BROOKGATE SHOPPING CENTER | 5773 Smith Road | Brook Park | OH |
| 7672 | FOUNTAIN OAKS SC | 4920 Roswell Rd | Atlanta | GA |
| 9097 | BLOOMFIELD AVENUE SHOPPES | 6089 Haggerty Road | West Bloomfield | MI |
| 8051 | EDGEWOOD TOWN CENTER | 1725 South Braddock Ave | Pittsburgh | PA |
| 8611 | WEST SHORE PLAZA | 1831 Sherman Blvd | Muskegon | MI |
| 1690 | PRESIDENTIAL PARKWAY PLAZ | 168 Keul Rd | Dixon | IL |
| 626 | PHOENIX CENTER II | 3016 Phoenix Center Drive | Washington | MO |
| 8846 | THE WALNUT GROVE | 4010 University Ave | Madison | WI |
| 6587 | PLAZA SHOPPING CENTER | 1027 South Muskogee | Talequah | OK |
| 27 | LUMBERTON PLAZA | 1636 Rt 38 & Earyestown | Lumberton | NJ |
| 8193 | COLONY SQUARE | 726 East Main Street | Lebanon | OH |
| 1571 | JORDAN LANE | 1416 Berlin Turnpike | Wethersfield | CT |
| 2104 | NAMEOKI VILLAGE | 3455 Nameoki Road | Granite City | IL |
| 7406 | POST COMMONS | 4100 North Wickham Rd | Melbourne | FL |
| 6363 | MERRY MEETING PLACE | 147 Bath Road | Brunswick | ME |
| 6845 | APPLETREE MALL | Orchard View Drive & | Londonderry | NH |
| 8905 | SHOPS AT EAGLE PROMENADE | 3116 E State St | Eagle | ID |
| 75 | MANHATTAN PLACE | 1801 Manhattan Blvd | Harvey | LA |
| 3953 | GEIST CROSSING | 9805 Fall Creek Road | Indianapolis | IN |
| 65 | ONE YANKTON PLACE | 3013 Broadway Ave Suite 4 | Yankton | SD |
| 5578 | MIRASOL WALK | 6231 Pga Blvd | Palm Beach Gardens | FL |
| 6683 | SUGAR CREEK CENTER | 36 Sugar Creek Center | Bella Vista | AR |
| 5921 | SOUTHLAND CROSSINGS | 1220 Doral Rd | Youngstown | OH |
| 6696 | TOWN & COUNTRY S.C. | 494 C.W. Plaza Drive | Columbia City | IN |
| 1883 | MOUNTAIN VIEW VILLAGE | 4608 W Partridgehill Lane | Riverton | UT |
| 5734 | PUBLIX @ FISHHAWK RANCH | 5662 Fishhawk Crossing Bl | Lithia | FL |
| 6536 | INDIAN TRAIL SQUARE | 5739 Preston Hwy | Louisville | KY |
| 835 | BROOKS EDGE PLAZA | 81A South Main Street | Marlboro | NJ |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 6 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 1145 | CIRCLEVILLE PLAZA | 1442 Circleville Plaza Dr | Circleville | OH |
| 6661 | CASTLE ROCK SQUARE | 1163 East Main Street | Price | UT |
| 5919 | LAKEWOOD RANCH TC | 8338 Market Street | Bradenton | FL |
| 3692 | GLENNWOOD COMMONS | 820 Sunbury Rd | Delaware | OH |
| 8695 | LAKESHORE PLAZA | 4137 Mountain Road | Pasadena | MD |
| 6354 | COCOA COMMONS | 2301 State Hgwy #524 | Cocoa | FL |
| 5246 | NORTH STATION S.C. | 1486 Garner'S Station Blv | Raleigh | NC |
| 1266 | SENTRY PLAZA | 10244 W. National Ave | West Allis | WI |
| 5421 | FESTIVAL @ OLD BRIDGE | 12359 Dillingham Square | Lake Ridge | VA |
| 2722 | FLEMING PLACE | 4023 Sw 10Th Street | Topeka | KS |
| 5603 | KROGER CENTER | 2028 S. Highway 53 | Lagrange | KY |
| 528 | MAPLE PARK PLAZA | 283 North Weber Road | Boilingbrook | IL |
| 6761 | ELIZABETHTOWN S.C. | 1575 South Market Street | Elizabethtown | PA |
| 6037 | WHISPERING WOODS PLAZA | 20773 Gibralter | Brownstone | MI |
| 2026 | WESTRIDGE SQUARE | 1059 West Patrick St | Frederick | MD |
| 637 | RANDALL'S CRYSTAL FALLS T | 3501 N Lakeline Blvd | Leander | TX |
| 7794 | SHOPS OF MARCO | 167 S. Barfield Dr | Marco Island | FL |
| 8612 | SOUTH VILLAGE S/C | 1850-C 172Nd Ave | Grand Haven | MI |
| 5374 | SOUTHLAND SC | 6855 Southland Dr | Middleburg Heights | OH |
| 3580 | MINER PLAZA | 2625 N. Mesa | El Paso | TX |
| 2744 | KEYSTONE PLAZA | 3574 Highway 31 South | Pelham | AL |
| 7461 | SHAW'S PLAZA | 770 Roosevelt Trail Road | Windham | ME |
| 5797 | WALTERBORO PLAZA | 321 Bells Highway | Walterboro | SC |
| 1630 | CLIFF LAKE S.C. | 1960 Cliff Lake Road | Eagan | MN |
| 3933 | HOPEWELL CROSSING SC | 800 Denow Road | Hopewell Twp | NJ |
| 5447 | TRADEWINDS SHOPPING CTR | 101457 Us 1 | Key Largo | FL |
| 6783 | MERCHANTS WALK S.C. | 215 Merchant'S Walk S.C. | Summersville | WV |
| 2037 | IMLAY PLAZA | 1801 S. Cedar St | Imlay | MI |
| 355 | PINE RIDGE SQUARE | 1417 West Main St | Gaylord | MI |
| 490 | DOTHAN PAVILION | 4521 Montgomery Highway | Dothan | AL |
| 8560 | ROEBUCK MARKETPLACE | 9172 Parkway East # 15 | Birmingham | AL |
| 2096 | FOX LAKE RETAIL CENTER | 1390 Us Route 12 | Fox Lake | IL |
| 7460 | BELLAIR PLAZA | 2661 North Atlantic Ave | Daytona Beach | FL |
| 847 | HILLCREST SHOPPING CENTER | 233 Hillcrest Shopping Ct | Lower Burrell | PA |
| 2863 | WATSON CROSSING SHOPPING | 33939 La Highway 16 | Denham Springs | LA |
| 2757 | MCCARTY CROSSING | 1026 Main Street | Jackson | OH |
| 6773 | TARGET CENTER | 955 Rockland Rd | Lake Bluff | IL |
| 7325 | BOGEY HILLS PLAZA | 2039 Zumbehl Road | Saint Charles | MO |
| 40 | SHOPS AT VICTORIA | 4109 Houston Highway | Victoria | TX |
| 8807 | GATEWAY COMMONS | 3000 Pepperell Pkwy | Opelika | AL |
| 6240 | HARWOOD CENTRAL VILLAGE | 2101 Harwood Road | Bedford | TX |
| 8934 | OLYMPIAD CENTER | 23052 Alicia Parkway | Mission Viejo | CA |
| 8501 | SHENANDOAH SQUARE | 13704 State Road 84 | Davie | FL |
| 1456 | PARKWAY COMMONS | 3046 Columbia Ave | Franklin | TN |
| 2901 | DEER CREEK CENTER | 3218 Laclede Station Rd | Maplewood | MO |
| 1320 | NEWBERRY POINTE | 144 Newberry Parkway | Etters | PA |
| 2763 | EMBASSY LAKES SHOPPING CE | 2631 N. Hiatus Road | Cooper City | FL |
| 3091 | VILLAGE SHOP CENTER | 1421 Losey Blvd. | La Crosse | WI |
| 9063 | WILLOW OAKS CROSSING | 5011 Weddington Road | Concord | NC |
| 8828 | KENHORST PLAZA | 1895 New Holland Rd | Kenhorst | PA |
| 7465 | HERITAGE MARKETPLACE | 1800 Unser Blvd. Nw | Albuquerque | NM |
| 9610 | NEWTON CROSSROADS | 5340 Ga Hwy 20 | Covington | GA |
| 293 | ALOMA SC | 2275 Aloma Ave | Winter Park | FL |
| 5933 | MABELVALE SHOPPING CENTER | 10101 Mabelvale Plaza Dr | Little Rock | AR |
| 1289 | HASTINGS MARKETPLACE | 1793 Market Blvd | Hastings | MN |
| 3836 | RAPIDS PLAZA | 4551 8Th Street South | Wisconsin Rapids | WI |
| 6318 | MOCKSVILLE TOWN COMMONS | 223 Cooper Creek Dr | Mocksville | NC |
| 8879 | PINECREST PLAZA | 324 Pinecrest Plaza | Morehead | KY |
| 5652 | POTRANCO OAKS VILLAGE | 9230 Potranco Road | San Antonio | TX |
| 8942 | GREAT SOUTH BAY SHP CTR | 709 W Montauk Highway | West Babylon | NY |
| 6125 | LA MARQUE CROSSING | 6608 Gulf Freeway | La Marque | TX |
| 3640 | SEMINOLE CENTER | 3631 Orlando Drive | Sanford | FL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 7 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 8936 | SHOPPES AT TRINITY LAKES | 12472 Sr 54 | Odessa | FL |
| 3512 | PLAZA PALMA REAL | Carr Pr-3, Km 77.8, Int | Humacao | PR |
| 7162 | SAN ANGELO PLAZA | 614 W 29Th St #114 | San Angelo | TX |
| 3429 | EAST VIKING PLAZA | 421 Viking Plaza Dr #500 | Cedar Falls | IA |
| 8957 | 1890 RANCH SHOPPING CTR | 1335 E. Whitestone Blvd | Cedar Park | TX |
| 8964 | CORTLANDT TOWNE CENTER | 3141 East Main Street | Mohegan Lake | NY |
| 1736 | LOWE'S OUTLOT | 2007 Us Highway 27 | Somerset | KY |
| 1371 | NAVY BLVD | 503 N Navy Blvd | Pensacola | FL |
| 6657 | STAFFORD SQUARE S/C | 297 Route 72 W | Manahawkin | NJ |
| 8858 | NORTH POINT VILLAGE | 1456 North Point Village | Reston | VA |
| 318 | PORT CHARLOTTE MARKETPLAC | 19400 Cochran Blvd | Port Charlotte | FL |
| 8878 | DURANT SHOPPING CENTER | 519 University Place | Durant | OK |
| 8568 | PLAZA @ LANDMARK | 6244-F Little River Trnpk | Alexandria | VA |
| 3925 | NORTHEAST PARK SHOPPING C | 210 37Th Avenue N | St. Petersburg | FL |
| 8961 | MIRA MESA MALL | 8250 Mira Mesa Blvd | San Diego | CA |
| 9378 | 5TH AVENUE SHOPS | 1954 Ne 5Th Avenue | Boca Raton | FL |
| 9495 | WILLIAMSBURG DOWNS | 5338 Central Florida Pkwy | Orlando | FL |
| 8405 | 218 FIRST AVE | 218 1St Ave | New York | NY |
| 2943 | 470 THIRD AVENUE/32ND STR | 470 Third Avenue | New York | NY |
| 2907 | 124 8TH AVENUE | 124 8Th Avenue | New York | NY |
| 2930 | 299 BROADWAY | 1St Floor | New York | NY |
| 3301 | 897 8TH AVE | 897 8Th Ave | New York | NY |
| 2884 | 302 CANAL ST | 302 Canal St | New York | NY |
| 2098 | 163 WEST 72ND STREET | 163 West 72Nd Street | New York | NY |
| 7466 | 305 6TH AVE | 305 6Th Ave | New York | NY |
| 1824 | 107 SUMMER STREET | 107 Summer St 1St Fl | Boston | MA |
| 9468 | 2049 86TH ST | 2049 86Th St | Brooklyn | NY |
| 547 | 145 EAST 116TH STREET | 145 East 116Th Street | New York | NY |
| 7243 | STEINWAY STREET | 30-62 Steinway Street | Astoria | NY |
| 7473 | ALAMEDA LANDING | 2610 5Th St | Alameda | CA |
| 2915 | 75-28 37TH AVE | 75-28 37Th Ave | Queens | NY |
| 5058 | 1212 KINGS HIGHWAY | 1212 Kings Highway | Brooklyn | NY |
| 2119 | 313A HARVARD STREET | 313A Harvard St | Brookline | MA |
| 3052 | REGO PARK | 96-16 Queens Blvd. | Rego Park | NY |
| 2162 | CITY CENTER | 2675 Geary Blvd | San Francisco | CA |
| 2850 | 1336 WISCONSIN AVE | 1336 Wisconsin Ave | Washington | DC |
| 5258 | 7017 18TH AVENUE | 7017 18Th Avenue | Brooklyn | NY |
| 6868 | 1003 BISHOP ST | 1003 Bishop St | Honolulu | HI |
| 9967 | 116-06 QUEENS BLVD | 116-06 Queens Blvd | Forest Hills | NY |
| 3958 | 1940 BEACON STREET | 1940 Beacon Street | Brighton | MA |
| 6659 | 247 3RD AVENUE | 247 3Rd Avenue | New York | NY |
| 575 | 14 W. 8TH STREET | 14 W. 8Th Street | Holland | MI |
| 9664 | AMTRAK STATION | 2955 Market St | Philadelphia | PA |
| 3596 | GALLERIA MALL | 1210 S. University | Ann Arbor | MI |
| 2841 | 17 WEST | 1220 17Th Street | Miami Beach | FL |
| 4453 | ELLSWORTH AFB | 2725 Lemay Blvd Bldg 4020 | Ellsworth Afb | SD |
| 4374 | SAN DIEGO MCRD | 3800 Chosin Ave | San Diego | CA |
| 4364 | FORT HAMILTON | 123 General Lee Ave | Brooklyn | NY |
| 4349 | HANSCOM AFB | 100 Eglin Street | Bedford | MA |
| 4405 | COLUMBUS AFB | Bldg #160 | Columbus Afb | MS |
| 4443 | HOMESTEAD ARS | 29242 Coral Sea Blvd | Homestead Afb | FL |
| 3744 | INTERNATIONAL MARKET PLAC | 2330 Kalakaua Avenue | Honolulu | HI |
| 33 | WILLOW BROOK MALL | 1524 Willow Brook Mall | Wayne | NJ |
| 737 | WOODFIELD MALL | 5 Woodfield Mall | Schaumburg | IL |
| 327 | PARK PLACE | 5870 East Broadway | Tucson | AZ |
| 816 | STONERIDGE MALL | 1304 Stoneridge Mall Road | Pleasanton | CA |
| 7125 | PALISADES CENTER | 3490 Palisades Center Dr | West Nyack | NY |
| 3695 | WESTFIELD OAKRIDGE | 925 Blossom Hill | San Jose | CA |
| 3547 | BAYSHORE MALL | 3300 Broadway | Eureka | CA |
| 2015 | KING OF PRUSSIA PLAZA | 160 North Gulph Road | King Of Prussia | PA |
| 5076 | APACHE MALL | 646 Apache Mall | Rochester | MN |
| 439 | EASTRIDGE MALL | 2200 Eastridge Loops | San Jose | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 8 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 436 | SUN VALLEY MALL | 112A Sun Valley Mall | Concord | CA |
| 90 | NORTHPARK MALL | 101 North Rangeline | Joplin | MO |
| 444 | MONTCLAIR PLAZA | 5090 Montclair Plaza Lane | Montclair | CA |
| 1255 | STONESTOWN GALLERIA | 3251 20Th Avenue | San Francisco | CA |
| 232 | WESTFIELD SOUTH SHORE | 1701 Sunrise Highway | Bay Shore | NY |
| 1436 | FLORIDA MALL | 8001 S Orange Blossom Tra | Orlando | FL |
| 342 | CROSS CREEK MALL | 419 Cross Creek Mall | Fayetteville | NC |
| 9836 | PANORAMA CITY MALL | 8401 Van Nuys Blvd | Panorama City | CA |
| 60 | SMITH HAVEN MALL | 110 Smith Haven Mall | Lake Grove | NY |
| 5213 | PARK MEADOWS TOWN CENTER | 8505 Park Meadows Center | Lone Tree | CO |
| 505 | WHITE OAKS MALL | 2501 W. Wabash Ave. | Springfield | IL |
| 5581 | WESTFIELD FASHION SQUARE | 14006 Riverside Drive | Sherman Oaks | CA |
| 3659 | MALL OF LOUISIANA | 6401 Bluebonnet Blvd | Baton Rouge | LA |
| 85 | CAPE COD MALL | 769 Iyanough Road | Hyannis | MA |
| 862 | DESERT SKY MALL | 7611 West Thomas Road | Phoenix | AZ |
| 2471 | THE WESTCHESTER | 125 Westchester Ave | White Plains | NY |
| 843 | CONNECTICUT POST | 1201 Boston Post Road | Milford | CT |
| 5203 | SQUARE ONE MALL | 1201 Broadway Drive | Saugus | MA |
| 1452 | ROGUE VALLEY MALL | 1600 North Riverside | Medford | OR |
| 492 | SOUTH HILL MALL | 3500 S. Meridian | Puyallup | WA |
| 50 | WESTLAND MALL | 1675 West 49Th Street | Hialeah | FL |
| 784 | CROSSROADS MALL | 6650 South Westnedge | Portage | MI |
| 1032 | TUCSON MALL | 4500 North Oracle Road | Tucson | AZ |
| 388 | OCEAN COUNTY MALL | 1201 Hooper Avenue | Toms River | NJ |
| 35 | PARK CITY CENTER | 581 Park City Center | Lancaster | PA |
| 468 | WOODLAND HILLS MALL | 7021 South Memorial | Tulsa | OK |
| 1444 | MARLEY STATION | 7900 Governor Ritchie Hwy | Glen Burnie | MD |
| 73 | KINGS PLAZA SHOPPING CTR | 5283 Kings Plaza | Brooklyn | NY |
| 5591 | VISALIA MALL | 2157 South Mooney Blvd | Visalia | CA |
| 1219 | SCOTTSDALE FASHION SQ | 7014 E Camelback Rd | Scottsdale | AZ |
| 718 | ACADIANA MALL | 5725 Johnston | Lafayette | LA |
| 1098 | WINDWARD MALL | 46056 Kam Highway | Kaneohe | HI |
| 285 | SOUTHLAKE MALL | 2014 Southlake Mall | Merrillville | IN |
| 1506 | LANSING MALL | 5234 West Saginaw Hwy | Lansing | MI |
| 7792 | STONEWOOD CENTER | 173 Stonewood | Downey | CA |
| 1602 | APPLE BLOSSOM MALL | 1850 Apple Blossom Drive | Winchester | VA |
| 1062 | ARDEN FAIR MALL | 1689 Arden Way | Sacramento | CA |
| 2654 | HUDSON MALL | Rt 440 | Jersey City | NJ |
| 245 | SOUTHPARK MALL | 4600 16 Street | Moline | IL |
| 380 | NORTH RIVERSIDE PARK | 7501 West Cermak Road | North Riverside | IL |
| 1502 | PENN SQUARE MALL | 2078 Penn Square | Oklahoma City | OK |
| 386 | HANES MALL | 3320 Silas Creek Parkway | Winston-Salem | NC |
| 1251 | WESTFIELD PALM DESERT | 72840 Highway Iii | Palm Desert | CA |
| 377 | QUAKER BRIDGE MALL | 150 Quaker Bridge Mall | Lawrenceville | NJ |
| 326 | SANTA ROSA MALL | 300 Mary Esther Cutoff | Mary Esther | FL |
| 1583 | CHICO MALL | 1950 E. 20Th Street | Chico | CA |
| 412 | INLAND CENTER | 154 Inland Center Dr | San Bernardino | CA |
| 9548 | NORTHLAKE MALL | 6801 Northlake Mall Dr | Charlotte | NC |
| 406 | CHERRYVALE MALL | 7200 Harrison Ave | Rockford | IL |
| 1036 | WILLOWBROOK MALL | 1658 Willowbrook Mall | Houston | TX |
| 7693 | FLAT IRON CROSSING MALL | 1 Flat Iron Circle | Broomfield | CO |
| 693 | HICKORY POINT MALL | 1395 Hickory Point Mall | Forsyth | IL |
| 3879 | FRANCIS SCOTT KEY | 5500 Buckeystown Pike | Frederick | MD |
| 314 | COUNTRYSIDE MALL | 27001 Us Highway 19 North | Clearwater | FL |
| 5186 | MONMOUTH S.C. | 180 Route 35 South | Eatontown | NJ |
| 1420 | MCKINLEY MALL | 3601 Mckinley Parkway | Buffalo | NY |
| 178 | LIVINGSTON MALL | 112 Eisenhower Parkway | Livingston | NJ |
| 163 | SUNRISE MALL | 6073 Sunrise Mall | Citrus Heights | CA |
| 7685 | POLARIS FASHION PLACE | 1500 Polaris Parkway | Columbus | OH |
| 923 | EASTWOOD MALL | 5555 Youngstown-Warren Rd | Niles | OH |
| 8682 | NORTHTOWN MALL | N 4750 Division Street | Spokane | WA |
| 1627 | ROSEDALE CENTER | 10 Rosedale Center | Roseville | MN |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx        Page 9 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 269 | MILLCREEK MALL | Space #160 | Erie | PA |
| 392 | OAK PARK MALL | 11161 West 95Th Street | Overland Park | KS |
| 3055 | RIDGEDALE CENTER | 12505 Wayzata Blvd. | Minnetonka | MN |
| 369 | OAKDALE MALL | 3111 E. Main Street | Johnson City | NY |
| 1434 | TOWN CENTER AT COBB | 400 Earnest Barrett Pkwy | Kennesaw | GA |
| 340 | ORANGE PARK MALL | 1910 Wells Rd | Orange Park | FL |
| 773 | OAKLAND MALL | 422 W 14 Mile Rd | Troy | MI |
| 1395 | WIREGRASS COMMONS MALL | 900 Common Ave | Dothan | AL |
| 1039 | GREAT NORTHERN MALL | 232 Great Northern Mall | North Olmsted | OH |
| 147 | CITY CREEK CENTER | 51 South Main St | Salt Lake City | UT |
| 1440 | EDEN PRAIRIE CENTER | 8251 Flying Cloud Drive | Eden Prairie | MN |
| 1169 | YORKTOWN SHOPPING CENTER | 203 Yorktown S/C | Lombard | IL |
| 6294 | MACARTHUR CENTER | 300 Monticello Avenue | Norfolk | VA |
| 9395 | THE SHOPS AT WILLOW RD | 6121 W Park Blvd | Plano | TX |
| 55 | SOUTHERN PARK MALL | 7401 Market St | Youngstown | OH |
| 3703 | CAPITAL MALL | 625 Black Lake Blvd Sw | Olympia | WA |
| 5378 | CASCADE MALL | 414 Cascade Mall | Burlington | WA |
| 571 | SOUTHLAND MALL | 20505 South Dixie Highway | Miami | FL |
| 2752 | SANTA MARIA TOWN CTR | 222 Town Center East | Santa Maria | CA |
| 9564 | GALLERIA AT SOUTH BAY | 1815 Hawthorne Blvd | Redondo Beach | CA |
| 226 | FASHION SQUARE MALL | 4724 Fashion Square Mall | Saginaw | MI |
| 7295 | PACIFIC VIEW | 3301 E. Main Street | Ventura | CA |
| 1427 | NORTHTOWNE MALL | 1500 N Clinton St | Defiance | OH |
| 204 | NORTHTOWN SHOPPING CENTER | 275 Northtown Dr | Blaine | MN |
| 110 | SOUTHRIDGE MALL | 5300 S 76Th Street | Greendale | WI |
| 2803 | LAKELINE MALL | 11200 Lakeline Mall Blvd | Cedar Park | TX |
| 1546 | SUPERSTITION SPRINGS | 6555 East Southern Ave. | Mesa | AZ |
| 874 | LYNNHAVEN MALL | 701 Lynnhaven Pkwy | Virginia Beach | VA |
| 510 | WESTLAND MALL | 550 South Gear Ave | West Burlington | IA |
| 37 | KENNEDY MALL | 555 John F Kennedy Road | Dubuque | IA |
| 166 | BELTWAY PLAZA | 6080 Green Belt Road | Greenbelt | MD |
| 310 | CUMBERLAND MALL | Delsea Drive & Route 47 | Vineland | NJ |
| 190 | CONCORD MALL | 4737 Concord Pike | Wilmington | DE |
| 8420 | CENTER AT SALISBURY | 2300 N. Salisbury Blvd. | Salisbury | MD |
| 7898 | WESTFIELD BROWARD | 8000 W. Broward Blvd | Plantation | FL |
| 500 | THE COMMONS AT FEDERAL WA | 1823 South Commons | Federal Way | WA |
| 2641 | HUTCHINSON MALL | 1060 Highway 15 South | Hutchinson | MN |
| 1449 | PEMBROKE MALL | 4554 Virginia Beach Blvd | Virginia Beach | VA |
| 641 | MEADOWS | 4300 Meadows Lane | Las Vegas | NV |
| 3390 | SOLOMON POND MALL | 601 Donald Lynn Blvd | Marlborough | MA |
| 481 | THE SHOPS AT ITHACA MALL | 40 Catherwood Road | Ithaca | NY |
| 3438 | SOUTHSIDE MALL | Rd 2 Southside | Oneonta | NY |
| 820 | FAIR OAKS MALL | 11850 U Fair Oaks Road | Fairfax | VA |
| 2848 | BUFFALO MALL | 2400-8Th Ave Sw | Jamestown | ND |
| 1421 | COLUMBIA MALL | 2300 Bernadette Dr. | Columbia | MO |
| 7090 | WAKEFIELD MALL | Tower Hill Road & | Wakefield | RI |
| 159 | WESTFIELD NORTH COUNTY | 200 East Via Rancho Parkw | Escondido | CA |
| 799 | OLD HICKORY MALL | 2021 North Highland Ave | Jackson | TN |
| 503 | MONTGOMERY MALL | 712 Montgomery Mall | North Wales | PA |
| 1265 | JEFFERSON VALLEY MALL | 650 Lee Boulevard | Yorktown Hgts | NY |
| 636 | CARY TOWNE CENTER | 1105 Walnut Street | Cary | NC |
| 1469 | MID RIVER MALL | 1080 Mid Rivers Mall Driv | Saint Peters | MO |
| 1578 | WESTFIELD MERIDEN | 470 Lewis Avenue | Meriden | CT |
| 38 | MARION CENTRE S/C | 1475 Marion Waldo Rd | Marion | OH |
| 5883 | BAY CITY TOWN CENTER | 4101 Wilder Road | Bay City | MI |
| 809 | THE GALLERY AT SOUTH DEKA | 24 South Dekalb Mall | Decatur | GA |
| 1425 | VILLAGE MALL | 2917 Vermillion St | Danville | IL |
| 836 | QUAIL SPRINGS MALL | 2501 West Memorial Road | Oklahoma City | OK |
| 5498 | MERIDAN MALL | 1982 West Grand River | Okemos | MI |
| 3105 | WILTON MALL | 3065 Rte 50 Space B-12 | Saratoga Springs | NY |
| 5138 | THE LAKES MALL | 5600 Harvey Road | Muskegon | MI |
| 224 | NORTHWOODS MALL | 2200 War Memorial Drive | Peoria | IL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx                    Page 10 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 1472 | HAMILTON MALL | 4403 Black Horse Pike | Mays Landing | NJ |
| 277 | VOLUSIA MALL | 1700 W Internatl Sdwy Blv | Daytona Beach | FL |
| 1352 | TOWSON TOWN CENTER | 825 Dulaney Valley Road | Towson | MD |
| 5411 | THE GALLERY AT THE HARBOR | 200 East Pratt St | Baltimore | MD |
| 1666 | SALEM CENTER | 480 Center Street Ne | Salem | OR |
| 8882 | FASHION PLACE MALL | 6191 State St | Murray | UT |
| 2662 | VILLAGE SQUARE MALL | 83 Village Square Mall | Effingham | IL |
| 1592 | ENFIELD SQUARE MALL | 90 Elm Street | Enfield | CT |
| 41 | COURTLAND CENTER | 4190 East Court St | Burton | MI |
| 9443 | WINONA MALL | 1213 Gilmore Ave | Winona | MN |
| 9788 | MERLE HAY MALL | 3800 Merle May Mall | Des Moines | IA |
| 1076 | CRYSTAL RIVER MALL | 1801 Nw Hwy 19 | Crystal River | FL |
| 353 | FOX VALLEY MALL | 2356 Fox Valley Center | Aurora | IL |
| 1448 | GOLF MILL SHOPPING CENTER | 247 Golf Mill Center | Niles | IL |
| 2432 | SANTA ROSA MALL | Pr 2 | Bayamon | PR |
| 414 | FAIRLANE TOWN CENTER | 18900 Michigan Avenue | Dearborn | MI |
| 9956 | EDGEWATER PLAZA | 2600 Beach Blvd | Biloxi | MS |
| 3904 | THUNDERBIRD MALL | 1421 B 12Th Ave S | Virginia | MN |
| 1111 | EAST HILLS MALL | 3700 Frederick Ave | St. Joseph | MO |
| 1471 | THE MALL OF MONROE | 2121 N Monroe St | Monroe | MI |
| 291 | INDEPENDENCE CENTER | 18813 East 39Th St South | Independence | MO |
| 9014 | OAKWOOD SHOPPING CENTER | 197 West Bank Expressway | Terrytown | LA |
| 701 | SEMINOLE TOWNE CENTER | 200 Towne Center Circle | Sanford | FL |
| 25 | ALMEDA MALL | 12200 Gulf Freeway | Houston | TX |
| 501 | RIDGMAR MALL | 2178 Green Oaks Road | Fort Worth | TX |
| 208 | LINDALE MALL | 4444 First Ave N E | Cedar Rapids | IA |
| 3591 | HOLIDAY VILLAGE MALL | 1753 Highway 2 W | Havre | MT |
| 5584 | PARAMUS PARK MALL | 2040 Paramus Park Mall | Paramus | NJ |
| 5642 | MARSHFIELD MALL | 503 East Ives Street | Marshfield | WI |
| 3169 | OLD ORCHARD MALL | 4999 Old Orchard Center | Skokie | IL |
| 514 | MALL ST. VINCENT | 1133 St. Vincent #110 | Shreveport | LA |
| 5264 | WESTFIELD SARASOTA SQUARE | 8201 S Tamiami Trail | Sarasota | FL |
| 695 | PARADISE VALLEY MALL | 4550 East Cactus Rd. | Phoenix | AZ |
| 3082 | STEEPLEGATE | 270 Louden Road | Concord | NH |
| 5028 | LEE PREMIUM OUTLETS | 50 Water Street | Lee | MA |
| 5139 | TANGER OUTLET CENTER DAYT | 1100 Cornerstone Blvd | Daytona Beach | FL |
| 8903 | TANGER OUTLETS @ THE ARCH | 1387 The Arches Circle | Deer Park | NY |
| 2776 | OUTLETS OF DES MOINES | 545 Bass Pro Drive Nw | Altoona | IA |
| 3776 | THE OUTLET SHOPPES AT LAR | 1600 Water Street | Laredo | TX |
| 5026 | TANGER OUTLET CENTER JEFF | 8000 Factory Shops Blvd | Jeffersonville | OH |
| 3613 | NEBRASKA CROSSING OUTLET | 21355 Nebraska Crossing D | Gretna | NE |
| 3745 | LOUISIANA BOARDWALK OUTLE | 490 Boardwalk Blvd | Bossier City | LA |
| 3600 | EMPIRE OUTLETS | 35B Richmond Terrace | Staten Island | NY |
| 8804 | OUTLETS AT CORPUS CHRISTI | 500 North Ih 69 | Robstown | TX |
| 1124 | LAGUNA 99 PLAZA | 8451 Elk Grove Blvd | Elk Grove | CA |
| 3220 | VINTAGE OAKS | 120 Vintage Way | Novato | CA |
| 7995 | HERTITAGE PARK PLAZA | 448 North Main Street | East Longmeadow | MA |
| 14 | CENTURY CENTER | 353 Memorial Blvd | West Springfield | MA |
| 8672 | VILLAGE SHOPS | 95 Washington Street | Canton | MA |
| 8527 | UNIVERSITY CENTER | 4237 Campus Drive | Irvine | CA |
| 9959 | ESPLANADE SHOPPING CENTER | 365 West Esplanade Drive | Oxnard | CA |
| 9637 | BLUE STAR SHOPPING CENTER | 1701 Rt 22 West | Watchung | NJ |
| 5587 | SULLY PLAZA | 13936 Lee Jackson Hwy | Chantilly | VA |
| 2355 | SHOPS @ DUNES ON MONTEREY | 130 General Stilwell Dr | Marina | CA |
| 8558 | ARLINGTON SHOPPING CENTER | 804 Us Highway 46 | Parsippany | NJ |
| 7338 | WAREHAM CROSSING | 2421 Cranberry Hwy | Wareham | MA |
| 8974 | LANTANA SQUARE | 206 Lantana Drive | Hokessin | DE |
| 5916 | GREAT LAKES MALL | 7850 Mentor Avenue | Mentor | OH |
| 47 | THE SHOPS AT LA CANTERA | 15900 La Cantera Pkwy | San Antonio | TX |
| 6604 | PARROT PLAZA | 1401 W. North Avenue | Melrose Park | IL |
| 8232 | WESTFORD PLAZA | 175 Littleton Rd | Westford | MA |
| 2726 | CATHEDRAL VILLAGE | 69185 Ramon Road | Cathedral City | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx            Page 11 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 5125 | ARLINGTON SQUARE | 4725 Reed Road | Columbus | OH |
| 971 | PAVILIONS PLACE | 16420 Beach Blvd | Westminster | CA |
| 8314 | MORGAN HILL SHOPPING CENT | 1057 Cochrane Rd | Morgan Hill | CA |
| 7432 | HIGHLAND COMMONS | 56 Highland Commons East | Hudson | MA |
| 7884 | CROSS POINT CENTRE | 101 E. Alex Bell Rd | Centerville | OH |
| 9737 | COPPER TREE PLAZA | 350 Ramapo Valley Rd | Oakland | NJ |
| 1135 | NORTHBOROUGH CROSSING | 9113 Shops Way | Northborough | MA |
| 8731 | SILVERNAIL SHOPPING CENTE | 2116 Silvernail Rd | Pewaukee | WI |
| 8357 | TRIANGLE SHOPPING CENTER | 20 Triangle Center | Yorktown Heights | NY |
| 585 | WOODBURN PLAZA SHOPPING C | 3040 Sprague Lane | Woodburn | OR |
| 8566 | ROCKFORD PLAZA | 4190 Vinewood Lane | Plymouth | MN |
| 9230 | THE ORCHARD TOWN CENTER | 14583 Orchard Parkway | Westminster | CO |
| 5221 | COMMERCE TOWN CENTER | 3050 Union Lake Rd | Commerce | MI |
| 7876 | THE SHOPPES AT HAWK RIDGE | 6115 Ronald Reagan Drive | Lake St. Louis | MO |
| 8733 | RIVERVIEW WEST MARKETPLAC | 3770 W. Mcfadden Ave | Santa Ana | CA |
| 2724 | GIBBS CROSSING | 350 Palmer Rd | Ware | MA |
| 9963 | SHARP'S PLAZA | 175 Route 70 East | Medford | NJ |
| 9107 | COTTONWOOD SHOPPING CENTE | 1100 S. Hwy 260 #17A | Cottonwood | AZ |
| 9353 | PORT PLAZA | 45 Storey Ave | Newbury Port | MA |
| 1379 | CURRY HOLLOW CENTER | 314 1/2 Curry Hollow Dr | Pleasant Hills | PA |
| 3515 | EDMOND CROSSING S.C. | 72 S.E. 33Rd Street | Edmond | OK |
| 9184 | TRAVER VILLAGE | 2627 Plymouth Road | Ann Arbor | MI |
| 1048 | CRYSTAL CITY SHOPS @1750 | 1670 Crystal Sq Arcade | Arlington | VA |
| 3619 | WAYLAND TOWN CENTER | 77 Andrew Ave | Wayland | MA |
| 559 | MUNDELEIN CROSSINGS | 3022 Route 60 | Mundelein | IL |
| 1558 | SHOPPES @ PGH MILLS | 2015 Pgh Mills Blvd | Tarentum | PA |
| 5167 | WALMART LAFAYETTE | 1217 Diamond Circle | Lafayette | CO |
| 1618 | MIDDLESEX S.C. | 1342 Eastern Blvd. | Baltimore | MD |
| 1348 | SUNRISE VILLAGE SHOPPING | 4776 East Sunrise Drive | Tucson | AZ |
| 5823 | WEST MARKET SC | 109 S Parket Street - 109 | Olathe | KS |
| 7371 | SPRING CREEK JUNCTION | 681 South Green Bay Road | Neenah | WI |
| 8069 | WINDSOR COMMONS | 3143 Cape Horn Road | Red Lion | PA |
| 6997 | SOUTHGATE PLAZA | 3501 S Tamiami Trail | Sarasota | FL |
| 1691 | PADUCAH TOWNE CENTER | 3216 Irvin Cobb Drive | Paducah | KY |
| 7493 | RIVER HILL VILLAGE CENTER | 6030 Daybreak Circle | Clarksville | MD |
| 8941 | FALLS GROVE VILLAGE CTR | 14933 F Shady Grove Rd | Rocville | MD |
| 3270 | SOUNDVIEW MARKETPLACE | 20 Soundview Marketplace | Port Washington | NY |
| 8954 | GREENTREE ROAD S/C | 1969 Greentree Rd | Pittsburgh | PA |
| 9258 | MALL @ SIERRA VISTA | 2200 El Marcado Loop | Sierra Vista | AZ |
| 9256 | WHITTWOOD TOWN CENTER | 15702 Whittwood Lane | Whittier | CA |
| 9178 | TROPICANA BELTWAY CENTER | 5130 S. Ft Apache Rd | Las Vegas | NV |
| 6775 | THE SHOPPES AT OLD BRIDGE | 3849 Us Highway 9 | Old Bridge | NJ |
| 3894 | NIAGARA CONSUMER SQUARE | 7314 Niagara Falls Blvd | Niagara Falls | NY |
| 9338 | SHEEPSHEAD BAY | 1710 Sheepshead Bay Rd | Brooklyn | NY |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 12 of 12

## EXHIBIT B

**Final Order**

26664179.2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GNC HOLDINGS, INC., *et al.*, | ) Case No. 20-11662 (___) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) Re. Docket Nos.__ & ___ |

## FINAL ORDER GRANTING DEBTORS' MOTION FOR
## INTERIM AND FINAL ORDERS (A) APPROVING PROCEDURES
## FOR STORE CLOSING SALES, (B) AUTHORIZING CUSTOMARY
## BONUSES TO MANAGERS OF STORES, (C) AUTHORIZING ASSUMPTION
## OF THE CONSULTING AGREEMENTS AND (D) GRANTING RELATED RELIEF

Upon the motion (the "***Motion***")[2] of the Debtors for a final order (this "***Final Order***"), (a) authorizing and approving the conduct of store closing or similar themed sales (the "***Store Closings***") in accordance with the terms of the U.S. and Canadian store closing sale procedures (the "***U.S. Store Closing Procedures***" and the "***Canadian Store Closing Procedures***", respectively, and, together, the "***Store Closing Procedures***") attached hereto as **Exhibit 1**, with such sales to be free and clear of all liens, claims and encumbrances; (b) authorizing the Debtors to pay customary bonuses to non-insider managers of the stores where Store Closing sales will occur; (c) authorizing the Debtors to assume the Consulting Agreements; and (d) granting related

---

[1]  The debtors in these Chapter 11 Cases, along with the last four digits of each debtor's United States federal tax identification number, if applicable, or other applicable identification number, are:  GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2295); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234).  The debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

relief, all as more fully set forth in the Motion; and this Court having reviewed the Motion, the First Day Declaration, and the Interim Order entered on ____, 2020; and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and this Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and consideration of the Motion and the relief requested therein being a core proceeding under 28 U.S.C. § 157(b)(2); and this Court having authority to enter a final order consistent with Article III of the United States Constitution; and venue being proper before this Court under 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the First Day Declaration and all of the proceedings before this Court; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

## FOUND AND DETERMINED THAT:[3]

A.      The Debtors have advanced sound business reasons for seeking to implement the Store Closing Procedures and assume the Consulting Agreements, as set forth in the Motion and at the Hearing, and such relief is in the best interests of the Debtors and their estates.

B.      The Store Closing Procedures are reasonable, and the conduct of the Store Closings in accordance with the applicable Store Closing Procedures will provide an efficient means for the Debtors to dispose of the Merchandise and the FF&E and will maximize the returns on the Merchandise and the FF&E.

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact where appropriate.

26664179.2

C.      The Consulting Agreements were negotiated, proposed, and entered into by the Debtors and the Consultant without collusion, in good faith, and from arm's-length bargaining positions, and the operation and effectiveness of the Consulting Agreements on a final basis is a sound exercise of the Debtors' business judgment.

D.      The Store Closings are in the best interest of the Debtors' estates.

E.      The entry of this Final Order is in the best interest of the Debtors and their estates, creditors, and interest holders and all other parties in interest herein; and now therefore it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed, to make payments under the Store Closing Bonus Plan.

3.      The Debtors and the Consultant are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.  The failure to specifically include any provisions of the Consulting Agreements in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Consulting Agreements and all of their provisions, payments, and transactions be, and hereby are, authorized and approved as and to the extent provided in this Final Order.

4.      The assumption of the Consulting Agreements by the Debtors pursuant to section 365 of the Bankruptcy Code is approved on a final basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreements, including making payments required by the Consulting Agreements to the Consultant without the need for any application of the Consultant or a further order of the Court.

5.      To the extent of any conflict between this Final Order, the Consulting Agreements, and the Store Closing Procedures, the terms of this Final Order shall control.  Notwithstanding any other term of this Final Order, the Canadian Store Closing Procedures and the Canadian Sale Guidelines shall control in respect of Store Closings in Canada.

## I.      AUTHORITY TO ENGAGE IN CLOSING SALES AND CONDUCT STORE CLOSINGS.

6.      The Debtors and the Consultant are authorized, on a final basis pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue to conduct Store Closings at the Closing Stores in accordance with this Final Order, the applicable Store Closing Procedures, and the Consulting Agreements as may be modified by a Side Letter (as defined below) between the Debtors and the landlords at the closing locations.

7.      The Store Closing Procedures are approved in their entirety on a final basis.  The Store Closing Procedures shall be used for all permitted Store Closings in these Chapter 11 Cases, unless otherwise ordered.

8.      The Debtors are authorized to discontinue operations at the Closing Stores in accordance with this Final Order, the applicable Store Closing Procedures, and the Consulting Agreements.

9.      All entities that are presently in possession of some or all of the Merchandise or FF&E in which the Debtors hold an interest that are or may be subject to this Final Order hereby are directed to surrender possession of such Merchandise or FF&E to the Debtors.

10.      Neither the Debtors nor any of their officers, employees, or agents shall be required to obtain the approval of any third party, including, without limitation, any Governmental Unit (as defined in Bankruptcy Code section 101(27)) or landlord, to conduct the Store Closings and to take the related actions authorized herein.

26664179.2

## II.    CONDUCT OF THE SALES.

11.    All media in which the Store Closings may be advertised and all landlords are directed to accept this Final Order as binding authority so as to authorize the Debtors and the Consultant to conduct the Store Closings and the sale of Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), including, without limitation, to conduct and advertise the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) in the manner contemplated by and in accordance with this Final Order, the Store Closing Procedures, and the Consulting Agreements.

12.    The Debtors and the Consultant are hereby authorized to take such actions as may be necessary and appropriate to conduct the Store Closings without necessity of further order of this Court as provided in this Final Order, the Store Closing Procedures, and the Consulting Agreements, including, but not limited to, advertising the sale as a "store closing sale," "sale on everything," "everything must go," or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall closing locations, and at enclosed mall closing locations to the extent the applicable closing location entrance does not require entry into the enclosed mall common area), use of signwalkers, and street signage; *provided*, *however*, that only Debtor-approved terminology will be used at each Closing Store in connection with the Store Closings.

13.    Pursuant to the U.S. Consulting Agreement, and subject to the Debtors' prior written approval, the Consultant is authorized to supplement the Merchandise in the Closing Stores with Additional Consultant Goods pursuant to the Debtors' prior written approval of a plan with respect to the placement and sale of such Additional Consultant Goods, and provided that any such supplementing with Additional Consultant Goods must be of like kind and no lesser quality than goods sold in the Closing Stores prior to the Petition Date.    Sales of Additional Consultant Goods

shall be run through the Debtors' cash register systems; provided, however, that the Consultant shall mark the Additional Consultant Goods using either a "dummy" SKU or department number or in such other manner so as to distinguish the sale of Additional Consultant Goods from the sale of Merchandise.

14.     Pursuant to the U.S. Consulting Agreement, all transactions relating to the Additional Consultant Goods are, shall be construed as, and are acknowledged by the Debtors to be, a true consignment from Consultant to the Debtors under Article 9 of the Uniform Commercial Code in effect in the State of Delaware (the "*UCC*") and not a consignment for security purposes. At all times and for all purposes, the Additional Consultant Goods and their proceeds shall be the exclusive property of the Consultant, and no other person or entity (including, without limitation, the Debtors, or any third person claiming a security interest in the Debtors' property, including any of the Debtors' secured lenders) shall have any claim against any of the Additional Consultant Goods or the proceeds thereof.   The Additional Consultant Goods shall at all times remain subject to the exclusive control of the Consultant. Pursuant to the U.S. Consulting Agreement, and to the extent necessary, Consultant is hereby granted a first priority security interest in and lien upon (i) the Additional Consultant Goods and (ii) the Additional Consultant Goods proceeds.

15.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), to the extent that, prior to the final hearing, disputes arise during the course of such sale regarding laws regulating the use of sign-walkers, banners, or other advertising and the Debtors are unable to resolve the matter consensually, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled initially no

later than the earlier of (a) the final hearing, or (b) within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

16.     The sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) shall be conducted by the Debtors notwithstanding any restrictive provision of any lease, sublease, restrictive covenant, or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Store Closings (including the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement)) and the rejection of leases, abandonment of assets, or "going dark" provisions, and such provisions shall not be enforceable in conjunction with the Store Closings.    Breach of any such provisions in these Chapter 11 Cases in conjunction with the Store Closings shall not constitute a default under a lease or provide a basis to terminate the lease; *provided* that the Store Closings are conducted in accordance with the terms of this Final Order and the applicable Store Closing Procedures.  Subject to the approval of Debtors' secured lenders, including the Ad Hoc Group of Crossover Lenders and the Ad Hoc FILO Term Lender Group, the Debtors and landlords of the Closing Stores are authorized to enter into agreements ("*Side Letters*") between themselves modifying the Store Closing Procedures without further order of the Court and such Side Letters shall be binding as among the Debtors and any such landlords.   In the event of any conflict between the Store Closing Procedures and any Side Letter, the terms of such Side Letter shall control.  The Expense Budget attached to each of the Consulting Agreements may only be modified according to the procedures provided by the respective Consulting Agreements and after consultation with counsel to the Ad Hoc Group of Crossover Lenders and counsel to the Ad Hoc FILO Term Lender Group.

17.     Except as expressly provided for herein or in the Store Closing Procedures, and except with respect to any Governmental Unit (as to which paragraphs 25 and 26 shall apply) no person or entity, including, but not limited to, any landlord, licensor, service provider, utility, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Store Closings or the sale of the Merchandise, FF&E, or Additional Consultant Goods (with respect to the U.S. Consulting Agreement), or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such sales, and all such parties and persons of every nature and description, including, but not limited to, any landlord, licensor, service provider, utility, and creditor and all those acting for or on behalf of such parties, are prohibited and enjoined from (a) interfering in any way with, obstructing, or otherwise impeding the conduct of the Store Closings, and/or (b) instituting any action or proceeding in any court (other than this Court) or administrative body seeking an order or judgment against, among others, the Debtors, or the landlords at the Closing Stores that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Store Closings or other liquidation sales at the Closing Stores and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease, license, or contract based upon any relief authorized herein.

18.     In accordance with and subject to the terms and conditions of the Consulting Agreements, the Consultant shall have the right to use the Closing Stores and all related Closing Store services, furniture, fixtures, equipment, and other assets of the Debtors for the purpose of conducting the Store Closings, free of any interference from any entity or person, subject to compliance with the applicable Store Closing Procedures and this Final Order.

26664179.2

19.     All sales of the Merchandise, FF&E and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) shall be "as is" and final.  Returns related to the purchase of Store Assets shall not be accepted at stores that are not participating in the Store Closings. However, as to the Closing Stores, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."

20.     The Consultant shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors before the commencement of the Store Closings in accordance with the Debtors' gift certificate and gift card policies and procedures as they existed on the Petition Date, and accept returns of merchandise sold by the Debtors before the commencement of the Store Closings for the first thirty (30) days of the Store Closings, provided that such returns are otherwise in compliance with the Debtors' return policies in effect as of the Petition Date.

21.     The Consultant shall not be liable for sales taxes except with respect to the Additional Consultant Goods (with respect to the U.S. Consulting Agreement), and as expressly provided in the Consulting Agreements, and the payment of any and all sales taxes is the responsibility of the Debtors, subject to Consultant's obligation to collect and remit the sales taxes attributable to the sale of Additional Consultant Goods pursuant to the U.S. Consulting Agreement. The Debtors are directed to remit all taxes arising from the Store Closings to the applicable Governmental Units as and when due; *provided* that in the case of a *bona fide* dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the applicable Governmental Unit.   For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other

party, other than the applicable Governmental Unit for which the sales taxes are collected. This Final Order does not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under state law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under state law.

22.     Pursuant to section 363(f) of the Bankruptcy Code, the Consultant, on behalf of the Debtors, is authorized to sell Store Assets—and all sales of Store Assets whether by the Consultant or the Debtors, shall be—free and clear of any and all of any liens, claims, encumbrances, assignments, preferences, debts, easements, charges, suits, licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), licenses, covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax, labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights, and claims, to the fullest extent of the law, in each case, of any kind or nature (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material, statutory or non-statutory, matured or unmatured, legal or equitable (collectively, "***Encumbrances***"); as provided for herein because in each case, one or more of the standards set forth in section 363(f)(1)–(5) has been satisfied; *provided*, *however*, that any such Encumbrances shall attach to the proceeds of the sale of the Merchandise and the FF&E with the same validity, in the amount, with the same priority as, and to the same extent that any such Encumbrances have with respect to the Merchandise and the FF&E, subject to any claims and

defenses that any party may possess with respect thereto and subject to the Consultant's and expenses (as provided in the Consulting Agreements).

23.     No FF&E sold or abandoned by the Debtors will contain personal and/or confidential information about the Debtors' employees and/or customers.

24.     The Debtors are authorized and empowered to transfer Merchandise, FF&E and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) among, and into, the Closing Stores.

## III.    DISPUTE RESOLUTION PROCEDURES WITH GOVERNMENTAL UNITS.

25.     Nothing in this Final Order, or the Store Closing Procedures, releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) to which any entity would be subject as the owner, lessor, lessee, or operator of the property after the date of entry of this Final Order.  Nothing contained in this Final Order, or the Store Closing Procedures shall in any way: (a) diminish the obligation of any entity to comply with environmental laws; or (b) diminish the obligations of the Debtors to comply with environmental laws consistent with its rights and obligations as debtor in possession under the Bankruptcy Code. The Store Closings shall not be exempt from laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic, and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "*General Laws*").  Nothing in this Final Order, the Consulting Agreements, or the Store Closing Procedures, shall alter or affect obligations to comply with all applicable federal safety laws and regulations.   Nothing in this Final Order shall be deemed to bar any Governmental Unit (as such term is defined in section 101(27) of the Bankruptcy Code) from enforcing General Laws, subject to the Debtors' rights to assert in that forum or before this

Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code or this Final Order. Notwithstanding any other provision in this Final Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Final Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Final Order shall be deemed to have made any rulings on any such issues.

26.     To the extent that the sale of Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement) is subject to any Liquidation Sale Laws, including any federal, state or local statute, ordinance, or rule, or licensing requirement directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws, laws restricting safe, professional and non- deceptive, customary advertising such as signs, banners, posting of signage, and use of sign- walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits, or bulk sale restrictions that would otherwise apply solely to the sale of the Merchandise, FF&E, and Additional Consultant Goods (with respect to the U.S. Consulting Agreement), the Dispute Resolution Procedures in this section shall apply:

    a.    Provided that the Store Closings are conducted in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures, and in light of the provisions in the laws of many Governmental Units (as defined in the Bankruptcy Code) that exempt court-ordered sales from their provisions, the Debtors will be presumed to be in compliance with any Liquidation Sale Laws and are authorized to conduct the Store Closings in accordance with the terms of the Interim Order or the Final Order, as applicable, and the applicable Store Closing Procedures without the necessity of further showing compliance with any such Liquidation Sale Laws.

    b.    Within three business days after entry of the Interim Order, the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order, the proposed Final Order and the Store Closing Procedures on the following: (i) the landlords for the Closing Stores; (ii) the Attorney General's office for each state in which the Store Closings are being held; (iii) the county consumer protection agency or

26664179.2

12

similar agency for each county in which the Store Closings are being held; (iv) the division of consumer protection for each state in which the Store Closings are being held; and (v) the chief legal counsel for each local jurisdiction in which the Store Closings are being held (collectively, the "***Dispute Notice Parties***").

c.    With respect to any additional Closing Stores, within three business days after Court authorization to close additional stores (each, an "***Additional Closing Store List***"), the Debtors will serve by email, facsimile, or first-class mail, copies of the Interim Order or Final Order, as applicable, and the Store Closing Procedures on the Dispute Notice Parties. To the extent that there is a dispute arising from or relating to the Store Closings, the Interim Order, the proposed Final Order, or the Store Closing Procedures, as applicable, which dispute relates to any Liquidation Sale Laws (a "***Reserved Dispute***"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within ten days following entry of the Interim Order or service of any Additional Closing Store List, as applicable, any Governmental Unit may assert that a Reserved Dispute exists by sending a notice (the "***Dispute Notice***") explaining the nature of the dispute to: (a) proposed counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill (mnestor@ycst.com; kcoyle@ycst.com; and jmulvihill@ycst.com) and Latham & Watkins LLP, 330 North Wabash Avenue, Suite 2800, Chicago, IL 60611, Attn: Caroline Reckler, Asif Attarwala, and Brett Newman (caroline.reckler@lw.com; asif.attarwala@lw.com; brett.newman@lw.com); (b) the U.S. Trustee, 844 King Street, Suite 2207, Lock Box 35, Wilmington, DE 19801, Attn: Jane Leamy (jane.m.leamy@usdoj.gov); (c) counsel to the DIP Term Agent, Dorsey & Whitney LLP, 51 West 52nd Street, New York, NY 10019, Attn: Erin E. Trigg and Samuel S. Kohn (trigg.erin@dorsey.com and kohn.samuel@dorsey.com); (d) counsel to the Ad Hoc Group of Crossover Lenders, Milbank LLP, 2029 Century Park East, 33rd Floor, Los Angeles, CA 90067, Attn: Mark Shinderman (mshinderman@milbank.com) and Daniel B. Denny (ddenny@milbank.com); (e) counsel to the DIP ABL FILO Agent, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn: Sandy Qusba, Daniel L. Biller, and Jamie Fell (squsba@stblaw.com, daniel.biller@stblaw.com, and jamie.fell@stblaw.com); (f) counsel to the Ad Hoc FILO Term Lender Group, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Andrew N. Rosenberg, Jacob Adlerstein, and Douglas R. Keeton (arosenberg@paulweiss.com, jadlerstein@paulweiss.com, and dkeeton@paulweiss.com); and (ii) Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, Delaware 19801, Attn: Richard S. Cobb (cobb@lrclaw.com); (g) the indenture trustee for the Debtors' prepetition convertible notes, The Bank of New York Mellon Trust Company, N.A., 525 William Penn Place, 38th Floor, Pittsburgh, PA 15259, Attn: Corporate Trust Administration and BNY Mellon Corporate Trust, US Corporate Client Service Management, 500 Ross Street, 12th Floor, Pittsburgh, PA 15262, Attn: Mindy M. Wrzesinski (Melinda.m.wrzesinski@bnymellon.com); (h) lead counsel to the Consultant, Tiger Capital Group, 60 State Street, 11th Floor, Boston, MA 02109,

Attn: Mark P. Naughton (MNaughton@tigergroup.com); and (i) counsel to any statutory committee appointed in these Chapter 11 Cases.  If the Debtors and the Governmental Unit are unable to resolve the Reserved Dispute within 15 days after service of the Dispute Notice, the Governmental Unit may file a motion with the Court requesting that the Bankruptcy Court resolve the Reserved Dispute (a "***Dispute Resolution Motion***").

d.      In the event that a Dispute Resolution Motion is filed, nothing in the Interim Order or the Final Order, as applicable, shall preclude the Debtors, a landlord, or any other interested party from asserting (i) that the provisions of any Liquidation Sale Laws are preempted by the Bankruptcy Code, or (ii) that neither the terms of the Interim Order or the Final Order nor the conduct of the Debtors pursuant to the Interim Order or the Final Order violates such Liquidation Sale Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of the Interim Order or the Final Order or to limit or interfere with the Debtors' ability to conduct or to continue to conduct the Store Closings pursuant to the Interim Order or the Final Order, absent further order of the Court.  Upon the entry of the Interim Order or the Final Order, as applicable, the Court grants authority for the Debtors to conduct the Store Closings pursuant to the terms of the Interim Order or the Final Order, as applicable, the Store Closing Procedures and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit will be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Sale Laws or the lack of any preemption of such Liquidation Sale Laws by the Bankruptcy Code.  Nothing in the Interim Order or the Final Order will constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

e.      If, at any time, a dispute arises between the Debtors and a Governmental Unit as to whether a particular law is a Liquidation Sale Law, and subject to any provisions contained in the Interim Order or the Final Order related to the Liquidation Sale Laws, then any party to that dispute may utilize the provisions of subparagraphs (c) and (d) above by serving a notice to the other party and proceeding thereunder in accordance with those subparagraphs.  Any determination with respect to whether a particular law is a Liquidation Sale Law shall be made *de novo.*

27.    Subject to paragraphs 25 and 26 above, each and every federal, state, or local agency, departmental unit, or Governmental Unit with regulatory authority over the Store Closings, and all newspapers and other advertising media in which the Store Closings are advertised shall consider the Final Order as binding authority that no further approval, license, or permit of any Governmental Unit shall be required, nor shall the Debtors be required, to post any bond, to conduct the Store Closings.

26664179.2

28.     Within three business days of the Final Order, the Debtors shall serve copies of the Final Order, and the Store Closing Procedures via e-mail, facsimile, or regular mail, on: (a) the United States Trustee for the District of Delaware; (b) counsel for the agent for the Debtors' postpetition financing facility; (c) counsel to the Ad Hoc Group of Crossover Lenders; (d) counsel to the Ad Hoc FILO Term Lender Group; (e) counsel to the agent under the Debtors' secured term and asset-based financing facilities; (f) the indenture trustee for the Debtors' prepetition convertible notes; (g) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (h) the United States Attorney's Office for the District of Delaware; (i) the attorneys general for all 50 states and the District of Columbia; (j) the United States Department of Justice; (k) the Internal Revenue Service; (l) the Securities and Exchange Commission; (m) the United States Drug Enforcement Agency; (n) the United States Food and Drug Administration; (o) all parties who are known by the Debtors to assert liens against the Merchandise and the FF&E; (p) all state attorneys general in which the Merchandise and the FF&E are located; (q) municipalities in which the Merchandise and the FF&E are located; (r) all of the counterparties to the Debtors' real property leases; (s) all applicable state and consumer protection agencies; and (t) all parties requesting notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## IV.     EFFECTIVENESS OF THE CONSULTING AGREEMENTS.

29.     The Consulting Agreements are operative and effective on a final basis.  The Debtors are authorized to act and perform in accordance with the terms of the Consulting Agreements, including, without limitation, reimbursing all expenses to the Consultant as required by the Consulting Agreements without the need for any application of the Consultant or a further order of the Court.  For avoidance of doubt, the Debtors are also authorized to fund the Expense Budgets in accordance with the terms of each of the Consulting Agreements.

30.     Subject to the restrictions set forth in this Final Order and the applicable Store Closing Procedures, the Debtors and the Consultant are hereby authorized to take any and all actions as may be necessary or desirable to implement the Consulting Agreements and the Store Closings, and each of the transactions contemplated by the Consulting Agreements, and any actions taken by the Debtors and the Consultant necessary or desirable to implement the Consulting Agreements and the Store Closings prior to the date hereof, are hereby approved and ratified.  The failure to specifically include any particular provision of the Consulting Agreements in this Final Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Consulting Agreements and all of their provisions, payments, and transactions, be and hereby are authorized and approved as and to the extent provided for in this Final Order.

31.     Notwithstanding anything to the contrary in the Consulting Agreements, the Debtors and their estates shall not indemnify the Consultant for any damages arising primarily out of any act or omission by the Consultant constituting fraud, gross negligence, or willful misconduct.

32.     To the extent that the Debtors seek to conduct Store Closings at any location not identified as a Closing Store on Exhibit 2 attached hereto (each an "***Additional Closing Store***"), the Debtors shall (a) first consult with the DIP Term Agent and the DIP ABL FILO Agent, and use commercially reasonable efforts to consult with the Ad Hoc Group of Crossover Lenders and the Ad Hoc FILO Term Lender Group, (b) file an Additional Closing Store List, and (c) serve a notice of their intent to conduct Store Closings at those locations on the Additional Closing Store landlords, counsel to the Ad Hoc Group of Crossover Lenders, counsel to the Ad Hoc FILO Term Lender Group, and applicable governmental units by email (to the extent available to the Debtors) or by overnight mail.  The Additional Closing Store landlords shall have seven (7) days after

service of the applicable Additional Closing Store List to object to the application of this Final Order to their store locations.  If no timely objections are filed with respect to the application of this Final Order to any store locations identified on any Additional Closing Store List, then the Debtors shall be authorized, pursuant to section 105(a) and section 363(b)(1) of the Bankruptcy Code, to conduct Store Closings at such store locations in accordance with this Final Order, the applicable Store Closing Procedures, the Consultant Agreement, and any Side Letter.  If any objections are filed with respect to the application of this Final Order to any store locations identified on any Additional Closing Store List and such objections are not resolved, the objections and the application of this Final Order to any affected store locations shall be considered by the Court at the next regularly scheduled omnibus hearing.

33.    On a confidential basis and for professionals' "eyes only" and upon the written (including email) request of the U.S. Trustee, the agent for the Debtors' postpetition financing facility, the Ad Hoc Group of Crossover Lenders, the agent under the Debtors' secured term and asset-based financing facilities, the Ad Hoc FILO Term Lender Group, the indenture trustee for the Debtors' prepetition convertible notes, or the committee of unsecured creditors, if any, the Debtors shall provide such requesting party, if any, with copies of periodic reports concerning the Store Closings that are prepared by the Debtors, their professionals or the Consultant, provided, however, that the foregoing shall not require the Debtors, their professionals, or the Consultant to prepare or undertake to prepare any additional or new reporting not otherwise being prepared by the Debtors, their professionals, or the Consultant in connection with the Store Closings.

## V.    OTHER PROVISIONS.

34.    The Consultant shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Consultant, in each case, other than as expressly provided for in the Consulting Agreements.

26664179.2

35.     The Debtors shall not be required to comply with any state or local law requiring that the Debtors pay an employee substantially contemporaneously with his or her termination; *provided*, *however*, that the Debtors shall pay any accrued wages to terminated employees as expeditiously as possible.

36.     Nothing in the Motion or this Final Order, or the Debtors' payment of any claims pursuant to this Final Order, shall be construed as: (i) an admission as to the validity of any claim against any Debtor or the existence of any lien against the Debtors' properties; (ii) a waiver of the Debtors' rights to Dispute any claim or lien on any grounds; (iii) a promise to pay any claim; (iv) an implication or admission that any particular claim would constitute an allowed claim; (v) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code (other than the Consulting Agreements); or (vi) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Final Order.  Nothing contained in this Final Order shall be deemed to increase, decrease, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

37.     Notwithstanding anything contained in the Motion or this Final Order, any payment made, and any authorization of the Debtors contained herein shall be subject to the terms and conditions contained in any interim or final orders entered by this Court authorizing the Debtors to obtain debtor-in-possession financing and/or authorizing the use of cash collateral (each such order, a "***DIP Order***"), the documentation in respect of any such debtor-in-possession financing or use of cash collateral, and any budget in connection with any such debtor-in-possession financing and/or use of cash collateral.  To the extent there is any inconsistency between the terms of the DIP Order and any action taken or proposed to be taken hereunder, the terms of the DIP

Order shall control; *provided*, *however*, that with respect to amounts due to the Consultant pursuant to the Consultant Agreements paid solely from proceeds of sales of the Merchandise and the FF&E, the DIP Order and any budget attached thereto shall not constitute or require a cap or reduction on amounts due to the Consultant under the Consulting Agreements other than any such cap or reduction resulting from the Consultant's required compliance with the applicable Expense Budget.

38.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

39.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable this Final Order shall be effective and enforceable immediately upon entry hereof.

40.     The Debtors are authorized and empowered to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

41.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order, including, but not limited to, (a) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and sign-walker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional, and non-deceptive manner, (b) any claim of the Debtors, the landlords for protection from interference with the Store Closings, (c) any other disputes related to the Store Closings, and (d) protection of the Debtors against any assertions of any liens, claims, encumbrances, and other interests.  No such parties or person shall take any action against the Debtors, the landlords, or the Store Closings until this Court has resolved such

dispute.   This Court shall hear the request of such parties or persons with respect to any such

disputes on an expedited basis, as may be appropriate under the circumstances.

  Dated: _____, 2020
            Wilmington, Delaware

                                        _____
                                        United States Bankruptcy Judge

## **EXHIBIT 1**

**Store Closing Procedures**

## U.S. Store Closing Procedures[1]

1.     These U.S. Store Closing Procedures shall control the Store Closings in the United States.

2.     The Store Closings shall be conducted so that the stores in which Store Closings are to occur will remain open no longer than during the normal hours of operation or such hours as otherwise provided for in the respective leases for the Closing Stores.

3.     The Store Closings shall be conducted in accordance with applicable state and local "Blue Laws," where applicable, so that no Store Closing shall be conducted on Sunday unless the Debtors had been operating such Closing Stores on a Sunday prior to the commencement of the Store Closings.

4.     On "shopping center" property, the Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any Closing Stores' premises, unless permitted by the lease or if distribution is customary in the "shopping center" in which such Closing Store is located; provided that the Consultant may solicit customers in the Closing Stores themselves.   On "shopping center" property, the Consultant shall not use any flashing lights or amplified sound to advertise the Store Closings or solicit customers, except as permitted under the applicable lease or agreed to by the landlord.

5.     At the conclusion of the Store Closings, the Consultant shall, subject to the Consulting Agreements, vacate the Closing Stores in broom clean condition; *provided* that Consultant may abandon any FF&E not sold in the Store Closings at the conclusion of the Store Closings, without cost or liability of any kind to the Consultant.  The Debtors will have the option to remove the FF&E at their own cost prior to the termination date.  Any abandoned FF&E left in a Closing Store after a lease is rejected shall be deemed abandoned to the landlord having a right to dispose of the same as the landlord chooses without any liability whatsoever on the part of the landlord to any party and without waiver of any damage claims against the Debtors.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant may abandon, in place and without further responsibility or liability of any kind, any FF&E.

6.     The Consultant and the Debtors may advertise each Store Closing as a "store closing," "sale on everything," "everything must go," or similar themed sale, and to the extent permitted in the Interim Order or Final Order, as applicable, "going out of business".  The Consultant and the Debtors may also have "countdown to closing" signs prominently displayed in a manner consistent with these Store Closing Procedures.  All signs, banners, ads and other advertising collateral, promotions, and campaigns will be approved by the Debtors in accordance with these Store Closing Procedures.

---

[1]     Capitalized terms used but not defined in these U.S. Store Closing Procedures have the meanings given to them in the Final Order to which these U.S. Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Final Order is attached as **Exhibit B**, as applicable.

7.      The Consultant shall be permitted to utilize sign walkers, display, hanging signs, and interior banners in connection with the Store Closings; *provided* that such sign walkers, display, hanging signs, and interior banners shall be professionally produced and hung in a professional manner.  The Debtors and the Consultant shall not use neon or day-glo on its sign walkers, display, hanging signs, or interior banners.  Furthermore, with respect to enclosed mall locations, no exterior signs or signs in common areas of a mall shall be used unless otherwise expressly permitted in these Store Closing Procedures.  In addition, the Debtors and the Consultant shall be permitted to utilize exterior banners at (i) non-enclosed mall stores and (ii) enclosed mall stores to the extent the entrance to the applicable store does not require entry into the enclosed mall common area; *provided*, however, that such banners shall be located or hung so as to make clear that the Store Closings are being conducted only at the affected Closing Stores, and shall not be wider than the storefront of the Closing Stores.  In addition, the Debtors and the Consultant shall be permitted to utilize sign walkers in a safe and professional manner and in accordance with the terms of the Interim Order or Final Order, as applicable.   Nothing contained in these Store Closing Procedures shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease agreement.

8.      Conspicuous signs shall be posted in the cash register areas of each of the affected Closing Stores to the effect that "all sales are final."

9.      Except with respect to the hanging of exterior banners, the Consultant shall not make any alterations to the storefront or exterior walls of any Closing Stores, except as authorized by the applicable lease.

10.      The Consultant shall not make any alterations to interior or exterior Closing Stores' lighting, except as authorized by the applicable lease.  No property of the landlord of a Closing Store shall be removed or sold during the Store Closings.  The hanging of exterior banners or in-store signage and banners shall not constitute an alteration to a Closing Store.

11.      The Consultant shall keep Closing Stores' premises and surrounding areas clean and orderly consistent with present practices.

12.      Subject to the provisions of the Consulting Agreements, the Consultant shall have the right to use and sell all FF&E.  The Consultant may advertise the sale of the FF&E in a manner consistent with these guidelines.  The purchasers of any FF&E sold during the Store Closings shall be permitted to remove the FF&E either through the back or alternative shipping areas at any time, or through other areas after applicable business hours, *provided, however* that the foregoing shall not apply to *de minimis* FF&E sales made whereby the item can be carried out of the Closing Stores in a shopping bag.  For the avoidance of doubt, as of the Sale Termination Date, the Consultant and the Debtors may abandon, in place and without further responsibility, any FF&E.

13.      At the conclusion of the Store Closings at each Closing Store, pending assumption or rejection of applicable leases, the landlords of the Closing Stores shall have reasonable access to the Closing Stores' premises as set forth in the applicable leases.   The Debtors, the Consultant, and their representatives and agents shall continue to have access to the Closing Stores as provided for in the Consulting Agreements.

14.     The rights of landlords against the Debtors for any damages to a Closing Store shall be reserved in accordance with the provisions of the applicable lease.

15.     If and to the extent that the landlord of any Closing Store affected hereby contends that the Debtors or the Consultant is in breach of or default under these Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors, the Ad Hoc Group of Crossover Lenders, the Ad Hoc FILO Term Lender Group, and the Consultant as follows:

If to the Debtors:

300 Sixth Avenue,
Pittsburgh, Pennsylvania 15222
Attn: Amy Nathan

with copies (which shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Michael R. Nestor & Kara Hammond Coyle

-and-

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Richard A. Levy & Caroline A. Reckler

If to the Ad Hoc Group of Crossover Lenders:

Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Attn:  Mark Shinderman & Daniel B. Denny

If to the Ad Hoc FILO Term Lender Group:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attn: Andrew Rosenberg & Jacob Adlerstein

If to the Consultant:

Tiger Capital Group

60 State Street, 11th Floor
Boston, MA 02109
Attn: Mark P. Naughton

with copies (which shall not constitute notice) to:

Great American Group, LLC
21255 Burbank Blvd., Suite 400
Woodland Hills, CA 91367
Attn: Scott K. Carpenter and Marina Fineman

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

## <u>Canadian Store Closing Procedures</u>[2]

These Canadian Store Closing Procedures shall control the Store Closings in Canada.  Each of the U.S. Store Closing Procedures and the Canadian Sale Guidelines are incorporated by reference herein, as described herein.

The Canadian Store Closing Procedures shall be conducted pursuant to the U.S. Store Closing Procedures and the Canadian Sale Guidelines (attached as Exhibit A hereto), as each may be modified hereby; provided, however, that in the event of a conflict between the terms of the U.S. Store Closing Procedures and the terms of the Canadian Sale Guidelines, the terms of the Canadian Sale Guidelines shall control.

If and to the extent that the landlord of any Closing Store in Canada affected hereby contends that the Debtors or the Consultant is in breach of or default under these Canadian Store Closing Procedures, such landlord shall email or deliver written notice by overnight delivery to the Debtors, the Ad Hoc Group of Crossover Lenders, the Ad Hoc FILO Term Lender Group, and the Consultant as follows:

<u>If to the Debtors</u>:

300 Sixth Avenue,
Pittsburgh, Pennsylvania 15222
Attn: Amy Nathan

with copies (which shall not constitute notice) to:

Young Conaway Stargatt & Taylor, LLP
Rodney Square, 1000 North King Street
Wilmington, DE 19801
Attn: Michael R. Nestor & Kara Hammond Coyle

-and-

Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Attn: Richard A. Levy & Caroline A. Reckler

-and-

Torys LLP
79 Wellington St. W., 30th Floor
Box 270, TD South Tower

---

[2]  Capitalized terms used but not defined in these Canadian Store Closing Procedures have the meanings given to them in the Final Order to which these Canadian Store Closing Procedures are attached as **Exhibit 1** or the Motion to which the Final Order is attached as **Exhibit B**, as applicable.

26664179.2

Toronto, ON  M5K 1N2
Attn: Scott A. Bomhof & Adam M. Slavens

If to the Ad Hoc Group of Crossover Lenders:

Milbank LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Attn:  Mark Shinderman & Daniel B. Denny

-and-

Cassels Brock & Blackwell LLP
Suite 2100, Scotia Plaza, 40 King St. W.
Toronto, ON Canada M5H 3C2 Canada
Attn: R. Shayne Kukulowicz & Ryan C. Jacobs

If to the Ad Hoc FILO Term Lender Group:

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Attn: Andrew Rosenberg & Jacob Adlerstein

If to the Consultant:

Tiger Capital Group
60 State Street, 11th Floor
Boston, MA 02109
Attn: Mark P. Naughton

with copies (which shall not constitute notice) to:

Great American Group, LLC
21255 Burbank Blvd., Suite 400
Woodland Hills, CA 91367
Attn: Scott K. Carpenter and Marina Fineman

If the parties are unable to resolve the dispute, either the landlord or the Debtors shall have the right to schedule a hearing before the Court on no less than five (5) days' written notice to the other party, served by email or overnight delivery.

26664179.2

6

# Exhibit A

## Canadian Sale Guidelines

The following procedures shall apply to the Sale to be conducted at the Stores of General Nutrition Centres Company (the "***Merchant***"). All terms not herein defined shall have the meaning set forth in the Consulting Agreement by and between a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (collectively with their respective U.S. affiliates, the "***Consultant***") and the Merchant dated as of June 18, 2020 (the "***Consulting Agreement***").

1.　Except as otherwise expressly set out herein, and subject to: (i) the orders granted or issued in the Merchant's bankruptcy case (the "***Bankruptcy Case***") in the United States of America under Chapter 11 of the United States Bankruptcy Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the District of Delaware (the "***Court***") and the Merchant's ancillary proceedings (the "***CCAA Proceedings***") in Canada under Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "***CCAA***") before the Ontario Superior Court of Justice (Commercial List) (individually, an "***Order***", and, collectively, the "***Orders***"); or (ii) any subsequent written agreement between the Merchant and the applicable landlord(s) (individually, a "***Landlord***" and, collectively, the "***Landlords***") and approved by each of the Consultant and Information Officer in writing, or (iii) as otherwise set forth herein, the Sale shall be conducted in accordance with the terms of the applicable leases/or other occupancy agreements to which the affected Landlords are privy for each of the affected Stores (individually, a "***Lease***" and, collectively, the "***Leases***"). However, nothing contained herein shall be construed to create or impose upon the Merchant or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

2.　The Sale shall be conducted so that each of the Stores remains open during its normal hours of operation provided for in its respective Lease until the respective Sale Termination Date for such Store. The Sale at the Stores shall end by no later than the Sale Termination Date. Rent payable under the respective Leases shall be paid in accordance with the terms of the Orders, as applicable**.**

3.　The Sale shall be conducted in accordance with applicable federal, provincial and municipal laws and regulations, unless otherwise set out herein or otherwise ordered by the Court.

4.　All display and hanging signs used by the Consultant in connection with the Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Notwithstanding anything to the contrary contained in the Leases, the Consultant may advertise the Sale at the Stores as an "everything on sale", an "everything must go", a "store closing" or similar theme sale at the Stores (provided however that no signs shall advertise the Sale as a "bankruptcy", a "going out of business" or a "liquidation" sale it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used). Forthwith upon written request from a Landlord, the Landlord's counsel, the Merchant or the Information Officer, the Consultant shall provide the proposed signage

packages along with the proposed dimensions and number of signs (as approved by the Merchant pursuant to the Consulting Agreement) by e-mail to such Landlord(s) or to their counsel of record and the Information Officer. Where the provisions of the Lease conflict with these Canadian Sale Guidelines, these Canadian Sale Guidelines shall govern**.** The Consultant shall not use neon or day-glow or handwritten signage (unless otherwise contained in the sign package, including "you pay" or "topper" signs). In addition, the Consultant shall be permitted to utilize exterior banners/signs at stand alone or strip mall Stores or enclosed mall Stores with a separate entrance from the exterior of the enclosed mall, provided, however, that where such banners are not explicitly permitted by the applicable Lease and the Landlord requests in writing that the banners are not to be used, no banners shall be used absent further Order of the Court. Any banners used shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the premises occupied by the affected Store. All exterior banners shall be professionally hung and to the extent that there is any damage to the façade of the premises of a Store as a result of the hanging or removal of the exterior banner, such damage shall be professionally repaired at the expense of the Consultant. If a Landlord is concerned with "store closing" signs being placed in the front window of a Store or with the number or size of the signs in the front window, the Consultant and the Landlord will discuss the Landlord's concerns and work to resolve the dispute.

5.  The Consultant shall be permitted to utilize sign walkers and street signage; provided, however, such sign walkers and street signage shall not be located on the shopping centre or mall premises.

6.  The Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized pursuant to the applicable Lease. The hanging of exterior banners or other signage, where permitted in accordance with the terms of these guidelines, shall not constitute an alteration to a Store.

7.  Conspicuous signs shall be posted in the cash register areas of each Store to the effect that all sales are "final".

8.  The Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any of the Stores on any Landlord's property, unless permitted by the applicable Lease or, if distribution is customary in the shopping centre in which the Store is located. Otherwise, the Consultant may solicit customers in the Stores themselves. The Consultant shall not use any giant balloons, flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable Lease, or agreed to by the Landlord, and no advertising trucks shall be used on a Landlord property or mall ring roads, except as explicitly permitted under the applicable Lease or agreed to by the Landlord.

9.  At the conclusion of the Sale in each Store, the Consultant shall arrange that the premises for each Store are in "broom-swept" and clean condition, and shall arrange that the Stores are materially in the same condition as on the commencement of the Sale, ordinary wear and tear excepted. No property of any Landlord of a Store shall be removed or sold during the Sale**.** No permanent fixtures (other than FF&E which for clarity is owned by the

Merchant) may be removed without the applicable Landlord's written consent unless otherwise provided by the applicable Lease. Any fixtures or personal property left in a Store after the Sale Termination Date in respect of which the applicable Lease has been disclaimed by the Merchant shall be deemed abandoned, with the applicable Landlord having the right to dispose of the same as the Landlord chooses, without any liability whatsoever on the part of the Landlord.

10. Subject to the terms of paragraph 9 above, the Consultant may sell Offered FF&E which is located in the Stores during the Sale. The Merchant and the Consultant may advertise the sale of Offered FF&E consistent with these guidelines on the understanding that any applicable Landlord may require that such signs be placed in discreet locations acceptable to the applicable Landlord, acting reasonably. Additionally, the purchasers of any Offered FF&E sold during the Sale shall only be permitted to remove the Offered FF&E either through the back shipping areas designated by the applicable Landlord, or through other areas after regular store business hours, or through the front door of the Store during store business hours if the Offered FF&E can fit in a shopping bag, with applicable Landlord's supervision as required by the applicable Landlord. The Consultant shall repair any damage to the Stores resulting from the removal of any Offered FF&E by Consultant or by third party purchasers of Offered FF&E from Consultant.

11. The Merchant hereby provides notice to the Landlords of the Merchant and the Consultant's intention to sell and remove Offered FF&E from the Stores. The Merchant will arrange a walk through with each Landlord that requests a walk through with the Consultant to identify the Offered FF&E subject to the sale. The relevant Landlord shall be entitled to have a representative present in the Store to observe such removal. If the Landlord disputes the Consultant's entitlement to sell or remove any FF&E under the provisions of the Lease, such FF&E shall remain on the premises and shall be dealt with as agreed between the Merchant, the Consultant and such Landlord, or pursuant to the dispute resolution section of the Canadian Store Closing Procedures. If the Merchant has rejected the Lease governing such Store in accordance with the Bankruptcy Code, it shall not be required to pay rent under such Lease pending resolution of any such dispute (other than rent payable for the notice period provided for under the Bankruptcy Code), and the rejection of the Lease shall be without prejudice to the Merchant's or Consultant's claim to the FF&E in dispute.

12. If a rejection notice is delivered to a Landlord pursuant to the Bankruptcy Code while the Sale is ongoing and the Store in question has not yet been vacated, then: (a) during the notice period prior to the effective time of such rejection, the applicable Landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Merchant and the Consultant 24 hours' prior written notice; and (b) at the effective time of the rejection, the relevant Landlord shall be entitled to take possession of any such Store without waiver of or prejudice to any claims or rights such Landlord may have against the Merchant in respect of such Lease or Store, provided that nothing herein shall relieve such Landlord of its obligation to mitigate any damages claimed in connection therewith.

26664179.2

13. The Consultant and its agents and representatives shall have the same access rights to the Stores as the Merchant under the terms of the applicable Lease, and the applicable Landlords shall have the rights of access to the Stores during the Sale provided for in the applicable Lease (subject, for greater certainty, to any applicable stay of proceedings).

14. The Merchant and the Consultant shall not conduct any auctions of Merchandise or Offered FF&E at any of the Stores.

15. The Consultant shall designate a party to be contacted by the Landlords should a dispute arise concerning the conduct of the Sale. The initial contact person for the Consultant shall be Daniel Richer who may be reached by phone at 416-865-4445 or email at dricher@fasken.com. Contact persons for the Merchant and the Information Officer are set out in the Canadian Store Closing Procedures. If the parties are unable to resolve the dispute between themselves, the notice and dispute sections of the Canadian Store Closing Procedures shall be followed by the parties. For the duration of any such dispute, the Consultant shall cease all activity in dispute other than activity expressly permitted herein, pending the determination of the matter by the Court; provided, for greater certainty, that if a banner has been hung in accordance with these Canadian Sale Guidelines and is thereafter the subject of a dispute, the Consultant shall not be required to take any such banner down pending determination of the dispute.

16. Nothing herein is, or shall be deemed to be a consent by any Landlord to the sale, assignment or transfer of any Lease, or to grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

17. These Canadian Sale Guidelines may be amended by written agreement between the Merchant, the Consultant and any applicable Landlord (provided that such amended Canadian Sale Guidelines shall not affect or bind any other Landlord not privy thereto without further Order of the Court).

# **EXHIBIT 2**

## **Closing Stores**

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4297 | Hillside Shopping Centre | 1644 Hillside Avenue | Victoria | BC |
| 4232 | Robson Streetfront | 1126 Robson Street | Vancouver | BC |
| 4193 | Guildford Town Center | 10355 152 St | Surrey | BC |
| 4243 | Kelowna Mall | 2271 Harvey Ave | Kelowna | BC |
| 4038 | Smart Centres Central @ G | 1825-4720 Mcclelland Road | Richmond | BC |
| 4016 | Scotia Plaza | 40 King St West Box 108 | Toronto | ON |
| 4043 | Sunridge Mall | 2525-36Th Street Ne | Calgary | AB |
| 4065 | Market Mall | 3625 Shaganappi Trail | Calgary | AB |
| 4239 | Deerfoot Mall | #107 951 64 Av Ne | Calgary | AB |
| 4188 | Harvest Pointe Sc | 5233 Ellerslie Rd Sw | Edmonton | AB |
| 4048 | Halifax Shopping Center | 7001 Mumford Road | Halifax | NS |
| 4124 | Carrefour Angrignon | 7077 Newman Boulevard | Lasalle | PQ |
| 4022 | St. Laurent S.C. | 1200 St Laurent Blvd | Ottawa | ON |
| 4028 | Cornwall Square | 1 Water Street East | Cornwall | ON |
| 4059 | Northgate Square | 489 Albert Street North | Regina | SK |
| 4184 | Oshawa Centre | 419 King Street West | Oshawa | ON |
| 4050 | Markville Town Centre | 5000 Hwy 7 East | Markham | ON |
| 4127 | Stone Road Mall | 435 Stone Road West | Guelph | ON |
| 4117 | Vaughan Mills | 1 Bass Pro Mills Dr | Vaughan | ON |
| 4201 | Shoppes On Queen West | 601 Queen Street West | Toronto | ON |
| 4090 | Argyle Mall | 332 Clarke Road | London | ON |
| 4174 | Walker Place | 4140 Walker Rd | Windsor | ON |
| 4072 | Driftwood Mall | 2751 Cliffe Ave | Courtenay | BC |
| 4235 | Coquitlam Centre | 2929 Barnet Highway | Coquitlam | BC |
| 4278 | Village Green Centre | 4900 27Th Street | Vernon | BC |
| 4504 | Woodgrove Centre | 6631 Island Highway N | Nanaimo | BC |
| 4061 | Londonderry Mall | 137Th Ave & 66Th St | Edmonton | AB |
| 4170 | Erin Ridge Power Centre | 935 St.Albert Trail | St Albert | AB |
| 4180 | Manning Town Centre | 15733 37 Street | Edmonton | AB |
| 4183 | The Quarry | 20 Quarry Street East | Cochrane | AB |
| 4191 | York Station | 275 Broadway St E | Yorkton | SK |
| 4286 | Southlands Crossing | 1991 Strachan Rd | Medicine Hat | AB |
| 4503 | Deerfoot Meadows | 840-8180 11Th Street Se | Calgary | AB |
| 4177 | Avalon Mall | 48 Kenmount Rd | St. Johns | NL |
| 4131 | Yarmouth Mall | 76 Starrs Road | Yarmouth | NS |
| 4052 | Place D'Orleans | 110 Place D'Orleans Dr | Ottawa | ON |
| 4008 | Southhill Shopping Centre | 9325 Yonge Street | Richmond Hill | ON |
| 4086 | Bridgeport Plaza | 13/14-94 Bridgeport Rd Ea | Waterloo | ON |
| 4162 | Gladstone Queen West Reta | 4 Gladstone Ave | Toronto | ON |
| 4171 | Smartcentres Vaughan | 3604 Major Mackenzie Dr | Vaughan | ON |
| 4181 | Shops At Don Mills | 1090 Don Mills Rd | Toronto | ON |
| 4186 | North Park Sc | 1405 Lawrence Ave W | Toronto | ON |
| 4196 | Shoppers World Danforth | 3003 Danforth Ave | Toronto | ON |
| 4204 | Smartcentres St. Catharin | 420 Vansickle Road | St. Catharines | ON |
| 4248 | Crossroads | 2625B Weston Road | North York | ON |
| 4256 | Rio Centre Oakville | 478 Dundas Street West | Oakville | ON |
| 4506 | Smart Centres Bradford | 547 Holland St West | Bradford | ON |
| 4150 | Sudbury S Shopping Center | 2408 Long Lake Rd | Sudbury | ON |
| 4198 | Collingwood Centre | 99 Balsam Street | Collingwood | ON |
| 4206 | Smartcentres St. Thomas | 1063 Talbot Street | St. Thomas | ON |
| 4032 | Lougheed Mall | 9855 Austin Ave | Burnaby | BC |
| 4084 | Haney Place Mall | 149-11900 Haney Pl | Maple Ridge | BC |
| 4234 | Tamarack Centre | 1500 Cranbrook St N.#115 | Cranbrook | BC |
| 4280 | Capilano Mall | 935 Marine Dr | N. Vancouver | BC |
| 4199 | Tsawwassen Mills | 5000 Canoe Pass Way | Tsawwassen | BC |
| 4267 | Bankers Hall | 315 8Th Avenue Sw Ste 345 | Calgary | AB |
| 4039 | St. Vital Center | 130-1225 St Mary'S Rd | Winnipeg | MB |
| 4054 | Kildonan Place | 1555 Regent Ave West | Winnipeg | MB |
| 4066 | Cornwall Mall | 2102-11Th Ave | Regina | SK |
| 4283 | Southcentre Mall | 100 Anderson Rd. S.E. | Calgary | AB |
| 4207 | Outlet Collection Winnipe | 555 Sterling Lyon Parkway | Winnipeg | MB |
| 4208 | Premium Outlet Collection | #1 Outlet Collection Way | Edmonton Airport | AB |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx                    Page 1 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4067 | Mayflower Mall | 800 Grand Lake Road | Sydney | NS |
| 4229 | Regent Mall | 1381 Regent Street | Fredericton | NB |
| 4200 | Colby Village | 920 Cole Harbour Road | Dartmouth | NS |
| 4159 | Quartier Dix 30 | 8900 Blvd Leduc | Brossard | PQ |
| 4192 | Smartcentres Mascouche | 117 Montee Masson | Mascouche | PQ |
| 4179 | Les Promenades Gatineau | 1000 Blvd Maloney Quest | Gatineau | PQ |
| 4185 | Kemptville Colonnade Reta | 304 Colonnade Dr | Kemptville | ON |
| 4000 | The Promenade Mall | 1 Promenade Circle | Thorn Hill | ON |
| 4017 | Upper Canada Mall | 17600 Yonge St | Newmarket | ON |
| 4026 | Burlington Mall | 777 Guelph Line | Burlington | ON |
| 4037 | Eglinton Square S.C. | 1431-1437 Victoria Park A | Toronto | ON |
| 4075 | Cloverdale Mall | 250 The East Mall | Toronto | ON |
| 4144 | Georgetown Market Place | 280 Guelph Street | Georgetown | ON |
| 4189 | Centerpoint Mall | 6464 Younge St | Toronto | ON |
| 4203 | Yonge Sheppard Centre | 4841 Yonge Street | Toronto | ON |
| 4157 | Riocan Marketplace | 2181 Steele Ave West | Toronto | ON |
| 4194 | 410 At Steeles | 35 Resolution Dr | Brampton | ON |
| 4287 | Rio-Can Milton | 1155 Maple Avenue | Milton | ON |
| 4091 | Heritage Place | 1350 16Th Street East | Owen Sound | ON |
| 4225 | Lambton Mall | 1380 London Road Unit33 | Sarnia | ON |
| 4263 | White Oaks Mall | 1105 Wellington Rd | London | ON |
| 4270 | Northgate Square | 1500 Fisher St | North Bay | ON |
| 4510 | Station Mall | 293 Bay Street | Sault Ste Marie | ON |
| 4020 | Intercity S/C | 1000 Fort William Rd | Thunder Bay | ON |
| 7467 | 330 5TH AVE | 330 5Th Ave | New York | NY |
| 1208 | 31 65 STEINWAY ST | 31 65 Steinway St | Astoria | NY |
| 3800 | 125 PARK AVENUE | 125 Park Ave | New York | NY |
| 9118 | 684 THIRD AVENUE | 684 Third Avenue | New York | NY |
| 1569 | 220 O'FARRELL ST | 220 O'Farrell St | San Francisco | CA |
| 2564 | 1034-1036 THIRD AVE | 1034-1036 Third Ave | New York | NY |
| 2479 | HOLLYWOOD & HIGHLAND | 6801 Hollywood Blvd | Los Angeles | CA |
| 7621 | 159 COLUMBUS AVE | 159 Columbus Ave | New York | NY |
| 7123 | BRATTLE SQUARE | One Brattle Square | Cambridge | MA |
| 8841 | 349 NEWBURY STREET | 349 Newbury St | Boston | MA |
| 1324 | 70 S 69TH ST | 70 S 69Th St | Upper Darby | PA |
| 2384 | 812 DAVIS ST | 812 Davis St | Evanston | IL |
| 6247 | QUEENS CENTER | 90-15 Queens Boulevard | Elmhurst | NY |
| 8523 | FASHION SHOW MALL | 3200 Las Vegas Blvd | Las Vegas | NV |
| 5047 | ROOSEVELT FIELD MALL | 630 Old Country Road | Garden City | NY |
| 1443 | PHEASANT LANE MALL | 310 Daniel Webster Hghway | Nashua | NH |
| 560 | WESTFIELD BRANDON | 356 Brandon Town Ctr Mall | Brandon | FL |
| 360 | DEPTFORD MALL | 1750 Deptford Center Rd | Deptford | NJ |
| 3079 | STAMFORD TOWN CENTER | 100 Greyrock Place | Stamford | CT |
| 1220 | WESTWOOD MALL | 1754 West Michigan Ave | Jackson | MI |
| 817 | WESTFIELD ANNAPOLIS | 1032 Annapolis Mall | Annapolis | MD |
| 846 | WHITE MARSH MALL | 8200 Perry Hall Blvd. | Baltimore | MD |
| 6273 | PROVIDENCE PLACE MALL | 54 Providence Place | Providence | RI |
| 358 | WESTLAND MALL | 35000 W. Warren Road | Westland | MI |
| 2956 | BAYSHORE TOWNE CENTER | 440 W Northshore Drive | Glendale | WI |
| 5130 | GURNEE MILLS | 6170 W Grand Avenue | Gurnee | IL |
| 3531 | GLOUCESTER PREMIUM OUTLET | 1125 S. Blackhorse Pike | Blackwood | NJ |
| 1584 | POTOMAC MILLS | 2700 Potomac Mills Circle | Woodbridge | VA |
| 366 | CINCINNATI PREMIUM OUTLET | 400 Premium Outlets Drive | Monroe | OH |
| 88 | TWIN CITIES PREMIUM OUTLE | 3965 Eagan Outlets Pkwy | Eagan | MN |
| 130 | TANGER OUTLETS | 400 South Wilson Road | Sunbury | OH |
| 590 | TANGER OUTLET - HWY 501 | 4635 Factory Stores Blvd | Myrtle Beach | SC |
| 5333 | TANGER OUTLETS SOUTHAVEN | 5205 Airways Blvd | Southaven | MS |
| 5920 | PASEO COLORADO | 300 E. Colorado Blvd | Pasadena | CA |
| 2376 | RIVERMARK VILLAGE | 3935 Rivermark Plaza | Santa Clara | CA |
| 7038 | UNIVERSITY TC | 140 University Ave | Sarasota | FL |
| 5053 | PHILIPS PLAZA | 675 Sunrise Highway | Lynbrook | NY |
| 8180 | MARKETPLACE CENTER | 1361 Covell Blvd | Davis | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 2 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 9283 | CROSS KEYS COMMONS | 3501 Rt 42 | Turnersville | NJ |
| 349 | SHOPS AT NANUET | 5107 Fashion Dr | Nanuet | NY |
| 3474 | CRANBERRY PLAZA | 2991-J Cranberry Highway | East Wareham | MA |
| 2644 | EAST HANOVER SC | 240 State Route 10 | East Hanover | NJ |
| 7121 | SHOPS AT FALLEN TIMBERS | 6832 Russell Road | Maumee | OH |
| 5273 | HERSHEY SQUARE S. C. | 1138 Mae Street | Hummelstown | PA |
| 7230 | NORTH HILLS CENTRE | 1144 Lonnie Abbott Blvd | Ada | OK |
| 5574 | HAMPTON VILLAGE CENTER | 2771 South Rochester Rd | Rochester Hills | MI |
| 6101 | PARKSIDE SC | 7800 John Davis Drive | Frankfort | KY |
| 7781 | 875 SIXTH AVE | 875 Avenue Of Americas | New York | NY |
| 2927 | 1569 FLATBUSH AVENUE | 1569 Flatbush Ave | Brooklyn | NY |
| 4358 | EIELSON AFB | Building 405 Broadway | Eielson | AK |
| 9860 | TYSENS PARK S/C | 2722 Hylan Blvd | Staten Island | NY |
| 5296 | BRADLEE CENTER | 3690 North King Street | Alexandria | VA |
| 255 | THE YARDS BOILERMAKER SHO | 300 Tingey St Se | Washington | DC |
| 5431 | EL CERRITO PLAZA | 230 El Cerrito Plaza | El Cerrito | CA |
| 8759 | CULVER CENTER | 3810 Midway Avenue | Culver City | CA |
| 1267 | EAST HILLS VILLAGE | 2671 Oswell Street | Bakersfield | CA |
| 3389 | SIMSBURY COMMONS | 530 Bushy Hill Road | Simsbury | CT |
| 9584 | THE SHOWCASE AT INDIO | 42425 C Jackson Street | Indio | CA |
| 5150 | PLAZA CAYEY | Pr 1 Km 55.2 | Cayey | PR |
| 6165 | MONTVILLE COMMONS | 2020 Norwich-New London T | Montville | CT |
| 5219 | SAN FELIPE PLAZA | 1735 South Voss | Houston | TX |
| 9028 | VALLEY CENTRAL SC | 44418 Valley Central Way | Lancaster | CA |
| 8234 | COLLEGE SQUARE | 210 College Square | Newark | DE |
| 311 | WALMART PLAZA | 656 New Haven Ave | Derby | CT |
| 5085 | WESTCLIFF PLAZA | 1036 Irvine Ave | Newport Beach | CA |
| 7354 | KMART SHOPPING CENTER | 3036 Route 35 South | Hazlet | NJ |
| 2272 | FOUNTAINS OF MIRAMAR | 2933 Sw 160Th Ave | Miramar | FL |
| 7421 | JANTZEN BEACH HAYDEN ISLA | 12152 N Pavilion Ave | Portland | OR |
| 5463 | BURBANK CROSSING | 7929 S Harlem Avenue | Burbank | IL |
| 5720 | CORNERSTONE @ LAKE HEART | 10524 Moss Park Rd | Orlando | FL |
| 8866 | CHERRY HILL SHOPPING CENT | 462 Hempstead Turnpike | West Hempstead | NY |
| 2416 | EDGEWOOD TOWN CENTER | 438-D E Edgewood Blvd | Lansing | MI |
| 104 | ORCHARD SC | 208 S 72Nd Ave | Yakima | WA |
| 5547 | KENTLANDS SQUARE | 251 Kentlands Boulevard | Gaithersburg | MD |
| 9001 | JACKSONVILLE PLAZA | 2050 John Harden Drive | Jacksonville | AR |
| 2025 | OLD TOWN SQUARE | 1237 North Clybourn Ave | Chicago | IL |
| 5257 | FIESTA TRAILS PLAZA | 5238 Dezavala Road | San Antonio | TX |
| 9673 | ELMHURST CROSSING SHOPPIN | 177 South Route 83 | Elmhurst | IL |
| 3504 | BRENTWOOD PLAZA | 8485 Winton Road | Cincinnati | OH |
| 5190 | HILLSBORO SHOPPING CENTER | 649 Route 206 Door 8 | Hillsborough | NJ |
| 7000 | BAYSHORE GARDENS | 6028 14Th Street West | Bradenton | FL |
| 2271 | ROCHESTER CROSSING | 160-162 Washington Street | Rochester | NH |
| 7655 | ORO VALLEY MARKETPLACE | 2060 E Tangerine Road | Oro Valley | AZ |
| 9801 | SOUTHBRIDGE CROSSING | 8082 Oak Carriage Court N | Shakopee | MN |
| 2078 | MASSILLON MARKET | 38 Massillon Marketplace | Massillon | OH |
| 2092 | MERCHANTS PARK SHOPPING C | 953 N Shepherd Dr | Houston | TX |
| 5157 | PLAZA SQUARE | 667 Hamburg Turnpike | Wayne | NJ |
| 2091 | THE MARKET AT OAKLAND | 3006 S Morgan'S Pt Rd | Mt Pleasant | SC |
| 977 | VIERA MARKETCENTER | 6729 Colonnade Ave | Viera | FL |
| 5289 | COMMONS AT ISSAQUAH | 755 West Gilman Blvd. | Issaquah | WA |
| 1292 | PINEHURST SQUARE | 1001 W Interstate Ave | Bismarck | ND |
| 9513 | TRENTON CROSSING | 7600 N. 10Th St | Mcallen | TX |
| 8557 | PIERPOINT CENTRE | 716 Venture Drive | Morgantown | WV |
| 7207 | GOLDEN GATE SHOPPING CTR | 1513 Golden Gate Rd | Mayfield Heights | OH |
| 833 | SUSSEX PLAZA | 22881 Sussex Highway | Seaford | DE |
| 617 | HEARTLAND VILLAGE SHOPPES | 8411 Windfall Lane | Camby | IN |
| 5585 | BATTLEGROUND PLAZA | 3724-H Battleground Ave | Greensboro | NC |
| 7810 | SHOPPES @ PARADISE KEY | 4433 Commons Drive East | Destin | FL |
| 1268 | AMSTERDAM COMMONS | 330 Amsterdam Commons | Amsterdam | NY |
| 7959 | BLUE RIDGE CROSSING | 4173 Sterling Ave | Kansas City | MO |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx                    Page 3 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 8507 | SUNSHINE SQUARE | 546 East Woolbright Rd | Boynton Beach | FL |
| 5160 | WEST VOLUSIA REGIONAL S/C | 2707 South Woodland | Deland | FL |
| 1864 | SHELBYVILLE SC | 114 Lee Blvd | Shelbyville | IN |
| 7323 | HAVENDALE SQUARE | 382 Havendale Square | Auburndale | FL |
| 138 | SHOPPES AT PRAIRIE RIDGE | 9901 77Th Street | Pleasant Prairie | WI |
| 24 | BROOKDALE CORNER | 5605 Xerxes Ave | Brooklyn Center | MN |
| 9540 | FRANCIS POINTE | 106 Francis Lane | Beaver Dam | WI |
| 1812 | TRAMONTO MARKETPLACE S/C | 3134 W. Carefree Hgwy | Phoenix | AZ |
| 7388 | MIDDLEBURG CROSSINGS | 2640 Blanding Blvd | Middleburg | FL |
| 5461 | RIVER RUN SHOPPING CENTER | 9929 Miramar Parkway | Miramar | FL |
| 294 | GRAVOIS BLUFFS | #35 Gravois Bluffs Plaza | Fenton | MO |
| 3923 | HICKORY FLAT VILLAGE | 6175 Hickory Flat Highway | Canton | GA |
| 7158 | FRANKLIN CENTRE | 915 B Hwy 321 | Lenoir | TN |
| 2023 | OAK HOLLOW SQUARE | 1589 Skeet Club Rd | High Point | NC |
| 2861 | CULVER RIDGE PLAZA | 2255 East Ridge Rd | Rochester | NY |
| 3618 | EPHRATA MARKETPLACE | 852 East Main Street | Ephrata | PA |
| 2249 | TUDOR SHOPS | 975 Ne Rice Road | Lee'S Summit | MO |
| 6812 | OSWEGO PLAZA | 140 State Rt 104 | Oswego | NY |
| 9124 | BEAR VALLEY SHOPPING CENT | 3100 South Sheridan Blvd | Denver | CO |
| 8684 | TRI STATE MALL | 10 E Route 23 N | Montague | NJ |
| 3989 | MOANALUA SHOPPING CTR | 930 Valkenburgh St | Honolulu | HI |
| 1733 | SOUTHERN CROSSING | 10922 South Memorial Dr | Tulsa | OK |
| 1722 | VALLEY STATION | 1268 South Us189 | Heber | UT |
| 9786 | PINE TREE PLAZA | 550 36Th Ave South West | Altoona | IA |
| 6059 | POPLAR CREEK PLAZA | 305 Leonardwood Dr | Frankfort | KY |
| 3678 | THE PROMENADE | 16255 N Scottsdale Rd | Scottsdale | AZ |
| 8909 | METRO JUNCTION | 4894 Highway 18 West | Jackson | MS |
| 7407 | MCDONOUGH MARKETPLACE | 117 Willow Lane | Mcdonough | GA |
| 5608 | TOWER PLAZA | 1386 S Centerville Rd | Sturgis | MI |
| 8637 | BROOKDALE SQUARE | 22351 Pontiac Trail | South Lyon | MI |
| 1364 | WHITNALL SQUARE | 4698 S Whitnall Avenue | Milwaukee | WI |
| 8771 | MARKS SQUARE | 4600 Mobile Highway #11 | Pensacola | FL |
| 8770 | MIDTOWN SQUARE SHOPPING C | 1573 Gause Boulevard | Slidell | LA |
| 1999 | UNIVERSITY COMMONS | 1930 1St Capitol Drive | St Charles | MO |
| 702 | GAINES MARKETPLACE | 1827 Marketplace Dr Se | Caledonia | MI |
| 2827 | MARKETPLACE S.C. | I-79 & Route 33 | Weston | WV |
| 1300 | FOREST PLAZA WEST BLD 1 | 3207-B Forest Brook Rd | Lynchburg | VA |
| 6138 | TWIN OAKS CENTER | 2001 5Th Street | Silvis | IL |
| 1441 | 1882 3RD AVENUE | 1882 3Rd Avenue | New York | NY |
| 9656 | 3453 JEROME AVE | 3453 Jerome Ave | Bronx | NY |
| 1393 | 1609 WESTCHESTER AVE | 1609 Westchester Ave | Bronx | NY |
| 3841 | 5530 WALNUT STREET | 5530 Walnut Street | Pittsburgh | PA |
| 4340 | CAMP PENDLETON (MINI) | 15100 Camp Pendleton | Camp Pendleton | CA |
| 4360 | FORT BRAGG (82ND) | 82Nd Abn Troop Store | Fort Bragg | NC |
| 4335 | SAN DIEGO NB (DOCKSIDE) | Naval Station | San Diego | CA |
| 4430 | LEMOORE NAS | Building #795 | Lemore Nas | CA |
| 4484 | FORT BLISS (COMM CENTER) | Bldg 20752 Gulf Victory W | El Paso | TX |
| 4354 | MOUNTAIN HOME AFB | 625 Gunfighter Ave | Mountain Home Afb | ID |
| 4322 | BARKSDALE AFB | 455 Curtis Road | Barksdale Afb | LA |
| 4323 | FAIRCHILD AFB | Building 2465 | Fairchild Afb | WA |
| 4356 | VANDENBERG AFB | Building 10400 | Vandenberg Afb | CA |
| 4363 | FORT LEE (PXTRA) | Building 9025 | Fort Lee | VA |
| 4414 | PATUXENT RIVER NAS | 22099 Cuddihy Road | Patuxent River | MD |
| 4456 | LOS ANGELES AFB | 483 N. Aviation Blvd | El Segundo | CA |
| 4339 | EDWARDS AFB | Abx Exchange | Edwards Afb | CA |
| 4404 | SEYMOUR JOHNSON AFB | 1350 Edwards Street | Goldsboro | NC |
| 4398 | BELLE CHASE NAS JRB | 400 Russell Ave | Belle Chasse | LA |
| 4478 | FORT BLISS (MINI) | 13471 Sergeant Major Blvd | El Paso | TX |
| 4418 | HUNTER ARMY AIRFIELD | 130 Haley Ave | Savannah | GA |
| 4462 | BEAUFORT MCAS | Building 1283 Giegor Ave | Beaufort | SC |
| 4352 | F.E. WARREN AFB | 617 Missle Drive | Cheyenne | WY |
| 4304 | DOVER AFB | 266 Galaxy Way | Dover Afb | DE |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 4 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 4370 | GULFPORT NCBC | Bldg. 470 | Gulfport | MS |
| 4435 | PORTSMOUTH NAVAL HOSPITAL | Store 39/30 Bldg 3 | Portsmouth | VA |
| 4498 | DYESS AFB | 260 Commissary Road | Abilene | TX |
| 4371 | TYNDALL AFB | 220 Mall Ln Ste 2 | Tyndall Afb | FL |
| 4497 | PARRIS ISLAND MCRD | Building 406 | Parris Island | SC |
| 4361 | EGLIN AFB (MINI) | 4310 77Th Special Forces | Eglin Afb | FL |
| 2328 | CHULA VISTA CENTER | 555 Broadway | Chula Vista | CA |
| 2540 | PEAR TREE SHOPPING CENTER | 532 East Perkins Street | Ukiah | CA |
| 1131 | LOS ALTOS CENTER | 5555 Stearns St | Long Beach | CA |
| 5820 | CLAYTON STATION | 5435H Clayton Road | Clayton | CA |
| 7155 | 66-69 FRESH POND RD | 66-69 Fresh Pond Rd | Ridgewood | NY |
| 7657 | TIMBERHILLS S.C. | 1067 Mono Way | Sonora | CA |
| 6782 | SHOPPES @ FOXCHASE | 4651 Duke St | Alexandria | VA |
| 1856 | NAPA JUNCTION | 6040 Main Street | American Canyon | CA |
| 7690 | MILL POND VILLAGE | 380-Cs Egg Harbor Road | Sewell | NJ |
| 7120 | SOUTHPORT TOWN CENTER | 2050 Town Center Plaza | West Sacramento | CA |
| 3303 | TRI CITY PLAZA | 160 Tri City Road | Somersworth | NH |
| 2707 | THE PROMENADE AT BOLINGBR | 639 E Boughton Rd | Bolingbrook | IL |
| 5511 | BEARDS HILL PLAZA | 971 Beards Hill Road | Aberdeen | MD |
| 6216 | MEADOWVIEW SQUARE | 2500 State Rte 59 Ste # 8 | Kent | OH |
| 1387 | PLAZA PRADOS DEL SUR LOCA | Intersection Of State Rds | Santa Isabel | PR |
| 51 | THE SHOPPES AT CINNAMINSO | 127 Route 130 South | Cinnaminson | NJ |
| 652 | CROSSING AT LISBON | 193 River Road | Lisbon | CT |
| 7895 | LONDON GROVE VILLAGE | 905 Gap Newport Pike | Avondale | PA |
| 3031 | PINE CREEK S.C. | 716-A Freeman Lane | Grass Valley | CA |
| 3945 | FOOD FOR THOUGHT | 45 Northern Boulevard | Greenvale | NY |
| 1245 | PENINSULA CROSSING | 26670 Centerview Drive | Millsboro | DE |
| 2893 | TANTALLON CENTER | 10729 Indian Highway | Fort Washington | MD |
| 2797 | MISSION PLAZA | 1412 N. H Street Suite C | Lompoc | CA |
| 3433 | NORTH PROVIDENCE MARKET | 11 Smithfield Road | North Providence | RI |
| 3719 | TWINSBURG TOWN CENTER | 8934 Darrow Road | Twinsburg | OH |
| 5051 | NISQUALLY PLAZA | 1010 Yelm Ave E | Yelm | WA |
| 9360 | ALDEN BRIDGE SHOPPING CEN | 8000 Research Forest Driv | The Woodlands | TX |
| 8984 | PLAZA DEL OESTE | Ave Casto Perez #313 | San German | PR |
| 2327 | BERLIN CIRCLE PLAZA | 116 Walker Ave | West Berlin | NJ |
| 3028 | SHILOH CENTER | 6400 Hembree Lane | Windsor | CA |
| 1479 | GREENPORT COMMONS | 424 Fairview Ave | Hudson | NY |
| 2254 | NORTH HAVEN PAVILION | 200 Universal Drive North | North Haven | CT |
| 7802 | ROMEOVILLE TOWNE CENTER | 427 North Weber Road | Romeoville | IL |
| 8360 | SUFFOLK SHOPPING CENTER | 4046 Nesconset Hghwy #1B | East Setauket | NY |
| 7624 | GIBBSTOWN S.C. | 401 Harmony Road | Gibbstown | NJ |
| 2474 | MEADOW BROOK CROSSING | 124 State Road 101A | Amherst | NH |
| 6173 | LEXINGTON STATION | 3833 Lexington Avenue | Arden Hills | MN |
| 6512 | VILLAGE COMMONS AT WESLEY | 5922 Weddington Monroe Rd | Wesley Chapel | NC |
| 5387 | DUNLAWTON SQUARE | 3859 South Nova Road | Port Orange | FL |
| 8531 | NEWPORT NORTH SC | 1280 Bison Avenue | Newport Beach | CA |
| 5351 | NEW HOPE CITY CENTER | 4237 Winnetka Ave | New Hope | MN |
| 2765 | REYNOLDA MANOR | 2828 Reynolda Rd Nw | Winston Salem | NC |
| 6292 | GEORGESVILLE SQUARE | 1617 Georgesville Square | Columbus | OH |
| 8710 | SANTA FE SHOPPING CENTER | 13505 South Mur-Len | Olathe | KS |
| 5727 | WINTER SPRINGS TC | 1188 Cliff Rose Dr | Winter Springs | FL |
| 7322 | BATTLE GROUND MARKET CTR | 2210W Main Streetsuite113 | Battle Ground | WA |
| 9859 | SHERWOOD MARKET CENTER | 16008 Sw Tualatin-Sherwoo | Sherwood | OR |
| 6237 | THE VILLAGE IN BLAINE | 4335 Pheasant Ridge Dr | Blaine | MN |
| 1368 | MONROE PLAZA | 19817 State Route 2 | Monroe | WA |
| 7445 | DANIEL'S CROSSING S/C | 6900 Daniels Parkway | Fort Myers | FL |
| 5482 | CORALWOOD MALL | 2301 Del Prado Blvd H-6 | Cape Coral | FL |
| 5573 | COLLEGE PARK SHOPPING CTR | 3455 West 86Th Street | Indianapolis | IN |
| 6524 | NORTH MOUNTAIN VILLAGE | 3431 W Thunderbird Rd | Phoenix | AZ |
| 5855 | YAKIMA 40TH AVE S.C | 1300 N. 40Th Ave. | Yakima | WA |
| 5567 | SHOPS AT MALTA | 15 Kendall Way | Malta | NY |
| 9341 | SAWGRASS PROMENADE | 1335 South Millitary Trai | Deerfield Beach | FL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 5 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 6316 | WATERBURY PLAZA | 152 Chase Ave | Waterbury | CT |
| 2647 | WARETOWN TOWN CENTER | 501 Route 9 Suite 300 | Waretown | NJ |
| 5307 | PENN HILLS CENTER | 28 Federal Drive | Penn Hills | PA |
| 2670 | SAM HOUSTON TC | 12709 Interstate Hwy 45 N | Willis | TX |
| 2094 | PARADISE SHOPPES OF SUMME | 1585 Central Ave | Summerville | SC |
| 322 | BROOKDALE SHOPPING CENTER | 9651-100 Brookdale Drive | Charlotte | NC |
| 7428 | SETH CHILD COMMONS | 830 Commons Place | Manhattan | KS |
| 184 | PALOMAR PLAZA | 961 Palomar Airport Rd | Carlsbad | CA |
| 1865 | ANTIOCH CROSSING S/C | 417 E Il Rte 173 | Antioch | IL |
| 5460 | KMART PLAZA EAST | 4445 Buffalo Road | Erie | PA |
| 3583 | GIG HARBOR NORTH | 11430 51St Ave Nw | Gig Harbor | WA |
| 8831 | SIGNAL MT VILLAGE SC | 541 Signal Mountain Rd - | Chattanooga | TN |
| 2336 | OTTER CREEK S.C. | 248 S. Randall Road | Elgin | IL |
| 1376 | SHOPRITE SHOPPING CENTER | 360 Connecticut Ave | Norwalk | CT |
| 6064 | SUWANNEE PLAZA | 6824 Suwannee Plaza Ln | Live Oak | FL |
| 8364 | WHEATLAND MARKET PLACE | 3108 S. Route 59 | Naperville | IL |
| 1575 | TORRINGTON COMMONS | 225 High Street | Torrington | CT |
| 7619 | SPRINGS VILLAGE S.C. | 3953 S. State Hwy 97 | Sand Springs | OK |
| 8401 | KNOX VILLAGE SQUARE | 1504-B Coshacton Ave | Mt. Vernon | OH |
| 7348 | DESERT MOUNTAIN PLAZA | 4650 Woodrow Bean | El Paso | TX |
| 5171 | NORTHWEST PROMENADE | 6737 Manatee Ave W | Bradenton | FL |
| 7282 | PARKWAY PLAZA | 285 Cumberland Pkwy | Mechanicsburg | PA |
| 3779 | WAHIAWA TOWN CENTER | 935 California Avenue | Wahiawa | HI |
| 6882 | OZARK TOWN CENTER 1 | 1721 S 20Th St | Ozark | MO |
| 2406 | SURPRISE LAKE SQUARE | 900 East Meridian #22 | Milton | WA |
| 5885 | POKEGAMA ROAD | 2046 S Pokegama Ave | Grand Rapids | MN |
| 9190 | WAYNE AVENUE PLAZA | 949 Wayne Avenue | Chambersburg | PA |
| 2166 | NEWPORT COAST PLAZA | 21151 Newport Coast Dr | Newport Beach | CA |
| 7636 | COBB PARKWAY SC | 2774 N Cobb Parkway | Kennesaw | GA |
| 1873 | OVERLAND PLAZA | 9126 Page Avenue | Overland | MO |
| 3926 | NORWALK KORNERS S.C. | 201 Milan Avenue | Norwalk | OH |
| 5537 | NORTHWOOD PLAZA | 1966 Northwood Plaza | Franklin | IN |
| 5430 | TRAIL PLAZA | 1056 S.W. 67Th Ave | Miami | FL |
| 1045 | SHOREGATE S.C. | 30010 Lakeshore Avenue | Willowick | OH |
| 2236 | BROOKGATE SHOPPING CENTER | 5773 Smith Road | Brook Park | OH |
| 7672 | FOUNTAIN OAKS S.C. | 4920 Roswell Rd | Atlanta | GA |
| 9097 | BLOOMFIELD AVENUE SHOPPES | 6089 Haggerty Road | West Bloomfield | MI |
| 8051 | EDGEWOOD TOWN CENTER | 1725 South Braddock Ave | Pittsburgh | PA |
| 8611 | WEST SHORE PLAZA | 1831 Sherman Blvd | Muskegon | MI |
| 1690 | PRESIDENTIAL PARKWAY PLAZ | 168 Keul Rd | Dixon | IL |
| 626 | PHOENIX CENTER II | 3016 Phoenix Center Drive | Washington | MO |
| 8846 | THE WALNUT GROVE | 4010 University Ave | Madison | WI |
| 6587 | PLAZA SHOPPING CENTER | 1027 South Muskogee | Talequah | OK |
| 27 | LUMBERTON PLAZA | 1636 Rt 38 & Earyestown | Lumberton | NJ |
| 8193 | COLONY SQUARE | 726 East Main Street | Lebanon | OH |
| 1571 | JORDAN LANE | 1416 Berlin Turnpike | Wethersfield | CT |
| 2104 | NAMEOKI VILLAGE | 3455 Nameoki Road | Granite City | IL |
| 7406 | POST COMMONS | 4100 North Wickham Rd | Melbourne | FL |
| 6363 | MERRY MEETING PLACE | 147 Bath Road | Brunswick | ME |
| 6845 | APPLETREE MALL | Orchard View Drive & | Londonderry | NH |
| 8905 | SHOPS AT EAGLE PROMENADE | 3116 E State St | Eagle | ID |
| 75 | MANHATTAN PLACE | 1801 Manhattan Blvd | Harvey | LA |
| 3953 | GEIST CROSSING | 9805 Fall Creek Road | Indianapolis | IN |
| 65 | ONE YANKTON PLACE | 3013 Broadway Ave Suite 4 | Yankton | SD |
| 5578 | MIRASOL WALK | 6231 Pga Blvd | Palm Beach Gardens | FL |
| 6683 | SUGAR CREEK CENTER | 36 Sugar Creek Center | Bella Vista | AR |
| 5921 | SOUTHLAND CROSSINGS | 1220 Doral Rd | Youngstown | OH |
| 6696 | TOWN & COUNTRY S.C. | 494 C.W. Plaza Drive | Columbia City | IN |
| 1883 | MOUNTAIN VIEW VILLAGE | 4608 W Partridgehill Lane | Riverton | UT |
| 5734 | PUBLIX @ FISHHAWK RANCH | 5662 Fishhawk Crossing Bl | Lithia | FL |
| 6536 | INDIAN TRAIL SQUARE | 5739 Preston Hwy | Louisville | KY |
| 835 | BROOKS EDGE PLAZA | 81A South Main Street | Marlboro | NJ |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 6 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 1145 | CIRCLEVILLE PLAZA | 1442 Circleville Plaza Dr | Circleville | OH |
| 6661 | CASTLE ROCK SQUARE | 1163 East Main Street | Price | UT |
| 5919 | LAKEWOOD RANCH TC | 8338 Market Street | Bradenton | FL |
| 3692 | GLENNWOOD COMMONS | 820 Sunbury Rd | Delaware | OH |
| 8695 | LAKESHORE PLAZA | 4137 Mountain Road | Pasadena | MD |
| 6354 | COCOA COMMONS | 2301 State Hgwy #524 | Cocoa | FL |
| 5246 | NORTH STATION S.C. | 1486 Garner'S Station Blv | Raleigh | NC |
| 1266 | SENTRY PLAZA | 10244 W. National Ave | West Allis | WI |
| 5421 | FESTIVAL @ OLD BRIDGE | 12359 Dillingham Square | Lake Ridge | VA |
| 2722 | FLEMING PLACE | 4023 Sw 10Th Street | Topeka | KS |
| 5603 | KROGER CENTER | 2028 S. Highway 53 | Lagrange | KY |
| 528 | MAPLE PARK PLAZA | 283 North Weber Road | Boilingbrook | IL |
| 6761 | ELIZABETHTOWN S.C. | 1575 South Market Street | Elizabethtown | PA |
| 6037 | WHISPERING WOODS PLAZA | 20773 Gibralter | Brownstone | MI |
| 2026 | WESTRIDGE SQUARE | 1059 West Patrick St | Frederick | MD |
| 637 | RANDALL'S CRYSTAL FALLS T | 3501 N Lakeline Blvd | Leander | TX |
| 7794 | SHOPS OF MARCO | 167 S. Barfield Dr | Marco Island | FL |
| 8612 | SOUTH VILLAGE S/C | 1850-C 172Nd Ave | Grand Haven | MI |
| 5374 | SOUTHLAND SC | 6855 Southland Dr | Middleburg Heights | OH |
| 3580 | MINER PLAZA | 2625 N. Mesa | El Paso | TX |
| 2744 | KEYSTONE PLAZA | 3574 Highway 31 South | Pelham | AL |
| 7461 | SHAW'S PLAZA | 770 Roosevelt Trail Road | Windham | ME |
| 5797 | WALTERBORO PLAZA | 321 Bells Highway | Walterboro | SC |
| 1630 | CLIFF LAKE S.C. | 1960 Cliff Lake Road | Eagan | MN |
| 3933 | HOPEWELL CROSSING SC | 800 Denow Road | Hopewell Twp | NJ |
| 5447 | TRADEWINDS SHOPPING CTR | 101457 Us 1 | Key Largo | FL |
| 6783 | MERCHANTS WALK S.C. | 215 Merchant'S Walk S.C. | Summersville | WV |
| 2037 | IMLAY PLAZA | 1801 S. Cedar St | Imlay | MI |
| 355 | PINE RIDGE SQUARE | 1417 West Main St | Gaylord | MI |
| 490 | DOTHAN PAVILION | 4521 Montgomery Highway | Dothan | AL |
| 8560 | ROEBUCK MARKETPLACE | 9172 Parkway East # 15 | Birmingham | AL |
| 2096 | FOX LAKE RETAIL CENTER | 1390 Us Route 12 | Fox Lake | IL |
| 7460 | BELLAIR PLAZA | 2661 North Atlantic Ave | Daytona Beach | FL |
| 847 | HILLCREST SHOPPING CENTER | 233 Hillcrest Shopping Ct | Lower Burrell | PA |
| 2863 | WATSON CROSSING SHOPPING | 33939 La Highway 16 | Denham Springs | LA |
| 2757 | MCCARTY CROSSING | 1026 Main Street | Jackson | OH |
| 6773 | TARGET CENTER | 955 Rockland Rd | Lake Bluff | IL |
| 7325 | BOGEY HILLS PLAZA | 2039 Zumbehl Road | Saint Charles | MO |
| 40 | SHOPS AT VICTORIA | 4109 Houston Highway | Victoria | TX |
| 8807 | GATEWAY COMMONS | 3000 Pepperell Pkwy | Opelika | AL |
| 6240 | HARWOOD CENTRAL VILLAGE | 2101 Harwood Road | Bedford | TX |
| 8934 | OLYMPIAD CENTER | 23052 Alicia Parkway | Mission Viejo | CA |
| 8501 | SHENANDOAH SQUARE | 13704 State Road 84 | Davie | FL |
| 1456 | PARKWAY COMMONS | 3046 Columbia Ave | Franklin | TN |
| 2901 | DEER CREEK CENTER | 3218 Laclede Station Rd | Maplewood | MO |
| 1320 | NEWBERRY POINTE | 144 Newberry Parkway | Etters | PA |
| 2763 | EMBASSY LAKES SHOPPING CE | 2631 N. Hiatus Road | Cooper City | FL |
| 3091 | VILLAGE SHOP CENTER | 1421 Losey Blvd. | La Crosse | WI |
| 9063 | WILLOW OAKS CROSSING | 5011 Weddington Road | Concord | NC |
| 8828 | KENHORST PLAZA | 1895 New Holland Rd | Kenhorst | PA |
| 7465 | HERITAGE MARKETPLACE | 1800 Unser Blvd. Nw | Albuquerque | NM |
| 9610 | NEWTON CROSSROADS | 5340 Ga Hwy 20 | Covington | GA |
| 293 | ALOMA SC | 2275 Aloma Ave | Winter Park | FL |
| 5933 | MABELVALE SHOPPING CENTER | 10101 Mabelvale Plaza Dr | Little Rock | AR |
| 1289 | HASTINGS MARKETPLACE | 1793 Market Blvd | Hastings | MN |
| 3836 | RAPIDS PLAZA | 4551 8Th Street South | Wisconsin Rapids | WI |
| 6318 | MOCKSVILLE TOWN COMMONS | 223 Cooper Creek Dr | Mocksville | NC |
| 8879 | PINECREST PLAZA | 324 Pinecrest Plaza | Morehead | KY |
| 5652 | POTRANCO OAKS VILLAGE | 9230 Potranco Road | San Antonio | TX |
| 8942 | GREAT SOUTH BAY SHP CTR | 709 W Montauk Highway | West Babylon | NY |
| 6125 | LA MARQUE CROSSING | 6608 Gulf Freeway | La Marque | TX |
| 3640 | SEMINOLE CENTER | 3631 Orlando Drive | Sanford | FL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx        Page 7 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 8936 | SHOPPES AT TRINITY LAKES | 12472 Sr 54 | Odessa | FL |
| 3512 | PLAZA PALMA REAL | Carr Pr-3, Km 77.8, Int | Humacao | PR |
| 7162 | SAN ANGELO PLAZA | 614 W 29Th St #114 | San Angelo | TX |
| 3429 | EAST VIKING PLAZA | 421 Viking Plaza Dr #500 | Cedar Falls | IA |
| 8957 | 1890 RANCH SHOPPING CTR | 1335 E. Whitestone Blvd | Cedar Park | TX |
| 8964 | CORTLANDT TOWNE CENTER | 3141 East Main Street | Mohegan Lake | NY |
| 1736 | LOWE'S OUTLOT | 2007 Us Highway 27 | Somerset | KY |
| 1371 | NAVY BLVD | 503 N Navy Blvd | Pensacola | FL |
| 6657 | STAFFORD SQUARE S/C | 297 Route 72 W | Manahawkin | NJ |
| 8858 | NORTH POINT VILLAGE | 1456 North Point Village | Reston | VA |
| 318 | PORT CHARLOTTE MARKETPLAC | 19400 Cochran Blvd | Port Charlotte | FL |
| 8878 | DURANT SHOPPING CENTER | 519 University Place | Durant | OK |
| 8568 | PLAZA @ LANDMARK | 6244-F Little River Trnpk | Alexandria | VA |
| 3925 | NORTHEAST PARK SHOPPING C | 210 37Th Avenue N | St. Petersburg | FL |
| 8961 | MIRA MESA MALL | 8250 Mira Mesa Blvd | San Diego | CA |
| 9378 | 5TH AVENUE SHOPS | 1954 Ne 5Th Avenue | Boca Raton | FL |
| 9495 | WILLIAMSBURG DOWNS | 5338 Central Florida Pkwy | Orlando | FL |
| 8405 | 218 FIRST AVE | 218 1St Ave | New York | NY |
| 2943 | 470 THIRD AVENUE/32ND STR | 470 Third Avenue | New York | NY |
| 2907 | 124 8TH AVENUE | 124 8Th Avenue | New York | NY |
| 2930 | 299 BROADWAY | 1St Floor | New York | NY |
| 3301 | 897 8TH AVE | 897 8Th Ave | New York | NY |
| 2884 | 302 CANAL ST | 302 Canal St | New York | NY |
| 2098 | 163 WEST 72ND STREET | 163 West 72Nd Street | New York | NY |
| 7466 | 305 6TH AVE | 305 6Th Ave | New York | NY |
| 1824 | 107 SUMMER STREET | 107 Summer St 1St Fl | Boston | MA |
| 9468 | 2049 86TH ST | 2049 86Th St | Brooklyn | NY |
| 547 | 145 EAST 116TH STREET | 145 East 116Th Street | New York | NY |
| 7243 | STEINWAY STREET | 30-62 Steinway Street | Astoria | NY |
| 7473 | ALAMEDA LANDING | 2610 5Th St | Alameda | CA |
| 2915 | 75-28 37TH AVE | 75-28 37Th Ave | Queens | NY |
| 5058 | 1212 KINGS HIGHWAY | 1212 Kings Highway | Brooklyn | NY |
| 2119 | 313A HARVARD STREET | 313A Harvard St | Brookline | MA |
| 3052 | REGO PARK | 96-16 Queens Blvd. | Rego Park | NY |
| 2162 | CITY CENTER | 2675 Geary Blvd | San Francisco | CA |
| 2850 | 1336 WISCONSIN AVE | 1336 Wisconsin Ave | Washington | DC |
| 5258 | 7017 18TH AVENUE | 7017 18Th Avenue | Brooklyn | NY |
| 6868 | 1003 BISHOP ST | 1003 Bishop St | Honolulu | HI |
| 9967 | 116-06 QUEENS BLVD | 116-06 Queens Blvd | Forest Hills | NY |
| 3958 | 1940 BEACON STREET | 1940 Beacon Street | Brighton | MA |
| 6659 | 247 3RD AVENUE | 247 3Rd Avenue | New York | NY |
| 575 | 14 W. 8TH STREET | 14 W. 8Th Street | Holland | MI |
| 9664 | AMTRAK STATION | 2955 Market St | Philadelphia | PA |
| 3596 | GALLERIA MALL | 1210 S. University | Ann Arbor | MI |
| 2841 | 17 WEST | 1220 17Th Street | Miami Beach | FL |
| 4453 | ELLSWORTH AFB | 2725 Lemay Blvd Bldg 4020 | Ellsworth Afb | SD |
| 4374 | SAN DIEGO MCRD | 3800 Chosin Ave | San Diego | CA |
| 4364 | FORT HAMILTON | 123 General Lee Ave | Brooklyn | NY |
| 4349 | HANSCOM AFB | 100 Eglin Street | Bedford | MA |
| 4405 | COLUMBUS AFB | Bldg #160 | Columbus Afb | MS |
| 4443 | HOMESTEAD ARS | 29242 Coral Sea Blvd | Homestead Afb | FL |
| 3744 | INTERNATIONAL MARKET PLAC | 2330 Kalakaua Avenue | Honolulu | HI |
| 33 | WILLOW BROOK MALL | 1524 Willow Brook Mall | Wayne | NJ |
| 737 | WOODFIELD MALL | 5 Woodfield Mall | Schaumburg | IL |
| 327 | PARK PLACE | 5870 East Broadway | Tucson | AZ |
| 816 | STONERIDGE MALL | 1304 Stoneridge Mall Road | Pleasanton | CA |
| 7125 | PALISADES CENTER | 3490 Palisades Center Dr | West Nyack | NY |
| 3695 | WESTFIELD OAKRIDGE | 925 Blossom Hill | San Jose | CA |
| 3547 | BAYSHORE MALL | 3300 Broadway | Eureka | CA |
| 2015 | KING OF PRUSSIA PLAZA | 160 North Gulph Road | King Of Prussia | PA |
| 5076 | APACHE MALL | 646 Apache Mall | Rochester | MN |
| 439 | EASTRIDGE MALL | 2200 Eastridge Loops | San Jose | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx        Page 8 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 436 | SUN VALLEY MALL | 112A Sun Valley Mall | Concord | CA |
| 90 | NORTHPARK MALL | 101 North Rangeline | Joplin | MO |
| 444 | MONTCLAIR PLAZA | 5090 Montclair Plaza Lane | Montclair | CA |
| 1255 | STONESTOWN GALLERIA | 3251 20Th Avenue | San Francisco | CA |
| 232 | WESTFIELD SOUTH SHORE | 1701 Sunrise Highway | Bay Shore | NY |
| 1436 | FLORIDA MALL | 8001 S Orange Blossom Tra | Orlando | FL |
| 342 | CROSS CREEK MALL | 419 Cross Creek Mall | Fayetteville | NC |
| 9836 | PANORAMA CITY MALL | 8401 Van Nuys Blvd | Panorama City | CA |
| 60 | SMITH HAVEN MALL | 110 Smith Haven Mall | Lake Grove | NY |
| 5213 | PARK MEADOWS TOWN CENTER | 8505 Park Meadows Center | Lone Tree | CO |
| 505 | WHITE OAKS MALL | 2501 W. Wabash Ave. | Springfield | IL |
| 5581 | WESTFIELD FASHION SQUARE | 14006 Riverside Drive | Sherman Oaks | CA |
| 3659 | MALL OF LOUISIANA | 6401 Bluebonnet Blvd | Baton Rouge | LA |
| 85 | CAPE COD MALL | 769 Iyanough Road | Hyannis | MA |
| 862 | DESERT SKY MALL | 7611 West Thomas Road | Phoenix | AZ |
| 2471 | THE WESTCHESTER | 125 Westchester Ave | White Plains | NY |
| 843 | CONNECTICUT POST | 1201 Boston Post Road | Milford | CT |
| 5203 | SQUARE ONE MALL | 1201 Broadway Drive | Saugus | MA |
| 1452 | ROGUE VALLEY MALL | 1600 North Riverside | Medford | OR |
| 492 | SOUTH HILL MALL | 3500 S. Meridian | Puyallup | WA |
| 50 | WESTLAND MALL | 1675 West 49Th Street | Hialeah | FL |
| 784 | CROSSROADS MALL | 6650 South Westnedge | Portage | MI |
| 1032 | TUCSON MALL | 4500 North Oracle Road | Tucson | AZ |
| 388 | OCEAN COUNTY MALL | 1201 Hooper Avenue | Toms River | NJ |
| 35 | PARK CITY CENTER | 581 Park City Center | Lancaster | PA |
| 468 | WOODLAND HILLS MALL | 7021 South Memorial | Tulsa | OK |
| 1444 | MARLEY STATION | 7900 Governor Ritchie Hwy | Glen Burnie | MD |
| 73 | KINGS PLAZA SHOPPING CTR | 5283 Kings Plaza | Brooklyn | NY |
| 5591 | VISALIA MALL | 2157 South Mooney Blvd | Visalia | CA |
| 1219 | SCOTTSDALE FASHION SQ | 7014 E Camelback Rd | Scottsdale | AZ |
| 718 | ACADIANA MALL | 5725 Johnston | Lafayette | LA |
| 1098 | WINDWARD MALL | 46056 Kam Highway | Kaneohe | HI |
| 285 | SOUTHLAKE MALL | 2014 Southlake Mall | Merrillville | IN |
| 1506 | LANSING MALL | 5234 West Saginaw Hwy | Lansing | MI |
| 7792 | STONEWOOD CENTER | 173 Stonewood | Downey | CA |
| 1602 | APPLE BLOSSOM MALL | 1850 Apple Blossom Drive | Winchester | VA |
| 1062 | ARDEN FAIR MALL | 1689 Arden Way | Sacramento | CA |
| 2654 | HUDSON MALL | Rt 440 | Jersey City | NJ |
| 245 | SOUTHPARK MALL | 4600 16 Street | Moline | IL |
| 380 | NORTH RIVERSIDE PARK | 7501 West Cermak Road | North Riverside | IL |
| 1502 | PENN SQUARE MALL | 2078 Penn Square | Oklahoma City | OK |
| 386 | HANES MALL | 3320 Silas Creek Parkway | Winston-Salem | NC |
| 1251 | WESTFIELD PALM DESERT | 72840 Highway Iii | Palm Desert | CA |
| 377 | QUAKER BRIDGE MALL | 150 Quaker Bridge Mall | Lawrenceville | NJ |
| 326 | SANTA ROSA MALL | 300 Mary Esther Cutoff | Mary Esther | FL |
| 1583 | CHICO MALL | 1950 E. 20Th Street | Chico | CA |
| 412 | INLAND CENTER | 154 Inland Center Dr | San Bernardino | CA |
| 9548 | NORTHLAKE MALL | 6801 Northlake Mall Dr | Charlotte | NC |
| 406 | CHERRYVALE MALL | 7200 Harrison Ave | Rockford | IL |
| 1036 | WILLOWBROOK MALL | 1658 Willowbrook Mall | Houston | TX |
| 7693 | FLAT IRON CROSSING MALL | 1 Flat Iron Circle | Broomfield | CO |
| 693 | HICKORY POINT MALL | 1395 Hickory Point Mall | Forsyth | IL |
| 3879 | FRANCIS SCOTT KEY | 5500 Buckeystown Pike | Frederick | MD |
| 314 | COUNTRYSIDE MALL | 27001 Us Highway 19 North | Clearwater | FL |
| 5186 | MONMOUTH S.C. | 180 Route 35 South | Eatontown | NJ |
| 1420 | MCKINLEY MALL | 3601 Mckinley Parkway | Buffalo | NY |
| 178 | LIVINGSTON MALL | 112 Eisenhower Parkway | Livingston | NJ |
| 163 | SUNRISE MALL | 6073 Sunrise Mall | Citrus Heights | CA |
| 7685 | POLARIS FASHION PLACE | 1500 Polaris Parkway | Columbus | OH |
| 923 | EASTWOOD MALL | 5555 Youngstown-Warren Rd | Niles | OH |
| 8682 | NORTHTOWN MALL | N 4750 Division Street | Spokane | WA |
| 1627 | ROSEDALE CENTER | 10 Rosedale Center | Roseville | MN |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 9 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 269 | MILLCREEK MALL | Space #160 | Erie | PA |
| 392 | OAK PARK MALL | 11161 West 95Th Street | Overland Park | KS |
| 3055 | RIDGEDALE CENTER | 12505 Wayzata Blvd. | Minnetonka | MN |
| 369 | OAKDALE MALL | 3111 E. Main Street | Johnson City | NY |
| 1434 | TOWN CENTER AT COBB | 400 Earnest Barrett Pkwy | Kennesaw | GA |
| 340 | ORANGE PARK MALL | 1910 Wells Rd | Orange Park | FL |
| 773 | OAKLAND MALL | 422 W 14 Mile Rd | Troy | MI |
| 1395 | WIREGRASS COMMONS MALL | 900 Common Ave | Dothan | AL |
| 1039 | GREAT NORTHERN MALL | 232 Great Northern Mall | North Olmsted | OH |
| 147 | CITY CREEK CENTER | 51 South Main St | Salt Lake City | UT |
| 1440 | EDEN PRAIRIE CENTER | 8251 Flying Cloud Drive | Eden Prairie | MN |
| 1169 | YORKTOWN SHOPPING CENTER | 203 Yorktown S/C | Lombard | IL |
| 6294 | MACARTHUR CENTER | 300 Monticello Avenue | Norfolk | VA |
| 9395 | THE SHOPS AT WILLOW RD | 6121 W Park Blvd | Plano | TX |
| 55 | SOUTHERN PARK MALL | 7401 Market St | Youngstown | OH |
| 3703 | CAPITAL MALL | 625 Black Lake Blvd Sw | Olympia | WA |
| 5378 | CASCADE MALL | 414 Cascade Mall | Burlington | WA |
| 571 | SOUTHLAND MALL | 20505 South Dixie Highway | Miami | FL |
| 2752 | SANTA MARIA TOWN CTR | 222 Town Center East | Santa Maria | CA |
| 9564 | GALLERIA AT SOUTH BAY | 1815 Hawthorne Blvd | Redondo Beach | CA |
| 226 | FASHION SQUARE MALL | 4724 Fashion Square Mall | Saginaw | MI |
| 7295 | PACIFIC VIEW | 3301 E. Main Street | Ventura | CA |
| 1427 | NORTHTOWNE MALL | 1500 N Clinton St | Defiance | OH |
| 204 | NORTHTOWN SHOPPING CENTER | 275 Northtown Dr | Blaine | MN |
| 110 | SOUTHRIDGE MALL | 5300 S 76Th Street | Greendale | WI |
| 2803 | LAKELINE MALL | 11200 Lakeline Mall Blvd | Cedar Park | TX |
| 1546 | SUPERSTITION SPRINGS | 6555 East Southern Ave. | Mesa | AZ |
| 874 | LYNNHAVEN MALL | 701 Lynnhaven Pkwy | Virginia Beach | VA |
| 510 | WESTLAND MALL | 550 South Gear Ave | West Burlington | IA |
| 37 | KENNEDY MALL | 555 John F Kennedy Road | Dubuque | IA |
| 166 | BELTWAY PLAZA | 6080 Green Belt Road | Greenbelt | MD |
| 310 | CUMBERLAND MALL | Delsea Drive & Route 47 | Vineland | NJ |
| 190 | CONCORD MALL | 4737 Concord Pike | Wilmington | DE |
| 8420 | CENTER AT SALISBURY | 2300 N. Salisbury Blvd. | Salisbury | MD |
| 7898 | WESTFIELD BROWARD | 8000 W. Broward Blvd | Plantation | FL |
| 500 | THE COMMONS AT FEDERAL WA | 1823 South Commons | Federal Way | WA |
| 2641 | HUTCHINSON MALL | 1060 Highway 15 South | Hutchinson | MN |
| 1449 | PEMBROKE MALL | 4554 Virginia Beach Blvd | Virginia Beach | VA |
| 641 | MEADOWS | 4300 Meadows Lane | Las Vegas | NV |
| 3390 | SOLOMON POND MALL | 601 Donald Lynn Blvd | Marlborough | MA |
| 481 | THE SHOPS AT ITHACA MALL | 40 Catherwood Road | Ithaca | NY |
| 3438 | SOUTHSIDE MALL | Rd 2 Southside | Oneonta | NY |
| 820 | FAIR OAKS MALL | 11850 U Fair Oaks Road | Fairfax | VA |
| 2848 | BUFFALO MALL | 2400-8Th Ave Sw | Jamestown | ND |
| 1421 | COLUMBIA MALL | 2300 Bernadette Dr. | Columbia | MO |
| 7090 | WAKEFIELD MALL | Tower Hill Road & | Wakefield | RI |
| 159 | WESTFIELD NORTH COUNTY | 200 East Via Rancho Parkw | Escondido | CA |
| 799 | OLD HICKORY MALL | 2021 North Highland Ave | Jackson | TN |
| 503 | MONTGOMERY MALL | 712 Montgomery Mall | North Wales | PA |
| 1265 | JEFFERSON VALLEY MALL | 650 Lee Boulevard | Yorktown Hgts | NY |
| 636 | CARY TOWNE CENTER | 1105 Walnut Street | Cary | NC |
| 1469 | MID RIVER MALL | 1080 Mid Rivers Mall Driv | Saint Peters | MO |
| 1578 | WESTFIELD MERIDEN | 470 Lewis Avenue | Meriden | CT |
| 38 | MARION CENTRE S/C | 1475 Marion Waldo Rd | Marion | OH |
| 5883 | BAY CITY TOWN CENTER | 4101 Wilder Road | Bay City | MI |
| 809 | THE GALLERY AT SOUTH DEKA | 24 South Dekalb Mall | Decatur | GA |
| 1425 | VILLAGE MALL | 2917 Vermillion St | Danville | IL |
| 836 | QUAIL SPRINGS MALL | 2501 West Memorial Road | Oklahoma City | OK |
| 5498 | MERIDAN MALL | 1982 West Grand River | Okemos | MI |
| 3105 | WILTON MALL | 3065 Rte 50 Space B-12 | Saratoga Springs | NY |
| 5138 | THE LAKES MALL | 5600 Harvey Road | Muskegon | MI |
| 224 | NORTHWOODS MALL | 2200 War Memorial Drive | Peoria | IL |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 10 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 1472 | HAMILTON MALL | 4403 Black Horse Pike | Mays Landing | NJ |
| 277 | VOLUSIA MALL | 1700 W Internatl Sdwy Blv | Daytona Beach | FL |
| 1352 | TOWSON TOWN CENTER | 825 Dulaney Valley Road | Towson | MD |
| 5411 | THE GALLERY AT THE HARBOR | 200 East Pratt St | Baltimore | MD |
| 1666 | SALEM CENTER | 480 Center Street Ne | Salem | OR |
| 8882 | FASHION PLACE MALL | 6191 State St | Murray | UT |
| 2662 | VILLAGE SQUARE MALL | 83 Village Square Mall | Effingham | IL |
| 1592 | ENFIELD SQUARE MALL | 90 Elm Street | Enfield | CT |
| 41 | COURTLAND CENTER | 4190 East Court St | Burton | MI |
| 9443 | WINONA MALL | 1213 Gilmore Ave | Winona | MN |
| 9788 | MERLE HAY MALL | 3800 Merle May Mall | Des Moines | IA |
| 1076 | CRYSTAL RIVER MALL | 1801 Nw Hwy 19 | Crystal River | FL |
| 353 | FOX VALLEY MALL | 2356 Fox Valley Center | Aurora | IL |
| 1448 | GOLF MILL SHOPPING CENTER | 247 Golf Mill Center | Niles | IL |
| 2432 | SANTA ROSA MALL | Pr 2 | Bayamon | PR |
| 414 | FAIRLANE TOWN CENTER | 18900 Michigan Avenue | Dearborn | MI |
| 9956 | EDGEWATER PLAZA | 2600 Beach Blvd | Biloxi | MS |
| 3904 | THUNDERBIRD MALL | 1421 B 12Th Ave S | Virginia | MN |
| 1111 | EAST HILLS MALL | 3700 Frederick Ave | St. Joseph | MO |
| 1471 | THE MALL OF MONROE | 2121 N Monroe St | Monroe | MI |
| 291 | INDEPENDENCE CENTER | 18813 East 39Th St South | Independence | MO |
| 9014 | OAKWOOD SHOPPING CENTER | 197 West Bank Expressway | Terrytown | LA |
| 701 | SEMINOLE TOWNE CENTER | 200 Towne Center Circle | Sanford | FL |
| 25 | ALMEDA MALL | 12200 Gulf Freeway | Houston | TX |
| 501 | RIDGMAR MALL | 2178 Green Oaks Road | Fort Worth | TX |
| 208 | LINDALE MALL | 4444 First Ave N E | Cedar Rapids | IA |
| 3591 | HOLIDAY VILLAGE MALL | 1753 Highway 2 W | Havre | MT |
| 5584 | PARAMUS PARK MALL | 2040 Paramus Park Mall | Paramus | NJ |
| 5642 | MARSHFIELD MALL | 503 East Ives Street | Marshfield | WI |
| 3169 | OLD ORCHARD MALL | 4999 Old Orchard Center | Skokie | IL |
| 514 | MALL ST. VINCENT | 1133 St. Vincent #110 | Shreveport | LA |
| 5264 | WESTFIELD SARASOTA SQUARE | 8201 S Tamiami Trail | Sarasota | FL |
| 695 | PARADISE VALLEY MALL | 4550 East Cactus Rd. | Phoenix | AZ |
| 3082 | STEEPLEGATE | 270 Louden Road | Concord | NH |
| 5028 | LEE PREMIUM OUTLETS | 50 Water Street | Lee | MA |
| 5139 | TANGER OUTLET CENTER DAYT | 1100 Cornerstone Blvd | Daytona Beach | FL |
| 8903 | TANGER OUTLETS @ THE ARCH | 1387 The Arches Circle | Deer Park | NY |
| 2776 | OUTLETS OF DES MOINES | 545 Bass Pro Drive Nw | Altoona | IA |
| 3776 | THE OUTLET SHOPPES AT LAR | 1600 Water Street | Laredo | TX |
| 5026 | TANGER OUTLET CENTER JEFF | 8000 Factory Shops Blvd | Jeffersonville | OH |
| 3613 | NEBRASKA CROSSING OUTLET | 21355 Nebraska Crossing D | Gretna | NE |
| 3745 | LOUISIANA BOARDWALK OUTLE | 490 Boardwalk Blvd | Bossier City | LA |
| 3600 | EMPIRE OUTLETS | 35B Richmond Terrace | Staten Island | NY |
| 8804 | OUTLETS AT CORPUS CHRISTI | 500 North Ih 69 | Robstown | TX |
| 1124 | LAGUNA 99 PLAZA | 8451 Elk Grove Blvd | Elk Grove | CA |
| 3220 | VINTAGE OAKS | 120 Vintage Way | Novato | CA |
| 7995 | HERTITAGE PARK PLAZA | 448 North Main Street | East Longmeadow | MA |
| 14 | CENTURY CENTER | 353 Memorial Blvd | West Springfield | MA |
| 8672 | VILLAGE SHOPS | 95 Washington Street | Canton | MA |
| 8527 | UNIVERSITY CENTER | 4237 Campus Drive | Irvine | CA |
| 9959 | ESPLANADE SHOPPING CENTER | 365 West Esplanade Drive | Oxnard | CA |
| 9637 | BLUE STAR SHOPPING CENTER | 1701 Rt 22 West | Watchung | NJ |
| 5587 | SULLY PLAZA | 13936 Lee Jackson Hwy | Chantilly | VA |
| 2355 | SHOPS @ DUNES ON MONTEREY | 130 General Stilwell Dr | Marina | CA |
| 8558 | ARLINGTON SHOPPING CENTER | 804 Us Highway 46 | Parsippany | NJ |
| 7338 | WAREHAM CROSSING | 2421 Cranberry Hwy | Wareham | MA |
| 8974 | LANTANA SQUARE | 206 Lantana Drive | Hokessin | DE |
| 5916 | GREAT LAKES MALL | 7850 Mentor Avenue | Mentor | OH |
| 47 | THE SHOPS AT LA CANTERA | 15900 La Cantera Pkwy | San Antonio | TX |
| 6604 | PARROT PLAZA | 1401 W. North Avenue | Melrose Park | IL |
| 8232 | WESTFORD PLAZA | 175 Littleton Rd | Westford | MA |
| 2726 | CATHEDRAL VILLAGE | 69185 Ramon Road | Cathedral City | CA |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 11 of 12

| Loc Number | Location Name | Location Address | Location City | Location State / Province |
|---|---|---|---|---|
| 5125 | ARLINGTON SQUARE | 4725 Reed Road | Columbus | OH |
| 971 | PAVILIONS PLACE | 16420 Beach Blvd | Westminster | CA |
| 8314 | MORGAN HILL SHOPPING CENT | 1057 Cochrane Rd | Morgan Hill | CA |
| 7432 | HIGHLAND COMMONS | 56 Highland Commons East | Hudson | MA |
| 7884 | CROSS POINT CENTRE | 101 E. Alex Bell Rd | Centerville | OH |
| 9737 | COPPER TREE PLAZA | 350 Ramapo Valley Rd | Oakland | NJ |
| 1135 | NORTHBOROUGH CROSSING | 9113 Shops Way | Northborough | MA |
| 8731 | SILVERNAIL SHOPPING CENTE | 2116 Silvernail Rd | Pewaukee | WI |
| 8357 | TRIANGLE SHOPPING CENTER | 20 Triangle Center | Yorktown Heights | NY |
| 585 | WOODBURN PLAZA SHOPPING C | 3040 Sprague Lane | Woodburn | OR |
| 8566 | ROCKFORD PLAZA | 4190 Vinewood Lane | Plymouth | MN |
| 9230 | THE ORCHARD TOWN CENTER | 14583 Orchard Parkway | Westminster | CO |
| 5221 | COMMERCE TOWN CENTER | 3050 Union Lake Rd | Commerce | MI |
| 7876 | THE SHOPPES AT HAWK RIDGE | 6115 Ronald Reagan Drive | Lake St. Louis | MO |
| 8733 | RIVERVIEW WEST MARKETPLAC | 3770 W. Mcfadden Ave | Santa Ana | CA |
| 2724 | GIBBS CROSSING | 350 Palmer Rd | Ware | MA |
| 9963 | SHARP'S PLAZA | 175 Route 70 East | Medford | NJ |
| 9107 | COTTONWOOD SHOPPING CENTE | 1100 S. Hwy 260 #17A | Cottonwood | AZ |
| 9353 | PORT PLAZA | 45 Storey Ave | Newbury Port | MA |
| 1379 | CURRY HOLLOW CENTER | 314 1/2 Curry Hollow Dr | Pleasant Hills | PA |
| 3515 | EDMOND CROSSING S.C. | 72 S.E. 33Rd Street | Edmond | OK |
| 9184 | TRAVER VILLAGE | 2627 Plymouth Road | Ann Arbor | MI |
| 1048 | CRYSTAL CITY SHOPS @1750 | 1670 Crystal Sq Arcade | Arlington | VA |
| 3619 | WAYLAND TOWN CENTER | 77 Andrew Ave | Wayland | MA |
| 559 | MUNDELEIN CROSSINGS | 3022 Route 60 | Mundelein | IL |
| 1558 | SHOPPES @ PGH MILLS | 2015 Pgh Mills Blvd | Tarentum | PA |
| 5167 | WALMART LAFAYETTE | 1217 Diamond Circle | Lafayette | CO |
| 1618 | MIDDLESEX S.C. | 1342 Eastern Blvd. | Baltimore | MD |
| 1348 | SUNRISE VILLAGE SHOPPING | 4776 East Sunrise Drive | Tucson | AZ |
| 5823 | WEST MARKET SC | 109 S Parket Street - 109 | Olathe | KS |
| 7371 | SPRING CREEK JUNCTION | 681 South Green Bay Road | Neenah | WI |
| 8069 | WINDSOR COMMONS | 3143 Cape Horn Road | Red Lion | PA |
| 6997 | SOUTHGATE PLAZA | 3501 S Tamiami Trail | Sarasota | FL |
| 1691 | PADUCAH TOWNE CENTER | 3216 Irvin Cobb Drive | Paducah | KY |
| 7493 | RIVER HILL VILLAGE CENTER | 6030 Daybreak Circle | Clarksville | MD |
| 8941 | FALLS GROVE VILLAGE CTR | 14933 F Shady Grove Rd | Rocville | MD |
| 3270 | SOUNDVIEW MARKETPLACE | 20 Soundview Marketplace | Port Washington | NY |
| 8954 | GREENTREE ROAD S/C | 1969 Greentree Rd | Pittsburgh | PA |
| 9258 | MALL @ SIERRA VISTA | 2200 El Marcado Loop | Sierra Vista | AZ |
| 9256 | WHITTWOOD TOWN CENTER | 15702 Whittwood Lane | Whittier | CA |
| 9178 | TROPICANA BELTWAY CENTER | 5130 S. Ft Apache Rd | Las Vegas | NV |
| 6775 | THE SHOPPES AT OLD BRIDGE | 3849 Us Highway 9 | Old Bridge | NJ |
| 3894 | NIAGARA CONSUMER SQUARE | 7314 Niagara Falls Blvd | Niagara Falls | NY |
| 9338 | SHEEPSHEAD BAY | 1710 Sheepshead Bay Rd | Brooklyn | NY |

Exhibit 2 to Store Closing Motion - Closing Stores.xlsx          Page 12 of 12

## **EXHIBIT 3**

**U.S. Consulting Agreement**

# CONSULTING AGREEMENT

This Consulting Agreement ("<u>Agreement</u>") is made as of June 10, 2020 (the "<u>Effective Date</u>"), by and among GNC Holdings, Inc. ("<u>Merchant</u>") and a joint venture comprised of Tiger Capital Group, LLC ("<u>Tiger</u>") and Great American Group, LLC ("<u>GA</u>") (collectively, the "<u>Consultant</u>" and together with Merchant, the "<u>Parties</u>" and each a "<u>Party</u>").

## RECITALS

WHEREAS, Merchant operates retail stores and desires that the Consultant act as Merchant's exclusive consultant for the limited purposes of (a) assisting Merchant (i) in determining stores to close immediately (or not to reopen) (the "<u>Closing Stores</u>") and stores at which to conduct a Sale as defined below (the "<u>GOB Stores</u>") and (ii) with the logistics of transferring Merchandise (as defined below) from the Closing Stores to the GOB Stores; (b) selling all of the Merchandise (as defined below) from Merchant's Closing Stores and GOB Stores identified on **Exhibit A** attached hereto (as may be modified prior to the Sale Commencement Date (as defined below) including by adding or removing stores, in each case pursuant to Section 1 below) (each such store identified on Exhibit A individually a "<u>Store</u>," and collectively the "<u>Stores</u>") by means of a "store closing", "location closing", "sale on everything", "everything must go", or similar themed sale as agreed between the Parties at the GOB Stores (as further described below, the "<u>Sale</u>"); and (c) selling or otherwise disposing of Merchant owned furniture, furnishings, trade fixtures, machinery, equipment, office supplies, supplies and other tangible personal property that are located in the Stores (collectively, "<u>FF&E</u>") in the Stores, each upon the terms set forth herein.

## AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Consultant and Merchant hereby agree as follows:

**Section 1.**      **Appointment of Consultant**

Effective as of the date hereof, subject to the entry of the Approval Order (as defined below) by the Bankruptcy Court (as defined below), Merchant hereby appoints the Consultant, and the Consultant hereby agrees to serve, as Merchant's consultant for the purpose of conducting the Sale in accordance with the terms and conditions of this Agreement as more definitively set forth in Section 4 hereof.   Subject to Section 12, Consultant shall be authorized to advertise the Sale as a "store closing", "location closing", "sale on everything", "everything must go", or similar-themed sale in accordance with the terms hereof.

After the date hereof, at the option of the Merchant and if necessary subject to the approval of the Bankruptcy Court, Merchant may add additional Closing Stores and GOB Stores for Consultant to serve as Merchant's independent consultant in connection with the conduct of a Sale (the "<u>Additional Stores</u>") with respect to such Additional Stores on the terms and conditions of this Agreement subject to appropriate adjustments as agreed for the Sale Commencement Date, the Sale Termination Date, the Expense Budget, the Consulting Fee and the FF&E Fee (each as defined below) for such Additional Stores (as may be applicable), which Additional Stores and such terms shall be set forth in a written addendum hereto.  The Additional Stores and the initial Stores shall be collectively referred to as the "Stores" herein.

**Section 2.**      **Merchandise**

For purposes hereof, "<u>Merchandise</u>" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (as defined below) or delivered thereto after the Sale Commencement Date pursuant to the terms hereof.   "Merchandise" does not mean and shall not include: (1) goods that belong to

sublessees, licensees, or concessionaires of Merchant or are leased and licensed from third parties by Merchant, or are held by Merchant on memo, on consignment or as bailee, in each case, to the extent identified by Merchant as excluded from Merchandise; (2) FF&E; (3) expired goods or goods that expire prior to the Sale Termination Date (as defined below); (4) damaged or defective merchandise that cannot be sold for the purpose for which it was intended; or (5) gift cards (third party and Merchant branded).

**Section 3.     Sale Term**

The Sale shall commence as mutually agreed; provided, however, (a) for GOB Stores that are currently operating, the Sale shall commence on or about June 25, 2020, and (b) for GOB Stores that are not currently operating, the Sale shall commence on or about the later of the date upon which Merchant reopens each such GOB Store and June 25, 2020 (the "Sale Commencement Date"). The Sale shall conclude no later than September 30, 2020 (the Sale Termination Date"); provided, however, that Merchant may agree in writing in its sole discretion to extend or terminate the Sale at any GOB Store prior to the Sale Termination Date (it being understood that, if the timing set forth herein changes, Merchant and Consultant shall mutually agree on any adjustments to the Expense Budget (as defined below) and Consultant's compensation); provided further, however, that Merchant may agree in writing in its sole discretion to make any GOB Store a Closing Store prior to the Sale Termination Date. The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "Sale Term." Upon the removal of Merchandise from each Store and at the conclusion of the Sale at each GOB Store, (a) Consultant shall surrender the premises for such Store to Merchant in broom-swept and clean condition with any unsold FF&E abandoned in place at such Store, and (b) Consultant shall reasonably assist Merchant to photographically document the condition of each such Store upon the conclusion of the Sale there.

**Section 4.     Project Management**

    (A)     Consultant's Undertakings

After the Effective Date hereof, Consultant shall (a) conduct a review and assessment of Merchant's current store closing plan and accompanying assumptions in light of the current market environment, (b) make recommendations in order to minimize expenses and maximize the return from the sale of Merchandise, (c) consult with Merchant as to which stores to close immediately (or to not reopen) and at which to conduct the Sale, and (d) consult with Merchant as to the logistics of transferring merchandise from the Closing Stores to the GOB Stores. During the Sale Term, Consultant shall, in collaboration with Merchant, (a) provide one or more qualified supervisors (the "Supervisors") engaged by Consultant and reasonably approved in advance by Merchant to oversee the Sale and management of the GOB Stores in an effort to maximize revenue and sell all of the Merchandise prior to the end of the Sale; (b) determine appropriate point-of-sale and external advertising, reasonably approved in advance by Merchant; (c) determine appropriate discounts of Merchandise, staffing levels, and appropriate bonus and incentive programs, if any, for the GOB Stores' employees, in each case reasonably approved in advance by Merchant; (d) oversee display of Merchandise for the GOB Stores; (e) evaluate sales of Merchandise by category, provide sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties and for Merchant Confidential Information (as defined below) in accordance with the next paragraph; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) to the extent necessary, assist Merchant in obtaining all required permits and governmental consents required to conduct the Sale; (i) price, market, and sell the FF&E on behalf of Merchant; and (j) provide such other related services deemed necessary or appropriate by Merchant and Consultant.

Without limiting the generality of the foregoing, all information of a business nature relating to the pricing, sales, promotions, marketing, assets, liabilities, or other business affairs of Merchant, its customers, parent, subsidiaries, or other affiliated entities (for purposes of this paragraph, all such entities are included within each reference to "Merchant") is Merchant's confidential, trade secret information ("Merchant Confidential

Information"), which is and shall remain the exclusive intellectual property of Merchant. Except as may be required for Consultant to perform its obligations under this Agreement in respect of the Sale, Consultant shall not divulge, furnish, make available, or in any other manner disclose such information to any third party other than to the respective affiliates, officers, employees, representatives, and agents of each party comprising Consultant. Each party comprising Consultant shall take and shall cause its respective affiliates, officers, employees, representatives, and agents to take such action as shall be reasonably necessary or advisable to preserve and protect the confidentiality of Merchant Confidential Information. Each party comprising Consultant agrees to maintain strict confidentiality and agrees that it may use Merchant Confidential Information only as reasonably necessary in the performance of its obligations related to the Sale.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant. Merchant shall only be responsible for reimbursing Consultant for the cost of such Supervisors as part of the Expense Budget (as defined below). Consultant shall vacate the GOB Stores on the Sale Termination Date, or such other date as agreed between the Merchant and the Consultant in accordance with the terms hereof.

    (B)   Merchant's Undertakings

During the Sale Term, Merchant shall, as applicable, **(a)** remain the employer of the Stores' employees; **(b)** remain responsible for all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; **(c)** prepare and process all tax forms and other documentation; **(d)** collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; **(e)** use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors; **(f)** execute all agreements mutually determined by the Merchant and the Consultant to be necessary or desirable for the operation of the GOB Stores during the Sale; **(g)** arrange for the ordinary maintenance of all point-of-sale equipment required for the GOB Stores; and **(h)** ensure that Consultant has quiet use and enjoyment of the GOB Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services typically provided to Stores in the ordinary course and necessary for the Sale, including internal payroll processing, MIS services, cash and inventory reconciliation, data processing and reporting, email preparation and distribution, information technology updates, functionality, and maintenance, and accounting, all at no cost to Consultant.

The Parties expressly acknowledge and agree that Consultant shall have no liability to Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees, and such employees shall not be considered employees of Consultant.

The Parties acknowledge that this Agreement is being entered into in the midst of the outbreak of the COVID-19 pandemic and that local, state, and national laws and responses are continuously developing and evolving, often in unpredictable ways. Merchant hereby agrees that, while Consultant will fully cooperate with Merchant to adhere to any restrictions, laws, regulations, recommendations, or orders imposed by local, state or federal governmental entities, or similar regulatory or authoritative agencies, that may be imposed on any aspect of Merchant's ability to operate the Stores in response to the COVID-19 pandemic, the responsibility and expense of complying with any such restrictions, laws, regulations, recommendations, or orders, including their enforcement and implementation, shall be the sole responsibility of Merchant. Examples of such restrictions, regulations or recommendations may include, without limitation: (a) providing protective gear (such as masks, sanitizers, and similar items) aimed at reducing the spread of the virus to Merchant's employees, customers, vendors, etc.; (b) implementing physical restrictions with regard to Store operations, including monitoring the number of customers allowed into a Store at any given time; and (c) enforcing daily cleaning and sanitizing procedures at the Stores. Merchant and its employees shall be responsible to facilitate, enforce, and implement

any such restrictions or regulations, however, Consultant agrees not to violate any such restrictions, laws, regulations, recommendations or orders in the performance of its services hereunder.

**Section 5.**    **The Sale**

All sales of Merchandise and FF&E shall be made on behalf of, and solely in the name of, Merchant. Consultant does not have, nor shall it have, any right, title, or interest in the Merchandise or FF&E. All sales of Merchandise and FF&E shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed unless otherwise directed by Merchant or mandated by law. If Merchant commences a case(s) under chapter 11 of the Bankruptcy Code (as defined below), the right to honor gift cards, gift certificates or merchandise credit, after the commencement of such case(s) shall be subject to further order of the Bankruptcy Court.

**Section 6.**    **Consultant Fee and Expenses in Connection with the Sale**

(A) Consultant's Fee

Subject to the entry of the Approval Order, Consultant shall be entitled to a base fee for its services equal to $1,000 per GOB Store and $500 per Closing Store (the "Base Fee") payable as follows: (x) 50% upon entry of an interim Approval Order of the Bankruptcy Court authorizing the Sale pursuant to the terms and conditions of this Agreement and (y) 50% upon entry of the final Approval Order. In addition, Merchant may earn an additional incentive fee (the "Incentive Fee" and together with the Base Fee, the "Consulting Fee") based upon the following thresholds of Gross Proceeds (as defined below) received during the Sale divided by the Cost Value (as defined below) of the Merchandise sold during the Sale (the "Gross Recovery Percentage") calculated back to the first dollar received:

| Gross Recovery Percentage | Total Incentive Fee |
| --- | --- |
| Between 120% to 134.99% | .50% of Gross Proceeds |
| Between 135% to 149.99% | .75% of Gross Proceeds |
| 150.0% or above | 1.25% of Gross Proceeds |

For the avoidance of doubt, the above Incentive Fee, if achieved, is in addition to the Base Fee.

After it is determined that Consultant has earned an Incentive Fee, Merchant shall pay such Incentive Fee as earned as part of the weekly reconciliations and in any event no later than the Final Reconciliation (as defined below).

For purposes of this calculation, (i) "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise that is sold through the Sale (including, as a result of the redemption of any gift card, gift certificate or merchandise credit as well as wholesale sales to third parties and miscellaneous income) during the Sale Term, after the application of all discounts including, without limitation, any discount coupons issued by Merchant in the ordinary course of its business, and net only of sales taxes, and (ii) "Cost Value" shall mean the aggregate gross cost of Merchandise sold during the Sale per the Merchant's books and records. For the avoidance of doubt, the proceeds of the sale of Additional Consultant Goods (as defined below) pursuant to Section 7 hereof shall not constitute Gross Proceeds. The Parties shall mutually agree upon the Consulting Fee for any Additional Stores in writing.

For purposes of calculating Gross Proceeds, Consultant and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable sales taxes and (ii) cash reports of sales within each Store. Register receipts shall show for each item sold the retail price (as reflected on Merchant's books and records) for such

4

item, and the markdown or other discount granted in connection with such sale. All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

### (B) Expenses

Merchant shall be responsible for all reasonable and documented costs and expenses of the Sale, including all Store level operating expenses. To control expenses of the Sale, Merchant and Consultant have established a budget (the "Expense Budget") of certain delineated expenses in connection with the Sale, including supervision (including Supervisors' wages, fees, travel and any other compensation and any travel expenses of Consultant), advertising costs and signage. The Expense Budget for the Sale is attached hereto as **Exhibit B**. The Expense Budget may only be modified by mutual written agreement of Consultant and Merchant. Notwithstanding anything herein to the contrary, unless otherwise agreed to by Merchant, Merchant shall not be obligated to pay costs of supervision, advertising costs and signage that exceed the budgeted amount, on an aggregate basis. The Parties acknowledge that the Expense Budget will be updated as appropriate in connection with any modification of the lists of GOB Stores or the terms of the Sale and agree to cooperate in good faith with respect to such updates or to any Additional Stores.

### (C) Reconciliation

Consultant shall maintain books and records as it relates to the services rendered under this Agreement. Subject to the terms of the Approval Order, all accounting matters (including, without limitation, any Consulting Fees and expenses per the Expense Budget that are reimbursable or payable to Consultant and, if applicable, the Additional Consultant Goods Fee (as defined below)) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation.

Within twenty (20) days following the Sale Termination Date for each GOB Store, the Parties shall complete a final reconciliation and settlement based upon the total Gross Proceeds received and all amounts earned and due to Consultant and contemplated by this Agreement (including, without limitation, Expense Budget items) (the "Final Reconciliation"). Upon completion of the Final Reconciliation, if a payment is due from either Party, such Party shall pay the other Party any amounts calculated to be due as part of such Final Reconciliation after considering any amount previously paid to the Consultant (including without limitation Expense Budget items and any other payments under this Agreement). Merchant or its firm of auditors appointed by Merchant has the right, upon reasonable written notice to Consultant, to inspect at reasonable times and locations such documentation, records, and equipment that reasonably relate to the services provided for under this Agreement for purposes of ensuring performance of Consultant's obligations under this Agreement.

### (D) Advance on Expenses

Subject to the terms of the Approval Order, as an advance against the expenses of the Sale, and to secure payment of the same and any other amounts due to Consultant, no later than five (5) days after the Effective Date, and in no event later than the last business day before the filing of a bankruptcy case, Merchant shall pay to Consultant a deposit in the amount of $1,200,000, which is an estimate of the costs of signage, advertising and Supervisors for a two (2) week period, and is calculated based on the number of Stores included on **Exhibit A** as of the Effective Date (the "Advance"). The Parties agree that the Advance may only be used to pay for expenses pursuant to the Expense Budget. The Parties further agree to increase the sum of the Advance in the event that Additional Stores are added and as needed, provided, however, that Merchant must expressly approve such increases in writing. The Advance shall be applied against the reimbursement of expenses or payment of the Consulting Fee at the end of the Sale Term to the extent not otherwise paid, and to the extent not expended when the Sale concludes, and shall be returned to Merchant as part of the Final Reconciliation or such other time that Merchant and Consultant mutually agree.

**Section 7.     Additional Consultant Goods**

5

Subject to Merchant's prior written approval, and further subject to the Approval Order authorizing the sale of Additional Consultant Goods, and upon the terms of such Approval Order, and further subject to Merchant's prior written approval of a plan with respect to the placement and sale of such Additional Consultant Goods, Consultant shall be allowed to include in the Sale supplemental goods procured by Consultant of like kind and no lesser quality to the Merchandise ("Additional Consultant Goods") located in the GOB Stores. Consultant shall be responsible for payment of the out-of-pocket costs directly associated with procuring any Additional Consultant Goods, which costs shall not constitute expenses reimbursable pursuant to the Expense Budget under this Agreement; provided, however, that such costs shall not include any occupancy expenses related to the Stores. Merchant shall have no liability whatsoever for any shrink relating to the Additional Consultant Goods. Consultant will ring the Additional Consultant Goods using either a "dummy" SKU or department number, or in such other manner as will enable the Parties to distinguish sales of the Additional Consultant Goods from sales of the Merchandise. Consultant shall pay Merchant five percent (5.0%) of the aggregate gross proceeds of the sale of Additional Consultant Goods during the Sale (net only of sales taxes related thereto) (the "Additional Consultant Goods Fee").

Consultant and Merchant intend that any transactions relating to the Additional Consultant Goods are, and shall be construed as, a true consignment from Consultant to Merchant in all respects and not a consignment for security purposes. Subject solely to Consultant's obligation to pay to Merchant the Additional Consultant Goods Fee, at all times and for all purposes the Additional Consultant Goods and the proceeds thereof shall be the exclusive property of Consultant, and no other person or entity shall have any claim against any of the Additional Consultant Goods or their proceeds. The Additional Consultant Goods shall at all times remain subject to the exclusive control of Consultant. Subject solely to Consultant's obligations to pay Merchant the Additional Consultant Goods Fee, the Additional Consultant Goods and the identifiable proceeds thereof shall not be property of Merchant (or Merchant's estate) and shall not constitute property of Merchant (or Merchant's estate) subject to any lender's lien.

The Consultant at Consultant's sole expense shall insure the Additional Consultant Goods and, if required, promptly file any proofs of loss with regard to same with its insurers. Consultant shall be responsible for payment of any deductible under any such insurance in the event of any casualty affecting the Additional Consultant Goods.

Consultant acknowledges, and the Approval Order shall provide, that the Additional Consultant Goods shall be consigned to Merchant as a true consignment under Article 9 of the Uniform Commercial Code (the "UCC") and, to the extent necessary, Consultant is hereby granted a first priority security interest in and lien upon the Additional Consultant Goods and the proceeds thereof less the Additional Consultant Goods Fee.

**Section 8.**     **Indemnification**

   (A) Merchant's Indemnification

Except as otherwise provided for in this Agreement, Merchant shall indemnify, defend, and hold each party comprising Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, affiliates, and Supervisors (collectively, "Consultant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or grossly negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or a Consultant Indemnified Party, except claims arising from Consultant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties (as defined below); (e) Merchant's failure to pay over to the appropriate taxing authority

6

any taxes required to be paid by Merchant during the Sale Term in accordance with applicable law; and (f) any claims of Merchant's employees for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring or retention of its employees.

### (B) Consultant's Indemnification

Except as otherwise provided for in this Agreement, Consultant shall, on a joint and several basis, indemnify, defend and hold Merchant and its affiliates and their respective consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or grossly negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to Consultant's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties or Merchant's customers by Consultant or any of the Consultant Indemnified Parties and (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement.

### Section 9.    Insurance

#### (A)    Merchant's Insurance Obligations

Merchant shall maintain, throughout the Sale Term, liability insurance policies (including products liability in the amounts currently provided, commercial general liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be included as an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is an additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all applicable statutory requirements.

#### (B)    Consultant's Insurance Obligations

As an expense of the Sale and as set forth on the Expense Budget, Consultant shall maintain, throughout the Sale Term, liability insurance policies (including products liability/completed operations, contractual liability, comprehensive commercial general liability, without limitation, including auto liability insurance) on an occurrence basis in an amount of at least one million dollars ($1,000,000) per occurrence and an aggregate basis of at least five million dollars ($5,000,000) for commercial general liability covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores and $5,000,000 per occurrence combined single limit for auto. Consultant shall name Merchant as an additional insured and loss payee under such policies, and upon execution of this Agreement provide Merchant with a certificate or certificates of insurance evidencing the insurance coverage required hereunder. In addition, Consultant shall maintain throughout the Sale Term workers compensation insurance compliant with all statutory requirements. Further, should Consultant employ or engage third parties to perform any of Consultant's undertakings with regard to this Agreement, Consultant will ensure that such third parties are covered by Consultant's insurance or maintain all of the same insurance as Consultant is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

### Section 10.    Representations, Warranties, Covenants and Agreements

(A)    <u>Merchant's Representations, Warranties, Covenants and Agreements.</u>

Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder (subject to any requisite Bankruptcy Court approval), and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices, and (d) all normal course hard markdowns on the Merchandise have been and will be, taken consistent with customary Merchant's practices.

(B)    <u>Consultant's Representations, Warranties, Covenants and Agreements.</u>

Each party comprising Consultant respectively warrants, represents, covenants and agrees that (a) it is a company duly organized, validly existing and in good standing under the laws of its state of organization, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of such Consultant party and this Agreement constitutes a valid and binding obligation of such Consultant party, enforceable against such Consultant party in accordance with its terms and conditions, and the consent of no other entity or person is required for such Consultant party to fully perform all of its obligations herein, (c) subject to Section 4(A) above, it shall comply with and act in accordance with any and all applicable state and local laws, rules, regulations, and other legal obligations of all governmental authorities in conducting the Sale, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, (e) it will not take any disciplinary action against any employee of Merchant, (f) Consultant will comply with lease terms, obligations and restrictions for each Store while performing the services hereunder, and (g) it shall conduct the Sale in accordance with the terms of this Agreement.

## Section 11.    <u>Furniture, Fixtures and Equipment</u>

Subject to evaluation by the parties on a case by case basis to determine what may be sold from each Store as provided below, Consultant shall sell the FF&E in the GOB Stores and, to the extent applicable, the Closing Stores.  Subject to the terms of the Approval Order, Merchant shall reimburse Consultant for Consultant's reasonable and documented out of pocket costs and expenses incurred by Consultant in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to a written budget or budgets to be established from time to time by mutual written agreement of the Parties (the "FF&E Budget").  Consultant shall have the right to abandon at the Stores any unsold FF&E, in a neat and orderly fashion.  Unless otherwise agreed to by Merchant, the sale of the FF&E in each Store shall conclude no later than the Sale Termination Date for each Store.

Subject to the terms of the Approval Order, for the Stores set forth on **Exhibit A**, Consultant shall be entitled to a commission equal to fifteen percent (15.0%) of the Gross FF&E Proceeds (as defined below) from the sale of the FF&E (the "FF&E Fee").

Notwithstanding the foregoing, Merchant may inform Consultant that it intends to remove certain fixtures from the Stores and such fixtures shall not be included in the FF&E.  Prior to the commencement of the Sale, Merchant will provide a list of any such fixtures at each store location to Consultant and will remove such fixtures from the Stores as soon as practical before or during the Sale.  Consultant will use commercially reasonable efforts to ensure that the designated fixtures remain in good condition throughout the Sale.

8

Consultant shall remit to Merchant all Gross FF&E Proceeds. For purposes of this Agreement, "Gross FF&E Proceeds" means gross receipts from the sale of FF&E, net only of applicable sales taxes. During each weekly reconciliation described above, Consultant's FF&E Fee (if any) shall be calculated, and Consultant's calculated FF&E Fee and all FF&E costs and expenses then incurred shall be paid within seven (7) days after each such weekly reconciliation.

**Section 12.    Advertising, Promotions, Signwalkers and Signage**

Consultant shall obtain prior written approval from Merchant for any advertising, promotions, signwalkers, and signage, which shall not be unreasonably withheld, and except as provided otherwise in the Approval Order shall cooperate with Merchant to ensure reasonable compliance with state and local government regulations and Store lease agreements. Advertising and signage shall be at the expense of Merchant as provided in **Exhibit B** or as otherwise agreed between the parties.

**Section 13.    Termination**

The following shall constitute "Termination Events" hereunder:

      (a)    Merchant's or Consultant's failure to perform any of their respective material obligations hereunder, which failure remains uncured for seven (7) days after receipt of written notice thereof to the defaulting Party;

      (b)    Any representation or warranty made by Merchant or Consultant is untrue in any material respect as of the date made or at any time and throughout the Sale Term;

      (c)    The Sale is terminated or materially interrupted or impaired for any reason other than an event of default by Consultant or Merchant;

      (d)    Bankruptcy Court approval of this Agreement is required and the Bankruptcy Court does not provide interim approval of Merchant's entry into and performance under this Agreement on or before July 7, 2020; or

      (e)    The Bankruptcy Court issues any Order requiring the termination of this Agreement.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default. If this Agreement is terminated, Merchant shall be obligated to pay Consultant all undisputed amounts due under this Agreement through and including the termination date. Merchant will be permitted to terminate this Agreement for any reason upon thirty (30) days' written notice to Consultant and, in such case, subject to the terms of the Approval Order, Consultant shall be paid its fee for selling Merchandise and FF&E through the date of such termination.

**Section 14.    Notices**

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: GNC Holdings, Inc., Attention: Accounts Payable Dept, 300 Sixth Avenue, Pittsburgh, PA 15222; (b) to Consultant: Tiger Capital Group, 60 State Street, 11th Floor, Boston, MA 02109, Attn: Mark P. Naughton, with a copy to Great American Group, LLC, 21255 Burbank Blvd., Suite 400, Woodland Hills, CA 91367, Attn: Scott K. Carpenter and Marina Fineman; and (c) such other address as may be designated in writing by Merchant or Consultant.

**Section 15.** **Independent Consultant**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect. No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement. Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**Section 16.** **Non-Assignment**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party. No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party. This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**Section 17.** **Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable. If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**Section 18.** **Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the internal laws of the State of Delaware (without reference to the conflicts of laws provisions therein). Merchant and Consultant waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross-complaint in any action, proceeding and/or hearing brought by either Consultant against Merchant or Merchant against Consultant on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Consultant, any claim of injury or damage or the enforcement of any remedy under any law, statute, or regulation, emergency or otherwise, now or hereafter in effect.

**Section 19.** **Security**

Consultant has implemented and shall operate at all times the technical and organizational security measures set forth on **Exhibit C** hereto.

**Section 20.** **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof. No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Section 21.** **Execution**

10

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

### Section 22.     Bankruptcy Court Approval

If Merchant commences a case under Chapter 11 of title 11, United States Code (the "Bankruptcy Code"), with a bankruptcy court (the "Bankruptcy Court"), or consents to relief in the event an involuntary petition for relief under the Bankruptcy Code is filed against Merchant, Merchant shall file a motion to approve or assume this Agreement under section 365 of the Bankruptcy Code, and utilize its commercially reasonable efforts to ensure that such motion is approved by an order (the "Approval Order") that provides for, among other things, as follows: (i) approval and/or assumption of this Agreement; (ii) the payment of all fees and reimbursement of expenses hereunder to Consultant, free and clear of all liens, claims and encumbrances, on a weekly basis without further order of the Bankruptcy Court and otherwise in accordance with this Agreement; (iii) approval of the transaction contemplated hereby; (iv) authorizing the Sale without the necessity of complying with state and local rules, laws, ordinances and regulations, including, without limitation, permitting and licensing requirements, that could otherwise govern the Sale; (v) authorizing the Sale notwithstanding restrictions in leases, reciprocal easement agreements or other contracts that purport to restrict the Sale or the necessity of obtaining any third party consents; (vi) authorizing the advertising of the Sale, including with the use of signwalkers, upon the terms set forth herein; (vii) authorizing the sale of Additional Consultant Goods and granting Consultant a first priority senior security interest and lien upon the Additional Consultant Goods and proceeds thereof as provided herein; and (viii) authorizing Merchant to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. The Parties acknowledge that Bankruptcy Court approval is required for Merchant to enter into and perform under this Agreement. In the event of a bankruptcy filing, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Bankruptcy Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, Consultant shall conduct the Sale in accordance with the terms of the Approval Order in all material respects.

### Section 23.     Authorized Consultant Party

Tiger and GA have formed a joint venture, and, as such, share in the rights and liabilities of Consultant as set forth in this Agreement. Tiger is hereby designated as the lead and authorized party to deal directly with Merchant on behalf of Consultant and has the authority to contractually bind Consultant under this Agreement without having to obtain any express written concurrent approval(s) from GA. Tiger and GA will be jointly and severally liable for all acts, omissions, and obligations of Consultant hereunder.


[SIGNATURES TO FOLLOW]

IN WITNESS WHEREOF, the Consultant and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

Tiger Capital Group, LLC

By:  Mark P. Naughton
Title:  Senior General Counsel

Great American Group, LLC

By:  Scott K. Carpenter
Its:  President, GA Retail Solutions

GNC Holdings, Inc.

By: Tricia Tolivar
Title: EVP, Chief Financial Officer

IN WITNESS WHEREOF, the Consultant and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

Tiger Capital Group, LLC

_____

By:
Title:

Great American Group, LLC

_____

By:  Scott K. Carpenter
Its:  President, GA Retail Solutions

GNC Holdings, Inc.

_____

By: Tricia Tolivar
Title: EVP, Chief Financial Officer

**Exhibit A**
**Store List**

| Loc Number | Location Name | Location Address | Location City | Location State |
|---|---|---|---|---|
| 7467 | 330 5TH AVE | 330 5Th Ave | New York | NY |
| 1208 | 31 65 STEINWAY ST | 31 65 Steinway St | Astoria | NY |
| 3800 | 125 PARK AVENUE | 125 Park Ave | New York | NY |
| 9118 | 684 THIRD AVENUE | 684 Third Avenue | New York | NY |
| 1569 | 220 O'FARRELL ST | 220 O'Farrell St | San Francisco | CA |
| 2564 | 1034-1036 THIRD AVE | 1034-1036 Third Ave | New York | NY |
| 2479 | HOLLYWOOD & HIGHLAND | 6801 Hollywood Blvd | Los Angeles | CA |
| 7621 | 159 COLUMBUS AVE | 159 Columbus Ave | New York | NY |
| 7123 | BRATTLE SQUARE | One Brattle Square | Cambridge | MA |
| 8841 | 349 NEWBURY STREET | 349 Newbury St | Boston | MA |
| 1324 | 70 S 69TH ST | 70 S 69Th St | Upper Darby | PA |
| 2384 | 812 DAVIS ST | 812 Davis St | Evanston | IL |
| 6247 | QUEENS CENTER | 90-15 Queens Boulevard | Elmhurst | NY |
| 8523 | FASHION SHOW MALL | 3200 Las Vegas Blvd | Las Vegas | NV |
| 5047 | ROOSEVELT FIELD MALL | 630 Old Country Road | Garden City | NY |
| 1443 | PHEASANT LANE MALL | 310 Daniel Webster Hghway | Nashua | NH |
| 560 | WESTFIELD BRANDON | 356 Brandon Town Ctr Mall | Brandon | FL |
| 360 | DEPTFORD MALL | 1750 Deptford Center Rd | Deptford | NJ |
| 3079 | STAMFORD TOWN CENTER | 100 Greyrock Place | Stamford | CT |
| 1220 | WESTWOOD MALL | 1754 West Michigan Ave | Jackson | MI |
| 817 | WESTFIELD ANNAPOLIS | 1032 Annapolis Mall | Annapolis | MD |
| 846 | WHITE MARSH MALL | 8200 Perry Hall Blvd. | Baltimore | MD |
| 6273 | PROVIDENCE PLACE MALL | 54 Providence Place | Providence | RI |
| 358 | WESTLAND MALL | 35000 W. Warren Road | Westland | MI |
| 2956 | BAYSHORE TOWNE CENTER | 440 W Northshore Drive | Glendale | WI |
| 5130 | GURNEE MILLS | 6170 W Grand Avenue | Gurnee | IL |
| 3531 | GLOUCESTER PREMIUM OUTLET | 1125 S. Blackhorse Pike | Blackwood | NJ |
| 1584 | POTOMAC MILLS | 2700 Potomac Mills Circle | Woodbridge | VA |
| 366 | CINCINNATI PREMIUM OUTLET | 400 Premium Outlets Drive | Monroe | OH |
| 88 | TWIN CITIES PREMIUM OUTLE | 3965 Eagan Outlets Pkwy | Eagan | MN |
| 130 | TANGER OUTLETS | 400 South Wilson Road | Sunbury | OH |
| 590 | TANGER OUTLET - HWY 501 | 4635 Factory Stores Blvd | Myrtle Beach | SC |
| 5333 | TANGER OUTLETS SOUTHAVEN | 5205 Airways Blvd | Southaven | MS |
| 5920 | PASEO COLORADO | 300 E. Colorado Blvd | Pasadena | CA |
| 2376 | RIVERMARK VILLAGE | 3935 Rivermark Plaza | Santa Clara | CA |
| 7038 | UNIVERSITY TC | 140 University Tc | Sarasota | FL |
| 5053 | PHILIPS PLAZA | 675 Sunrise Highway | Lynbrook | NY |
| 8180 | MARKETPLACE CENTER | 1361 Covell Blvd | Davis | CA |
| 9283 | CROSS KEYS COMMONS | 3501 Rt 42 | Turnersville | NJ |
| 349 | SHOPS AT NANUET | 5107 Fashion Dr | Nanuet | NY |
| 3474 | CRANBERRY PLAZA | 2991-J Cranberry Highway | East Wareham | MA |
| 2644 | EAST HANOVER SC | 240 State Route 10 | East Hanover | NJ |
| 7121 | SHOPS AT FALLEN TIMBERS | 6832 Russell Road | Maumee | OH |
| 5273 | HERSHEY SQUARE S. C. | 1138 Mae Street | Hummelstown | PA |
| 7230 | NORTH HILLS CENTRE | 1144 Lonnie Abbott Blvd | Ada | OK |
| 5574 | HAMPTON VILLAGE CENTER | 2771 South Rochester Rd | Rochester Hills | MI |
| 6101 | PARKSIDE SC | 7800 John Davis Drive | Frankfort | KY |
| 7781 | 875 SIXTH AVE | 875 Avenue Of Americas | New York | NY |
| 2927 | 1569 FLATBUSH AVENUE | 1569 Flatbush Ave | Brooklyn | NY |
| 4358 | EIELSON AFB | Building 405 Broadway | Eielson | AK |
| 9860 | TYSENS PARK S/C | 2722 Hylan Blvd | Staten Island | NY |
| 5296 | BRADLEE CENTER | 3690 North King Street | Alexandria | VA |

| | | | |
|---|---|---|---|
| 255 | THE YARDS BOILERMAKER SHO | 300 Tingey St Se | Washington | DC |
| 5431 | EL CERRITO PLAZA | 230 El Cerrito Plaza | El Cerrito | CA |
| 8759 | CULVER CENTER | 3810 Midway Avenue | Culver City | CA |
| 1267 | EAST HILLS VILLAGE | 2671 Oswell Street | Bakersfield | CA |
| 3389 | SIMSBURY COMMONS | 530 Bushy Hill Road | Simsbury | CT |
| 9584 | THE SHOWCASE AT INDIO | 42425 C Jackson Street | Indio | CA |
| 5150 | PLAZA CAYEY | Pr 1 Km 55.2 | Cayey | PR |
| 6165 | MONTVILLE COMMONS | 2020 Norwich-New London T | Montville | CT |
| 5219 | SAN FELIPE PLAZA | 1735 South Voss | Houston | TX |
| 9028 | VALLEY CENTRAL SC | 44418 Valley Central Way | Lancaster | CA |
| 8234 | COLLEGE SQUARE | 210 College Square | Newark | DE |
| 311 | WALMART PLAZA | 656 New Haven Ave | Derby | CT |
| 5085 | WESTCLIFF PLAZA | 1036 Irvine Ave | Newport Beach | CA |
| 7354 | KMART SHOPPING CENTER | 3036 Route 35 South | Hazlet | NJ |
| 2272 | FOUNTAINS OF MIRAMAR | 2933 Sw 160Th Ave | Miramar | FL |
| 7421 | JANTZEN BEACH HAYDEN ISLA | 12152 N Pavilion Ave | Portland | OR |
| 5463 | BURBANK CROSSING | 7929 S Harlem Avenue | Burbank | IL |
| 5720 | CORNERSTONE @ LAKE HEART | 10524 Moss Park Rd | Orlando | FL |
| 8866 | CHERRY HILL SHOPPING CENT | 462 Hempstead Turnpike | West Hempstead | NY |
| 2416 | EDGEWOOD TOWN CENTER | 438-D E Edgewood Blvd | Lansing | MI |
| 104 | ORCHARD SC | 208 S 72Nd Ave | Yakima | WA |
| 5547 | KENTLANDS SQUARE | 251 Kentlands Boulevard | Gaithersburg | MD |
| 9001 | JACKSONVILLE PLAZA | 2050 John Harden Drive | Jacksonville | AR |
| 2025 | OLD TOWN SQUARE | 1237 North Clybourn Ave | Chicago | IL |
| 5257 | FIESTA TRAILS PLAZA | 5238 Dezavala Road | San Antonio | TX |
| 9673 | ELMHURST CROSSING SHOPPIN | 177 South Route 83 | Elmhurst | IL |
| 3504 | BRENTWOOD PLAZA | 8485 Winton Road | Cincinnati | OH |
| 5190 | HILLSBORO SHOPPING CENTER | 649 Route 206 Door 8 | Hillsborough | NJ |
| 7000 | BAYSHORE GARDENS | 6028 14Th Street West | Bradenton | FL |
| 2271 | ROCHESTER CROSSING | 160-162 Washington Street | Rochester | NH |
| 7655 | ORO VALLEY MARKETPLACE | 2060 E Tangerine Road | Oro Valley | AZ |
| 9801 | SOUTHBRIDGE CROSSING | 8082 Oak Carriage Court N | Shakopee | MN |
| 2078 | MASSILLON MARKET | 38 Massillon Marketplace | Massillon | OH |
| 2092 | MERCHANTS PARK SHOPPING C | 953 N Shepherd Dr | Houston | TX |
| 5157 | PLAZA SQUARE | 667 Hamburg Turnpike | Wayne | NJ |
| 2091 | THE MARKET AT OAKLAND | 3006 S Morgan'S Pt Rd | Mt Pleasant | SC |
| 977 | VIERA MARKETCENTER | 6729 Colonnade Ave | Viera | FL |
| 5289 | COMMONS AT ISSAQUAH | 755 West Gilman Blvd. | Issaquah | WA |
| 1292 | PINEHURST SQUARE | 1001 W Interstate Ave | Bismarck | ND |
| 9513 | TRENTON CROSSING | 7600 N. 10Th St | Mcallen | TX |
| 8557 | PIERPOINT CENTRE | 716 Venture Drive | Morgantown | WV |
| 7207 | GOLDEN GATE SHOPPING CTR | 1513 Golden Gate Rd | Mayfield Heights | OH |
| 833 | SUSSEX PLAZA | 22881 Sussex Highway | Seaford | DE |
| 617 | HEARTLAND VILLAGE SHOPPES | 8411 Windfall Lane | Camby | IN |
| 5585 | BATTLEGROUND PLAZA | 3724-H Battleground Ave | Greensboro | NC |
| 7810 | SHOPPES @ PARADISE KEY | 4433 Commons Drive East | Destin | FL |
| 1268 | AMSTERDAM COMMONS | 330 Amsterdam Commons | Amsterdam | NY |
| 7959 | BLUE RIDGE CROSSING | 4173 Sterling Ave | Kansas City | MO |
| 8507 | SUNSHINE SQUARE | 546 East Woolbright Rd | Boynton Beach | FL |
| 5160 | WEST VOLUSIA REGIONAL S/C | 2707 South Woodland | Deland | FL |
| 1864 | SHELBYVILLE SC | 114 Lee Blvd | Shelbyville | IN |
| 7323 | HAVENDALE SQUARE | 382 Havendale Square | Auburndale | FL |
| 138 | SHOPPES AT PRAIRIE RIDGE | 9901 77Th Street | Pleasant Prairie | WI |
| 24 | BROOKDALE CORNER | 5605 Xerxes Ave | Brooklyn Center | MN |

| 9540 | FRANCIS POINTE | 106 Francis Lane | Beaver Dam | WI |
| 1812 | TRAMONTO MARKETPLACE S/C | 3134 W. Carefree Hgwy | Phoenix | AZ |
| 7388 | MIDDLEBURG CROSSINGS | 2640 Blanding Blvd | Middleburg | FL |
| 5461 | RIVER RUN SHOPPING CENTER | 9929 Miramar Parkway | Miramar | FL |
| 294 | GRAVOIS BLUFFS | #35 Gravois Bluffs Plaza | Fenton | MO |
| 3923 | HICKORY FLAT VILLAGE | 6175 Hickory Flat Highway | Canton | GA |
| 7158 | FRANKLIN CENTRE | 915 B Hwy 321 | Lenoir | TN |
| 2023 | OAK HOLLOW SQUARE | 1589 Skeet Club Rd | High Point | NC |
| 2861 | CULVER RIDGE PLAZA | 2255 East Ridge Rd | Rochester | NY |
| 3618 | EPHRATA MARKETPLACE | 852 East Main Street | Ephrata | PA |
| 2249 | TUDOR SHOPS | 975 Ne Rice Road | Lee'S Summit | MO |
| 6812 | OSWEGO PLAZA | 140 State Rt 104 | Oswego | NY |
| 9124 | BEAR VALLEY SHOPPING CENT | 3100 South Sheridan Blvd | Denver | CO |
| 8684 | TRI STATE MALL | 10 E Route 23 N | Montague | NJ |
| 3989 | MOANALUA SHOPPING CTR | 930 Valkenburgh St | Honolulu | HI |
| 1733 | SOUTHERN CROSSING | 10922 South Memorial Dr | Tulsa | OK |
| 1722 | VALLEY STATION | 1268 South Us189 | Heber | UT |
| 9786 | PINE TREE PLAZA | 550 36Th Ave South West | Altoona | IA |
| 6059 | POPLAR CREEK PLAZA | 305 Leonardwood Dr | Frankfort | KY |
| 3678 | THE PROMENADE | 16255 N Scottsdale Rd | Scottsdale | AZ |
| 8909 | METRO JUNCTION | 4894 Highway 18 West | Jackson | MS |
| 7407 | MCDONOUGH MARKETPLACE | 117 Willow Lane | Mcdonough | GA |
| 5608 | TOWER PLAZA | 1386 S Centerville Rd | Sturgis | MI |
| 8637 | BROOKDALE SQUARE | 22351 Pontiac Trail | South Lyon | MI |
| 1364 | WHITNAL SQUARE | 4698 S Whitnall Avenue | Milwaukee | WI |
| 8771 | MARKS SQUARE | 4600 Mobile Highway #11 | Pensacola | FL |
| 8770 | MIDTOWN SQUARE SHOPPING C | 1573 Gause Boulevard | Slidell | LA |
| 1999 | UNIVERSITY COMMONS | 1930 1St Capitol Drive | St Charles | MO |
| 702 | GAINES MARKETPLACE | 1827 Marketplace Dr Se | Caledonia | MI |
| 2827 | MARKETPLACE S.C. | I-79 & Route 33 | Weston | WV |
| 1300 | FOREST PLAZA WEST BLD 1 | 3207-B Forest Brook Rd | Lynchburg | VA |
| 6138 | TWIN OAKS CENTER | 2001 5Th Street | Silvis | IL |
| 1441 | 1882 3RD AVENUE | 1882 3rd Avenue | New York | NY |
| 9656 | 3453 JEROME AVE | 3453 Jerome Ave | Bronx | NY |
| 1393 | 1609 WESTCHESTER AVE | 1609 Westchester Ave | Bronx | NY |
| 3841 | 5530 WALNUT STREET | 5530 Walnut Street | Pittsburgh | PA |
| 4340 | CAMP PENDLETON (MINI) | 15100 Camp Pendleton | Camp Pendleton | CA |
| 4360 | FORT BRAGG (82ND) | 82Nd Abn Troop Store | Fort Bragg | NC |
| 4335 | SAN DIEGO NB (DOCKSIDE) | Naval Station | San Diego | CA |
| 4430 | LEMOORE NAS | Building #795 | Lemore Nas | CA |
| 4484 | FORT BLISS (COMM CENTER) | Bldg 20752 Gulf Victory W | El Paso | TX |
| 4354 | MOUNTAIN HOME AFB | 625 Gunfighter Ave | Mountain Home Afb | ID |
| 4322 | BARKSDALE AFB | 455 Curtis Road | Barksdale Afb | LA |
| 4323 | FAIRCHILD AFB | Building 2465 | Fairchild Afb | WA |
| 4356 | VANDENBERG AFB | Building 10400 | Vandenberg Afb | CA |
| 4363 | FORT LEE (PXTRA) | Building 9025 | Fort Lee | VA |
| 4414 | PATUXENT RIVER NAS | 22099 Cuddihy Road | Patuxent River | MD |
| 4456 | LOS ANGELES AFB | 483 N. Aviation Blvd | El Segundo | CA |
| 4339 | EDWARDS AFB | Abx Exchange | Edwards Afb | CA |
| 4404 | SEYMOUR JOHNSON AFB | 1350 Edwards Street | Goldsboro | NC |
| 4398 | BELLE CHASE NAS JRB | 400 Russell Ave | Belle Chasse | LA |
| 4478 | FORT BLISS (MINI) | 13471 Sergeant Major Blvd | El Paso | TX |
| 4418 | HUNTER ARMY AIRFIELD | 130 Haley Ave | Savannah | GA |
| 4462 | BEAUFORT MCAS | Building 1283 Giegor Ave | Beaufort | SC |

| 4352 | F.E. WARREN AFB | 617 Missle Drive | Cheyenne | WY |
|------|----------------|------------------|----------|-----|
| 4304 | DOVER AFB | 266 Galaxy Way | Dover Afb | DE |
| 4370 | GULFPORT NCBC | Bldg. 470 | Gulfport | MS |
| 4435 | PORTSMOUTH NAVAL HOSPITAL | Store 39/30 Bldg 3 | Portsmouth | VA |
| 4498 | DYESS AFB | 260 Commissary Road | Abilene | TX |
| 4371 | TYNDALL AFB | 220 Mall Ln Ste 2 | Tyndall Afb | FL |
| 4497 | PARRIS ISLAND MCRD | Building 406 | Parris Island | SC |
| 4361 | EGLIN AFB (MINI) | 4310 77Th Special Forces | Eglin Afb | FL |
| 2328 | CHULA VISTA CENTER | 555 Broadway | Chula Vista | CA |
| 2540 | PEAR TREE SHOPPING CENTER | 532 East Perkins Street | Ukiah | CA |
| 1131 | LOS ALTOS CENTER | 5555 Stearns St | Long Beach | CA |
| 5820 | CLAYTON STATION | 5435H Clayton Road | Clayton | CA |
| 7155 | 66-69 FRESH POND RD | 66-69 Fresh Pond Rd | Ridgewood | NY |
| 7657 | TIMBERHILLS S.C. | 1067 Mono Way | Sonora | CA |
| 6782 | SHOPPES @ FOXCHASE | 4651 Duke St | Alexandria | VA |
| 1856 | NAPA JUNCTION | 6040 Main Street | American Canyon | CA |
| 7690 | MILL POND VILLAGE | 380-Cs Egg Harbor Road | Sewell | NJ |
| 7120 | SOUTHPORT TOWN CENTER | 2050 Town Center Plaza | West Sacramento | CA |
| 3303 | TRI CITY PLAZA | 160 Tri City Road | Somersworth | NH |
| 2707 | THE PROMENADE AT BOLINGBR | 639 E Boughton Rd | Bolingbrook | IL |
| 5511 | BEARDS HILL PLAZA | 971 Beards Hill Road | Aberdeen | MD |
| 6216 | MEADOWVIEW SQUARE | 2500 State Rte 59 Ste # 8 | Kent | OH |
| 1387 | PLAZA PRADOS DEL SUR LOCA | Intersection Of State Rds | Santa Isabel | PR |
| 51 | THE SHOPPES AT CINNAMINSO | 127 Route 130 South | Cinnaminson | NJ |
| 652 | CROSSING AT LISBON | 193 River Road | Lisbon | CT |
| 7895 | LONDON GROVE VILLAGE | 905 Gap Newport Pike | Avondale | PA |
| 3031 | PINE CREEK S.C. | 716-A Freeman Lane | Grass Valley | CA |
| 3945 | FOOD FOR THOUGHT | 45 Northern Boulevard | Greenvale | NY |
| 1245 | PENNISULA CROSSING | 26670 Centerview Drive | Millsboro | DE |
| 2893 | TANTALLON CENTER | 10729 Indian Highway | Fort Washington | MD |
| 2797 | MISSION PLAZA | 1412 N. H Street Suite C | Lompoc | CA |
| 3433 | NORTH PROVIDENCE MARKET | 11 Smithfield Road | North Providence | RI |
| 3719 | TWINSBURG TOWN CENTER | 8934 Darrow Road | Twinsburg | OH |
| 5051 | NISQUALLY PLAZA | 1010 Yelm Ave E | Yelm | WA |
| 9360 | ALDEN BRIDGE SHOPPING CEN | 8000 Research Forest Driv | The Woodlands | TX |
| 8984 | PLAZA DEL OESTE | Ave Casto Perez #313 | San German | PR |
| 2327 | BERLIN CIRCLE PLAZA | 116 Walker Ave | West Berlin | NJ |
| 3028 | SHILOH CENTER | 6400 Hembree Lane | Windsor | CA |
| 1479 | GREENPORT COMMONS | 424 Fairview Ave | Hudson | NY |
| 2254 | NORTH HAVEN PAVILION | 200 Universal Drive North | North Haven | CT |
| 7802 | ROMEOVILLE TOWNE CENTER | 427 North Weber Road | Romeoville | IL |
| 8360 | SUFFOLK SHOPPING CENTER | 4046 Nesconset Hghwy #1B | East Setauket | NY |
| 7624 | GIBBSTOWN S.C. | 401 Harmony Road | Gibbstown | NJ |
| 2474 | MEADOW BROOK CROSSING | 124 State Road 101A | Amherst | NH |
| 6173 | LEXINGTON STATION | 3833 Lexington Avenue | Arden Hills | MN |
| 6512 | VILLAGE COMMONS AT WESLEY | 5922 Weddington Monroe Rd | Wesley Chapel | NC |
| 5387 | DUNLAWTON SQUARE | 3859 South Nova Road | Port Orange | FL |
| 8531 | NEWPORT NORTH SC | 1280 Bison Avenue | Newport Beach | CA |
| 5351 | NEW HOPE CITY CENTER | 4237 Winnetka Ave | New Hope | MN |
| 2765 | REYNOLDA MANOR | 2828 Reynolda Rd Nw | Winston Salem | NC |
| 6292 | GEORGESVILLE SQUARE | 1617 Georgesville Square | Columbus | OH |
| 8710 | SANTA FE SHOPPING CENTER | 13505 South Mur-Len | Olathe | KS |
| 5727 | WINTER SPRINGS TC | 1188 Cliff Rose Dr | Winter Springs | FL |
| 7322 | BATTLE GROUND MARKET CTR | 2210W Main Streetsuite113 | Battle Ground | WA |

| | | | |
|---|---|---|---|
| 9859 | SHERWOOD MARKET CENTER | 16008 Sw Tualatin-Sherwoo | Sherwood | OR |
| 6237 | THE VILLAGE IN BLAINE | 4335 Pheasant Ridge Dr | Blaine | MN |
| 1368 | MONROE PLAZA | 19817 State Route 2 | Monroe | WA |
| 7445 | DANIEL'S CROSSING S/C | 6900 Daniels Parkway | Fort Myers | FL |
| 5482 | CORALWOOD MALL | 2301 Del Prado Blvd H-6 | Cape Coral | FL |
| 5573 | COLLEGE PARK SHOPPING CTR | 3455 West 86Th Street | Indianapolis | IN |
| 6524 | NORTH MOUNTAIN VILLAGE | 3431 W Thunderbird Rd | Phoenix | AZ |
| 5855 | YAKIMA 40TH AVE S.C | 1300 N. 40Th Ave. | Yakima | WA |
| 5567 | SHOPS AT MALTA | 15 Kendall Way | Malta | NY |
| 9341 | SAWGRASS PROMENADE | 1335 South Military Trai | Deerfield Beach | FL |
| 6316 | WATERBURY PLAZA | 152 Chase Ave | Waterbury | CT |
| 2647 | WARETOWN TOWN CENTER | 501 Route 9 Suite 300 | Waretown | NJ |
| 5307 | PENN HILLS CENTER | 28 Federal Drive | Penn Hills | PA |
| 2670 | SAM HOUSTON TC | 12709 Interstate Hwy 45 N | Willis | TX |
| 2094 | PARADISE SHOPPES OF SUMME | 1985 Central Ave | Summerville | SC |
| 322 | BROOKDALE SHOPPING CENTER | 9651-100 Brookdale Drive | Charlotte | NC |
| 7428 | SETH CHILD COMMONS | 830 Commons Place | Manhattan | KS |
| 184 | PALOMAR PLAZA | 961 Palomar Airport Rd | Carlsbad | CA |
| 1865 | ANTIOCH CROSSING S/C | 417 E Il Rte 173 | Antioch | IL |
| 5460 | KMART PLAZA EAST | 4445 Buffalo Road | Erie | PA |
| 3583 | GIG HARBOR NORTH | 11430 51St Ave Nw | Gig Harbor | WA |
| 8831 | SIGNAL MT VILLAGE SC | 541 Signal Mountain Rd - | Chattanooga | TN |
| 2336 | OTTER CREEK S.C. | 248 S. Randall Road | Elgin | IL |
| 1376 | SHOPRITE SHOPPING CENTER | 360 Connecticut Ave | Norwalk | CT |
| 6064 | SUWANNEE PLAZA | 6824 Suwannee Plaza Ln | Live Oak | FL |
| 8364 | WHEATLAND MARKET PLACE | 3108 S. Route 59 | Naperville | IL |
| 1575 | TORRINGTON COMMONS | 225 High Street | Torrington | CT |
| 7619 | SPRINGS VILLAGE S.C. | 3953 S. State Hwy 97 | Sand Springs | OK |
| 8401 | KNOX VILLAGE SQUARE | 1504-B Coshacton Ave | Mt. Vernon | OH |
| 7348 | DESERT MOUNTAIN PLAZA | 4650 Woodrow Bean | El Paso | TX |
| 5171 | NORTHWEST PROMENADE | 6737 Manatee Ave W | Bradenton | FL |
| 7282 | PARKWAY PLAZA | 285 Cumberland Pkwy | Mechanicsburg | PA |
| 3779 | WAHIAWA TOWN CENTER | 935 California Avenue | Wahiawa | HI |
| 6882 | OZARK TOWN CENTER 1 | 1721 S 20Th St | Ozark | MO |
| 2406 | SURPRISE LAKE SQUARE | 900 East Meridian #22 | Milton | WA |
| 5885 | POKEGAMA ROAD | 2046 S Pokegama Ave | Grand Rapids | MN |
| 9190 | WAYNE AVENUE PLAZA | 949 Wayne Avenue | Chambersburg | PA |
| 2166 | NEWPORT COAST PLAZA | 21151 Newport Coast Dr | Newport Beach | CA |
| 7636 | COBB PARKWAY SC | 2774 N Cobb Parkway | Kennesaw | GA |
| 1873 | OVERLAND PLAZA | 9126 Page Avenue | Overland | MO |
| 3926 | NORWALK KORNERS S.C. | 201 Milan Avenue | Norwalk | OH |
| 5537 | NORTHWOOD PLAZA | 1966 Northwood Plaza | Franklin | IN |
| 5430 | TRAIL PLAZA | 1056 S.W. 67Th Ave | Miami | FL |
| 1045 | SHOREGATE S.C. | 30010 Lakeshore Avenue | Willowick | OH |
| 2236 | BROOKGATE SHOPPING CENTER | 5773 Smith Road | Brook Park | OH |
| 7672 | FOUNTAIN OAKS SC | 4920 Roswell Rd | Atlanta | GA |
| 9097 | BLOOMFIELD AVENUE SHOPPES | 6089 Haggerty Road | West Bloomfield | MI |
| 8051 | EDGEWOOD TOWN CENTER | 1725 South Braddock Ave | Pittsburgh | PA |
| 8611 | WEST SHORE PLAZA | 1831 Sherman Blvd | Muskegon | MI |
| 1690 | PRESIDENTIAL PARKWAY PLAZ | 168 Keul Rd | Dixon | IL |
| 626 | PHOENIX CENTER II | 3016 Phoenix Center Drive | Washington | MO |
| 8846 | THE WALNUT GROVE | 4010 University Ave | Madison | WI |
| 6587 | PLAZA SHOPPING CENTER | 1027 South Muskogee | Talequah | OK |
| 27 | LUMBERTON PLAZA | 1636 Rt 38 & Earyestown | Lumberton | NJ |

| 8193 | COLONY SQUARE | 726 East Main Street | Lebanon | OH |
| 1571 | JORDAN LANE | 1416 Berlin Turnpike | Wethersfield | CT |
| 2104 | NAMEOKI VILLAGE | 3455 Nameoki Road | Granite City | IL |
| 7406 | POST COMMONS | 4100 North Wickham Rd | Melbourne | FL |
| 6363 | MERRY MEETING PLACE | 147 Bath Road | Brunswick | ME |
| 6845 | APPLETREE MALL | Orchard View Drive & | Londonderry | NH |
| 8905 | SHOPS AT EAGLE PROMENADE | 3116 E State St | Eagle | ID |
| 75 | MANHATTAN PLACE | 1801 Manhattan Blvd | Harvey | LA |
| 3953 | GEIST CROSSING | 9805 Fall Creek Road | Indianapolis | IN |
| 65 | ONE YANKTON PLACE | 3013 Broadway Ave Suite 4 | Yankton | SD |
| 5578 | MIRASOL WALK | 6231 Pga Blvd | Palm Beach Gardens | FL |
| 6683 | SUGAR CREEK CENTER | 36 Sugar Creek Center | Bella Vista | AR |
| 5921 | SOUTHLAND CROSSINGS | 1220 Doral Rd | Youngstown | OH |
| 6696 | TOWN & COUNTRY S.C. | 494 C.W. Plaza Drive | Columbia City | IN |
| 1883 | MOUNTAIN VIEW VILLAGE | 4608 W Partridgehill Lane | Riverton | UT |
| 5734 | PUBLIX @ FISHHAWK RANCH | 5662 Fishhawk Crossing Bl | Lithia | FL |
| 6536 | INDIAN TRAIL SQUARE | 5739 Preston Hwy | Louisville | KY |
| 835 | BROOKS EDGE PLAZA | 81A South Main Street | Marlboro | NJ |
| 1145 | CIRCLEVILLE PLAZA | 1442 Circleville Plaza Dr | Circleville | OH |
| 6661 | CASTLE ROCK SQUARE | 1163 East Main Street | Price | UT |
| 5919 | LAKEWOOD RANCH TC | 8338 Market Street | Bradenton | FL |
| 3692 | GLENNWOOD COMMONS | 820 Sunbury Rd | Delaware | OH |
| 8695 | LAKESHORE PLAZA | 4137 Mountain Road | Pasadena | MD |
| 6354 | COCOA COMMONS | 2301 State Hgwy #524 | Cocoa | FL |
| 5246 | NORTH STATION S.C. | 1486 Garner'S Station Blv | Raleigh | NC |
| 1266 | SENTRY PLAZA | 10244 W. National Ave | West Allis | WI |
| 5421 | FESTIVAL @ OLD BRIDGE | 12359 Dillingham Square | Lake Ridge | VA |
| 2722 | FLEMING PLACE | 4023 Sw 10Th Street | Topeka | KS |
| 5603 | KROGER CENTER | 2028 S. Highway 53 | Lagrange | KY |
| 528 | MAPLE PARK PLAZA | 283 North Weber Road | Boilingbrook | IL |
| 6761 | ELIZABETHTOWN S.C. | 1575 South Market Street | Elizabethtown | PA |
| 6037 | WHISPERING WOODS PLAZA | 20773 Gibralter | Brownstone | MI |
| 2026 | WESTRIDGE SQUARE | 1059 West Patrick St | Frederick | MD |
| 637 | RANDALL'S CRYSTAL FALLS T | 3501 N Lakeline Blvd | Leander | TX |
| 7794 | SHOPS OF MARCO | 167 S. Barfield Dr | Marco Island | FL |
| 8612 | SOUTH VILLAGE S/C | 1850-C 172Nd Ave | Grand Haven | MI |
| 5374 | SOUTHLAND SC | 6855 Southland Dr | Middleburg Heights | OH |
| 3580 | MINER PLAZA | 2625 N. Mesa | El Paso | TX |
| 2744 | KEYSTONE PLAZA | 3574 Highway 31 South | Pelham | AL |
| 7461 | SHAW'S PLAZA | 770 Roosevelt Trail Road | Windham | ME |
| 5797 | WALTERBORO PLAZA | 321 Bells Highway | Walterboro | SC |
| 1630 | CLIFF LAKE S.C. | 1960 Cliff Lake Road | Eagan | MN |
| 3933 | HOPEWELL CROSSING SC | 800 Denow Road | Hopewell Twp | NJ |
| 5447 | TRADEWINDS SHOPPING CTR | 101457 Us 1 | Key Largo | FL |
| 6783 | MERCHANTS WALK S.C. | 215 Merchant'S Walk S.C. | Summersville | WV |
| 2037 | IMLAY PLAZA | 1801 S. Cedar St | Imlay | MI |
| 355 | PINE RIDGE SQUARE | 1417 West Main St | Gaylord | MI |
| 490 | DOTHAN PAVILION | 4521 Montgomery Highway | Dothan | AL |
| 8560 | ROEBUCK MARKETPLACE | 9172 Parkway East # 15 | Birmingham | AL |
| 2096 | FOX LAKE RETAIL CENTER | 1390 Us Route 12 | Fox Lake | IL |
| 7460 | BELLAIR PLAZA | 2661 North Atlantic Ave | Daytona Beach | FL |
| 847 | HILLCREST SHOPPING CENTER | 233 Hillcrest Shopping Ct | Lower Burrell | PA |
| 2863 | WATSON CROSSING SHOPPING | 33939 La Highway 16 | Denham Springs | LA |
| 2757 | MCCARTY CROSSING | 1026 Main Street | Jackson | OH |

| 6773 | TARGET CENTER | 955 Rockland Rd | Lake Bluff | IL |
|------|---------------|-----------------|-----------|-----|
| 7325 | BOGEY HILLS PLAZA | 2039 Zumbehl Road | Saint Charles | MO |
| 40 | SHOPS AT VICTORIA | 4109 Houston Highway | Victoria | TX |
| 8807 | GATEWAY COMMONS | 3000 Pepperell Pkwy | Opelika | AL |
| 6240 | HARWOOD CENTRAL VILLAGE | 2101 Harwood Road | Bedford | TX |
| 8934 | OLYMPIAD CENTER | 23052 Alicia Parkway | Mission Viejo | CA |
| 8501 | SHENANDOAH SQUARE | 13704 State Road 84 | Davie | FL |
| 1456 | PARKWAY COMMONS | 3046 Columbia Ave | Franklin | TN |
| 2901 | DEER CREEK CENTER | 3218 Laclede Station Rd | Maplewood | MO |
| 1320 | NEWBERRY POINTE | 144 Newberry Parkway | Etters | PA |
| 2763 | EMBASSY LAKES SHOPPING CE | 2631 N. Hiatus Road | Cooper City | FL |
| 3091 | VILLAGE SHOP CENTER | 1421 Losey Blvd. | La Crosse | WI |
| 9063 | WILLOW OAKS CROSSING | 5011 Weddington Road | Concord | NC |
| 8828 | KENHORST PLAZA | 1895 New Holland Rd | Kenhorst | PA |
| 7465 | HERITAGE MARKETPLACE | 1800 Unser Blvd. Nw | Albuquerque | NM |
| 9610 | NEWTON CROSSROADS | 5340 Ga Hwy 20 | Covington | GA |
| 293 | ALOMA SC | 2275 Aloma Ave | Winter Park | FL |
| 5933 | MABELVALE SHOPPING CENTER | 10101 Mabelvale Plaza Dr | Little Rock | AR |
| 1289 | HASTINGS MARKETPLACE | 1793 Market Blvd | Hastings | MN |
| 3836 | RAPIDS PLAZA | 4551 8Th Street South | Wisconsin Rapids | WI |
| 6318 | MOCKSVILLE TOWN COMMONS | 223 Cooper Creek Dr | Mocksville | NC |
| 8879 | PINECREST PLAZA | 324 Pinecrest Plaza | Morehead | KY |
| 5652 | POTRANCO OAKS VILLAGE | 9230 Potranco Road | San Antonio | TX |
| 8942 | GREAT SOUTH BAY SHP CTR | 709 W Montauk Highway | West Babylon | NY |
| 6125 | LA MARQUE CROSSING | 6608 Gulf Freeway | La Marque | TX |
| 3640 | SEMINOLE CENTER | 3631 Orlando Drive | Sanford | FL |
| 8936 | SHOPPES AT TRINITY LAKES | 12472 Sr 54 | Odessa | FL |
| 3512 | PLAZA PALMA REAL | Carr Pr-3, Km 77.8, Int | Humacao | PR |
| 7162 | SAN ANGELO PLAZA | 614 W 29Th St #114 | San Angelo | TX |
| 3429 | EAST VIKING PLAZA | 421 Viking Plaza Dr #500 | Cedar Falls | IA |
| 8957 | 1890 RANCH SHOPPING CTR | 1335 E. Whitestone Blvd | Cedar Park | TX |
| 8964 | CORTLANDT TOWNE CENTER | 3141 East Main Street | Mohegan Lake | NY |
| 1736 | LOWE'S OUTLOT | 2007 Us Highway 27 | Somerset | KY |
| 1371 | NAVY BLVD | 503 N Navy Blvd | Pensacola | FL |
| 6657 | STAFFORD SQUARE S/C | 297 Route 72 W | Manahawkin | NJ |
| 8858 | NORTH POINT VILLAGE | 1456 North Point Village | Reston | VA |
| 318 | PORT CHARLOTTE MARKETPLAC | 19400 Cochran Blvd | Port Charlotte | FL |
| 8878 | DURANT SHOPPING CENTER | 519 University Place | Durant | OK |
| 8568 | PLAZA @ LANDMARK | 6244-F Little River Trnpk | Alexandria | VA |
| 3925 | NORTHEAST PARK SHOPPING C | 210 37Th Avenue N | St. Petersburg | FL |
| 8961 | MIRA MESA MALL | 8250 Mira Mesa Blvd | San Diego | CA |
| 9378 | 5TH AVENUE SHOPS | 1954 Ne 5Th Avenue | Boca Raton | FL |
| 9495 | WILLIAMSBURG DOWNS | 5338 Central Florida Pkwy | Orlando | FL |
| 8405 | 218 FIRST AVE | 218 1St Ave | New York | NY |
| 2943 | 470 THIRD AVENUE/32ND STR | 470 Third Avenue | New York | NY |
| 2907 | 124 8TH AVENUE | 124 8Th Avenue | New York | NY |
| 2930 | 299 BROADWAY | 1St Floor | New York | NY |
| 3301 | 897 8TH AVE | 897 8Th Ave | New York | NY |
| 2884 | 302 CANAL ST | 302 Canal St | New York | NY |
| 2098 | 163 WEST 72ND STREET | 163 West 72Nd Street | New York | NY |
| 7466 | 305 6TH AVE | 305 6Th Ave | New York | NY |
| 1824 | 107 SUMMER STREET | 107 Summer St 1St Fl | Boston | MA |
| 9468 | 2049 86TH ST | 2049 86Th St | Brooklyn | NY |
| 547 | 145 EAST 116TH STREET | 145 East 116Th Street | New York | NY |

| 7243 | STEINWAY STREET | 30-62 Steinway Street | Astoria | NY |
| 7473 | ALAMEDA LANDING | 2610 5Th St | Alameda | CA |
| 2915 | 75-28 37TH AVE | 75-28 37Th Ave | Queens | NY |
| 5058 | 1212 KINGS HIGHWAY | 1212 Kings Highway | Brooklyn | NY |
| 2119 | 313A HARVARD STREET | 313A Harvard St | Brookline | MA |
| 3052 | REGO PARK | 96-16 Queens Blvd. | Rego Park | NY |
| 2162 | CITY CENTER | 2675 Geary Blvd | San Francisco | CA |
| 2850 | 1336 WISCONSIN AVE | 1336 Wisconsin Ave | Washington | DC |
| 5258 | 7017 18TH AVENUE | 7017 18Th Avenue | Brooklyn | NY |
| 6868 | 1003 BISHOP ST | 1003 Bishop St | Honolulu | HI |
| 9967 | 116-06 QUEENS BLVD | 116-06 Queens Blvd | Forest Hills | NY |
| 3958 | 1940 BEACON STREET | 1940 Beacon Street | Brighton | MA |
| 6659 | 247 3RD AVENUE | 247 3Rd Avenue | New York | NY |
| 575 | 14 W. 8TH STREET | 14 W. 8Th Street | Holland | MI |
| 9664 | AMTRAK STATION | 2955 Market St | Philadelphia | PA |
| 3596 | GALLERIA MALL | 1210 S. University | Ann Arbor | MI |
| 2841 | 17 WEST | 1220 17Th Street | Miami Beach | FL |
| 4453 | ELLSWORTH AFB | 2725 Lemay Blvd Bldg 4020 | Ellsworth Afb | SD |
| 4374 | SAN DIEGO MCRD | 3800 Chosin Ave | San Diego | CA |
| 4364 | FORT HAMILTON | 123 General Lee Ave | Brooklyn | NY |
| 4349 | HANSCOM AFB | 100 Eglin Street | Bedford | MA |
| 4405 | COLUMBUS AFB | Bldg #160 | Columbus Afb | MS |
| 4443 | HOMESTEAD ARS | 29242 Coral Sea Blvd | Homestead Afb | FL |
| 3744 | INTERNATIONAL MARKET PLAC | 2330 Kalakaua Avenue | Honolulu | HI |
| 33 | WILLOW BROOK MALL | 1524 Willow Brook Mall | Wayne | NJ |
| 737 | WOODFIELD MALL | 5 Woodfield Mall | Schaumburg | IL |
| 327 | PARK PLACE | 5870 East Broadway | Tucson | AZ |
| 816 | STONERIDGE MALL | 1304 Stoneridge Mall Road | Pleasanton | CA |
| 7125 | PALISADES CENTER | 3490 Palisades Center Dr | West Nyack | NY |
| 3695 | WESTFIELD OAKRIDGE | 925 Blossom Hill | San Jose | CA |
| 3547 | BAYSHORE MALL | 3300 Broadway | Eureka | CA |
| 2015 | KING OF PRUSSIA PLAZA | 160 North Gulph Road | King Of Prussia | PA |
| 5076 | APACHE MALL | 646 Apache Mall | Rochester | MN |
| 439 | EASTRIDGE MALL | 2200 Eastridge Loops | San Jose | CA |
| 436 | SUN VALLEY MALL | 112A Sun Valley Mall | Concord | CA |
| 90 | NORTHPARK MALL | 101 North Rangeline | Joplin | MO |
| 444 | MONTCLAIR PLAZA | 5090 Montclair Plaza Lane | Montclair | CA |
| 1255 | STONESTOWN GALLERIA | 3251 20Th Avenue | San Francisco | CA |
| 232 | WESTFIELD SOUTH SHORE | 1701 Sunrise Highway | Bay Shore | NY |
| 1436 | FLORIDA MALL | 8001 S Orange Blosson Tra | Orlando | FL |
| 342 | CROSS CREEK MALL | 419 Cross Creek Mall | Fayetteville | NC |
| 9836 | PANORAMA CITY MALL | 8401 Van Nuys Blvd | Panorama City | CA |
| 60 | SMITH HAVEN MALL | 110 Smith Haven Mall | Lake Grove | NY |
| 5213 | PARK MEADOWS TOWN CENTER | 8505 Park Meadows Center | Lone Tree | CO |
| 505 | WHITE OAKS MALL | 2501 W. Wabash Ave. | Springfield | IL |
| 5581 | WESTFIELD FASHION SQUARE | 14006 Riverside Drive | Sherman Oaks | CA |
| 3659 | MALL OF LOUISIANA | 6401 Bluebonnet Blvd | Baton Rouge | LA |
| 85 | CAPE COD MALL | 769 Iyanough Road | Hyannis | MA |
| 862 | DESERT SKY MALL | 7611 West Thomas Road | Phoenix | AZ |
| 2471 | THE WESTCHESTER | 125 Westchester Ave | White Plains | NY |
| 843 | CONNECTICUT POST | 1201 Boston Post Road | Milford | CT |
| 5203 | SQUARE ONE MALL | 1201 Broadway Drive | Saugus | MA |
| 1452 | ROGUE VALLEY MALL | 1600 North Riverside | Medford | OR |
| 492 | SOUTH HILL MALL | 3500 S. Meridian | Puyallup | WA |

| 50 | WESTLAND MALL | 1675 West 49Th Street | Hialeah | FL |
| 784 | CROSSROADS MALL | 6650 South Westnedge | Portage | MI |
| 1032 | TUCSON MALL | 4500 North Oracle Road | Tucson | AZ |
| 388 | OCEAN COUNTY MALL | 1201 Hooper Avenue | Toms River | NJ |
| 35 | PARK CITY CENTER | 581 Park City Center | Lancaster | PA |
| 468 | WOODLAND HILLS MALL | 7021 South Memorial | Tulsa | OK |
| 1444 | MARLEY STATION | 7900 Governor Ritchie Hwy | Glen Burnie | MD |
| 73 | KINGS PLAZA SHOPPING CTR | 5283 Kings Plaza | Brooklyn | NY |
| 5591 | VISALIA MALL | 2157 South Mooney Blvd | Visalia | CA |
| 1219 | SCOTTSDALE FASHION SQ | 7014 E Camelback Rd | Scottsdale | AZ |
| 718 | ACADIANA MALL | 5725 Johnston | Lafayette | LA |
| 1098 | WINDWARD MALL | 46056 Kam Highway | Kaneohe | HI |
| 285 | SOUTHLAKE MALL | 2014 Southlake Mall | Merrillville | IN |
| 1506 | LANSING MALL | 5234 West Saginaw Hwy | Lansing | MI |
| 7792 | STONEWOOD CENTER | 173 Stonewood | Downey | CA |
| 1602 | APPLE BLOSSOM MALL | 1850 Apple Blossom Drive | Winchester | VA |
| 1062 | ARDEN FAIR MALL | 1689 Arden Way | Sacramento | CA |
| 2654 | HUDSON MALL | Rt 440 | Jersey City | NJ |
| 245 | SOUTHPARK MALL | 4600 16 Street | Moline | IL |
| 380 | NORTH RIVERSIDE PARK | 7501 West Cermak Road | North Riverside | IL |
| 1502 | PENN SQUARE MALL | 2078 Penn Square | Oklahoma City | OK |
| 386 | HANES MALL | 3320 Silas Creek Parkway | Winston-Salem | NC |
| 1251 | WESTFIELD PALM DESERT | 72840 Highway Iii | Palm Desert | CA |
| 377 | QUAKER BRIDGE MALL | 150 Quaker Bridge Mall | Lawrenceville | NJ |
| 326 | SANTA ROSA MALL | 300 Mary Esther Cutoff | Mary Esther | FL |
| 1583 | CHICO MALL | 1950 E. 20Th Street | Chico | CA |
| 412 | INLAND CENTER | 154 Inland Center Dr | San Bernardino | CA |
| 9548 | NORTHLAKE MALL | 6801 Northlake Mall Dr | Charlotte | NC |
| 406 | CHERRYVALE MALL | 7200 Harrison Ave | Rockford | IL |
| 1036 | WILLOWBROOK MALL | 1658 Willowbrook Mall | Houston | TX |
| 7693 | FLAT IRON CROSSING MALL | 1 Flat Iron Circle | Broomfield | CO |
| 693 | HICKORY POINT MALL | 1395 Hickory Point Mall | Forsyth | IL |
| 3879 | FRANCIS SCOTT KEY | 5500 Buckeystown Pike | Frederick | MD |
| 314 | COUNTRYSIDE MALL | 27001 Us Highway 19 North | Clearwater | FL |
| 5186 | MONMOUTH S.C. | 180 Route 35 South | Eatontown | NJ |
| 1420 | MCKINLEY MALL | 3601 Mckinley Parkway | Buffalo | NY |
| 178 | LIVINGSTON MALL | 112 Eisenhower Parkway | Livingston | NJ |
| 163 | SUNRISE MALL | 6073 Sunrise Mall | Citrus Heights | CA |
| 7685 | POLARIS FASHION PLACE | 1500 Polaris Parkway | Columbus | OH |
| 923 | EASTWOOD MALL | 5555 Youngstown-Warren Rd | Niles | OH |
| 8682 | NORTHTOWN MALL | N 4750 Division Street | Spokane | WA |
| 1627 | ROSEDALE CENTER | 10 Rosedale Center | Roseville | MN |
| 269 | MILLCREEK MALL | Space #160 | Erie | PA |
| 392 | OAK PARK MALL | 11161 West 95Th Street | Overland Park | KS |
| 3055 | RIDGEDALE CENTER | 12505 Wayzata Blvd. | Minnetonka | MN |
| 369 | OAKDALE MALL | 3111 E. Main Street | Johnson City | NY |
| 1434 | TOWN CENTER AT COBB | 400 Earnest Barrett Pkwy | Kennesaw | GA |
| 340 | ORANGE PARK MALL | 1910 Wells Rd | Orange Park | FL |
| 773 | OAKLAND MALL | 422 W 14 Mile Rd | Troy | MI |
| 1395 | WIREGRASS COMMONS MALL | 900 Common Ave | Dothan | AL |
| 1039 | GREAT NORTHERN MALL | 232 Great Northern Mall | North Olmsted | OH |
| 147 | CITY CREEK CENTER | 51 South Main St | Salt Lake City | UT |
| 1440 | EDEN PRAIRIE CENTER | 8251 Flying Cloud Drive | Eden Prairie | MN |
| 1169 | YORKTOWN SHOPPING CENTER | 203 Yorktown S/C | Lombard | IL |

| | | | |
|---|---|---|---|
| 6294 | MACARTHUR CENTER | 300 Monticello Avenue | Norfolk | VA |
| 9395 | THE SHOPS AT WILLOW RD | 6121 W Park Blvd | Plano | TX |
| 55 | SOUTHERN PARK MALL | 7401 Market St | Youngstown | OH |
| 3703 | CAPITAL MALL | 625 Black Lake Blvd Sw | Olympia | WA |
| 5378 | CASCADE MALL | 414 Cascade Mall | Burlington | WA |
| 571 | SOUTHLAND MALL | 20505 South Dixie Highway | Miami | FL |
| 2752 | SANTA MARIA TOWN CTR | 222 Town Center East | Santa Maria | CA |
| 9564 | GALLERIA AT SOUTH BAY | 1815 Hawthorne Blvd | Redondo Beach | CA |
| 226 | FASHION SQUARE MALL | 4724 Fashion Square Mall | Saginaw | MI |
| 7295 | PACIFIC VIEW | 3301 E. Main Street | Ventura | CA |
| 1427 | NORTHTOWNE MALL | 1500 N Clinton St | Defiance | OH |
| 204 | NORTHTOWN SHOPPING CENTER | 275 Northtown Dr | Blaine | MN |
| 110 | SOUTHRIDGE MALL | 5300 S 76Th Street | Greendale | WI |
| 2803 | LAKELINE MALL | 11200 Lakeline Mall Blvd | Cedar Park | TX |
| 1546 | SUPERSTITION SPRINGS | 6555 East Southern Ave. | Mesa | AZ |
| 874 | LYNNHAVEN MALL | 701 Lynnhaven Pkwy | Virginia Beach | VA |
| 510 | WESTLAND MALL | 550 South Gear Ave | West Burlington | IA |
| 37 | KENNEDY MALL | 555 John F Kennedy Road | Dubuque | IA |
| 166 | BELTWAY PLAZA | 6080 Green Belt Road | Greenbelt | MD |
| 310 | CUMBERLAND MALL | Delsea Drive & Route 47 | Vineland | NJ |
| 190 | CONCORD MALL | 4737 Concord Pike | Wilmington | DE |
| 8420 | CENTER AT SALISBURY | 2300 N. Salisbury Blvd. | Salisbury | MD |
| 7898 | WESTFIELD BROWARD | 8000 W. Broward Blvd | Plantation | FL |
| 500 | THE COMMONS AT FEDERAL WA | 1823 South Commons | Federal Way | WA |
| 2641 | HUTCHINSON MALL | 1060 Highway 15 South | Hutchinson | MN |
| 1449 | PEMBROKE MALL | 4554 Virginia Beach Blvd | Virginia Beach | VA |
| 641 | MEADOWS | 4300 Meadows Lane | Las Vegas | NV |
| 3390 | SOLOMON POND MALL | 601 Donald Lynn Blvd | Marlborough | MA |
| 481 | THE SHOPS AT ITHACA MALL | 40 Catherwood Road | Ithaca | NY |
| 3438 | SOUTHSIDE MALL | Rd 2 Southside | Oneonta | NY |
| 820 | FAIR OAKS MALL | 11850 U Fair Oaks Road | Fairfax | VA |
| 2848 | BUFFALO MALL | 2400-8Th Ave Sw | Jamestown | ND |
| 1421 | COLUMBIA MALL | 2300 Bernadette Dr. | Columbia | MO |
| 7090 | WAKEFIELD MALL | Tower Hill Road & | Wakefield | RI |
| 159 | WESTFIELD NORTH COUNTY | 200 East Via Rancho Parkw | Escondido | CA |
| 799 | OLD HICKORY MALL | 2021 North Highland Ave | Jackson | TN |
| 503 | MONTGOMERY MALL | 712 Montgomery Mall | North Wales | PA |
| 1265 | JEFFERSON VALLEY MALL | 650 Lee Boulevard | Yorktown Hgts | NY |
| 636 | CARY TOWNE CENTER | 1105 Walnut Street | Cary | NC |
| 1469 | MID RIVER MALL | 1080 Mid Rivers Mall Driv | Saint Peters | MO |
| 1578 | WESTFIELD MERIDEN | 470 Lewis Avenue | Meriden | CT |
| 38 | MARION CENTRE S/C | 1475 Marion Waldo Rd | Marion | OH |
| 5883 | BAY CITY TOWN CENTER | 4101 Wilder Road | Bay City | MI |
| 809 | THE GALLERY AT SOUTH DEKA | 24 South Dekalb Mall | Decatur | GA |
| 1425 | VILLAGE MALL | 2917 Vermillion St | Danville | IL |
| 836 | QUAIL SPRINGS MALL | 2501 West Memorial Road | Oklahoma City | OK |
| 5498 | MERIDAN MALL | 1982 West Grand River | Okemos | MI |
| 3105 | WILTON MALL | 3065 Rte 50 Space B-12 | Saratoga Springs | NY |
| 5138 | THE LAKES MALL | 5600 Harvey Road | Muskegon | MI |
| 224 | NORTHWOODS MALL | 2200 War Memorial Drive | Peoria | IL |
| 1472 | HAMILTON MALL | 4403 Black Horse Pike | Mays Landing | NJ |
| 277 | VOLUSIA MALL | 1700 W Internatl Sdwy Blv | Daytona Beach | FL |
| 1352 | TOWSON TOWN CENTER | 825 Dulaney Valley Road | Towson | MD |
| 5411 | THE GALLERY AT THE HARBOR | 200 East Pratt St | Baltimore | MD |

| 1666 | SALEM CENTER | 480 Center Street Ne | Salem | OR |
| 8882 | FASHION PLACE MALL | 6191 State St | Murray | UT |
| 2662 | VILLAGE SQUARE MALL | 83 Village Square Mall | Effingham | IL |
| 1592 | ENFIELD SQUARE MALL | 90 Elm Street | Enfield | CT |
| 41 | COURTLAND CENTER | 4190 East Court St | Burton | MI |
| 9443 | WINONA MALL | 1213 Gilmore Ave | Winona | MN |
| 9788 | MERLE HAY MALL | 3800 Merle May Mall | Des Moines | IA |
| 1076 | CRYSTAL RIVER MALL | 1801 Nw Hwy 19 | Crystal River | FL |
| 353 | FOX VALLEY MALL | 2356 Fox Valley Center | Aurora | IL |
| 1448 | GOLF MILL SHOPPING CENTER | 247 Golf Mill Center | Niles | IL |
| 2432 | SANTA ROSA MALL | Pr 2 | Bayamon | PR |
| 414 | FAIRLANE TOWN CENTER | 18900 Michigan Avenue | Dearborn | MI |
| 9956 | EDGEWATER PLAZA | 2600 Beach Blvd | Biloxi | MS |
| 3904 | THUNDERBIRD MALL | 1421 B 12Th Ave S | Virginia | MN |
| 1111 | EAST HILLS MALL | 3700 Frederick Ave | St. Joseph | MO |
| 1471 | THE MALL OF MONROE | 2121 N Monroe St | Monroe | MI |
| 291 | INDEPENDENCE CENTER | 18813 East 39Th St South | Independence | MO |
| 9014 | OAKWOOD SHOPPING CENTER | 197 West Bank Expressway | Terrytown | LA |
| 701 | SEMINOLE TOWNE CENTER | 200 Towne Center Circle | Sanford | FL |
| 25 | ALMEDA MALL | 12200 Gulf Freeway | Houston | TX |
| 501 | RIDGMAR MALL | 2178 Green Oaks Road | Fort Worth | TX |
| 208 | LINDALE MALL | 4444 First Ave N E | Cedar Rapids | IA |
| 3591 | HOLIDAY VILLAGE MALL | 1753 Highway 2 W | Havre | MT |
| 5584 | PARAMUS PARK MALL | 2040 Paramus Park Mall | Paramus | NJ |
| 5642 | MARSHFIELD MALL | 503 East Ives Street | Marshfield | WI |
| 3169 | OLD ORCHARD MALL | 4999 Old Orchard Center | Skokie | IL |
| 514 | MALL ST. VINCENT | 1133 St. Vincent #110 | Shreveport | LA |
| 5264 | WESTFIELD SARASOTA SQUARE | 8201 S Tamiami Trail | Sarasota | FL |
| 695 | PARADISE VALLEY MALL | 4550 East Cactus Rd. | Phoenix | AZ |
| 3082 | STEEPLEGATE | 270 Louden Road | Concord | NH |
| 5028 | LEE PREMIUM OUTLETS | 50 Water Street | Lee | MA |
| 5139 | TANGER OUTLET CENTER DAYT | 1100 Cornerstone Blvd | Daytona Beach | FL |
| 8903 | TANGER OUTLETS @ THE ARCH | 1387 The Arches Circle | Deer Park | NY |
| 2776 | OUTLETS OF DES MOINES | 545 Bass Pro Drive Nw | Altoona | IA |
| 3776 | THE OUTLET SHOPPES AT LAR | 1600 Water Street | Laredo | TX |
| 5026 | TANGER OUTLET CENTER JEFF | 8000 Factory Shops Blvd | Jeffersonville | OH |
| 3613 | NEBRASKA CROSSING OUTLET | 21355 Nebraska Crossing D | Gretna | NE |
| 3745 | LOUISIANA BOARDWALK OUTLE | 490 Boardwalk Blvd | Bossier City | LA |
| 3600 | EMPIRE OUTLETS | 35B Richmond Terrace | Staten Island | NY |
| 8804 | OUTLETS AT CORPUS CHRISTI | 500 North Ih 69 | Robstown | TX |
| 1124 | LAGUNA 99 PLAZA | 8451 Elk Grove Blvd | Elk Grove | CA |
| 3220 | VINTAGE OAKS | 120 Vintage Way | Novato | CA |
| 7995 | HERTITAGE PARK PLAZA | 448 North Main Street | East Longmeadow | MA |
| 14 | CENTURY CENTER | 353 Memorial Blvd | West Springfield | MA |
| 8672 | VILLAGE SHOPS | 95 Washington Street | Canton | MA |
| 8527 | UNIVERSITY CENTER | 4237 Campus Drive | Irvine | CA |
| 9959 | ESPLANADE SHOPPING CENTER | 365 West Esplanade Drive | Oxnard | CA |
| 9637 | BLUE STAR SHOPPING CENTER | 1701 Rt 22 West | Watchung | NJ |
| 5587 | SULLY PLAZA | 13936 Lee Jackson Hwy | Chantilly | VA |
| 2355 | SHOPS @ DUNES ON MONTEREY | 130 General Stilwell Dr | Marina | CA |
| 8558 | ARLINGTON SHOPPING CENTER | 804 Us Highway 46 | Parsippany | NJ |
| 7338 | WAREHAM CROSSING | 2421 Cranberry Hwy | Wareham | MA |
| 8974 | LANTANA SQUARE | 206 Lantana Drive | Hokessin | DE |
| 5916 | GREAT LAKES MALL | 7850 Mentor Avenue | Mentor | OH |

| 47 | THE SHOPS AT LA CANTERA | 15900 La Cantera Pkwy | San Antonio | TX |
| 6604 | PARROT PLAZA | 1401 W. North Avenue | Melrose Park | IL |
| 8232 | WESTFORD PLAZA | 175 Littleton Rd | Westford | MA |
| 2726 | CATHEDRAL VILLAGE | 69185 Ramon Road | Cathedral City | CA |
| 5125 | ARLINGTON SQUARE | 4725 Reed Road | Columbus | OH |
| 971 | PAVILIONS PLACE | 16420 Beach Blvd | Westminster | CA |
| 8314 | MORGAN HILL SHOPPING CENT | 1057 Cochrane Rd | Morgan Hill | CA |
| 7432 | HIGHLAND COMMONS | 56 Highland Commons East | Hudson | MA |
| 7884 | CROSS POINT CENTRE | 101 E. Alex Bell Rd | Centerville | OH |
| 9737 | COPPER TREE PLAZA | 350 Ramapo Valley Rd | Oakland | NJ |
| 1135 | NORTHBOROUGH CROSSING | 9113 Shops Way | Northborough | MA |
| 8731 | SILVERNAIL SHOPPING CENTE | 2116 Silvernail Rd | Pewaukee | WI |
| 8357 | TRIANGLE SHOPPING CENTER | 20 Triangle Center | Yorktown Heights | NY |
| 585 | WOODBURN PLAZA SHOPPING C | 3040 Sprague Lane | Woodburn | OR |
| 8566 | ROCKFORD PLAZA | 4190 Vinewood Lane | Plymouth | MN |
| 9230 | THE ORCHARD TOWN CENTER | 14583 Orchard Parkway | Westminster | CO |
| 5221 | COMMERCE TOWN CENTER | 3050 Union Lake Rd | Commerce | MI |
| 7876 | THE SHOPPES AT HAWK RIDGE | 6115 Ronald Reagan Drive | Lake St. Louis | MO |
| 8733 | RIVERVIEW WEST MARKETPLAC | 3770 W. Mcfadden Ave | Santa Ana | CA |
| 2724 | GIBBS CROSSING | 350 Palmer Rd | Ware | MA |
| 9963 | SHARP'S PLAZA | 175 Route 70 East | Medford | NJ |
| 9107 | COTTONWOOD SHOPPING CENTE | 1100 S. Hwy 260 #17A | Cottonwood | AZ |
| 9353 | PORT PLAZA | 45 Storey Ave | Newbury Port | MA |
| 1379 | CURRY HOLLOW CENTER | 314 1/2 Curry Hollow Dr | Pleasant Hills | PA |
| 3515 | EDMOND CROSSING S.C. | 72 S.E. 33Rd Street | Edmond | OK |
| 9184 | TRAVER VILLAGE | 2627 Plymouth Road | Ann Arbor | MI |
| 1048 | CRYSTAL CITY SHOPS @1750 | 1670 Crystal Sq Arcade | Arlington | VA |
| 3619 | WAYLAND TOWN CENTER | 77 Andrew Ave | Wayland | MA |
| 559 | MUNDELEIN CROSSINGS | 3022 Route 60 | Mundelein | IL |
| 1558 | SHOPPES @ PGH MILLS | 2015 Pgh Mills Blvd | Tarentum | PA |
| 5167 | WALMART LAFAYETTE | 1217 Diamond Circle | Lafayette | CO |
| 1618 | MIDDLESEX S.C. | 1342 Eastern Blvd. | Baltimore | MD |
| 1348 | SUNRISE VILLAGE SHOPPING | 4776 East Sunrise Drive | Tucson | AZ |
| 5823 | WEST MARKET SC | 109 S Parket Street - 109 | Olathe | KS |
| 7371 | SPRING CREEK JUNCTION | 681 South Green Bay Road | Neenah | WI |
| 8069 | WINDSOR COMMONS | 3143 Cape Horn Road | Red Lion | PA |
| 6997 | SOUTHGATE PLAZA | 3501 S Tamiami Trail | Sarasota | FL |
| 1691 | PADUCAH TOWNE CENTER | 3216 Irvin Cobb Drive | Paducah | KY |
| 7493 | RIVER HILL VILLAGE CENTER | 6030 Daybreak Circle | Clarksville | MD |
| 8941 | FALLS GROVE VILLAGE CTR | 14933 F Shady Grove Rd | Rocville | MD |
| 3270 | SOUNDVIEW MARKETPLACE | 20 Soundview Marketplace | Port Washington | NY |
| 8954 | GREENTREE ROAD S/C | 1969 Greentree Rd | Pittsburgh | PA |
| 9258 | MALL @ SIERRA VISTA | 2200 El Marcado Loop | Sierra Vista | AZ |
| 9256 | WHITTWOOD TOWN CENTER | 15702 Whittwood Lane | Whittier | CA |
| 9178 | TROPICANA BELTWAY CENTER | 5130 S. Ft Apache Rd | Las Vegas | NV |
| 6775 | THE SHOPPES AT OLD BRIDGE | 3849 Us Highway 9 | Old Bridge | NJ |
| 3894 | NIAGARA CONSUMER SQUARE | 7314 Niagara Falls Blvd | Niagara Falls | NY |
| 9338 | SHEEPSHEAD BAY | 1710 Sheepshead Bay Rd | Brooklyn | NY |
| | Total: 640 | | | |

**Exhibit B**
**Expense Budget**

**GNC - US Consultant's Expenses**

| Advertisement | Total |
|---|---|
| Signs, Banners & Shipping | $564,810 |
| Signwalker Program | 1,002,969 |
| **Subtotal: Advertisement** | **1,567,779** |
| **Supervision** | **1,611,201** |
| **Miscellaneous** | **40,000** |
| **Total (1) (2) (3)** | **$3,218,980** |

Note:

(1) Assumes an average of 11.6-week Sale.

(2) If Stores open on a staggered basis, Budget will be mutually modified to reflect potential increase in expenses.

(3) Advertisement budget includes an additional charge for relabeling due to the delay in shipping.

**Exhibit C**
**Security Requirements**

## GNC Contract Security Exhibit

Consultant has implemented and shall operate at all times the following technical and organizational security measures to safeguard and monitor the confidentiality, integrity, and availability of GNC data; the systems that store, process or transmit GNC data; and the services provided to GNC.

1. A written information security policy and program based on an industry-recognized security framework such as NIST 800.53 or ISO 27001/27002. Consultant shall provide a copy of the written information security program they have implemented.

2. An ongoing security awareness program to educate and test personnel about confidentiality and information security at the time of hire and periodically thereafter. Training includes both general-purpose security awareness and job-specific security responsibilities and procedures.

3. Policies, controls, and procedures to control, limit and monitor physical access to facilities where GNC data is processed, systems that provide services to GNC are located, and personnel that provide services to GNC are employed.

4. Policies, controls, and procedures to safeguard and monitor the networks and systems that process GNC data or provide services to GNC. Consultant utilizes current versions of operating systems, applications, software, and hardware that are covered by manufacturer support.

5. Policies, controls, and procedures to prevent the loss or corruption of GNC data and to ensure the confidentiality and integrity of all integrations, system interconnections, and transmissions between Consultant and GNC.

6. Policies, controls, and procedures to manage the creation, use, periodic re-certification, revocation, and deletion of access credentials and to authenticate, authorize, and audit access to data, networks, systems, services, and other information assets.

7. Policies, controls, and procedures to document, review, approve, test, and implement changes to software, hardware, data, applications, and services.

8. Policies, controls, and procedures to create automated logs and audit trails of system operations, user activities, and security events; to review logs, reports, or alerts of security events for all system components to identify anomalies or suspicious activity in a timely manner; and to investigate and addresses security events identified through its monitoring practices.

9. Policies, controls, and procedures for asset management, record retention, and record destruction to identify, classify, and manage information assets, software, and systems. Consultant shall immediately and securely remove from its systems and media, and at GNC's option return or destroy, all data at the end of its agreement with GNC, upon GNC's request, or when the data is no longer required to provide services to GNC. Consultant shall provide suitable documentation and certification of the removal processes and results.

10. Policies, controls, and procedures for a secure System Development Life Cycle (SDLC) that involves security in product development and implementation, trains personnel in secure development and coding concepts and practices, and verifies that products meet security requirements prior to delivery. The secure SDLC incorporates leading practices for authentication, authorization, and access control; data validation, transmission, and storage; cryptography; session management; and error handling.

11. Policies, controls, and procedures to assess, report, manage, and address internal and third-party risk. Consultant operates a continuous vulnerability management program that includes periodic

scanning and penetration tests of systems, services, and networks; application security tests; and the timely installation of all relevant vendor security patches. Consultant subscribes to relevant manufacturer and industry security advisory services. Consultant develops and executes timely risk treatment and remediation action plans.

12. Policies, controls, and procedures for computer security incident response. Consultant designates and trains an incident response team and performs periodic incident response exercises. In the event of an incident that affects the security of the Consultant or the Consultant's third party service providers, Consultant shall notify GNC within 24 hours. Consultant shall cooperate with GNC and GNC's authorized representatives in the design and execution of any public notice and communication regarding the security incident and its impacts. Consultant shall cooperate with GNC to address the incident and implement corrective action plans.

13. Consultant acknowledges and agrees that all data received from GNC is owned by GNC. Consultant shall use data solely for the purpose of providing services to, and solely for the benefit of, GNC. Consultant shall not disclose GNC data to third parties or affiliates without the express written consent of GNC. Consultant shall store regulated personably identifiable data and personal data received from and owned by GNC within the US and will not transmit, transfer, or replicate the data to any location outside of the United States.

14. Consultant shall only disclose or transfer GNC data to authorized third parties for the purpose of rendering services to GNC. Consultant shall maintain an inventory of third parties to which Consultant discloses or transfers GNC's data. Consultant will provide this inventory to GNC upon request. Consultant shall require of its third parties, and accept responsibility to ensure that its third parties shall have in place equivalent safeguards for the protection of GNC data and services as specified in Consultant's agreement with GNC.

15. If Consultant processes, transmits, accesses, or stores payment card data in rendering services to GNC, then Consultant (and related applicable third parties) shall meet the requirements for a PCI Service Provider and shall demonstrate ongoing PCI Data Security Standard and/or Payment Application Data Security Standard compliance as a Service Provider annually by furnishing to GNC its then-current authorized Attestation of Compliance developed by a certified, independent PCI Qualified Security Assessor.

16. If Consultant processes personal data of European Union data subjects as a data processor rendering services to GNC, then Consultant (and related applicable third parties) shall implement appropriate technical and organizational measures in such a manner that processing will meet the requirements of GDPR and ensure the protection of the rights of the data subject, execute a data protection agreement with GNC, assist GNC to fulfill GDPR data subject rights requests. Consultant shall make available to GNC all information necessary to demonstrate compliance with GDPR obligations.

17. Consultant shall comply with all applicable federal, state, and local statutes and regulations governing Consultant's use, transmission, storage, and destruction of data.

18. Consultant has disclosed any breach of security or unauthorized access or unauthorized use of its systems or services that occurred in the past 36 months. Consultant has described the response and remedies implemented to address the cause of any breach.

19. Consultant has provided current attestation of privacy and security trust principles such as an SSAE 16 SOC 2 report (or equivalent) from an independent registered public accountant (or equivalent)

covering all locations and functions that store, process, transmit, or access GNC data and/or systems.

20. Upon reasonable notice, Consultant shall permit GNC, or a third-party provider acting on GNC's behalf, to conduct security vulnerability testing of the systems and/or software developed on behalf of GNC and/or used to render services to GNC. Consultant shall develop and implement timely corrective action plans to remediate defects and vulnerabilities noted during the testing.

21. Consultant shall reasonably cooperate with any investigation carried out by or on behalf of GNC relating to the security, integrity, confidentiality, availability, or accuracy of GNC data, including promptly providing information or material in its possession or control in support of such investigation, and making all necessary personnel available to respond to any questions or issues that may arise.

22. Consultant has executed GNC's non-disclosure agreement (or equivalent).

END OF DOCUMENT

Revised 8/7/2018

18

**<u>EXHIBIT 4</u>**

**Canada Consulting Agreement**

CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is made as of June 18, 2020 (the "Effective Date"), by and among General Nutrition Centres Company ("Merchant") and a joint venture comprised of Tiger Asset Solutions Canada, ULC ("Tiger") and GA Retail Canada ULC ("GA") (collectively, the "Consultant" and together with Merchant, the "Parties" and each a "Party").

RECITALS

WHEREAS, Merchant operates retail stores throughout Canada and desires that the Consultant act as Merchant's exclusive consultant for the limited purposes of (a) assisting Merchant (i) in determining stores to close immediately (or not to reopen) (the "Closing Stores") and stores at which to conduct a Sale as defined below (the "GOB Stores") and (ii) with the logistics of transferring Merchandise (as defined below) from the Closing Stores to the GOB Stores; (b) selling all of the Merchandise (as defined below) from Merchant's Closing Stores and GOB Stores identified on **Exhibit A** attached hereto (as may be modified prior to the Sale Commencement Date (as defined below) including by adding or removing stores, in each case pursuant to Section 1 below) (each such store identified on Exhibit A individually a "Store," and collectively the "Stores") by means of a "store closing", "location closing", "sale on everything", "everything must go", or similar themed sale as agreed between the Parties at the GOB Stores (as further described below, the "Sale"); and (c) selling or otherwise disposing of Merchant owned furniture, furnishings, trade fixtures, machinery, equipment, office supplies, supplies and other tangible personal property that are located in the Stores (collectively, "FF&E") in the Stores, each upon the terms set forth herein.

WHEREAS, Merchant and certain related entities intend to commence a bankruptcy case (the "Bankruptcy Case") in the United States of America under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and ancillary proceedings (the "CCAA Proceedings") in Canada under Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA") before the Ontario Superior Court of Justice (Commercial List) (the "Court").

AGREEMENT

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Consultant and Merchant hereby agree as follows:

**Section 1.        Appointment of Consultant**

Effective as of the date hereof, subject to the entry of the Approval Order (as defined below) by the Court, Merchant hereby appoints the Consultant, and the Consultant hereby agrees to serve, as Merchant's consultant for the purpose of conducting the Sale in accordance with the terms and conditions of this Agreement as more definitively set forth in Section 4 hereof.   Subject to Section 11, Consultant shall be authorized to advertise the Sale as a "store closing", "location closing", "sale on everything", "everything must go", or similar-themed sale in accordance with the terms hereof, provided that no signs shall advertise the Sale as a "bankruptcy", a "going out of business" or a "liquidation" sale with it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used.

After the date hereof, at the option of the Merchant and if necessary subject to requisite approval Orders entered in the Bankruptcy Case or granted in the CCAA Proceedings and/or the Information Officer appointed by the Court (the "Information Officer"), Merchant may add additional Closing Stores and GOB Stores for Consultant to serve as Merchant's independent consultant in connection with the conduct of a Sale (the "Additional Stores") with respect to such Additional Stores on the terms and conditions of this Agreement subject to appropriate adjustments as agreed for the Sale Commencement Date, the Sale Termination Date, the Expense

Budget, the Consulting Fee and the FF&E Fee (each as defined below) for such Additional Stores (as may be applicable), which Additional Stores and such terms shall be set forth in a written addendum hereto. The Additional Stores and the initial Stores shall be collectively referred to as the "Stores" herein.

**Section 2.**     **Merchandise**

For purposes hereof, "<u>Merchandise</u>" shall mean all goods, saleable in the ordinary course, located in the Stores on the Sale Commencement Date (as defined below) or delivered thereto after the Sale Commencement Date pursuant to the terms hereof. "Merchandise" does not mean and shall not include: (1) goods that belong to sublessees, licensees, or concessionaires of Merchant or are leased and licensed from third parties by Merchant, or are held by Merchant on memo, on consignment or as bailee, in each case, to the extent identified by Merchant as excluded from Merchandise; (2) landlord owned furnishings, trade fixtures, equipment and improvements to real property that are located in the Stores (3) FF&E; (4) expired goods or goods that expire prior to the Sale Termination Date (as defined below); (5) damaged or defective merchandise that cannot be sold for the purpose for which it was intended; or (6) gift cards (third party and Merchant branded).

**Section 3.**     **Sale Term**

Subject to obtaining the Approval Order (as defined herein) from the Court, the Sale shall commence as mutually agreed; <u>provided</u>, <u>however</u>, (a) for GOB Stores that are currently operating, the Sale shall commence on or about June 25, 2020, and (b) for GOB Stores that are not currently operating, the Sale shall commence on or about the date that is the later of the date upon which Merchant reopens each such GOB Store and June 25, 2020 (the "<u>Sale Commencement Date</u>"). The Sale shall conclude no later than September 30, 2020 (the "<u>Sale Termination Date</u>"); <u>provided</u>, <u>however</u>, that Merchant may agree in writing in its sole discretion to extend or terminate the Sale at any GOB Store prior to the Sale Termination Date (it being understood that, if the timing set forth herein changes, Merchant and Consultant shall mutually agree on any adjustments to the Expense Budget (as defined below) and Consultant's compensation); <u>provided further</u>, <u>however</u>, that Merchant may agree in writing in its sole discretion to make any GOB Store a Closing Store prior to the Sale Termination Date. The period between the Sale Commencement Date and the Sale Termination Date shall be referred to as the "<u>Sale Term</u>." Upon the removal of Merchandise from each Store and at the conclusion of the Sale at each GOB Store, (a) Consultant shall surrender the premises for such Store to Merchant in broom-swept and clean condition with any unsold FF&E abandoned in place at such Store, and (b) Consultant shall reasonably assist Merchant to photographically document the condition of each such Store upon the conclusion of the Sale there.

**Section 4.**     **Project Management**

    (A)     <u>Consultant's Undertakings</u>

Consultant shall (a) conduct a review and assessment of Merchant's current store closing plan and accompanying assumptions in light of the current market environment, (b) make recommendations in order to minimize expenses and maximize the return from the sale of Merchandise, (c) consult with Merchant as to which stores to close immediately (or to not reopen) and at which to conduct the Sale, and (d) consult with Merchant as to the logistics of transferring merchandise from the Closing Stores to the GOB Stores. During the Sale Term, Consultant shall, in collaboration with Merchant, (a) provide one or more qualified supervisors (the "<u>Supervisors</u>") engaged by Consultant and reasonably approved in advance by Merchant to oversee the Sale and management of the GOB Stores in an effort to maximize revenue and sell all of the Merchandise prior to the end of the Sale; (b) determine appropriate point-of-sale and external advertising,  reasonably approved in advance by Merchant and in accordance with the Canadian Sale Guidelines attached as **<u>Exhibit D</u>**; (c) determine appropriate discounts of Merchandise, staffing levels, and appropriate bonus and incentive programs, if any, for the GOB Stores' employees, in each case reasonably approved in advance by Merchant; (d) oversee display of Merchandise for the GOB Stores; (e) evaluate sales of Merchandise by category, provide

sales reporting and monitor expenses; (f) maintain the confidentiality of all proprietary or non-public information regarding Merchant in accordance with the provisions of the confidentiality agreement signed by the Parties and for Merchant Confidential Information (as defined below) in accordance with the next paragraph; (g) assist Merchant in connection with managing and controlling loss prevention and employee relations matters; (h) to the extent necessary, assist Merchant in obtaining all required permits and governmental consents required to conduct the Sale; (i) price, market, and sell the FF&E on behalf of Merchant; (j) provide such other related services deemed necessary or appropriate by Merchant and Consultant; (k) provide such information and reporting as may be requested by the Information Officer; and (l) comply with all applicable Orders entered in the Bankruptcy Case or granted in the CCAA Proceedings.

Without limiting the generality of the foregoing, all information of a business nature relating to the pricing, sales, promotions, marketing, assets, liabilities, or other business affairs of Merchant, its customers, parent, subsidiaries, or other affiliated entities (for purposes of this paragraph, all such entities are included within each reference to "Merchant") is Merchant's confidential, trade secret information ("<u>Merchant Confidential Information</u>"), which is and shall remain the exclusive intellectual property of Merchant. Except as may be required for Consultant to perform its obligations under this Agreement in respect of the Sale, Consultant shall not divulge, furnish, make available, or in any other manner disclose such information to any third party other than to the Information Officer and the respective affiliates, officers, employees, representatives, attorneys and agents of each party comprising Consultant. Each party comprising Consultant shall take and shall cause its respective affiliates, officers, employees, representatives, attorneys and agents to take such action as shall be reasonably necessary or advisable to preserve and protect the confidentiality of Merchant Confidential Information. Each party comprising Consultant agrees to maintain strict confidentiality and agrees that it may use Merchant Confidential Information only as reasonably necessary in the performance of its obligations related to the Sale.

The Parties expressly acknowledge and agree that Merchant shall have no liability to the Supervisors for wages, benefits, severance pay, termination pay, vacation pay, pay in lieu of notice of termination or any other liability arising from Consultant's hiring or engagement of the Supervisors, and the Supervisors shall not be considered employees of Merchant. Merchant shall only be responsible for reimbursing Consultant for the cost of such Supervisors as part of the Expense Budget (as defined below). Consultant shall vacate the GOB Stores on the Sale Termination Date, or such other date as agreed between the Merchant and the Consultant in accordance with the terms hereof.

(B)    <u>Merchant's Undertakings</u>

During the Sale Term, Merchant shall, as applicable, (a) remain the employer of the Stores' employees; (b) remain responsible for all taxes, costs, expenses, accounts payable, and other liabilities relating to the Stores, the Stores' employees and other representatives of Merchant; (c) prepare and process all tax forms and other documentation; (d) collect all sales taxes and pay them to the appropriate taxing authorities for the Stores; (e) use reasonable efforts to cause Merchant's employees to cooperate with Consultant and the Supervisors; (f) execute all agreements mutually determined by the Merchant and the Consultant to be necessary or desirable for the operation of the GOB Stores during the Sale; (g) arrange for the ordinary maintenance of all point-of-sale equipment required for the GOB Stores; and (h) ensure that Consultant has quiet use and enjoyment of the GOB Stores for the Sale Term in order to perform its obligations under this Agreement.

Merchant shall provide throughout the Sale Term central administrative services typically provided to Stores in the ordinary course and necessary for the Sale, including internal payroll processing, MIS services, cash and inventory reconciliation, data processing and reporting, email preparation and distribution, information technology updates, functionality, and maintenance, and accounting, all at no cost to Consultant.

The Parties expressly acknowledge and agree that Consultant shall have no liability to Merchant's employees for wages, benefits (including any pension related benefits and obligations), severance pay, termination pay, accrued vacation entitlement, vacation pay, pay in lieu of notice of termination or any other liability arising

3

from Merchant's employment, hiring, retention, furlough, layoff, or termination of its employees, and such employees shall not be considered employees of Consultant.

The Parties acknowledge that this Agreement is being entered into in the midst of the outbreak of the COVID-19 pandemic and that local, provincial, and national laws and responses are continuously developing and evolving, often in unpredictable ways. Merchant hereby agrees that, while Consultant will fully cooperate with Merchant to adhere to any restrictions, laws, regulations, recommendations, or orders imposed by governmental entities, or similar regulatory or authoritative agencies, that may be imposed on any aspect of Merchant's ability to operate the Stores in response to the COVID-19 pandemic, the responsibility and expense of complying with any such restrictions, laws, regulations, recommendations, or orders, including their enforcement and implementation, shall be the sole responsibility of Merchant. Examples of such restrictions, regulations or recommendations may include, without limitation: (a) providing protective gear (such as masks, sanitizers, and similar items) aimed at reducing the spread of the virus to Merchant's employees, customers, vendors, etc.; (b) implementing physical restrictions with regard to Store operations, including monitoring the number of customers allowed into a Store at any given time; and (c) enforcing daily cleaning and sanitizing procedures at the Stores. Merchant and its employees shall be responsible to facilitate, enforce, and implement any such restrictions or regulations, however, Consultant agrees not to violate any such restrictions, laws, regulations, recommendations or orders in the performance of its services hereunder.

**Section 5.        The Sale**

All sales of Merchandise and FF&E shall be made on behalf of, and solely in the name of, Merchant. Consultant does not have, nor shall it have, any right, title, or interest in the Merchandise or FF&E.  Subject to the terms of the Approval Order, all sales of Merchandise and FF&E shall be by cash, gift card, gift certificate, merchandise credit, debit card, or credit card and, at Merchant's discretion, by check or otherwise in accordance with Merchant's policies, and shall be "final" with no returns accepted or allowed unless otherwise directed by Merchant or mandated by law.  The right to honor gift cards, gift certificates or merchandise credit, after the commencement of the Bankruptcy Case and the CCAA Proceedings shall be subject to further Orders entered in the Bankruptcy Case and granted in the CCAA Proceedings.

**Section 6.        Consultant Fee and Expenses in Connection with the Sale**

(A) Consultant's Fee

Consultant shall be entitled to a base fee for its services equal to USD$1,000 per GOB Store and USD$500 per Closing Store (the "Base Fee") payable as follows: (x) 50% upon entry of the Interim Order (as defined below), and (y) 50% upon entry of the Final Order (as defined below).  In addition, Merchant may earn an additional incentive fee (the "Incentive Fee" and together with the Base Fee, the "Consulting Fee") based upon the following thresholds of Gross Proceeds (as defined below) received during the Sale divided by the Cost Value (as defined below) of the Merchandise sold during the Sale (the "Gross Recovery Percentage") calculated back to the first dollar received:

| Gross Recovery Percentage | Total Incentive Fee |
|---|---|
| Between 120% to 134.99% | .50% of Gross Proceeds |
| Between 135% to 149.99% | .75% of Gross Proceeds |
| 150.0% or above | 1.25% of Gross Proceeds |

For the avoidance of doubt, the above Incentive Fee, if achieved, is in addition to the Base Fee.

After it is determined that Consultant has earned an Incentive Fee, Merchant shall pay such Incentive Fee as earned as part of the weekly reconciliations and in any event no later than the Final Reconciliation (as defined below).

4

For purposes of this calculation, (i) "Gross Proceeds" shall mean the sum of the gross proceeds of all sales of Merchandise that is sold through the Sale (including, as a result of the redemption of any gift card, gift certificate or merchandise credit as well as wholesale sales to third parties and miscellaneous income) during the Sale Term, after the application of all discounts including, without limitation, any discount coupons issued by Merchant in the ordinary course of its business, and net only of sales taxes, and (ii) "Cost Value" shall mean the aggregate gross cost of Merchandise sold during the Sale per the Merchant's books and records. The Parties shall mutually agree upon the Consulting Fee for any Additional Stores in writing.

For purposes of calculating Gross Proceeds, Consultant and Merchant shall jointly keep (i) a strict count of gross register receipts less applicable sales taxes and (ii) cash reports of sales within each Store.  Register receipts shall show for each item sold the retail price (as reflected on Merchant's books and records) for such item, and the markdown or other discount granted in connection with such sale.  All such records and reports shall be made available to Consultant and Merchant during regular business hours upon reasonable notice.

(B) Expenses

Merchant shall be responsible for all reasonable and documented costs and expenses of the Sale, including all Store level operating expenses.  To control expenses of the Sale, Merchant and Consultant have established a budget (the "Expense Budget") of certain delineated expenses in connection with the Sale, including supervision (including Supervisors' wages, fees, travel and any other compensation and any travel expenses of Consultant), advertising costs and signage.  The Expense Budget for the Sale is attached hereto as **Exhibit B**.  The Expense Budget may only be modified by mutual written agreement of Consultant and Merchant, and with the approval of the Information Officer from and after the date of the Approval Order.  Notwithstanding anything herein to the contrary, unless otherwise agreed to by Merchant, Merchant shall not be obligated to pay costs of supervision, advertising costs and signage that exceed the budgeted amount, on an aggregate basis. The Parties acknowledge that the Expense Budget will be updated as appropriate in connection with any modification of the lists of GOB Stores or the terms of the Sale and agree to cooperate in good faith with respect to such updates or to any Additional Stores.

(C) Reconciliation

Consultant shall maintain books and records as it relates to the services rendered under this Agreement.  Subject to the terms of the Approval Order, all accounting matters (including, without limitation, any Consulting Fees and expenses per the Expense Budget that are reimbursable or payable to Consultant) shall be reconciled on every Wednesday for the prior week and shall be paid within seven (7) days after each such weekly reconciliation.

Within twenty (20) days following the Sale Termination Date for each GOB Store, the Parties shall complete a final reconciliation and settlement based upon the total Gross Proceeds received and all amounts earned and due to Consultant and contemplated by this Agreement (including, without limitation, Expense Budget items) (the "Final Reconciliation").  Upon completion of the Final Reconciliation, if a payment is due from either Party, such Party shall pay the other Party any amounts calculated to be due as part of such Final Reconciliation after considering any amount previously paid to the Consultant (including without limitation Expense Budget items and any other payments under this Agreement).  Merchant or its firm of auditors appointed by Merchant has the right, upon reasonable written notice to Consultant, to inspect at reasonable times and locations such documentation, records, and equipment that reasonably relate to the services provided for under this Agreement for purposes of ensuring performance of Consultant's obligations under this Agreement.

(D) Advance on Expenses

Subject to the terms of the Approval Order, as an advance against the expenses of the Sale, and to secure payment of the same and any other amounts due to Consultant, no later than five (5) days after the Effective

Date, and in no event later than the last business day before the earliest of filing by Merchant of a Bankruptcy Case or CCAA Proceedings, Merchant shall pay to Consultant a deposit in the amount of USD$200,000, which is an estimate of the costs of signage, advertising and Supervisors for a two (2) week period, and is calculated based on the number of Stores included on **Exhibit A** as of the Effective Date (the "Advance").  The Parties agree that the Advance may only be used to pay for expenses pursuant to the Expense Budget and to secure reimbursement of the Expenses and payment of the Consulting Fee and other amounts due hereunder. The Parties further agree to increase the sum of the Advance in the event that Additional Stores are added and as needed, provided, however, that Merchant must expressly approve such increases in writing.  The Advance shall be applied against the reimbursement of expenses or payment of the Consulting Fee at the end of the Sale Term to the extent not otherwise paid, and to the extent not expended when the Sale concludes, and any unapplied balance shall be returned to Merchant as part of the Final Reconciliation or such other time that Merchant and Consultant mutually agree.

(E) Taxes on Payments

Merchant acknowledges that the amounts payable to Consultant hereunder may be subject to sales or other taxes and agrees to pay to Consultant all such taxes in accordance with applicable laws in addition to the amounts payable hereunder.

## Section 7.    Indemnification

(A) Merchant's Indemnification

Except as otherwise provided for in this Agreement, Merchant shall indemnify, defend, and hold each party comprising Consultant and its consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, affiliates, and Supervisors (collectively, "Consultant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to: (a) the willful or grossly negligent acts or omissions of Merchant or the Merchant Indemnified Parties (as defined below); (b) the material breach of any provision of this Agreement by Merchant; (c) any liability or other claims, including, without limitation, product liability claims, asserted by customers, any Store employees (under a collective bargaining agreement or otherwise), or any other person (excluding Consultant Indemnified Parties) against Consultant or a Consultant Indemnified Party, except claims arising from Consultant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Consultant's Indemnified Parties or Merchant's customers by Merchant or Merchant's Indemnified Parties (as defined below); (e) Merchant's failure to collect, remit and pay over to the appropriate taxing authority all sales and other taxes required to be collected, remitted or paid by Merchant during the Sale Term in accordance with applicable law; and (f) any claims of Merchant's employees for wages, benefits (including pension related benefits and obligations), severance pay, termination pay, accrued vacation, vacation pay, pay in lieu of notice of termination or any other liability arising from Merchant's employment, hiring, retention, furlough, layoff or termination of its employees.

(B) Consultant's Indemnification

Except as otherwise provided for in this Agreement, Consultant shall, on a joint and several basis, indemnify, defend and hold Merchant and its affiliates and their respective consultants, members, managers, partners, officers, directors, employees, attorneys, advisors, principals, and affiliates (other than the Consultant or the Consultant Indemnified Parties) (collectively, "Merchant Indemnified Parties") harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to (a) the willful or grossly negligent acts or omissions of Consultant or the Consultant Indemnified Parties; (b) the breach of any provision of, or the failure to perform any obligation under, this Agreement by Consultant; (c) any liability or other claims made by Consultant's Indemnified Parties or any other person (excluding Merchant Indemnified Parties) against a Merchant Indemnified Party arising out of or related to

6

Consultant's conduct of the Sale, except claims arising from Merchant's negligence, willful misconduct, or unlawful behavior; (d) any harassment, discrimination or violation of any laws or regulations or any other unlawful, tortious or otherwise actionable treatment of Merchant Indemnified Parties or Merchant's customers by Consultant or any of the Consultant Indemnified Parties and (e) any claims made by any party engaged by Consultant as an employee, agent, representative or independent contractor arising out of such engagement.

**Section 8.**      **<u>Insurance</u>**

    (A)      <u>Merchant's Insurance Obligations</u>

Merchant shall maintain, throughout the Sale Term, liability insurance policies (including products liability in the amounts currently provided, commercial general liability insurance and auto liability insurance) covering injuries to persons and property in or in connection with the Stores, and shall cause Consultant to be included as an additional insured with respect to all such policies. At Consultant's request, Merchant shall provide Consultant with a certificate or certificates evidencing the insurance coverage required hereunder and that Consultant is a additional insured thereunder. In addition, Merchant shall maintain throughout the Sale Term, in such amounts as it currently has in effect, workers compensation insurance in compliance with all applicable statutory requirements.

    (B)      <u>Consultant's Insurance Obligations</u>

As an expense of the Sale and as set forth on the Expense Budget, Consultant shall maintain, throughout the Sale Term, liability insurance policies (including products liability/completed operations, contractual liability, comprehensive commercial general liability, without limitation, including auto liability insurance) on an occurrence basis in an amount of at least one million dollars ($1,000,000) per occurrence and an aggregate basis of at least five million dollars ($5,000,000) for commercial general liability covering injuries to persons and property in or in connection with Consultant's provision of services at the Stores and $5,000,000 per occurrence combined single limit for auto. Consultant shall name Merchant as an additional insured and loss payee under such policies, and upon execution of this Agreement provide Merchant with a certificate or certificates of insurance evidencing the insurance coverage required hereunder. In addition, Consultant shall maintain throughout the Sale Term workers compensation insurance compliant with all statutory requirements. Further, should Consultant employ or engage third parties to perform any of Consultant's undertakings with regard to this Agreement, Consultant will ensure that such third parties are covered by Consultant's insurance or maintain all of the same insurance as Consultant is required to maintain pursuant to this paragraph and name Merchant as an additional insured and loss payee under the policy for each such insurance.

**Section 9.**      **<u>Representations, Warranties, Covenants and Agreements</u>**

    (A)      <u>Merchant's Representations, Warranties, Covenants and Agreements</u>.

Merchant warrants, represents, covenants and agrees that (a) Merchant is a company duly organized, validly existing and in good standing, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder (subject to any requisite approval in the Bankruptcy Case or in the CCAA Proceedings), and maintains its principal executive office at the address set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of Merchant and this Agreement constitutes a valid and binding obligation of Merchant enforceable against Merchant in accordance with its terms and conditions, and the consent of no other entity or person is required for Merchant to fully perform all of its obligations herein, (c) all ticketing of Merchandise at the Stores has been and will be done in accordance with Merchant's customary ticketing practices, and (d) all normal course hard markdowns on the Merchandise have been and will be, taken consistent with customary Merchant's practices.

    (B)      <u>Consultant's Representations, Warranties, Covenants and Agreements</u>.

Each party comprising Consultant respectively warrants, represents, covenants and agrees that (a) it is a company duly organized, validly existing and in good standing, with full power and authority to execute and deliver this Agreement and to perform its obligations hereunder, and maintains its principal executive office at the addresses set forth herein, (b) the execution, delivery and performance of this Agreement has been duly authorized by all necessary actions of such Consultant party and this Agreement constitutes a valid and binding obligation of such Consultant party, enforceable against such Consultant party in accordance with its terms and conditions, and the consent of no other entity or person is required for such Consultant party to fully perform all of its obligations herein, (c) subject to Section 4(A) above, it shall comply with and act in accordance with any and all applicable local laws, rules, regulations, and other legal obligations of all governmental authorities in conducting the Sale, (d) no non-emergency repairs or maintenance in the Stores will be conducted without Merchant's prior written consent, (e) it will not take any disciplinary action against any employee of Merchant, (f) subject to the terms of the Approval Order, Consultant will comply with lease terms, obligations and restrictions for each Store while performing the services hereunder, and (g) it shall conduct the Sale in accordance with the terms of this Agreement and the Approval Order.

### Section 10.    Furniture, Fixtures and Equipment

Subject to evaluation by the parties on a case by case basis to determine what may be sold from each Store as provided below, Consultant shall sell the FF&E in the GOB Stores and, to the extent applicable, the Closing Stores.  Merchant shall reimburse Consultant for Consultant's reasonable and documented out of pocket costs and expenses incurred by Consultant in connection with the sale of FF&E, which costs and expenses shall be incurred pursuant to a written budget or budgets to be established from time to time by mutual written agreement of the Parties (the "FF&E Budget").  Consultant shall have the right to abandon at the Stores any unsold FF&E, in a neat and orderly fashion. Unless otherwise agreed to by Merchant, the sale of the FF&E in each Store shall conclude no later than the Sale Termination Date for each Store.

Consultant shall be entitled to a commission equal to fifteen percent (15.0%) of the Gross FF&E Proceeds (as defined below) from the sale of the FF&E (the "FF&E Fee") for the Stores set forth on **Exhibit A**.

Notwithstanding the foregoing, Merchant may inform Consultant that it intends to remove certain fixtures from the Stores and such fixtures shall not be included in the FF&E.  Prior to the commencement of the Sale, Merchant will provide a list of any such fixtures at each store location to Consultant and will remove such fixtures from the Stores as soon as practical before or during the Sale. Consultant will use commercially reasonable efforts to ensure that the designated fixtures remain in good condition throughout the Sale.

Consultant shall remit to Merchant all Gross FF&E Proceeds.  For purposes of this Agreement, "Gross FF&E Proceeds" means gross receipts from the sale of FF&E, net only of applicable sales taxes.  During each weekly reconciliation described above, Consultant's FF&E Fee (if any) shall be calculated, and Consultant's calculated FF&E Fee and all FF&E costs and expenses then incurred shall be paid within seven (7) days after each such weekly reconciliation.

### Section 11.    Advertising, Promotions, Signwalkers and Signage

Consultant shall obtain prior written approval from Merchant for any advertising, promotions, signwalkers, and signage, which shall not be unreasonably withheld, and except as provided otherwise in the Approval Order shall cooperate with Merchant to ensure reasonable compliance with provincial and local government regulations and Store lease agreements.  All advertising shall comply with the Sale Guidelines attached as Exhibit "D".  Advertising and signage shall be at the expense of Merchant as provided in **Exhibit B** or as otherwise agreed between the parties.

### Section 12.    Termination

The following shall constitute "Termination Events" hereunder:

(a)     Merchant's or Consultant's failure to perform any of their respective material obligations hereunder, which failure remains uncured for seven (7) days after receipt of written notice thereof to the defaulting Party;

(b)     Any representation or warranty made by Merchant or Consultant is untrue in any material respect as of the date made or at any time and throughout the Sale Term;

(c)     The Sale is terminated or materially interrupted or impaired for any reason other than an event of default by Consultant or Merchant;

(d)     The Approval Order is not issued on or before July 7, 2020, or the Approval Order is overturned on appeal, materially varied or set aside;

(e)     Any trustee, receiver, secured party or other third party acquires title, possession or control of all or substantially all of the Merchandise; or

(f)     An Order is entered in the Bankruptcy Case or granted in the CCAA Proceedings requiring the termination of this Agreement.

If a Termination Event occurs, the non-defaulting Party (in the case of an event of default) or either Party (if the Sale is otherwise terminated or materially interrupted or impaired) may, in its discretion, elect to terminate this Agreement by providing seven (7) business days' written notice thereof to the other Party and, in the case of an event of default, in addition to terminating this Agreement, pursue any and all rights and remedies and damages resulting from such default.  If this Agreement is terminated, Merchant shall be obligated to pay Consultant all undisputed amounts due under this Agreement through and including the termination date. Merchant will be permitted to terminate this Agreement for any reason upon thirty (30) days' written notice to Consultant and, in such case, subject to the terms of the Approval Order, Consultant shall be paid its fee for selling Merchandise and FF&E through the date of such termination.

**Section 13.     <u>Notices</u>**

All notices, certificates, approvals, and payments provided for herein shall be sent by fax or by recognized overnight delivery service as follows: (a) To Merchant: General Nutrition Centres Company, Box 997, 800-1959 Upper Water Street, Halifax, Nova Scotia, B3J 2X2 with a copy to General Nutrition Centers, Inc., Attention: Accounts Payable Dept, 300 Sixth Avenue, Pittsburgh, PA 15222; (b) to Consultant: Tiger Capital Group, 60 State Street, 11th Floor, Boston, MA 02109, Attn: Mark P. Naughton, with a copy to Great American Group, LLC, 21255 Burbank Blvd., Suite 400, Woodland Hills, CA 91367, Attn:  Scott K. Carpenter and Marina Fineman; and (c) such other address as may be designated in writing by Merchant or Consultant.  A copy of all notices provided hereunder shall be sent by fax or recognized overnight delivery service to the Information Officer: FTI Consulting Canada, 79, TD South Tower Toronto Dominion Centre Toronto ON CA M5K 1G8, Wellington St W suite 2010, Toronto, ON M5K 1B1 (Attention: Nigel Meakin).

**Section 14.     <u>Independent Consultant</u>**

Consultant's relationship to Merchant is that of an independent contractor without the capacity to bind Merchant in any respect.  No employer/employee, principal/agent, joint venture or other such relationship is created by this Agreement.  Merchant shall have no control over the hours that Consultant or its employees or assistants or the Supervisors work or the means or manner in which the services that will be provided are performed and Consultant is not authorized to enter into any contracts or agreements on behalf of Merchant or to otherwise create any obligations of Merchant to third parties, unless authorized in writing to do so by Merchant.

**Section 15.     <u>Non-Assignment</u>**

Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either Party without the prior written consent of the other Party.  From and after the date of the Approval Order, any assignment shall also require the consent of the Information Officer.  No modification, amendment or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any Party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such Party.  This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, legal representatives, successors and permitted assigns.

**Section 16.**       **Severability**

If any term or provision of this Agreement, as applied to either Party or any circumstance, for any reason shall be declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, inoperative or otherwise ineffective, that provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.  If the surviving portions of the Agreement fail to retain the essential understanding of the Parties, the Agreement may be terminated by mutual consent of the Parties.

**Section 17.**       **Governing Law, Venue, Jurisdiction and Jury Waiver**

This Agreement, and its validity, construction and effect, shall be governed by and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein (without reference to the conflicts of laws provisions therein).  Merchant and Consultant waive their respective rights to trial by jury of any cause of action, claim, counterclaim, or cross-complaint in any action, proceeding and/or hearing brought by either Consultant against Merchant or Merchant against Consultant on any matter whatsoever arising out of, or in any way connected with, this Agreement, the relationship between Merchant and Consultant, any claim of injury or damage or the enforcement of any remedy under any law, statute, or regulation, emergency or otherwise, now or hereafter in effect.

**Section 18.**       **Security**

Consultant has implemented and shall operate at all times the technical and organizational security measures set forth on **Exhibit C** hereto.

**Section 19.**       **Entire Agreement**

This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the Parties concerning the subject matter hereof.  No covenants, agreements, representations or warranties of any kind whatsoever have been made by any Party except as specifically set forth in this Agreement.  All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

**Section 20.**       **Execution**

This Agreement may be executed simultaneously in counterparts (including by means of electronic mail, facsimile or portable document format (pdf) signature pages), any one of which need not contain the signatures of more than one party, but all such counterparts taken together shall constitute one and the same instrument. This Agreement, and any amendments hereto, to the extent signed and delivered by means of electronic mail, a facsimile machine or electronic transmission in portable document format (pdf), shall be treated in all manner and respects as an original thereof and shall be considered to have the same binding legal effects as if it were the original signed version thereof delivered in person.

**Section 21.**     **Court Approval**

Concurrent with, or as soon as possible following, the commencement of the CCAA Proceedings, Merchant shall file a motion with the Court to approve this Agreement and utilize its commercially reasonable efforts to ensure that such motion is approved by an order substantially in the form attached hereto as **Exhibit E** (the "Approval Order", and any interim and final orders obtained in the Bankruptcy Case in connection with the consulting services described herein and similar services, the "Interim Order" and the "Final Order", respectively) that provides for, among other things, as follows: (i) approval of this Agreement; (ii) approves the payment of all fees and reimbursement of expenses hereunder to Consultant, free and clear of all liens, claims and encumbrances, on a weekly basis and otherwise in accordance with this Agreement; (iii) approval of the transaction contemplated hereby; (iv) authorizing the Sale and providing that any Sale conducted hereunder shall be free of all claims, liens and encumbrances that existed prior to or after such Court Order including any Charges created by any Order of the Court; in accordance with the Canadian Sale Guidelines attached as **Exhibit D**; (v) declaring that this Agreement shall not be rejected or disclaimed by Merchant, and that the obligations of Merchant hereunder shall not be compromised in any plan, and (vi) authorizing Merchant to take such further actions as are necessary or appropriate to carry out the terms and conditions of this Agreement. The Parties acknowledge that Court approval is required for Merchant to enter into and perform under this Agreement. In the event of such a filing, any legal action, suit or proceeding arising in connection with this Agreement shall be submitted to the exclusive jurisdiction of the Court having jurisdiction over Merchant, and each Party hereby waives any defenses or objections based on lack of jurisdiction, improper venue, and/or forum non conveniens. From and after entry of the Approval Order, Consultant shall conduct the Sale in accordance with the terms of the applicable Orders granted in the Bankruptcy Case and in the CCAA Proceedings in all material respects.

**Section 22. Currency**

All references herein to money amounts are in Canadian currency, unless otherwise noted herein.

**Section 23.**     **Authorized Consultant Party**

Tiger and GA have formed a joint venture, and, as such, share in the rights and liabilities of Consultant as set forth in this Agreement. Tiger is hereby designated as the lead and authorized party to deal directly with Merchant on behalf of Consultant and has the authority to contractually bind Consultant under this Agreement without having to obtain any express written concurrent approval(s) from GA. Tiger and GA will be jointly and severally liable for all acts, omissions, and obligations of Consultant hereunder.

[SIGNATURES TO FOLLOW]

11

IN WITNESS WHEREOF, the Consultant and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

Tiger Asset Solutions Canada, ULC

By: Mark P. Naughton,
Title: Authorized Agent

GA Retail Canada ULC

By: SCOTT K. CARPENTER
Its: President, Managing Director

General Nutrition Centres Company

By:
Title:

IN WITNESS WHEREOF, the Consultant and the Merchant hereby execute this Agreement by their duly authorized representatives as a sealed instrument as of the day and year first written above.

Tiger Asset Solutions Canada, ULC

By: _____
Title:

GA Retail Canada ULC

By: _____
Its:

General Nutrition Centres Company

_Julia Solman_

By:
Title:

**Exhibit A**
**Store List**

13

| Loc Number | Location Name | Location Address | Location City | Location Province |
|---|---|---|---|---|
| 4297 | Hillside Shopping Centre | 1644 Hillside Avenue | Victoria | BC |
| 4232 | Robson Streetfront | 1126 Robson Street | Vancouver | BC |
| 4193 | Guildford Town Center | 10355 152 St | Surrey | BC |
| 4243 | Kelowna Mall | 2271 Harvey Ave | Kelowna | BC |
| 4038 | Smart Centres Central @ G | 1825-4720 Mcclelland Road | Richmond | BC |
| 4016 | Scotia Plaza | 40 King St West Box 108 | Toronto | ON |
| 4043 | Sunridge Mall | 2525-36Th Street Ne | Calgary | AB |
| 4065 | Market Mall | 3625 Shaganappi Trail | Calgary | AB |
| 4239 | Deerfoot Mall | #107 951 64 Av Ne | Calgary | AB |
| 4188 | Harvest Pointe Sc | 5233 Ellerslie Rd Sw | Edmonton | AB |
| 4048 | Halifax Shopping Center | 7001 Mumford Road | Halifax | NS |
| 4124 | Carrefour Angrignon | 7077 Newman Boulevard | Lasalle | PQ |
| 4022 | St. Laurent S.C. | 1200 St Laurent Blvd | Ottawa | ON |
| 4028 | Cornwall Square | 1 Water Street East | Cornwall | ON |
| 4059 | Northgate Square | 489 Albert Street North | Regina | SK |
| 4184 | Oshawa Centre | 419 King Street West | Oshawa | ON |
| 4050 | Markville Town Centre | 5000 Hwy 7 East | Markham | ON |
| 4127 | Stone Road Mall | 435 Stone Road West | Guelph | ON |
| 4117 | Vaughan Mills | 1 Bass Pro Mills Dr | Vaughan | ON |
| 4201 | Shoppes On Queen West | 601 Queen Street West | Toronto | ON |
| 4090 | Argyle Mall | 332 Clarke Road | London | ON |
| 4174 | Walker Place | 4140 Walker Rd | Windsor | ON |
| 4072 | Driftwood Mall | 2751 Cliffe Ave | Courtenay | BC |
| 4235 | Coquitlam Centre | 2929 Barnet Highway | Coquitlam | BC |
| 4278 | Village Green Centre | 4900 27Th Street | Vernon | BC |
| 4504 | Woodgrove Centre | 6631 Island Highway N | Nanaimo | BC |
| 4061 | Londonderry Mall | 137Th Ave & 66Th St | Edmonton | AB |
| 4170 | Erin Ridge Power Centre | 935 St.Albert Trail | St Albert | AB |
| 4180 | Manning Town Centre | 15733 37 Street | Edmonton | AB |
| 4183 | The Quarry | 20 Quarry Street East | Cochrane | AB |
| 4191 | York Station | 275 Broadway St E | Yorkton | SK |
| 4286 | Southlands Crossing | 1991 Strachan Rd | Medicine Hat | AB |
| 4503 | Deerfoot Meadows | 840-8180 11Th Street Se | Calgary | AB |
| 4177 | Avalon Mall | 48 Kenmount Rd | St. Johns | NL |
| 4131 | Yarmouth Mall | 76 Starrs Road | Yarmouth | NS |
| 4052 | Place D'Orleans | 110 Place D'Orleans Dr | Ottawa | ON |
| 4008 | Southhill Shopping Centre | 9325 Yonge Street | Richmond Hill | ON |
| 4086 | Bridgeport Plaza | 13/14-94 Bridgeport Rd Ea | Waterloo | ON |
| 4162 | Gladstone Queen West Reta | 4 Gladstone Ave | Toronto | ON |
| 4171 | Smartcentres Vaughan | 3604 Major Mackenzie Dr | Vaughan | ON |
| 4181 | Shops At Don Mills | 1090 Don Mills Rd | Toronto | ON |
| 4186 | North Park Sc | 1405 Lawrence Ave W | Toronto | ON |
| 4196 | Shoppers World Danforth | 3003 Danforth Ave | Toronto | ON |
| 4204 | Smartcentres St. Catharin | 420 Vansickle Road | St. Catharines | ON |
| 4248 | Crossroads | 2625B Weston Road | North York | ON |

| 4256 | Rio Centre Oakville | 478 Dundas Street West | Oakville | ON |
|------|-------------------|----------------------|----------|-----|
| 4506 | Smart Centres Bradford | 547 Holland St West | Bradford | ON |
| 4150 | Sudbury S Shopping Center | 2408 Long Lake Rd | Sudbury | ON |
| 4198 | Collingwood Centre | 99 Balsam Street | Collingwood | ON |
| 4206 | Smartcentres St. Thomas | 1063 Talbot Street | St. Thomas | ON |
| 4032 | Lougheed Mall | 9855 Austin Ave | Burnaby | BC |
| 4084 | Haney Place Mall | 149-11900 Haney Pl | Maple Ridge | BC |
| 4234 | Tamarack Centre | 1500 Cranbrook St N.#115 | Cranbrook | BC |
| 4280 | Capilano Mall | 935 Marine Dr | N. Vancouver | BC |
| 4199 | Tsawwassen Mills | 5000 Canoe Pass Way | Tsawwassen | BC |
| 4267 | Bankers Hall | 315 8Th Avenue Sw Ste 345 | Calgary | AB |
| 4039 | St. Vital Center | 130-1225 St Mary'S Rd | Winnipeg | MB |
| 4054 | Kildonan Place | 1555 Regent Ave West | Winnipeg | MB |
| 4066 | Cornwall Mall | 2102-11Th Ave | Regina | SK |
| 4283 | Southcentre Mall | 100 Anderson Rd. S.E. | Calgary | AB |
| 4207 | Outlet Collection Winnipe | 555 Sterling Lyon Parkway | Winnipeg | MB |
| 4208 | Premium Outlet Collection | #1 Outlet Collection Way | Edmonton Airport | AB |
| 4067 | Mayflower Mall | 800 Grand Lake Road | Sydney | NS |
| 4229 | Regent Mall | 1381 Regent Street | Fredericton | NB |
| 4200 | Colby Village | 920 Cole Harbour Road | Dartmouth | NS |
| 4159 | Quartier Dix 30 | 8900 Blvd Leduc | Brossard | PQ |
| 4192 | Smartcentres Mascouche | 117 Montee Masson | Mascouche | PQ |
| 4179 | Les Promenades Gatineau | 1000 Blvd Maloney Quest | Gatineau | PQ |
| 4185 | Kemptville Colonnade Reta | 304 Colonnade Dr | Kemptville | ON |
| 4000 | The Promenade Mall | 1 Promenade Circle | Thorn Hill | ON |
| 4017 | Upper Canada Mall | 17600 Yonge St | Newmarket | ON |
| 4026 | Burlington Mall | 777 Guelph Line | Burlington | ON |
| 4037 | Eglinton Square S.C. | 1431-1437 Victoria Park A | Toronto | ON |
| 4075 | Cloverdale Mall | 250 The East Mall | Toronto | ON |
| 4144 | Georgetown Market Place | 280 Guelph Street | Georgetown | ON |
| 4189 | Centerpoint Mall | 6464 Yonge St | Toronto | ON |
| 4203 | Yonge Sheppard Centre | 4841 Yonge Street | Toronto | ON |
| 4157 | Riocan Marketplace | 2181 Steele Ave West | Toronto | ON |
| 4194 | 410 At Steeles | 35 Resolution Dr | Brampton | ON |
| 4287 | Rio-Can Milton | 1155 Maple Avenue | Milton | ON |
| 4091 | Heritage Place | 1350 16Th Street East | Owen Sound | ON |
| 4225 | Lambton Mall | 1380 London Road Unit33 | Sarnia | ON |
| 4263 | White Oaks Mall | 1105 Wellington Rd | London | ON |
| 4270 | Northgate Square | 1500 Fisher St | North Bay | ON |
| 4510 | Station Mall | 293 Bay Street | Sault Ste Marie | ON |
| 4020 | Intercity S/C | 1000 Fort William Rd | Thunder Bay | ON |

Total: 86 Stores

**Exhibit B**
**Expense Budget**

30013600.6

| GNC - Canada Consultant's Expenses ($ in USD) | |
|---|---|

| | |
|---|---|
| **Advertisement** | |
| Signs, Banners & Shipping | $102,800 |
| Signwalker Program | 543,900 |
| **Subtotal: Advertisement** | **$646,700** |
| **Supervision** | 419,287 |
| **Miscellaneous** | 30,000 |
| **Total Consultant Exp. (1) (2)** | **$1,095,987** |

Notes:

(1) Assumes an average of 14.0-week Sale starting Thu, 06/25.

(2) Budget reflects 82 GOB Stores and 4 Transfer locations.

   Should the numbers and/or classifications of the Stores fluctuate from these amounts,

   Merchant and Consultant shall mutually agree to amend the Budget and Consultant Fees.

**Exhibit C**
**Security Requirements**

GNC Contract Security Exhibit

Consultant has implemented and shall operate at all times the following technical and organizational security measures to safeguard and monitor the confidentiality, integrity, and availability of GNC data; the systems that store, process or transmit GNC data; and the services provided to GNC.

1.  A written information security policy and program based on an industry-recognized security framework such as NIST 800.53 or ISO 27001/27002. Consultant shall provide a copy of the written information security program they have implemented.

2.  An ongoing security awareness program to educate and test personnel about confidentiality and information security at the time of hire and periodically thereafter. Training includes both general-purpose security awareness and job-specific security responsibilities and procedures.

3.  Policies, controls, and procedures to control, limit and monitor physical access to facilities where GNC data is processed, systems that provide services to GNC are located, and personnel that provide services to GNC are employed.

4.  Policies, controls, and procedures to safeguard and monitor the networks and systems that process GNC data or provide services to GNC. Consultant utilizes current versions of operating systems, applications, software, and hardware that are covered by manufacturer support.

5.  Policies, controls, and procedures to prevent the loss or corruption of GNC data and to ensure the confidentiality and integrity of all integrations, system interconnections, and transmissions between Consultant and GNC.

6.  Policies, controls, and procedures to manage the creation, use, periodic re-certification, revocation, and deletion of access credentials and to authenticate, authorize, and audit access to data, networks, systems, services, and other information assets.

7.  Policies, controls, and procedures to document, review, approve, test, and implement changes to software, hardware, data, applications, and services.

8.  Policies, controls, and procedures to create automated logs and audit trails of system operations, user activities, and security events; to review logs, reports, or alerts of security events for all system components to identify anomalies or suspicious activity in a timely manner; and to investigate and addresses security events identified through its monitoring practices.

9.  Policies, controls, and procedures for asset management, record retention, and record destruction to identify, classify, and manage information assets, software, and systems. Consultant shall immediately and securely remove from its systems and media, and at GNC's option return or destroy, all data at the end of its agreement with GNC, upon GNC's request, or when the data is no longer required to provide services to GNC.  Consultant shall provide suitable documentation and certification of the removal processes and results.

10. Policies, controls, and procedures for a secure System Development Life Cycle (SDLC) that involves security in product development and implementation, trains personnel in secure development and coding concepts and practices, and verifies that products meet security requirements prior to delivery. The secure SDLC incorporates leading practices for authentication, authorization, and access control; data validation, transmission, and storage; cryptography; session management; and error handling.

11. Policies, controls, and procedures to assess, report, manage, and address internal and third-party risk. Consultant operates a continuous vulnerability management program that includes periodic scanning and penetration tests of systems, services, and networks; application security tests; and the timely installation of all relevant vendor security patches. Consultant subscribes to relevant manufacturer and industry security advisory services. Consultant develops and executes timely risk treatment and remediation action plans.

12. Policies, controls, and procedures for computer security incident response. Consultant designates and trains an incident response team and performs periodic incident response exercises. In the event of an incident that affects the security of the Consultant or the Consultant's third party service providers, Consultant shall notify GNC within 24 hours. Consultant shall cooperate with GNC and GNC's authorized representatives in the design and execution of any public notice and communication regarding the security incident and its impacts. Consultant shall cooperate with GNC to address the incident and implement corrective action plans.

13. Consultant acknowledges and agrees that all data received from GNC is owned by GNC. Consultant shall use data solely for the purpose of providing services to, and solely for the benefit of, GNC. Consultant shall not disclose GNC data to third parties or affiliates without the express written consent of GNC. Consultant shall store regulated personably identifiable data and personal data received from and owned by GNC within the US and will not transmit, transfer, or replicate the data to any location outside of the United States.

14. Consultant shall only disclose or transfer GNC data to authorized third parties for the purpose of rendering services to GNC. Consultant shall maintain an inventory of third parties to which Consultant discloses or transfers GNC's data. Consultant will provide this inventory to GNC upon request. Consultant shall require of its third parties, and accept responsibility to ensure that its third parties shall have in place equivalent safeguards for the protection of GNC data and services as specified in Consultant's agreement with GNC.

15. If Consultant processes, transmits, accesses, or stores payment card data in rendering services to GNC, then Consultant (and related applicable third parties) shall meet the requirements for a PCI Service Provider and shall demonstrate ongoing PCI Data Security Standard and/or Payment Application Data Security Standard compliance as a Service Provider annually by furnishing to GNC its then-current authorized Attestation of Compliance developed by a certified, independent PCI Qualified Security Assessor.

16. If Consultant processes personal data of European Union data subjects as a data processor rendering services to GNC, then Consultant (and related applicable third parties) shall implement appropriate technical and organizational measures in such a manner that processing will meet the requirements of GDPR and ensure the protection of the rights of the data subject, execute a data protection agreement with GNC, assist GNC to fulfill GDPR data subject rights requests. Consultant shall make available to GNC all information necessary to demonstrate compliance with GDPR obligations.

17. Consultant shall comply with all applicable federal, state, and local statutes and regulations governing Consultant's use, transmission, storage, and destruction of data.

18. Consultant has disclosed any breach of security or unauthorized access or unauthorized use of its systems or services that occurred in the past 36 months. Consultant has described the response and remedies implemented to address the cause of any breach.

17

19. Consultant has provided current attestation of privacy and security trust principles such as an SSAE 16 SOC 2 report (or equivalent) from an independent registered public accountant (or equivalent) covering all locations and functions that store, process, transmit, or access GNC data and/or systems.

20. Upon reasonable notice, Consultant shall permit GNC, or a third-party provider acting on GNC's behalf, to conduct security vulnerability testing of the systems and/or software developed on behalf of GNC and/or used to render services to GNC. Consultant shall develop and implement timely corrective action plans to remediate defects and vulnerabilities noted during the testing.

21. Consultant shall reasonably cooperate with any investigation carried out by or on behalf of GNC relating to the security, integrity, confidentiality, availability, or accuracy of GNC data, including promptly providing information or material in its possession or control in support of such investigation, and making all necessary personnel available to respond to any questions or issues that may arise.

22. Consultant has executed GNC's non-disclosure agreement (or equivalent).


END OF DOCUMENT

Revised 8/7/2018

18

**Exhibit D**
**Canadian Sale Guidelines**

19

## CANADIAN SALE GUIDELINES

The following procedures shall apply to the Sale to be conducted at the Stores of General Nutrition Centres Company (the "**Merchant**"). All terms not herein defined shall have the meaning set forth in the Consulting Agreement by and between a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (collectively with their respective U.S. affiliates, the "**Consultant**") and the Merchant dated as of June 18, 2020 (the "**Consulting Agreement**").

1.    Except as otherwise expressly set out herein, and subject to: (i) the orders granted or issued in the Merchant's bankruptcy case (the "**Bankruptcy Case**") in the United States of America under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") and the Merchant's ancillary proceedings (the "**CCAA Proceedings**") in Canada under Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") before the Ontario Superior Court of Justice (Commercial List) (individually, an "**Order**", and, collectively, the "**Orders**"); or (ii) any subsequent written agreement between the Merchant and the applicable landlord(s) (individually, a "**Landlord**" and, collectively, the "**Landlords**") and approved by each of the Consultant and Information Officer in writing, or (iii) as otherwise set forth herein, the Sale shall be conducted in accordance with the terms of the applicable leases/or other occupancy agreements to which the affected Landlords are privy for each of the affected Stores (individually, a "**Lease**" and, collectively, the "**Leases**"). However, nothing contained herein shall be construed to create or impose upon the Merchant or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

2.    The Sale shall be conducted so that each of the Stores remains open during its normal hours of operation provided for in its respective Lease until the respective Sale Termination Date for such Store. The Sale at the Stores shall end by no later than the Sale Termination Date. Rent payable under the respective Leases shall be paid in accordance with the terms of the Orders, as applicable**.**

3.    The Sale shall be conducted in accordance with applicable federal, provincial and municipal laws and regulations, unless otherwise set out herein or otherwise ordered by the Court.

4.    All display and hanging signs used by the Consultant in connection with the Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Notwithstanding anything to the contrary contained in the Leases, the Consultant may advertise the Sale at the Stores as an "everything on sale", an "everything must go", a "store closing" or similar theme sale at the Stores (provided however that no signs shall advertise the Sale as a "bankruptcy", a "going out of business" or a "liquidation" sale it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used). Forthwith upon written request from a Landlord, the Landlord's counsel, the Merchant or the Information Officer, the Consultant shall provide the proposed signage packages along with the proposed dimensions and number of signs (as approved by the Merchant pursuant to the Consulting Agreement) by e-mail to such Landlord(s) or to their counsel of record and the Information Officer. Where the provisions of the Lease conflict with these Canadian Sale Guidelines, these Canadian Sale Guidelines shall govern**.** The Consultant shall not use neon or day-glow or handwritten signage (unless otherwise contained in the sign package, including "you pay" or "topper" signs). In addition, the Consultant shall be permitted to utilize exterior banners/signs at stand alone or strip mall Stores or enclosed mall Stores with a separate entrance from the exterior of the enclosed mall, provided, however, that where such banners are not explicitly permitted by the applicable Lease and the Landlord requests in

writing that the banners are not to be used, no banners shall be used absent further Order of the Court. Any banners used shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the premises occupied by the affected Store. All exterior banners shall be professionally hung and to the extent that there is any damage to the façade of the premises of a Store as a result of the hanging or removal of the exterior banner, such damage shall be professionally repaired at the expense of the Consultant.  If a Landlord is concerned with "store closing" signs being placed in the front window of a Store or with the number or size of the signs in the front window, the Consultant and the Landlord will discuss the Landlord's concerns and work to resolve the dispute.

5.      The Consultant shall be permitted to utilize sign walkers and street signage; provided, however, such sign walkers and street signage shall not be located on the shopping centre or mall premises.

6.      The Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized pursuant to the applicable Lease. The hanging of exterior banners or other signage, where permitted in accordance with the terms of these guidelines, shall not constitute an alteration to a Store.

7.      Conspicuous signs shall be posted in the cash register areas of each Store to the effect that all sales are "final".

8.      The Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any of the Stores on any Landlord's property, unless permitted by the applicable Lease or, if distribution is customary in the shopping centre in which the Store is located. Otherwise, the Consultant may solicit customers in the Stores themselves. The Consultant shall not use any giant balloons, flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable Lease, or agreed to by the Landlord, and no advertising trucks shall be used on a Landlord property or mall ring roads, except as explicitly permitted under the applicable Lease or agreed to by the Landlord.

9.      At the conclusion of the Sale in each Store, the Consultant shall arrange that the premises for each Store are in "broom-swept" and clean condition, and shall arrange that the Stores are materially in the same condition as on the commencement of the Sale, ordinary wear and tear excepted. No property of any Landlord of a Store shall be removed or sold during the Sale**.** No permanent fixtures (other than FF&E which for clarity is owned by the Merchant) may be removed without the applicable Landlord's written consent unless otherwise provided by the applicable Lease. Any fixtures or personal property left in a Store after the Sale Termination Date in respect of which the applicable Lease has been disclaimed by the Merchant shall be deemed abandoned, with the applicable Landlord having the right to dispose of the same as the Landlord chooses, without any liability whatsoever on the part of the Landlord.

10.     Subject to the terms of paragraph 9 above, the Consultant may sell Offered FF&E which is located in the Stores during the Sale. The Merchant and the Consultant may advertise the sale of Offered FF&E consistent with these guidelines on the understanding that any applicable Landlord may require that such signs be placed in discreet locations acceptable to the applicable Landlord, acting reasonably. Additionally, the purchasers of any Offered FF&E sold during the Sale shall only be permitted to remove the Offered FF&E either through the back shipping areas designated by the applicable Landlord, or through other areas after regular store business hours, or through the front door of the Store during store business hours if the Offered FF&E can fit in a shopping bag, with applicable Landlord's supervision

21

as required by the applicable Landlord. The Consultant shall repair any damage to the Stores resulting from the removal of any Offered FF&E by Consultant or by third party purchasers of Offered FF&E from Consultant.

11.     The Merchant hereby provides notice to the Landlords of the Merchant and the Consultant's intention to sell and remove Offered FF&E from the Stores. The Merchant will arrange a walk through with each Landlord that requests a walk through with the Consultant to identify the Offered FF&E subject to the sale. The relevant Landlord shall be entitled to have a representative present in the Store to observe such removal. If the Landlord disputes the Consultant's entitlement to sell or remove any FF&E under the provisions of the Lease, such FF&E shall remain on the premises and shall be dealt with as agreed between the Merchant, the Consultant and such Landlord, or pursuant to the dispute resolution section of the Canadian Store Closing Procedures. If the Merchant has rejected the Lease governing such Store in accordance with the Bankruptcy Code, it shall not be required to pay rent under such Lease pending resolution of any such dispute (other than rent payable for the notice period provided for under the Bankruptcy Code), and the rejection of the Lease shall be without prejudice to the Merchant's or Consultant's claim to the FF&E in dispute.

12.     If a rejection notice is delivered to a Landlord pursuant to the Bankruptcy Code while the Sale is ongoing and the Store in question has not yet been vacated, then: (a) during the notice period prior to the effective time of such rejection, the applicable Landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Merchant and the Consultant 24 hours' prior written notice; and (b) at the effective time of the rejection, the relevant Landlord shall be entitled to take possession of any such Store without waiver of or prejudice to any claims or rights such Landlord may have against the Merchant in respect of such Lease or Store, provided that nothing herein shall relieve such Landlord of its obligation to mitigate any damages claimed in connection therewith.

13.     The Consultant and its agents and representatives shall have the same access rights to the Stores as the Merchant under the terms of the applicable Lease, and the applicable Landlords shall have the rights of access to the Stores during the Sale provided for in the applicable Lease (subject, for greater certainty, to any applicable stay of proceedings).

14.     The Merchant and the Consultant shall not conduct any auctions of Merchandise or Offered FF&E at any of the Stores.

15.     The Consultant shall designate a party to be contacted by the Landlords should a dispute arise concerning the conduct of the Sale. The initial contact person for the Consultant shall be Daniel Richer who may be reached by phone at 416-865-4445 or email at dricher@fasken.com. Contact persons for the Merchant and the Information Officer are set out in the Canadian Store Closing Procedures. If the parties are unable to resolve the dispute between themselves, the notice and dispute sections of the Canadian Store Closing Procedures shall be followed by the parties. For the duration of any such dispute, the Consultant shall cease all activity in dispute other than activity expressly permitted herein, pending the determination of the matter by the Court; provided, for greater certainty, that if a banner has been hung in accordance with these Canadian Sale Guidelines and is thereafter the subject of a dispute, the Consultant shall not be required to take any such banner down pending determination of the dispute.

16.     Nothing herein is, or shall be deemed to be a consent by any Landlord to the sale, assignment or transfer of any Lease, or to grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

17.    These Canadian Sale Guidelines may be amended by written agreement between the Merchant, the Consultant and any applicable Landlord (provided that such amended Canadian Sale Guidelines shall not affect or bind any other Landlord not privy thereto without further Order of the Court).

23

**Exhibit E**
**Approval Order**

Court File No.

## ONTARIO

## SUPERIOR COURT OF JUSTICE

## (COMMERCIAL LIST)

| | | |
|---|---|---|
| THE HONOURABLE | ) | WEEKDAY, THE # |
| | ) | |
| JUSTICE | ) | DAY OF JUNE, 2020 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*,
R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF
GNC HOLDINGS, INC., GENERAL NUTRITION CENTRES COMPANY, GNC PARENT
LLC, GNC CORPORATION, GENERAL NUTRITION CENTERS, INC., GENERAL
NUTRITION CORPORATION, GENERAL NUTRITION INVESTMENT COMPANY,
LUCKY OLDCO CORPORATION, GNC FUNDING INC., GNC INTERNATIONAL
HOLDINGS INC., GNC CHINA HOLDCO, LLC, GNC HEADQUARTERS LLC, GUSTINE
SIXTH AVENUE ASSOCIATED, LTD., GNC CANADA HOLDINGS, INC., GNC
GOVERNMENT SERVICES, LLC, GNC PUERTO RICO HOLDINGS, INC. and GNC
PUERTO RICO, LLC

APPLICATION OF GNC HOLDINGS, INC.,
UNDER SECTION 46 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT,*
R.S.C. 1985, c. C 36, AS AMENDED

## CONSULTING AGREEMENT APPROVAL ORDER

THE MOTION, made by GNC Holdings, Inc. (**"GNC"**, in its capacity as the foreign representative of the Debtors (as defined below, and GNC, in such capacity, the **"Foreign Representative"**), pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the **"CCAA"**), for an Order among other things, approving the consulting agreement entered into between, on the one hand, General Nutrition Centres Company (**"GNC Canada"**) and on the other hand, a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (collectively, the **"Consultant"**) dated as of ■, 2020 (the

"**Consulting Agreement**"), and other related relief was heard this day by judicial videoconference via Zoom at Toronto, Ontario due to the COVID-19 crisis.

ON READING the affidavit of ■ sworn June ■, 2020, and the Exhibits thereto, and the pre-filing report of FTI Consulting Canada Inc. in its capacity as proposed Information Officer dated June ■, 2020 (the "**Pre-Filing Report**"), and on hearing the submissions of counsel for the Foreign Representative and the other entities listed on Schedule "A" hereto (collectively, the "**Debtors**"), FTI Consulting Canada Inc. in its capacity as court-appointed Information Officer (the "**Information Officer**"), the Ad Hoc Group of Crossover Lenders, the Consultant, and no one appearing for any other person on the service list, although properly served as appears from the affidavit of ■ sworn ■ on ■, 2020.

**Service**

1.      THIS COURT ORDERS that the time for service of the Notice of Motion and the Motion Record is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

2.      THIS COURT ORDERS that any capitalized term used and not defined herein, shall have the meaning ascribed thereto in the Affidavit of ■ dated ■.

**Recognition of Chapter 11 Store Closings Order**

3.      THIS COURT ORDERS that the Chapter 11 Store Closings Order (as defined in the ■, and a copy of which is attached as Schedule "■" to this Order) of the United States Bankruptcy Court for the District of Delaware made in the bankruptcy cases commenced by the Debtors under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Case**") is hereby recognized and given full force and effect in all provinces and territories of Canada pursuant to Section 49 of the CCAA, and, while this Order provides additional guidance in terms of dealing with Property (as defined below) in Canada, in the event of any conflict between the terms of the Chapter 11 Store Closings Order and this Order, the Chapter 11 Store Closings Order shall govern.

- 3 -

**Approval of the Consulting Agreement**

4.      THIS COURT ORDERS that the Consulting Agreement, including, without limitation, the Canadian Sale Guidelines attached thereto as **Schedule "A"** (the **"Canadian Sale Guidelines"**), and the transactions contemplated under the Consulting Agreement, are hereby approved with such minor amendments to the Consulting Agreement (but not the Canadian Sale Guidelines) as the Debtors, with the consent of the Information Officer, the Ad Hoc Group of Crossover Lenders, and the Consultant may deem necessary and agree to in writing.  The Debtors, and each of them are hereby authorized and directed to take such additional steps and execute such additional documents as may be necessary or desirable to implement the Consulting Agreement, including, without limitation, the Canadian Sale Guidelines, and the transactions contemplated therein.

**The Sale**

5.      THIS COURT ORDERS that the Debtors, or any of them, with the assistance of the Consultant, are authorized and directed to conduct the Sale in accordance with the Chapter 11 Store Closings Order, this Order, the Canadian Store Closing Procedures, the Canadian Sale Guidelines and the Consulting Agreement and to advertise and promote the Sale within the Stores in Canada, all in accordance with the foregoing. If there is a conflict between the Chapter 11 Store Closings Order, the Canadian Store Closing Procedures, the Canadian Sale Guidelines and the Consulting Agreement, the order of priority of documents to resolve each conflict is as follows: (1) the Chapter 11 Store Closings Order; (2) this Order; (3) the Canadian Store Closing Procedures; (4) the Canadian Sale Guidelines; and (5) the Consulting Agreement.

6.      THIS COURT ORDERS that the Debtors, with the assistance of the Consultant, are authorized to market and sell the Merchandise and, subject to the Canadian Sale Guidelines, the Offered FF&E, free and clear of all liens, claims, encumbrances, security interests, hypothecs, prior claims, mortgages, charges, trusts, deemed trusts, executions, levies, financial, monetary or other claims, whether or not such claims have attached or been perfected, registered or filed and whether secured, unsecured, quantified or unquantified, contingent or otherwise, whensoever and howsoever arising, and whether such claims arose or came into existence prior to the date of this Order or arise or come into existence following the date of this Order (in each case, whether

contractual, statutory, arising by operation of law, in equity or otherwise) (all of the foregoing, collectively **"Claims"**), including, without limiting the generality of the foregoing: (a) any encumbrances or charges created by the the Supplemental Order dated ■, 2020, each made in the within proceedings, and any other charges hereinafter granted by this Court in the within proceedings; and (b) all charges, security interests or claims evidenced by registrations pursuant to the *Personal Property Security Act* (Ontario) or any other personal property registry system (all of which are collectively referred to as the **"Encumbrances"**), which Claims will attach instead to the proceeds received from the Merchandise and the Offered FF&E, other than amounts due and payable to the Consultant pursuant to the Consulting Agreement, in the same order and priority as the Claims existed as at the date hereof.

7.      THIS COURT ORDERS that, subject to the terms of the Chapter 11 Store Closings Order, this Order, the Canadian Store Closing Procedures and the Canadian Sale Guidelines, the Consultant shall have the right to use the Stores in Canada and all related store services, furniture, trade fixtures and equipment, including the FF&E, located at the Stores in Canada, and other assets of the Debtors as designated under the Consulting Agreement for the purpose of conducting the Sale, and for such purposes, the Consultant shall be entitled to the benefit of the stay of proceedings provided for in the Initial Recognition Order, as applicable and as such stay may be extended from time to time.

8.      THIS COURT ORDERS that until the Sale Termination Date which, for greater certainty, shall be the earlier of September 30, 2020, and the effective date of a lease rejection in the Bankruptcy Case, the Consultant shall have access to the Stores in Canada in accordance with the applicable leases and the Canadian Store Closing Procedures and the Canadian Sale Guidelines on the basis that the Consultant is assisting the Debtors and the Debtors have granted the right of access to the applicable Store to the Consultant. To the extent that the terms of the applicable leases are in conflict with any term of the the Chapter 11 Store Closings Order, this Order, the Canadian Store Closing Procedures or the Canadian Sale Guidelines, the terms of the Chapter 11 Store Closings Order, this Order, the Canadian Store Closing Procedures and the Sale Guidelines shall govern.

- 5 -

9.      THIS COURT ORDERS that nothing in this Order shall amend or vary, or be deemed to amend or vary, the terms of the leases for the Stores in Canada. Nothing contained in this Order, the Canadian Store Closing Procedures or the Canadian Sale Guidelines shall be construed to create or impose upon the Debtors or the Consultant any additional restrictions not contained in the applicable lease.

10.     THIS COURT ORDERS that nothing herein is, or shall be deemed to be, a consent by any Landlord to the sale, assignment or transfer of any Lease, or to grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

11.     THIS COURT ORDERS that until the Sale Termination Date, the Consultant shall have the right to use, without interference by any intellectual property licensor, the trademarks of the Debtors, or any of them, trade names and logos, customer/marketing lists, website and social media accounts as well as all licenses and rights granted to the Debtors, or any of them, to use the trade names, and logos of third parties, relating to and used in connection with the operation of the Stores in Canada solely for the purpose of advertising and conducting the Sale in accordance with the terms of the Chapter 11 Store Closings Order , this Order, the Canadian Store Closing Procedures, the Canadian Sale Guidelines and the Consulting Agreement.

**Consultant Liability**

12.     THIS COURT ORDERS that the Consultant shall act solely as an independent consultant to the Debtors and that it shall not be liable for any claims against the Debtors, or any of them, other than as expressly provided for in the Chapter 11 Store Closings Order, Consulting Agreement, the Canadian Sale Guidelines and the Canadian Store Closing Procedures, and more specifically:

> (a)     the Consultant shall not be deemed to be an owner or in possession, care, control or management of the Stores in Canada or the assets located therein or associated therewith or of the employees of the Debtors, or any of them, located at the Stores in Canada or any other property of the Debtors, or any of them;

> (b)     the Consultant shall not be deemed to be an employer, or a joint or successor employer or a related or common employer or payor within the meaning of any

legislation governing employment or labour standards or pension benefits or health and safety or other statute, regulation or rule of law or equity for any purpose whatsoever, and shall not incur any successorship liabilities whatsoever; and

(c)     the Debtors shall bear all responsibility for any liability whatsoever (including without limitation losses, costs, damages, fines, or awards) relating to claims of customers, employees and any other persons arising from events and closings occurring at the Stores in Canada during and after the term of the Consulting Agreement, except to the extent that such claims are the result of events or circumstances caused or contributed to by the gross negligence or wilful misconduct of the Consultant, its employees, agents or other representatives, or otherwise in accordance with the Consulting Agreement.

**Consultant as Unaffected Creditor**

13.     THIS COURT ORDERS that, subject only to paragraph 7 of this Order, the Consultant shall not be affected by the stay of proceedings in respect of the Debtors, or any of them, and shall be entitled to exercise its remedies under the Consulting Agreement in respect of claims of the Consultant pursuant to the Consulting Agreement (collectively, the "**Consultant's Claims**").

14.     THIS COURT ORDERS that notwithstanding the terms of any order issued by this Court in the within proceedings, the Debtors, or any of them, shall not be entitled to repudiate, disclaim or resiliate the Consulting Agreement or any of the agreements, contracts or arrangements in relation thereto entered into with the Consultant.

15.     THIS COURT ORDERS that the Debtors, or any of them, are hereby authorized and directed to remit, in accordance with the Consulting Agreement, or any other agreement contract or arrangement in relation thereto, all amounts that become due to the Consultant thereunder.

16.     THIS COURT ORDERS that subject to any order made in the Bankruptcy Case, no Claims shall attach to any amounts payable by the Debtors, or any of them, to the Consultant pursuant to the Consulting Agreement, including any amounts that must be reimbursed by the Debtors, or any of them, to the Consultant, and the Debtors, or any of them, shall pay any such

amounts to the Consultant free and clear of all Claims, notwithstanding any enforcement or other process, all in accordance with the Consulting Agreement.

17.     THIS COURT ORDERS that notwithstanding (a) the pendency of these proceedings; (b) any application for a bankruptcy order now or hereafter issued pursuant to the *Bankruptcy and Insolvency Act*, R.S.C., 1985, c. B-3, as amended (the **"BIA"**), in respect of the Debtors, or any of them, or any bankruptcy order made pursuant to any such applications; (c) any assignment in bankruptcy made in respect of the Debtors, or any of them; (d) the provisions of any federal or provincial statute; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of encumbrances, contained in any existing loan documents, lease, mortgage, security agreement, debenture, sublease, offer to lease or other document or agreement (each, an **"Agreement"**) that binds the Debtors, or any of them, the Consulting Agreement, including, without limitation, the Canadian Sale Guidelines attached thereto as **Schedule "A"** (the **"Canadian Sale Guidelines"**), and the transactions contemplated thereby, including, without limitation, the payment of amounts due to the Consultant, shall be binding on any trustee in bankruptcy that may be appointed in respect of the Debtors, or any of them, and shall not be void or voidable by any Person (as defined in the BIA), including any creditor of the Debtors, nor shall they, or any of them, constitute or be deemed to be a preference, fraudulent conveyance, transfer at undervalue or other challengeable reviewable transaction, under the BIA or any applicable law, nor shall they constitute oppressive or unfairly prejudicial conduct under any applicable law.

18.     THIS COURT ORDERS that notwithstanding (a) the pendency of these proceedings; (b) any application for a bankruptcy order now or hereafter issued pursuant to the BIA in respect of the Debtors, or any of them, or any bankruptcy order made pursuant to any such applications; (c) any assignment in bankruptcy made in respect of the Debtors, or any of them; (d) the provisions of any federal or provincial statute; or (e) any Agreement that binds the Debtors, or any of them, any obligation to clean up or repair any of the leased premises contained in this Order, the Canadian Store Closing Procedures or the Canadian Sale Guidelines, shall be binding on any trustee in bankruptcy that may be appointed in respect of the Debtors, or any of them, and shall not be void or voidable by any Person (as defined in the BIA), including any creditor of the Debtors, or any of them, nor shall they, or any of them, constitute or be deemed to be a

- 8 -

preference, fraudulent conveyance, transfer at undervalue or other challengeable reviewable transaction, under the BIA or any applicable law, nor shall they constitute oppressive or unfairly prejudicial conduct under any applicable law.

**General**

19.     THIS COURT ORDERS that this Order shall have full force and effect in all provinces and territories in Canada.

-----------------------------------------------------------------------

**Schedule "A"**

**List of Debtors**

GNC Holdings, Inc.

General Nutrition Centres Company

GNC Parent LLC

GNC Corporation

General Nutrition Centers, Inc.

General Nutrition Corporation

General Nutrition Investment Company

Lucky Oldco Corporation

GNC Funding Inc.

GNC International Holdings Inc.

GNC China Holdco, LLC

GNC Headquarters LLC

Gustine Sixth Avenue Associated, Ltd.

GNC Canada Holdings, Inc.

GNC Government Services, LLC

GNC Puerto Rico Holdings, Inc.

GNC Puerto Rico, LLC

**Schedule "B"**

**Canadian Sale Guidelines**

# CANADIAN SALE GUIDELINES

The following procedures shall apply to the Sale to be conducted at the Stores of General Nutrition Centres Company (the "**Merchant**"). All terms not herein defined shall have the meaning set forth in the Consulting Agreement by and between a joint venture comprised of Tiger Asset Solutions Canada, ULC and GA Retail Canada ULC (collectively with their respective U.S. affiliates, the "**Consultant**") and the Merchant dated as of June 18, 2020 (the "**Consulting Agreement**").

1.      Except as otherwise expressly set out herein, and subject to: (i) the orders granted or issued in the Merchant's bankruptcy case (the "**Bankruptcy Case**") in the United States of America under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Court**") and the Merchant's ancillary proceedings (the "**CCAA Proceedings**") in Canada under Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**") before the Ontario Superior Court of Justice (Commercial List) (individually, an "**Order**", and, collectively, the "**Orders**"); or (ii) any subsequent written agreement between the Merchant and the applicable landlord(s) (individually, a "**Landlord**" and, collectively, the "**Landlords**") and approved by each of the Consultant and Information Officer in writing, or (iii) as otherwise set forth herein, the Sale shall be conducted in accordance with the terms of the applicable leases/or other occupancy agreements to which the affected Landlords are privy for each of the affected Stores (individually, a "**Lease**" and, collectively, the "**Leases**"). However, nothing contained herein shall be construed to create or impose upon the Merchant or the Consultant any additional restrictions not contained in the applicable Lease or other occupancy agreement.

2.      The Sale shall be conducted so that each of the Stores remains open during its normal hours of operation provided for in its respective Lease until the respective Sale Termination Date for such Store. The Sale at the Stores shall end by no later than the Sale Termination Date. Rent payable under the respective Leases shall be paid in accordance with the terms of the Orders, as applicable**.**

3.      The Sale shall be conducted in accordance with applicable federal, provincial and municipal laws and regulations, unless otherwise set out herein or otherwise ordered by the Court.

4.      All display and hanging signs used by the Consultant in connection with the Sale shall be professionally produced and all hanging signs shall be hung in a professional manner. Notwithstanding anything to the contrary contained in the Leases, the Consultant may advertise the Sale at the Stores as an "everything on sale", an "everything must go", a "store closing" or similar theme sale at the Stores (provided however that no signs shall advertise the Sale as a "bankruptcy", a "going out of business" or a "liquidation" sale it being understood that the French equivalent of "clearance" is "liquidation" and is permitted to be used). Forthwith upon written request from a Landlord, the Landlord's counsel, the Merchant or the Information Officer, the Consultant shall provide the proposed signage packages along with the proposed dimensions and number of signs (as approved by the Merchant pursuant to the Consulting Agreement) by e-mail to such Landlord(s) or to their counsel of record and the Information Officer. Where the provisions of the Lease conflict with these Canadian Sale Guidelines, these Canadian Sale Guidelines shall govern**.**  The Consultant shall not use neon or day-glow or handwritten signage (unless otherwise

contained in the sign package, including "you pay" or "topper" signs).  In addition, the Consultant shall be permitted to utilize exterior banners/signs at stand alone or strip mall Stores or enclosed mall Stores with a separate entrance from the exterior of the enclosed mall, provided, however, that where such banners are not explicitly permitted by the applicable Lease and the Landlord requests in writing that the banners are not to be used, no banners shall be used absent further Order of the Court. Any banners used shall be located or hung so as to make clear that the Sale is being conducted only at the affected Store and shall not be wider than the premises occupied by the affected Store. All exterior banners shall be professionally hung and to the extent that there is any damage to the façade of the premises of a Store as a result of the hanging or removal of the exterior banner, such damage shall be professionally repaired at the expense of the Consultant. If a Landlord is concerned with "store closing" signs being placed in the front window of a Store or with the number or size of the signs in the front window, the Consultant and the Landlord will discuss the Landlord's concerns and work to resolve the dispute.

5.      The Consultant shall be permitted to utilize sign walkers and street signage; provided, however, such sign walkers and street signage shall not be located on the shopping centre or mall premises.

6.      The Consultant shall not make any alterations to interior or exterior Store lighting, except as authorized pursuant to the applicable Lease. The hanging of exterior banners or other signage, where permitted in accordance with the terms of these guidelines, shall not constitute an alteration to a Store.

7.      Conspicuous signs shall be posted in the cash register areas of each Store to the effect that all sales are "final".

8.      The Consultant shall not distribute handbills, leaflets or other written materials to customers outside of any of the Stores on any Landlord's property, unless permitted by the applicable Lease or, if distribution is customary in the shopping centre in which the Store is located. Otherwise, the Consultant may solicit customers in the Stores themselves. The Consultant shall not use any giant balloons, flashing lights or amplified sound to advertise the Sale or solicit customers, except as permitted under the applicable Lease, or agreed to by the Landlord, and no advertising trucks shall be used on a Landlord property or mall ring roads, except as explicitly permitted under the applicable Lease or agreed to by the Landlord.

9.      At the conclusion of the Sale in each Store, the Consultant shall arrange that the premises for each Store are in "broom-swept" and clean condition, and shall arrange that the Stores are materially in the same condition as on the commencement of the Sale, ordinary wear and tear excepted. No property of any Landlord of a Store shall be removed or sold during the Sale**.** No permanent fixtures (other than FF&E which for clarity is owned by the Merchant) may be removed without the applicable Landlord's written consent unless otherwise provided by the applicable Lease. Any fixtures or personal property left in a Store after the Sale Termination Date in respect of which the applicable Lease has been disclaimed by the Merchant shall be deemed abandoned, with the applicable Landlord having the right to dispose of the same as the Landlord chooses, without any liability whatsoever on the part of the Landlord.

10.     Subject to the terms of paragraph 9 above, the Consultant may sell Offered FF&E which is located in the Stores during the Sale. The Merchant and the Consultant may advertise

the sale of Offered FF&E consistent with these guidelines on the understanding that any applicable Landlord may require that such signs be placed in discreet locations acceptable to the applicable Landlord, acting reasonably. Additionally, the purchasers of any Offered FF&E sold during the Sale shall only be permitted to remove the Offered FF&E either through the back shipping areas designated by the applicable Landlord, or through other areas after regular store business hours, or through the front door of the Store during store business hours if the Offered FF&E can fit in a shopping bag, with applicable Landlord's supervision as required by the applicable Landlord. The Consultant shall repair any damage to the Stores resulting from the removal of any Offered FF&E by Consultant or by third party purchasers of Offered FF&E from Consultant.

11.    The Merchant hereby provides notice to the Landlords of the Merchant and the Consultant's intention to sell and remove Offered FF&E from the Stores. The Merchant will arrange a walk through with each Landlord that requests a walk through with the Consultant to identify the Offered FF&E subject to the sale. The relevant Landlord shall be entitled to have a representative present in the Store to observe such removal. If the Landlord disputes the Consultant's entitlement to sell or remove any FF&E under the provisions of the Lease, such FF&E shall remain on the premises and shall be dealt with as agreed between the Merchant, the Consultant and such Landlord, or pursuant to the dispute resolution section of the Canadian Store Closing Procedures. If the Merchant has rejected the Lease governing such Store in accordance with the Bankruptcy Code, it shall not be required to pay rent under such Lease pending resolution of any such dispute (other than rent payable for the notice period provided for under the Bankruptcy Code), and the rejection of the Lease shall be without prejudice to the Merchant's or Consultant's claim to the FF&E in dispute.

12.    If a rejection notice is delivered to a Landlord pursuant to the Bankruptcy Code while the Sale is ongoing and the Store in question has not yet been vacated, then: (a) during the notice period prior to the effective time of such rejection, the applicable Landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the Merchant and the Consultant 24 hours' prior written notice; and (b) at the effective time of the rejection, the relevant Landlord shall be entitled to take possession of any such Store without waiver of or prejudice to any claims or rights such Landlord may have against the Merchant in respect of such Lease or Store, provided that nothing herein shall relieve such Landlord of its obligation to mitigate any damages claimed in connection therewith.

13.    The Consultant and its agents and representatives shall have the same access rights to the Stores as the Merchant under the terms of the applicable Lease, and the applicable Landlords shall have the rights of access to the Stores during the Sale provided for in the applicable Lease (subject, for greater certainty, to any applicable stay of proceedings).

14.    The Merchant and the Consultant shall not conduct any auctions of Merchandise or Offered FF&E at any of the Stores.

15.    The Consultant shall designate a party to be contacted by the Landlords should a dispute arise concerning the conduct of the Sale. The initial contact person for the Consultant shall be Daniel Richer who may be reached by phone at 416-865-4445 or email at dricher@fasken.com.  Contact persons for the Merchant and the Information Officer are set out in the Canadian Store Closing Procedures.  If the parties are unable to resolve the dispute between themselves, the notice and dispute sections of the Canadian Store

- 4 -

Closing Procedures shall be followed by the parties.  For the duration of any such dispute, the Consultant shall cease all activity in dispute other than activity expressly permitted herein, pending the determination of the matter by the Court; provided, for greater certainty, that if a banner has been hung in accordance with these Canadian Sale Guidelines and is thereafter the subject of a dispute, the Consultant shall not be required to take any such banner down pending determination of the dispute.

16.    Nothing herein is, or shall be deemed to be a consent by any Landlord to the sale, assignment or transfer of any Lease, or to grant to the Landlord any greater rights than already exist under the terms of any applicable Lease.

17.    These Canadian Sale Guidelines may be amended by written agreement between the Merchant, the Consultant and any applicable Landlord (provided that such amended Canadian Sale Guidelines shall not affect or bind any other Landlord not privy thereto without further Order of the Court).

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED        Court File No.

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF GNC HOLDINGS, INC. et al.

APPLICATION OF GNC HOLDINGS, INC. UNDER SECTION 46 OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

|  | |
|---|---|
| | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br><br>Proceeding commenced at TORONTO |
| | **CONSULTING AGREEMENT APPROVAL ORDER** |
| | **Torys LLP**<br>79 Wellington St. W., 30th Floor<br>Box 270, TD South Tower<br>Toronto, ON M5K 1N2<br>Fax: 416.865.7380<br><br>Scott A. Bomhof (LSO #: 37006F)<br>Tel: 416.865.7370 \| sbomhof@torys.com<br><br>Adam M. Slavens (LSO #: 54433J)<br>Tel: 416.865.7333 \| aslavens@torys.com<br><br>Jeremy Opolsky (LSO #: 60813N)<br>Tel: 416.865.8117 \| jopolsky@torys.com<br><br>Leora Jackson (LSO #: 68448L)<br>Tel: 416.865.7547 \| ljackson@torys.com<br><br>Lawyers for the Applicant |

30050907.3