## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>GNC HOLDINGS, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br>Case No. 20-11662 (KBO)<br>(Jointly Administered)<br>**Re: Docket No. 1301**<br>Confirmation Hearing: October 14, 2020 at 1:00 ET<br>Extended Objection Deadline: October 7, 2020 at 5:00 p.m. ET |

## OBJECTION OF THE CHUBB COMPANIES TO THE FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF GNC HOLDINGS, INC. AND ITS DEBTOR AFFILIATES UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

ACE American Insurance Company, ACE Property and Casualty Company, Federal Insurance Company, Pacific Indemnity Company, Chubb Custom Insurance Company, Great Northern Insurance Company and together with each of their U.S.-based affiliates and successors (collectively, the "Chubb Companies"), by and through their undersigned counsel, hereby file this objection (the "Objection") to the *Fifth Amended Joint Chapter 11 Plan of Reorganization of GNC Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Doc. No. 1301] (the "Plan"),[2] and in support of the Objection, the Chubb Companies respectfully state as follows:

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's United States federal tax identification number, if applicable, or other applicable identification number, are: GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2226); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234). The Debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

[2]      Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan.

## BACKGROUND

### A.    The Bankruptcy Case

1.    On June 23, 2020 (the "Petition Date"), GNC Holdings, Inc. and certain of its affiliates (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

2.    On July 15, 2020, the Debtors filed the *Joint Chapter 11 Plan of Reorganization of GNC Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 382] (the "Original Plan") and the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of GNC Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* [Docket No. 383] (the "Original Disclosure Statement").

3.    On August 20, 2020, the Court entered the *Order (A) Approving The Disclosure Statement, (B) Establishing the Voting Record Date, Voting Deadline, and Other Dates, (C) Approving Procedures for Soliciting, Receiving, and Tabulating Votes on the Plan and for Filing Objections to the Plan, (D) Approving the Manner and Forms of Notice and Other Related Documents, (E) Approving Notice and Procedures for the Assumption of Executory Contracts and Unexpired Leases, and (F) Granting Related Relief* [Docket No. 820] (the "Disclosure Statement Order"), approving "the Disclosure Statement [Docket No. 383]" as containing adequate information. [3]

---

[3]    The Original Disclosure Statement contained language regarding the treatment of insurance under the Original Plan, providing:

> Article V.H. of the Plan concerns the Debtors' Insurance Contracts, and provides that, notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, confers Bankruptcy Court jurisdiction,

grants an injunction or release, or requires a party to opt out of any releases): (a) on the Effective Date, the applicable Reorganized Debtors shall assume the Insurance Contracts in their entirety pursuant to sections 105 and 365 of the Bankruptcy Code and the applicable Reorganized Debtors and all other parties to the Insurance Contracts shall remain liable for their respective obligations thereunder (including, as applicable, any obligations of the Debtors), regardless of when they arise; (b) nothing shall alter, modify, amend, affect, impair or prejudice the legal, equitable or contractual rights, obligations, and defenses of the Insurers, the Debtors (or, after the Effective Date, the Reorganized Debtors), or any other individual or entity, as applicable, under any Insurance Contracts; any such rights and obligations shall be determined under the Insurance Contracts and applicable non-bankruptcy law as if the Chapter 11 Cases had not occurred; (c) nothing alters or modifies the duty, if any, that Insurers have to pay claims covered by the Insurance Contracts and the Insurers' right to seek payment or reimbursement from the Debtors (or after the Effective Date, the Reorganized Debtors) or draw on any collateral or security therefor; (d) the Allowed Claims of the Insurers arising (whether before or after the Effective Date) under the Insurance Contracts (i) shall be paid in full in the ordinary course of business regardless of whether such amounts are or shall become liquidated, due or paid before or after the Petition Date or the Effective Date, and (ii) shall not be discharged or released by the Plan or the Confirmation Order or any other order of the Bankruptcy Court; (e) the Insurers shall not need to or be required to file or serve any objection to a proposed cure amount or a request, application, claim, proof or motion for payment or allowance of any Administrative Claim and shall not be subject to any bar date or similar deadline governing cure amounts or Administrative Claims; and (f) the automatic stay of section 362(a) of the Bankruptcy Code and the injunctions set forth in Article IX of the Plan, if and to the extent applicable, shall be deemed modified without further order of this Court, solely to permit: (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable nonbankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay to proceed with its claim, and (C) all costs in relation to each of the foregoing; (III) the Insurers to collect from any or all of the collateral or security provided by or on behalf of the Debtors (or the Reorganized Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and the Reorganized Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and the Reorganized Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine; and (IV) the Insurers to cancel any Insurance Contracts, and take other actions relating thereto, to the extent permissible under applicable nonbankruptcy law, and in accordance with the terms of the Insurance Contracts.

Original Disclosure Statement at Art. V.C. However, the Original Plan did not contain an "Article V.H" or any of the language set forth above. The subsequent amended versions of the Original Plan and Original Disclosure Statement also did not contain any of this language. *See* Docket Nos. 663, 664, 686, 687, 739, 740, & 1263.

4.     On September 30, 2020, the Debtors filed the Plan, which contains certain revisions to the Original Plan and the prior amended versions of the Original Plan.

5.     The Plan does not address the treatment of insurance policies generally; however, with respect to D&O Liability Insurance Policies, the Plan provides, in part:

> Notwithstanding anything to the contrary in Article V.A of the Plan, to the extent the Debtors' D&O Liability Insurance Policies have not already been assumed and assigned pursuant to the Sale Order or Sale Transaction Documents, in the event of either a Restructuring or a Sale Transaction (i) on the Effective Date the Reorganized Debtors shall be deemed to have assumed all of the Debtors' D&O Liability Insurance Policies (including, without limitation, any "tail policy" and all agreements, documents, or instruments related thereto) in effect prior to the Effective Date pursuant to sections 105 and 365(a) of the Bankruptcy Code, without the need for any further notice to or action, order, or approval of the Bankruptcy Court; (ii) confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be filed; (iii) the Debtors and, after the Effective Date, the Reorganized Debtors shall retain the ability to supplement such D&O Liability Insurance Policies as the Debtors or Reorganized Debtors, as applicable, may deem necessary on terms and at an expense reasonably acceptable to the Consenting Creditors; and (iv) for the avoidance of doubt, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Reorganized Debtors' foregoing assumption of each of the unexpired D&O Liability Insurance Policies.

Plan at Art. IV.Q.

6.     The Plan defines D&O Liability Insurance Policies as "all insurance policies (including any "tail policies" and all agreements, documents, or instruments related thereto) issued at any time to or providing coverage to any of the Debtors for current or former directors', managers', and officers' liability." Plan at Art. I.A.67.

7.     With respect to workers' compensation insurance, the Plan provides:

DM3\7089217.1

> In the event of a Restructuring, as of the Effective Date, except as
> set forth in the Plan Supplement, the Debtors and the Reorganized
> Debtors shall continue to honor their obligations under: (1) all
> applicable state workers' compensation laws; and (2) the Debtors'
> written contracts, agreements, agreements of indemnity, self-
> insured workers' compensation bonds, policies, programs, and plans
> for workers' compensation and workers' compensation Insurance
> Contracts[.]

Plan at Art. V.G.2.

8.      The Plan defines Insurance Contracts as "all insurance policies that have been

issued at any time to or provide coverage to any of the Debtors and all agreements, documents or

instruments relating thereto, including but not limited to, D&O Liability Insurance Policies." Plan

at Art. I.A.138.

9.      The Plan also provides for insured claims and claims paid or payable by third

parties, providing:

> Except as otherwise provided in the Plan, distributions to Holders of
> Allowed Claims shall be in accordance with the provisions of any
> applicable Insurance Contract. Nothing contained in the Plan shall
> constitute or be deemed a waiver of any Cause of Action that the
> Debtors or any Entity may hold against any other Entity, including
> Insurers under any Insurance Contracts, nor shall anything
> contained herein constitute or be deemed a waiver by any Insurers
> of any rights or defenses, including coverage defenses, held by such
> Insurers under the Insurance Contracts.

Plan at Art. VI.G.

10.     On September 28, 2020, the Debtors filed the *Plan Supplement for the Fourth

Amended Joint Chapter 11 Plan of Reorganization of GNC Holdings, Inc. and Its Debtor Affiliates

Under Chapter 11 of the Bankruptcy Code* [Docket No. 1262] (the "Plan Supplement"), which

contains, *inter alia*, the Rejected Executory Contract/Unexpired Lease List.  The Insurance

Programs (as defined herein) are not listed on the Rejected Executory Contract/Unexpired Lease

List.

B.    **The Insurance Programs**

11.    Prior to the Petition Date, the Chubb Companies issued certain insurance policies (as renewed, amended, modified, endorsed or supplemented from time to time, collectively, the "Policies") to one or more of the Debtors as named insureds.

12.    Prior to the Petition Date, the Chubb Companies and the Debtors and/or their affiliates also entered into certain written agreements in connection with the Policies (as renewed, amended, modified, endorsed or supplemented from time to time, and including any exhibit or addenda thereto, collectively, the "Insurance Agreements").

13.    Pursuant to certain Policies (collectively with any related Insurance Agreements, the "ACE Insurance Program"), ACE American Insurance Company, ACE Property and Casualty Company and/or certain of their U.S.-based affiliates provide, *inter alia*, certain employment practices liability, directors' and officers', fiduciary liability, umbrella excess, small commercial and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the ACE Insurance Program (collectively, the "ACE Program Obligations").

14.    Pursuant to certain other Policies (collectively with any related Insurance Agreements, the "Chubb Insurance Program," and together with the ACE Insurance Program, the "Insurance Programs"),[4] Federal Insurance Company, Pacific Indemnity Company, Chubb

---

[4]    The descriptions of the Insurance Programs set forth herein are not intended to, and shall not be deemed to amend, modify or waive any of the terms or conditions of the Insurance Programs. Reference is made to the Insurance Programs for a complete description of their terms and conditions.

Custom Insurance Company, Great Northern Insurance Company and/or certain of their U.S-based affiliates provide, *inter alia*, certain automobile, directors' and officers', employment practices liability, excess, export package, fiduciary liability, general liability, package, property, workers' compensation, Worldnet and certain other insurance for specified policy periods subject to certain limits, deductibles, retentions, exclusions, terms and conditions, as more particularly described therein, and the insureds, including one or more of the Debtors, are required to pay to the Chubb Companies certain amounts including, but not limited to, insurance premiums (including audit premiums), deductibles, funded deductibles, expenses, taxes, assessments and surcharges, as more particularly described in the Chubb Insurance Program (collectively, the "Chubb Program Obligations," and together with the ACE Program Obligations, the "Obligations").

15.    Certain of the Debtors' Obligations are secured by certain collateral, including a letter of credit. The Obligations may also be secured by other letters of credit, trusts, escrows, surety bonds, cash collateral, paid loss deposit funds, or other amounts.

16.    The Debtors' Obligations are payable over an extended period of time and are subject to future audits and adjustments.

## OBJECTION

17.    The Chubb Companies object to the Plan on the grounds that (I) while it appears that the Debtors seek to obtain the benefits of the Insurance Programs, *see, e.g.*, Plan at Art. VI.G (relating to payment of claims by the Debtors' insurers), the Plan fails to address the fact that, in order to do so, the Debtors' successors must remain liable for the Obligations under the Insurance Programs; (II) the terms of the Insurances Programs cannot be altered through the Plan; and (III) the Plan must provide that workers' compensation and direct action claims must continue in the ordinary course.

DM3\7089217.1

**I.      The Debtors' Successors Cannot Continue To Receive The Benefits Of The Insurance Programs Without Remaining Liable For The Obligations Thereunder.**

18.      As set forth above, the Debtors appear to seek to retain the benefits of their insurance policies, including the Insurance Programs; however, the Plan fails to address the treatment of the Obligations thereunder.

19.      It is well-established that debtors (and their successors) cannot seek to receive benefits of a contract without being liable for the obligations thereunder. *See Tompkins ex. rel. A.T. v. Troy Sch. Dist.*, 199 Fed. Appx. 463, 468 (6th Cir. 2006) (holding that it is a basic principle of contract law that a party to an agreement is constrained to accept the burdens as well as the benefits of the agreement); *St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 457 F.3d 766, 773 (8th Cir. 2006) (finding that a party who accepts the benefit of a contract must also assume its burdens); *Bhushan v. Loma Alta Towers Owners Assoc., Inc.*, 148 Fed. Appx. 882, 888 (11th Cir. 2005) (stating "one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens"); *S & O Liquidating P'ship v. C.I.R.*, 291 F.3d 454, 459 (7th Cir. 2002) ("A party who has accepted the benefits of a contract cannot 'have it both ways' by subsequently attempting to avoid its burdens."); *Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) ("In short, [plaintiff] cannot have it both ways. [It] cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." (citations and quotations omitted)); *Ricketts v. First Trust Co. of Lincoln, Neb.*, 73 F.2d 599, 602 (8th Cir. 1934) (finding that "he who seeks equity must do equity, and that one may not accept the benefits and repudiate the burdens of his contract."); *Meierhenry Sargent Ltd. Liab. P'ship v. Williams*, No. 16-4180, 2017 U.S. Dist. LEXIS 65739, at *20 (D.S.D. May 1, 2017) ("Various courts have held that a party may not avail itself of a favorable aspect of the contract and then disavow a non-favorable aspect." (citations omitted)); *Power Sys. & Controls, Inc. v.*

*Schneider Elec. USA, Inc.*, No. 10-137, 2010 U.S. Dist. LEXIS 56671 at *3 (E.D. Va. June 9, 2010) ("[A] party may not avail itself of one aspect of a contract and disavow another aspect of the contract in order to avoid its consequences. . .[.]"); *see also In re Fleming Cos.*, 499 F.3d 300, 308 (3d Cir. 2007) ("'The [debtor] . . . may not blow hot and cold. If he accepts the contract he accepts it *cum onere*. If he receives the benefits he must adopt the burdens. He cannot accept one and reject the other.'") (internal citations omitted); *In re Texas Rangers Baseball Partners*, 521 B.R. 134, 180 (Bankr. N.D. Tex. 2014) ("A debtor may not merely accept the benefits of a contract and reject the burdens to the detriment of the other party.").

20.     Moreover, each of the Insurance Programs is an integrated insurance program and therefore must be read, interpreted and enforced in its entirety.[5]   *See Huron Consulting Servs., LLC v. Physiotherapy Holdings, Inc. (In re Physiotherapy Holdings, Inc.)*, 538 B.R. 225, 233 (D. Del. 2015) (finding that separately drafted agreements dated at different times but relating to the same subject constitute one cohesive agreement); *In re Karfakis*, 162 B.R. 719 (Bankr. E.D. Pa. 1993) (stating that "two contracts which are essentially inseparable can be, and should be, viewed as a single, indivisible agreement between the parties").

21.     Accordingly, the Plan must be clarified to provide that, to the extent that the Debtors seek to retain the benefits of any portion of the Insurance Programs, the entirety of the Insurance Programs must so vest, and the Plan must provide that the Debtors' successors shall remain liable in full for all of the Obligations arising under the Insurance Programs.

## II.     The Plan Should Clearly Provide That Nothing Modifies, Alters Or Impairs The Insurance Programs.

---

[5]     The Chubb Companies reserve the right to object to the treatment of any of the Policies or Insurance Agreements that make up the Insurance Programs as executory if the Debtors seek to reject any such contracts.

22.     The Plan contains provisions which provide for the release of liens, the vesting of assets in the Debtors' successors free and clear of liens, releases of certain third-parties, and exculpation and injunctions against certain actions. *See* Plan at Art. IX.

23.     It is well-established, however, that courts cannot alter terms of contracts, and must instead enforce them as written. *See, e.g.*, *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 679 (7th Cir. 2013) ("A court may not rewrite a contract to suit one of the parties but must enforce the terms as written.") (citation omitted); *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091 (9th Cir. 1997) (noting that a debtor's estate has "no greater rights in property than those held by the debtor prior to the bankruptcy"); *Trustmark Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 484 F. Supp. 2d 850, 853 (N.D. Ill. 2007) ("[A] court cannot alter, change or modify the existing terms of a contract or add new terms or conditions to which the parties do not appear to have assented, write into the contract something which the parties have omitted or take away something which the parties have included.") (citation omitted); *In re Lloyd E. Mitchell, Inc.*, 06-13250-NVA, 2012 Bankr. LEXIS 5531 (Bankr. D. Md. Nov. 29, 2012) (noting that "insurance contracts cannot be re-written by th[e] Court").

24.     The Plan must therefore clarify that nothing in the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order or any other document related to the foregoing including, but not limited to those provisions identified above, shall modify, alter or impair the Insurance Programs, including the rights and obligations of the Chubb Companies and the Debtors thereunder, as well as the coverage provided thereunder.

25.     Accordingly, the Chubb Companies further object to the Plan on this basis.

## III.    The Plan Must Provide That Workers' Compensation Claims and Direct Action Claims Must Continue In The Ordinary Course.

26.     Although the Plan provides that as of the Effective Date the Debtors and the Reorganized Debtors "shall continue to honor their obligations under … the Debtors' workers' compensation Insurance Contracts," *see* Plan at Art. V.G.2, the Plan does not provide for the handling of workers' compensation claims and direct action claims.

27.     Both workers' compensation claims and direct action claims are subject to state-law regulations that dictate the resolution of such claims, which cannot be modified by the terms of the Debtors' Plan. *See, e.g., Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.)*, 660 F.2d 1108 (6th Cir. 1981) (finding that the administration of workers' compensation claims was a valid exercise of a state's police powers and exempt from the automatic stay provisions); *see also* La. R.S. 22:1269 (2012) (Louisiana grants injured persons a right of direct action against a tortfeasor's insurer, which, in several instances, may be brought against the insurer alone, or against both the insured and insurer jointly and *in solido*); Wis. Stat. § 632.24 (2012) (Wisconsin grants injured persons a right of direct action against a tortfeasor's insurer irrespective of whether liability is presently established or is contingent and to become fixed or certain by final judgment against the insured).

28.     Accordingly, the Plan must clarify that workers' compensation and direct action claims must continue to be administered, handled, defended, settled, and/or paid in the ordinary course, and relatedly, the Chubb Companies may continue to so administer, handle, defend, settle, and/or pay such covered claims in the ordinary course, and pursuant to the terms of the Insurance Programs and applicable non-bankruptcy law.

## RESERVATION OF RIGHTS

29.     The Chubb Companies specifically reserve all of their rights with respect to the Insurance Programs and their right to assert additional objections to the Plan.

Dated: October 7, 2020

Respectfully submitted,

DUANE MORRIS LLP

*/s/  Drew S. McGehrin*
Drew S. McGehrin (DE 6508)
DUANE MORRIS LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
Email: DSMcGehrin@duanemorris.com

-and-

Wendy M. Simkulak, Esquire
Elisa M. Hyder, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1000
Email: wmsimkulak@duanemorris.com
Email: ehyder@duanemorris.com

*Counsel for the Chubb Companies*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

GNC HOLDINGS, INC., *et al.*,

Debtors.[1]

Chapter 11

Case No. 20-11662 (KBO)

(Jointly Administered)

## CERTIFICATE OF SERVICE

I, Drew S. McGehrin, certify that I am not less than 18 years of age, and that on March 26, 2020, I caused a true and correct copy of the *Objection of the Chubb Companies to the Fifth Amended Joint Chapter 11 Plan of Reorganization of GNC Holdings, Inc. and Its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* to be made upon the parties set forth on the attached service list by electronic mail, and electronically, via this Court's ECF system, on all parties registered to receive electronic notice.

Dated: October 7, 2020

/s/ Drew S. McGehrin
Drew S. McGehrin (DE 6508)

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's United States federal tax identification number, if applicable, or other applicable identification number, are: GNC Holdings, Inc. (6244); GNC Parent LLC (7572); GNC Corporation (5170); General Nutrition Centers, Inc. (5168); General Nutrition Corporation (4574); General Nutrition Investment Company (3878); Lucky Oldco Corporation (7141); GNC Funding, Inc. (7837); GNC International Holdings, Inc. (9873); GNC China Holdco, LLC (0004); GNC Headquarters LLC (7550); Gustine Sixth Avenue Associates, Ltd. (0731); GNC Canada Holdings, Inc. (3879); General Nutrition Centres Company (0939); GNC Government Services, LLC (2226); GNC Puerto Rico Holdings, Inc. (4559); and GNC Puerto Rico, LLC (7234). The Debtors' mailing address is 300 Sixth Avenue, Pittsburgh, Pennsylvania 15222.

## SERVICE LIST

**_Co-Counsel to the Debtors_**:
Latham & Watkins LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Attn: Caroline Reckler, Asif Attarwala, and Brett Newman
Email: caroline.reckler@lw.com
Email: asif.attarwala@lw.com
Email: brett.newman@lw.com

Latham & Watkins LLP
885 Third Avenue
New York, New York 10022
Attn: Andrew Ambruoso and Jeffrey T. Mispagel
Email: andrew.ambruoso@lw.com
Email: jeffrey.mispagel@lw.com

Young Conaway Stargatt & Taylor, LLP
Rodney Square
1000 King Street
Wilmington, Delaware 19801
Attn: Michael R. Nestor, Kara Hammond Coyle, and Joseph M. Mulvihill
Email: mnestor@ycst.com
Email: kcoyle@ycst.com
Email: jmulvihill@ycst.com

**_U.S. Trustee_**:
The Office of the United States Trustee for the District of Delaware
844 King Street, Suite 2207
Lockbox 35
Wilmington, Delaware 19801
Attn: Jane Leamy
Email: jane.m.leamy@usdoj.gov

**_Counsel to the administrative agent under the DIP ABL FILO Facility_**:
Simpson Thacher & Bartlett LLP
425 Lexington Ave.
New York, New York 10017
Attn: Sandy Qusba, Daniel L. Biller, and Jamie Fell
Email: squsba@stblaw.com
Email: daniel.biller@stblaw.com
Email: jamie.fell@stblaw.com

**_Counsel to the administrative agent under the DIP Term Facility_**:
Dorsey & Whitney LLP

51 West 52nd Street
New York, New York 10019
Attn: Erin E. Trigg and Samuel S. Kohn
Email: trigg.erin@dorsey.com
Email: kohn.samuel@dorsey.com

***Counsel to the Ad Hoc Group of Crossover Lenders:***
Milbank LLP, 2029 Century Park East
Los Angeles, California 90067
Attn: Mark Shinderman, Daniel B. Denny, and Jordan A. Weber
Email: mshinderman@milbank.com
Email: ddenny@milbank.com
Email: jweber@milbank.com

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899-1347
Attn: Robert J. Dehney
Email: rdehney@mnat.com

***Counsel to Ad Hoc FILO Term Lender Group:***
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York 10019
Attn: Andrew N. Rosenberg, Jacob Adlerstein, and Douglas R. Keeton
Email: arosenberg@paulweiss.com
Email: jadlerstein@paulweiss.com
Email: dkeeton@paulweiss.com

Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801
Attn: Richard S. Cobb
Email: cobb@lrclaw.com

***Counsel to the Official Committee of Unsecured Creditors:***
Lowenstein Sandler LLP
1251 Avenue of the Americas
New York, New York 10020
Attn: Jeffrey Cohen
Email: jcohen@lowenstein.com

Bayard, P.A.
600 North King Street, Suite 400
Wilmington, Delaware 19801

DM3\7089217.1

Attn: Scott D. Cousins
Email: scousins@bayardlaw.com

DM3\7089217.1